# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

04 - 12580 NG

| | |
|---|---|
| JAY S. REIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO.: _____ |
| | ) |
| MOTOROLA, INC., CLYDE KOFMAN | ) |
| JUERGEN STARK | ) |
| | ) |
| Defendants. | ) |
| | ) |

RECEIPT # _6L686_
AMOUNT $150
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. F.G.V.
DATE 12/9/04

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441 and 1446, the Defendants,

Motorola, Inc., ("Motorola") Clyde Kofman ("Kofman") and Juergen Stark ("Stark")

(collectively, "Defendants"), hereby remove the above-captioned matter, which is now

pending in the Superior Court Department of the Trial Court of the Commonwealth of

Massachusetts in Middlesex County ("Massachusetts Superior Court") as Civil Action

No. 04-4548, to the United States District Court for the District of Massachusetts.

As grounds for this removal, Defendants state the following:

1.      Plaintiff, Jay S. Rein ("Plaintiff"), has brought a civil action against Defendants in

the Massachusetts Superior Court entitled *Jay S. Rein v. Motorola, Inc., et al.*, Civil Action No.

04-4548. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint and

Summons for each Defendant are attached hereto as Exhibit A.

2.      Defendants Kofman and Motorola were served with and received the Complaint

on or about November 20, 2004 and November 23, 2004, respectively. Defendant Stark was

served with and received the Complaint on or about December 4, 2004. Kofman and Stark have also received a copy of an Amended Complaint, a copy of which is attached hereto as Exhibit B.

3.      Pursuant to 28 U.S.C. § 1446(b), Defendants are filing this Notice of Removal in a timely fashion because it is being filed within thirty (30) days of each Defendant's receipt of the Complaint.

4.      According to the Complaint and Amended Complaint, and upon information and belief, Plaintiff is a citizen of the Commonwealth of Massachusetts. See Complaint at ¶ 1; Amended Complaint at ¶ 1.

5.      Defendant Motorola is a corporation organized and existing under the laws of Delaware and having a principal place of business in Schaumburg, Illinois. Defendants Kofman and Stark are citizens of the State of Illinois. See also Complaint at ¶¶ 2, 3, and 4; Amended Complaint at ¶¶ 2, 3, and 4.

6.      This action is a civil action in which the Plaintiff alleges in Count II of the Complaint and Count II of the Amended Complaint that Defendant Motorola discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Because ADEA is a federal statute, original federal question jurisdiction is vested in this Court by 28 U.S.C. § 1331.

7.      Plaintiff claims lost wages of $130,000. Plaintiff prays, inter alia, for compensatory damages, multiple and/or liquidated damages pursuant to 29 U.S.C. § 626, as well as interest, costs and reasonable attorneys' fees. Were he to prevail in this case, ADEA would potentially permit Plaintiff to recover up to $300,000 in compensatory damages against Defendant Motorola. Thus, the amount in controversy exceeds $75,000, exclusive of costs and

interest. Accordingly, this action also is removable on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).

8.    Pursuant to Local Rule 81.1, the Defendants will file certified or attested copies of all records and proceedings in Massachusetts Superior Court Civil Action No. 04-4548 within thirty (30) days after filing this Notice of Removal.

WHEREFORE, Defendants request that the above action be removed to the United States District Court for the District of Massachusetts.

Respectfully submitted,

MOTOROLA, INC., CLYDE KOFMAN
and JUERGEN STARK
By their Attorneys,


Richard L. Alfred (BBO# 015000)
Yvette Politis (BBO# 644986)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

DATED:  December 9, 2004

## CERTIFICATE OF SERVICE

I, Yvette Politis, hereby certify that on this 9th day of December, 2004, a true copy of the foregoing document was mailed, postage prepaid, to John G. H. Coster, Attorney at Law, 92 State Street, Suite 900, Boston, Massachusetts, 02109, Counsel for Plaintiff.


Yvette Politis

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)_____ **Rein v. Motorola, Inc.** _____

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

[ ]  I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

[X]  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

[ ]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

[ ]  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

[ ]  V.  150, 152, 153.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]    NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

YES [ ]    NO [X]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]    NO [X]

7.  Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [X]    NO [ ]

A.  If yes, in which division do **all** of the non-governmental parties reside?

Eastern Division [X]    Central Division [ ]    Western Division [ ]

B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

YES [ ]    NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    **Richard Alfred    Yvette Politis, Seyfarth Shaw LLP**

ADDRESS ____ **Two Seaport Lane, Suite 300, Boston, MA 02210** ____

TELEPHONE NO. ____ **(617) 946-4800** ____

(Coversheetlocal.wpd - 10/17/02)

�JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jay S. Rein

**DEFENDANTS**
Motorola, Inc. - Clyde Kofman
Juergin Stark

(b) County of Residence of First Listed Plaintiff  **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  **New Castle County, Delaware**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)

John G. H. Coster
92 State Street, Suite 900
Boston, MA 02109

Attorneys (If Known)

Richard L. Alfred     Two Seaport Lane, Suite 300
Yvette Politis       Boston, MA 02110
Seyfarth Shaw LLP     (617) 946-4800

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | **PERSONAL PROPERTY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 370 Other Fraud | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 371 Truth in Lending | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | **CIVIL RIGHTS** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 441 Voting | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 442 Employment | **PRISONER PETITIONS** | | |
| ☐ 290 All Other Real Property | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | |
| | ☐ 444 Welfare | **Habeas Corpus:** | | |
| | ☐ 440 Other Civil Rights | ☐ 530 General | | |
| | | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION  (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Age Discrimination in Employment Act, 29 U.S.C. sec. 621, et. seq.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE

DOCKET NUMBER

DATE

December 9, 2004

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX ............ , ss
[seal]

No.

JAY S. REIN
............................... , Plaintiff(s)

**04-4548**

v.

MOTOROLA, INC., JUERGEN
STARK and CLYDE KOFMAN
........................................ , Defendant(s)

## SUMMONS

To the above-named Defendant:    MOTOROLA, INC.

You are hereby summoned and required to serve upon JOHN G. H. COSTER ..........................

.................................................. plaintiff's attorney, whose address is 92 STATE STREET .......

BOSTON, MA 02109 ......................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at 40 THORNDIKE ST.

CAMBRIDGE, MA ........................................ either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Robert A. Mulligan, Esquire, at .... BOSTON ...............................................................

the 17th .............................................. day of NOVEMBER ............................................

...................., in the year of our Lord 2004 ............................... .

A true copy Attest:

Deputy Sheriff Suffolk County *Edward J Sullivan*

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .........................................................................................................
19.........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

.........................................................................................................................................................

.........................................................................................................................................................

.........................................................................................................................................................

.....................................................................................................................

Dated: ...............................................................................................................

**N.B. TO PROCESS SERVER:**
   **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS**
   **BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

(         ........................................., ......... )

( _____ )

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX ...........ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

............., Plff.

v.

............., Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

...MIDDLESEX........... , ss

[seal]

No.

JAY..S...REIN.................. , Plaintiff(s)

**04-4548**

v.

MOTOROLA, INC., CLYDE
KOFMAN and JUERGEN STRAK
........................................ , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:   CLYDE KOFMAN

You are hereby summoned and required to serve upon ..JOHN..G...H...COSTER............................
........................................ plaintiff's attorney, whose address is .9.2..STATE..STREET........
BOSTON, MA 02109 ......................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .40..THORNDIKE..ST.

CAMBRIDGE,..MA....................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Robert A. Mulligan, Esquire, at .BOSTON..............................................................

the ......17th.......................................... day of .NOVEMBER...............................................

...................., in the year of our Lord .2004................................ .

*Edward J Sullivan*

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ..................................................................................................
19........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

...............................................................................................................................................

...............................................................................................................................................

...............................................................................................................................................

                                    ................................................................................

Dated: ............................................................................................................

**N.B.  TO PROCESS SERVER:**
         **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS
         BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( ............................................, ......... )

( _____ )

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

MIDDLESEX ........ ss.

.................... Plff.

v.

.................... Deft.

SUMMONS
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

.....MIDDLESEX.........., ss
[seal]

No.
04-4548

JAY S. REIN
..................................., Plaintiff(s)

v.

MOTOROLA, INC., CLYDE
KOFMAN and JUERGEN STARK
..................................., Defendant(s)

## SUMMONS

To the above-named Defendant: JUERGEN STARK

You are hereby summoned and required to serve upon .JOHN..G...H...COSTER...........................

............................................. plaintiff's attorney, whose address is .92..STATE..STREET.......

BOSTON, MA 02109................................................. an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ..40..THORNDIKE..ST.

CAMBRIDGE, MA.................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Robert A. Mulligan, Esquire, at .........BOSTON...............................................................

the ...17th.............................................. day of ..NOVEMBER.................................................

...................., in the year of our Lord ......2004...........................

_Edward J Sullivan_
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ...................................................................................................
19........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

...................................................................................................................................................

...................................................................................................................................................

...................................................................................................................................................

...................................................................................................................

Dated: .................. ...............................................................................................

**N.B. TO PROCESS SERVER:**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS**
**BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( ........................................................, .......... )

( _____ )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ........ ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

..................., Plff.

v.

..................., Deft.

SUMMONS
(Mass. R. Civ. P. 4)

| CIVIL ACTION COVER SHEET | DOCKET No.(S) 04-4548 | Trial Court of Massachusetts Superior Court Department County: Middlesex |
|---|---|---|

**PLAINTIFF(S)**

Jay S. Rein

**DEFENDANT(S)**

Motorola, Inc.Jurgen Stark, and Clyde Kofman

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**

John G. H. Coster
92 State Street, Suite 900/Boston, MA
Board of Bar Overseers number: 101450

**ATTORNEY (if known)**

Richard L. Alfred, Esq.
Seyfarth & Shaw
Two Seaport Lane/Boston, MA

**Origin code and track designation**

Place an x in one box only:

- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B-22 | Discrimination | (F) | (X) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ........................ $ ...........
2. Total Doctor expenses ......................... $ ...........
3. Total chiropractic expenses ................... $ ...........
4. Total physical therapy expenses .............. $ ...........
5. Total other expenses (describe) .............. Subtotal $ ...........

*FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR THE COUNTY OF MIDDLESEX NOV. 16 2004 Edward J. Sullivan CLERK*

B. Documented lost wages and compensation to date ............... $130,000.
C. Documented property damages to date .......................... $ ...........
D. Reasonably anticipated future medical and hospital expenses ... $ ...........
E. Reasonably anticipated lost wages ............................ $850./wk.
F. Other documented items of damages (describe)

$ ...........

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Lost wages, options, bonuses and other benefits

$ ...........
TOTAL $130,000.+ ...

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Breach of oral agreement relating to employment

TOTAL $. ...........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 11-16-04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000



## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                 SUPERIOR COURT
                                               C.A. No. 04-4548

| | |
|---|---|
| JAY S. REIN, | )<br>)<br>) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MOTOROLA, INC., JURGEN | ) |
| STARK, Individually, and CLYDE | ) |
| KOFMAN, Individually, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

### PARTIES

1.    Plaintiff, Jay S. Rein ("Rein") is an individual residing at 75 Johnson

Drive, Holliston, Massachusetts.

2.    Defendant, Motorola, Inc. ("Motorola") is a Delaware corporation with a

principal place of business at 1301 E. Algonquin Road, Schaumburg, Illinois.

3.    Defendant, Juergen Stark ("Stark") is an individual residing at 930 Vernon

Avenue, Glencoe, Illinois.

4.    Defendant Clyde Kofman ("Kofman") is an individual residing at 1826

Kiest Avenue, Northbrook, Illinois.

### JURISDICTION

5.    The Court has subject matter jurisdiction of this matter pursuant to G.L.c.

212 §4 of the Massachusetts General Laws.  It has personal jurisdiction over Motorola

pursuant to G.L.c. 223A §3 and personal jurisdiction over Stark and Kofman pursuant to G.L.c. 223A §3.

6.      Venue is proper pursuant to G.L.c. 223 §8(4) of the Massachusetts General Laws.

## FACTS

7.      On June 12, 2002, after utilizing Russell Reynolds, Inc., a prominent executive recruiting firm, to recruit Rein, Motorola offered him the position of Principal of North America in the Motorola Professional Services ("MPS") group. In connection with this offer Motorola agreed to pay Rein a base salary of One Hundred and Ninety Thousand Dollars ($190,000) a year, granted him stock options for Twenty Thousand (20,000) shares of Motorola stock (that vested at the rate of 25% per year over the next four years), offered him a sales incentive bonus (target) of Eighty Five Thousand Dollars ($85,000) and gave him various other health and pension benefits.

8.      Motorola further agreed that Rein would not relocate to Motorola Headquarters in Illinois and Rein would not relocate to Florida where Rein's superior worked. Instead, Rein would work out of his home in Holliston, Massachusetts; with Motorola agreeing to reimburse him for certain business expenses he incurred in operating out of his home. Rein accepted Motorola's offer and commenced working for the company on or about June 24, 2002.

9.      As a Principal in the MPS group Rein was responsible for developing, selling and delivering value-added services and solutions ("Professional Services") to Motorola's existing voice and data product customers; as well as developing relationships

2

with new prospective clients for Motorola. He reported to Len DeBarros ("DeBarros"), a Senior Vice President of Motorola.

10.     Despite Rein's best efforts, and the best efforts of the entire leadership team at MPS, the MPS group was unable to achieve its budgeted sales goals for the 2002 fiscal year. However, Rein's 2002 Performance Review, written by his supervisor, DeBarros, praised Rein's individual performance, noting that Rein "always meets and often exceeds predefined goals". In fact, Motorola was sufficiently impressed with Rein's individual performance that, at year's end, it awarded him stock options for an additional Four Thousand (4,000) shares of Motorola stock. Motorola also increased Rein's annual salary from $190,000 to $194,200.

11.     In February of 2003 Motorola further recognized Rein's contributions to the company by giving him its Bravo Award and Five Thousand Dollars ($5,000).

12.     In February of 2003 DeBarros' supervisor, Kevin Loosemore ("Loosemore"), Executive Vice President of Motorola and Global head of MPS left Motorola to become Chief Operating Officer of Cable & Wireless Plc. ("Cable & Wireless").

13.     As a result of Loosemore's departure in early 2003 Motorola and the company decided to reorganize the MPS group. As a result of this reorganization approximately three quarters of the initial team of MPS employees were either deployed to other operating units of Motorola or were laid off. Of the remaining employees approximately twenty six, including Rein, were assigned to Motorola's Commercial, Government, Industrial Solutions Sector ("CGISS"). DeBarros was also assigned to CGISS and became the general manager of the MPS group.

3

14.     In April of 2003 Motorola again recognized Rein's continuing contributions and efforts to the company by awarding him options on an additional Six Thousand Five Hundred (6,500) shares of stock.

15.     In May of 2003, DeBarros left Motorola and subsequently joined Loosemore at Cable & Wireless. For the next several months the MPS group was forced to operate with little to no guidance from Motorola's executive management.

16.     In approximately August of 2003 Motorola hired Juergen Stark ("Stark"). In addition to having management responsibility for the MPS group, Stark was also made the General Manager of the Integrated Solutions Division of CGISS ("ISD") and the head of CGISS' Strategy Organization. Initially, Stark focused his energies on these other duties. He did not meet with the MPS group until October of 2003.

17.     On October 14, 2003 Stark held his first substantive meeting with the MPS group. The purpose of this meeting was to develop a business plan for the 2004 fiscal year. The group's initial plan, which was primarily developed and presented by Kofman, one of Rein's peers, was summarily rejected by Stark. At that point Rein assumed primary responsibility for the development and presentation of a revised business plan.

18.     On October 17, 2003 Rein, and other key members of the MPS group, again met with Stark and obtained his approval of a revised business plan. During this meeting Stark told each of the members of the MPS group, all of whom were senior personnel, that he wanted them to be "excited about their future with the company" and to know that they had Motorola's full support. He assured them that they would be given until at least June 30, 2004 to demonstrate positive trends in business activity indicative

4

of the MPS group's ability to fulfill the commitments set forth in their business plan. He then warned them that if these trends were not evident by June 30th the company might be forced to make some hard decisions about the future of the MPS group.

19.     During his meetings with the MPS group, Stark also indicated that he wanted the group to designate a single person who would serve as his main contact with the group and report directly to him. Because Kofman was the only member of the group who, like Stark, worked out of Motorola's main corporate offices in Schaumburg, Illinois, Kofman was selected by his peers to fill this role.

20.     Upon conclusion of these October meetings and before the start of 2004, the MPS group was further reorganized by Stark so that only Rein, Kofman, John Gillardi ("Gillardi"), Michael Humpleby ("Humpleby") and Clay Brice ("Brice") remained. Of these five remaining employees, three - Rein, Kofman, Gillardi had a salary grade of E-15, which meant their base compensation was, by company guidelines, supposed to have been between One Hundred Seventeen Thousand and Eight Hundred Dollars ($117,800) and One Hundred Ninety Four Thousand and Two Hundred Dollars ($194,200) per year. Notwithstanding these ranges, which were established by Motorola, Kofman received a base salary in excess of Three Hundred Thousand Dollars ($300,000) per year.

21.     On January 2, 2004 Motorola paid Rein what it characterized as a "retention bonus" in the amount of Fourteen Thousand Dollars ($14,000). Kofman, told Rein he was being paid this bonus to: (i) demonstrate Motorola's gratitude for his hard work in 2003 by, providing him with a bonus comparable to what other peers within Motorola were receiving; (ii) to motivate Rein to remain with the MPS group and to

5

achieve the goals and objectives set forth in the 2004 business plan; and, (iii) to insure that Rein remained committed to the company and to Stark.

22.    On January 13, 2004 Rein received a performance evaluation from Kofman covering the period from DeBarros departure in May 2003 through December 2003. The performance evaluation was very positive. It noted that Rein "consistently achieves high levels of commendable performance and is recognized as highly effective by management team and key work partners". It also recognized that because of the recent re-organizations and changes in leadership "2003 was a challenging year" for the MPS group; but assured Rein that "2004 brings an opportunity for Jay's capabilities to come through more clearly and for MPS to continue to create value for CGISS". Kofman telephoned Rein in Holliston, Massachusetts to discuss and explain this performance review.

23.    At the same time that Rein was being paid a retention bonus to remain with Motorola, being praised for his "commendable performance" and being promised that in 2004 he would have the opportunity to create further value for the company, he was also being heavily recruited to serve as a Vice President of Invoke Solutions, Inc. ("Invoke") - a start-up company funded by Bain Capital and run by one of Rein's former managers.

24.    In early January Invoke formally made an offer to Rein, which included a substantial base salary, the opportunity for a six figure performance bonus, lucrative stock options and a number of other employee benefits.

25.    On January 18, 2004, based on: (i) Stark's representations that he would have until June 30th to show progress in achieving the goals set forth in the business plan

6

he had developed for 2004; (ii) the "retention bonus" he had just received from Motorola; (iii) Kofman's explanation of the reasons he had received this bonus; and, (iv) the favorable performance review he had just received - including Kofman's commitment that in 2004 he would have the opportunity to create further value for the company, Rein declined Invoke's offer of employment.

26.    On February 13, 2004 Stark issued a Memorandum to all Integrated Solutions Division Associates worldwide entitled "State of the Division". After congratulating the division for having "met its numbers" for that month, Stark concluded by stating that "overall it is clear that the future for CGISS and ISD is bright and that our core leadership team is energized for 2004".

27.    On February 14, 2004 Rein left on a previously scheduled and approved vacation, with plans to return to work on February 23rd.

28.    Rein returned to work on February 23rd, flying into Chicago to attend a series of meetings that had been specifically scheduled for after his vacation to insure that he would be in attendance. Upon landing in Chicago, Rein telephoned Kofman to respond to the voice-mail messages Kofman had left for him while he was on vacation. During this telephone conversation Kofman advised Rein that his employment was being terminated - effective immediately. This was the first indication Rein had received from anyone at Motorola that his employment was in jeopardy.

29.    During this telephone conversation, Kofman told Rein that there was a salary imbalance in the group and that they had decided to eliminate his position to reduce costs.

30.     That same day Rein met with Stark to discuss his termination. Stark told Rein that he was being terminated because there was a "salary imbalance" in the MPS group and that Motorola intended to replace him by hiring two "less expensive" individuals who would assume some portion of Rein's job duties.   He also informed Rein that he had never liked the fact that Rein was based in Massachusetts. This was the first indication Rein has received from anyone at Motorola that the location of his office in Holliston posed a problem for the leadership team at Motorola.

31.     Rein reminded Stark that he had previously made a commitment to the MPS group that they would have until June 30th, 2004 to show progress towards meeting the commitments in their business plan. He also pointed out that only last month he had received a positive performance review and that he had never received any warnings about his performance. Finally he told Stark that the reasons given for his termination were not credible, that he felt he was being unfairly singled out, that he was concerned that there was a potentially unlawful motivation for his termination and that he was considering contacting an attorney.

32.     Stark responded to Rein's comments by implying/threatening that, if Rein wanted to make an issue of it, Motorola (specifically Stark) would manufacture the documentation necessary to support the termination of his employment based on performance.

33.     Within days of being notified of his termination Rein began contacting other individuals within Motorola in an effort to find an alternate position within the company. He also began discussing with the company what would be a fair and appropriate severance package should he be unable to find such a position.

34.    Upon information and belief, Motorola customarily makes an effort to find alternate positions for executives whose employment has been terminated as a result of a corporate restructuring or a reduction in force. For example, Motorola holds a bi-weekly Leadership and Talent Supply meeting to discuss if there are any prospective openings in other parts of the company for which recently downsized executives might potentially be qualified. It is the responsibility of the terminated employee's supervisor to inform him of this program and forward his resume for consideration.

35.    Motorola neither told Rein about these bi-weekly Leadership and Talent Supply meetings nor forwarded his name for consideration until Rein specifically asked about the program some three weeks after he had been terminated, after having learned of its existence from a recently retired Motorola employee. Moreover, even after Rein brought this program to the attention of Peter Tobin ("Tobin"), in the company's human resources department, and indicated his desire to participate in it, Motorola delayed in forwarding Rein's name for consideration.

36.    By mid-March, Rein had neither found another position within Motorola nor come to an agreement on what would be a fair severance package. On March 18th, Stark telephoned Rein at his home and stated that he wanted to have an "off the record" conversation with Rein. Although Rein refused to agree to their conversation being "off the record" Stark continued the conversation, telling Rein that Motorola was unhappy he had not agreed to the severance package they had offered him and had refused to sign a release. Stark then stated that he was concerned Rein was going to retain a lawyer and "come after" Motorola. Stark warned Rein that he should not "burn his bridges" and threatened that if Rein retained counsel Motorola would come back at him with "an army

9

of lawyers" and an equal number of human resources personnel and would "take all severance packages off the table", thereby depriving Rein of even the standard severance benefits to which he was entitled.

37.    Within days of speaking to Stark, Rein learned that both Stark and Kofman were deliberately undermining his efforts to find another position within Motorola. For example, Stark told at least one Senior Vice President at Motorola that Rein did not have the necessary skills for a position he had been pursuing, despite being unfamiliar with Rein's prior background and training. Kofman also repeatedly sabotaged Rein's efforts to find a position by telling other managers at Motorola that Rein was "not a team player" and did not work well with others. It was at this time that, Rein first discovered the existence of the Leadership and Talent Supply Meetings and that neither Stark nor Kofman had forwarded his name for consideration.

38.    With both Stark and Kofman deliberately undermining his ability to find another position within Motorola, Rein's efforts ultimately proved unsuccessful.

39.    Since the termination of his employment by Motorola, effective February 23, 2004, Rein remained unemployed until October 18, 2004. Although Rein is currently employed, he is earning substantially less than he did when working for Motorola.

## COUNT I - AGE DISCRIMINATION  UNDER M.G.L.c. 151B (MOTOROLA)

40.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 39 above and incorporates them by reference herein.

41.    Rein is over forty (40) years of age and a member of a class protected by the provisions of G.L.c. 151B of the Massachusetts General Laws.

42.     Rein was qualified to perform his job and was performing it in a competent and professional manner.

43.     Motorola discriminated against Rein on the basis of his age in violation of G.L.c. 151B, Section 4 by terminating his employment on or about February 23, 2004.

44.     Motorola further discriminated against Rein, in violation of G.L.c. 151B §4, by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

45.     Motorola further discriminated against Rein, in violation of G.L.c. 151B §4, and G.L.c. 12 §11H by attempting to coerce, intimidate, and threaten Rein into releasing any potential claims he had against Motorola under the statute.

46.     Rein filed a timely Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

47.     Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

48.     As a direct and proximate result of Motorola's wrongful discrimination and wrongful retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

## COUNT II – AGE DISCRIMINATION UNDER ADEA (MOTOROLA)

49.     Rein hereby re-alleges each of the averments contained in paragraphs 1 through 48 above and incorporates them by reference herein.

11

50.   Rein is over forty (40) years of age and a member of a class protected by the provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 seq.

51.   Rein was qualified to perform his job and was performing it in a competent and professional manner.

52.   Motorola discriminated against Rein on the basis of his age in violation of 29 U.S.C. §623 by terminating his employment on or about February 23, 2004.

53.   Motorola further discriminated against Rein, in violation of 29 U.S.C. §623 and §626 by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

54.   Rein filed a timely Charge of Discrimination with the MCAD and the EEOC concerning Motorola's unlawful and discriminatory conduct.

55.   Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

56.   As a direct and proximate result of Motorola's wrongful discrimination and retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

## COUNT III – AGE DISCRIMINATION UNDER M.G.L.c. 151B (STARK)

57.   Rein hereby re-alleges each of the averments contained in paragraphs 1 through 56 above and incorporates them by reference herein.

12

58.    Stark discriminated against Rein on the basis of his age in violation of G.L.c. 151B, §4 by aiding and abetting in the decision to terminate Rein's employment on or about February 23, 2004.

59.    Stark further discriminated against Rein, in violation of G.L.c. 151B §4, by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

60.    Stark further discriminated against Rein, in violation of G.L.c. 151B §4 and G.L.c.12 §11H by attempting to coerce, intimidate, and threaten Rein into releasing any potential claims he had against Motorola under the statute.

61.    Rein filed a timely Charge of Discrimination with the MCAD and the EEOC concerning Stark's unlawful and discriminatory conduct.

62.    Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

63.    As a direct and proximate result of Stark's wrongful discrimination and retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

## COUNT IV – AGE DISCRIMINATION UNDER M.G.L.c.151B (KOFMAN)

64.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 63 above and incorporates them by reference herein.

66.    Stark discriminated against Rein on the basis of his age in violation of G.L.c. 151B, Section 4 by aiding and abetting in the decision to terminate Rein's employment on or about February 23, 2004.

67.    Stark further discriminated against Rein, in violation of G.L.c. 151B §4, by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

68.    Stark further discriminated against Rein, in violation of G.L.c. 151B §4, and G.L.c. 12 §11H by attempting to coerce, intimidate, and threaten Rein into releasing any potential claims he had against Motorola under the statute.

69.    Rein filed a timely Charge of Discrimination with the MCAD and the EEOC concerning Stark's unlawful and discriminatory conduct.

70.    Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

71.    As a direct and proximate result of Stark's wrongful discrimination and retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

## COUNT V – BREACH OF CONTRACT (MOTOROLA)

72.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 71 above and incorporates them by reference herein.

73.    On or about October 17, 2003 Motorola entered into an oral agreement with Rein wherein Motorola agreed that if Rein agreed to continue working at Motorola and remained committed to the company he would have until at least June 30, 2004 to demonstrate positive trends in business activity indicative of the MPS group's ability to fulfill the commitments set forth in their business plan.

14

74. Rein fulfilled his obligations under the agreement by continuing to work for Motorola, devoting his best efforts to generate revenue for the company, and rejecting an offer of employment from another company.

75. On February 23, 2004 Motorola breached its obligations under the agreement, without justification, by summarily terminating Rein's employment.

76. As a result of Motorola's breach Rein has been damaged.

## COUNT VI – PROMISSORY ESTOPPEL (MOTOROLA)

77. Rein hereby re-alleges each of the averments contained in paragraphs 1 through 76 above and incorporates them by reference herein.

78. In October of 2003 Motorola made certain promises and commitments to Rein concerning the security of his employment to induce him to remain at the company, continue working and forego other potential job opportunities.

79. In early January of 2004 Motorola paid Rein what it characterized as a "retention bonus". Rein was told by Motorola, and understood, that one of the purposes of the "retention bonus" was to induce him to remain at Motorola and the MPS group to help it achieve the goals and objectives set forth in the 2004 business plan.

80. On January 13th, 2004, during Rein's performance review, Motorola again renewed the commitments it had made the previous October by again promising Rein that he would be given the opportunity to continue to create value for the company in 2004. Rein understood this to mean that he would have until at least June 30th to demonstrate progress towards meeting the commitments set forth in the MPS group's 2004 business plan.

81.     Rein reasonably relied on these promises and commitments, to his detriment, by declining a lucrative job offer from Invoke on January 18, 2004.

82.     On February 23, 2004 Motorola breached its promises and commitments to Rein by summarily terminating his employment without cause.

83.     As a result of Motorola's breach, Rein has been damaged.

## COUNT VII – INTERFERENCE WITH ADVANTAGEOUS RELATIONS (STARK)

84.     Rein hereby re-alleges each of the averments contained in paragraphs 1 through 83 above and incorporates them by reference herein.

85.     Rein was a full time employee of Motorola and had an ongoing advantageous relationship with the company.

86.     Stark knowingly interfered with Rein's advantageous relationship with Motorola by, inter alia.: (i) inducing the company to terminate Rein's employment; and, (ii) deliberately undermining his efforts to find another position within Motorola.

87.     Stark's interference with Rein's advantageous relations was motivated by malice, including, inter alia.: (i) an unlawful bias against Rein, based upon his age; and, (ii) a desire to punish Rein for refusing to accept Motorola's offered severance package and sign a general release, and expressing concern that there was a potentially unlawful motive for his termination.

88.     As a result of Stark's knowing and intentional interference with Rein's advantageous relationship with Motorola, Rein was terminated from his position and was unsuccessful in obtaining another position within the company.

16



## COUNT VIII - INTERFERENCE WITH
## ADVANTAGEOUS RELATIONS (KOFMAN)

89.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 88 above and incorporates them by reference herein.

90.    Rein was a full time employee of Motorola and had an ongoing advantageous relationship with the company.

91.    Kofman knowingly interfered with Rein's advantageous relationship with Motorola by, inter alia.: (i) inducing the company to terminate Rein's employment; and, (ii) deliberately undermining his efforts to find another position within Motorola.

92.    Kofman's interference with Rein's advantageous relations was motivated by malice, including, inter alia.: (i) an unlawful bias against Rein, based upon his age; (ii) a desire to punish Rein for refusing to accept Motorola's offered severance package and sign a general release and expressing concern that there was a potentially unlawful motive for his termination; and, (iii) a desire to eliminate a peer whose underlying job performance and contributions to the company were demonstrably superior.

93.    As a result of Kofman's knowing and intentional interference with Rein's advantageous relationship with Motorola, Rein was terminated from his position and was unsuccessful in obtaining another position within the company.

## COUNT IX – INTERFERENCE WITH
## ADVANTAGEOUS RELATIONS (MOTOROLA)

94.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 83 above and incorporates them by reference herein.

95.    As a senior executive with substantial salary requirements and many years of experience, many positions for which Rein is qualified are filled by executive level

recruiting firms. Frequently potential positions are not even advertised, and promising candidates are first identified and then solicited by the recruiting firm.

96.    Once a recruiting firm has identified a promising executive, it is advantageous for the firm to maintain a continuing business relationship with him throughout his career. Not only can this individual potentially be recruited to fill another position, he can also be used as a point of contact with the company in which he has been placed. Recruiters therefore ordinarily attempt to maintain and cultivate their relationship with the executives they have placed.

97.    Similarly, from the executive's standpoint, it is advantageous to maintain a continuing business relationship with the recruiting firms because such firms can be instrumental is assisting the executive to find other positions or advance his career.

98.    Rein had precisely such a mutually advantageous relationship with Russell Reynolds, the company that recruited him to fill a position with Motorola, and a senior Russell Reynolds Partner, regularly contacted Rein for an update on what was happening at Motorola. On those occasions when Rein telephoned or e-mailed this Partner, his messages were usually returned within 24 hours. In fact, several weeks before Rein's employment was terminated, he was contacted by another representative of Russell Reynolds, who told him that he was meeting with Motorola. Russell Reynolds was seeking information from Rein on the various resignations, departures and reorganizations that had occurred at MPS since Rein joined Motorola in June 2004. Rein objectively presented facts to Russell Reynolds about the changes that had occurred.

99.    Since the termination of his employment by Motorola, Rein has repeatedly telephoned and e-mailed his primary contact at Russell Reynolds as part of his efforts to

find another position. Russell Reynolds has virtually ignored Rein, failed to return all of his phone calls, and been of no assistance in finding potential employment.

100.   Upon information and belief, Motorola, has knowingly interfered with Rein's advantageous relationship with Russell Reynolds.

101.   Upon information and belief, Motorola's interference with Rein's advantageous relations was motivated by malice, including, inter alia.,: (i) an unlawful bias against Rein, based upon his age; and (ii) a desire to punish Rein for refusing to sign a general release, and to retaliate against him for having filed a complaint with the MCAD.

102.   As a result of Motorola's knowing and intentional interference with Rein's advantageous relationship with Russell Reynolds, Rein efforts to find another position have been severely compromised.

## REQUESTS FOR RELIEF

WHEREFORE, Rein requests that this Court:

(i)   Enter judgment on his behalf as to Counts I through IX;

(ii)   Award him compensatory damages in an amount to be determined at trial, with respect to Count I through IX;

(iii)   Award him multiple and/or liquidated damages in an amount to be determined at trial with respect to Counts I, III and IV, pursuant to G.L.c. 151B of the Massachusetts General Laws;

(iv)   Award him multiple and/or liquidated damages in an amount to be determined at trial with respect to Count II, pursuant to 29 U.S.C. §626

(v)   Award him costs and reasonable attorney's fees, pursuant to G.L.c. 151B of the Massachusetts General Laws and 29 U.S.C. §626;

(vi)   Award him interest; and,

(vii)    Award him such other relief as the Court shall deem just and reasonable.

### PLAINTIFF DEMANDS A JURY
### TRIAL AS TO ALL ISSUES SO TRIABLE

JAY S. REIN

By his attorney,

John G. H. Coster
(BBO #101450)
92 State Street, Suite 900
Boston, Massachusetts 02109
(617) 423-2224

Dated:  November 16, 2004

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
C.A. No. 04-4548

JAY S. REIN, )
)
Plaintiff, )
)
v. )
)
MOTOROLA, INC., JUERGEN )
STARK, Individually, and CLYDE )
KOFMAN, Individually, )
)
Defendants. )

AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL

## PARTIES

1.      Plaintiff, Jay S. Rein ("Rein") is an individual residing at 75 Johnson

Drive, Holliston, Massachusetts.

2.      Defendant, Motorola, Inc. ("Motorola") is a Delaware corporation with a

principal place of business at 1301 E. Algonquin Road, Schaumburg, Illinois.

3.      Defendant, Juergen Stark ("Stark") is an individual residing at 930 Vernon

Avenue, Glencoe, Illinois.

4.      Defendant Clyde Kofman ("Kofman") is an individual residing at 1826

Kiest Avenue, Northbrook, Illinois.

## JURISDICTION

5.      The Court has subject matter jurisdiction of this matter pursuant to G.L.c.

212 §4 of the Massachusetts General Laws. It has personal jurisdiction over Motorola

pursuant to G.L.c. 223A §3 and personal jurisdiction over Stark and Kofman pursuant to G.L.c. 223A §3.

6.      Venue is proper pursuant to G.L.c. 223 §8(4) of the Massachusetts General Laws.

## FACTS

7.      On June 12, 2002, after utilizing Russell Reynolds, Inc., a prominent executive recruiting firm, to recruit Rein, Motorola offered him the position of Principal of North America in the Motorola Professional Services ("MPS") group. In connection with this offer Motorola agreed to pay Rein a base salary of One Hundred and Ninety Thousand Dollars ($190,000) a year, granted him stock options for Twenty Thousand (20,000) shares of Motorola stock (that vested at the rate of 25% per year over the next four years), offered him a sales incentive bonus (target) of Eighty Five Thousand Dollars ($85,000) and gave him various other health and pension benefits.

8.      Motorola further agreed that Rein would not relocate to Motorola Headquarters in Illinois and Rein would not relocate to Florida where Rein's superior worked. Instead, Rein would work out of his home in Holliston, Massachusetts; with Motorola agreeing to reimburse him for certain business expenses he incurred in operating out of his home. Rein accepted Motorola's offer and commenced working for the company on or about June 24, 2002.

9.      As a Principal in the MPS group Rein was responsible for developing, selling and delivering value-added services and solutions ("Professional Services") to Motorola's existing voice and data product customers; as well as developing relationships

2

with new prospective clients for Motorola. He reported to Len DeBarros ("DeBarros"), a Senior Vice President of Motorola.

10.    Despite Rein's best efforts, and the best efforts of the entire leadership team at MPS, the MPS group was unable to achieve its budgeted sales goals for the 2002 fiscal year. However, Rein's 2002 Performance Review, written by his supervisor, DeBarros, praised Rein's individual performance, noting that Rein "always meets and often exceeds predefined goals". In fact, Motorola was sufficiently impressed with Rein's individual performance that, at year's end, it awarded him stock options for an additional Four Thousand (4,000) shares of Motorola stock. Motorola also increased Rein's annual salary from $190,000 to $194,200.

11.    In February of 2003 Motorola further recognized Rein's contributions to the company by giving him its Bravo Award and Five Thousand Dollars ($5,000).

12.    In February of 2003 DeBarros' supervisor, Kevin Loosemore ("Loosemore"), Executive Vice President of Motorola and Global head of MPS left Motorola to become Chief Operating Officer of Cable & Wireless Plc. ("Cable & Wireless").

13.    As a result of Loosemore's departure in early 2003, Motorola decided to reorganize the MPS group. As a result of this reorganization approximately three quarters of the initial team of MPS employees were either deployed to other operating units of Motorola or were laid off. Of the remaining employees approximately twenty six, including Rein, were assigned to Motorola's Commercial, Government, Industrial Solutions Sector ("CGISS"). DeBarros was also assigned to CGISS and became the general manager of the MPS group.

3

14.    In April of 2003 Motorola again recognized Rein's continuing contributions and efforts to the company by awarding him options on an additional Six Thousand Five Hundred (6,500) shares of stock.

15.    In May of 2003, DeBarros left Motorola and subsequently joined Loosemore at Cable & Wireless. For the next several months the MPS group was forced to operate with little to no guidance from Motorola's executive management.

16.    In approximately August of 2003 Motorola hired Juergen Stark ("Stark"). In addition to having management responsibility for the MPS group, Stark was also made the General Manager of the Integrated Solutions Division of CGISS ("ISD") and the head of CGISS' Strategy Organization. Initially, Stark focused his energies on these other duties. He did not meet with the MPS group until October of 2003.

17.    On October 14, 2003 Stark held his first substantive meeting with the MPS group. The purpose of this meeting was to develop a business plan for the 2004 fiscal year. The group's initial plan, which was primarily developed and presented by Kofman, one of Rein's peers, was summarily rejected by Stark. At that point Rein assumed primary responsibility for the development and presentation of a revised business plan.

18.    On October 17, 2003 Rein and other key members of the MPS group, again met with Stark and obtained his approval of a revised business plan. During this meeting Stark told each of the members of the MPS group, all of whom were senior personnel, that he wanted them to be "excited about their future with the company" and to know that they had Motorola's full support. He assured them that they would be given until at least June 30, 2004 to demonstrate positive trends in business activity indicative

of the MPS group's ability to fulfill the commitments set forth in their business plan. He then warned them that if these trends were not evident by June 30th the company might be forced to make some hard decisions about the future of the MPS group.

19.    During his meetings with the MPS group, Stark also indicated that he wanted the group to designate a single person who would serve as his main contact with the group and report directly to him. Because Kofman was the only member of the group who, like Stark, worked out of Motorola's main corporate offices in Schaumburg, Illinois, Kofman was selected by his peers to fill this role.

20.    Upon conclusion of these October meetings and before the start of 2004, the MPS group was further reorganized by Stark so that only Rein, Kofman, John Gillardi ("Gillardi"), Michael Humpleby ("Humpleby") and Clay Brice ("Brice") remained. Of these five remaining employees, three - Rein, Kofman, Gillardi had a salary grade of E-15, which meant their base compensation was, by company guidelines, supposed to have been between One Hundred Seventeen Thousand and Eight Hundred Dollars ($117,800) and One Hundred Ninety Four Thousand and Two Hundred Dollars ($194,200) per year. Notwithstanding these ranges, which were established by Motorola, Kofman received a base salary in excess of Three Hundred Thousand Dollars ($300,000) per year.

21.    On January 2, 2004 Motorola paid Rein what it characterized as a "retention bonus" in the amount of Fourteen Thousand Dollars ($14,000). Kofman, told Rein he was being paid this bonus to: (i) demonstrate Motorola's gratitude for his hard work in 2003 by, providing him with a bonus comparable to what other peers within Motorola were receiving; (ii) to motivate Rein to remain with the MPS group and to

achieve the goals and objectives set forth in the 2004 business plan; and, (iii) to insure that Rein remained committed to the company and to Stark.

22.    On January 13, 2004 Rein received a performance evaluation from Kofman covering the period from DeBarros departure in May 2003 through December 2003. The performance evaluation was very positive. It noted that Rein "consistently achieves high levels of commendable performance and is recognized as highly effective by management team and key work partners". It also recognized that because of the recent re-organizations and changes in leadership "2003 was a challenging year" for the MPS group; but assured Rein that "2004 brings an opportunity for Jay's capabilities to come through more clearly and for MPS to continue to create value for CGISS". Kofman telephoned Rein in Holliston, Massachusetts to discuss and explain this performance review.

23.    At the same time that Rein was being paid a retention bonus to remain with Motorola, being praised for his "commendable performance" and being promised that in 2004 he would have the opportunity to create further value for the company, he was also being heavily recruited to serve as a Vice President of Invoke Solutions, Inc. ("Invoke") - a start-up company funded by Bain Capital and run by one of Rein's former managers.

24.    In early January Invoke formally made an offer to Rein, which included a substantial base salary, the opportunity for a six figure performance bonus, lucrative stock options and a number of other employee benefits.

25.    On January 18, 2004, based on: (i) Stark's representations that he would have until June 30th to show progress in achieving the goals set forth in the business plan

6

he had developed for 2004; (ii) the "retention bonus" he had just received from Motorola; (iii) Kofman's explanation of the reasons he had received this bonus; and, (iv) the favorable performance review he had just received - including Kofman's commitment that in 2004 he would have the opportunity to create further value for the company, Rein declined Invoke's offer of employment.

26. On February 13, 2004 Stark issued a Memorandum to all Integrated Solutions Division Associates worldwide entitled "State of the Division". After congratulating the division for having "met its numbers" for that month, Stark concluded by stating that "overall it is clear that the future for CGISS and ISD is bright and that our core leadership team is energized for 2004".

27. On February 14, 2004 Rein left on a previously scheduled and approved vacation, with plans to return to work on February 23rd.

28. Rein returned to work on February 23rd, flying into Chicago to attend a series of meetings that had been specifically scheduled for after his vacation to insure that he would be in attendance. Upon landing in Chicago, Rein telephoned Kofman to respond to the voice-mail messages Kofman had left for him while he was on vacation. During this telephone conversation Kofman advised Rein that his employment was being terminated - effective immediately. This was the first indication Rein had received from anyone at Motorola that his employment was in jeopardy.

29. During this telephone conversation, Kofman told Rein that there was a salary imbalance in the group and that they had decided to eliminate his position to reduce costs.

7

30.    That same day Rein met with Stark to discuss his termination. Stark told Rein that he was being terminated because there was a "salary imbalance" in the MPS group and that Motorola intended to replace him by hiring two "less expensive" individuals who would assume some portion of Rein's job duties.    He also informed Rein that he had never liked the fact that Rein was based in Massachusetts. This was the first indication Rein has received from anyone at Motorola that the location of his office in Holliston posed a problem for the leadership team at Motorola.

31.    Rein reminded Stark that he had previously made a commitment to the MPS group that they would have until June 30th, 2004 to show progress towards meeting the commitments in their business plan. He also pointed out that only last month he had received a positive performance review and that he had never received any warnings about his performance. Finally he told Stark that the reasons given for his termination were not credible, that he felt he was being unfairly singled out, that he was concerned that there was a potentially unlawful motivation for his termination and that he was considering contacting an attorney.

32.    Stark responded to Rein's comments by implying/threatening that, if Rein wanted to make an issue of it, Motorola (specifically Stark) would manufacture the documentation necessary to support the termination of his employment based on performance.

33.    Within days of being notified of his termination Rein began contacting other individuals within Motorola in an effort to find an alternate position within the company. He also began discussing with the company what would be a fair and appropriate severance package should he be unable to find such a position.

8

34.    Upon information and belief, Motorola customarily makes an effort to find alternate positions for executives whose employment has been terminated as a result of a corporate restructuring or a reduction in force. For example, Motorola holds a bi-weekly Leadership and Talent Supply meeting to discuss if there are any prospective openings in other parts of the company for which recently downsized executives might potentially be qualified. It is the responsibility of the terminated employee's supervisor to inform him of this program and forward his resume for consideration.

35.    Motorola neither told Rein about these bi-weekly Leadership and Talent Supply meetings nor forwarded his name for consideration until Rein specifically asked about the program some three weeks after he had been terminated, after having learned of its existence from a recently retired Motorola employee. Moreover, even after Rein brought this program to the attention of Peter Tobin ("Tobin"), in the company's human resources department, and indicated his desire to participate in it, Motorola delayed in forwarding Rein's name for consideration.

36.    By mid-March, Rein had neither found another position within Motorola nor come to an agreement on what would be a fair severance package. On March 18th, Stark telephoned Rein at his home and stated that he wanted to have an "off the record" conversation with Rein. Although Rein refused to agree to their conversation being "off the record" Stark continued the conversation, telling Rein that Motorola was unhappy he had not agreed to the severance package they had offered him and had refused to sign a release. Stark then stated that he was concerned Rein was going to retain a lawyer and "come after" Motorola. Stark warned Rein that he should not "burn his bridges" and threatened that if Rein retained counsel Motorola would come back at him with "an army

of lawyers" and an equal number of human resources personnel and would "take all severance packages off the table", thereby depriving Rein of even the standard severance benefits to which he was entitled.

37.    Within days of speaking to Stark, Rein learned that both Stark and Kofman were deliberately undermining his efforts to find another position within Motorola. For example, Stark told at least one Senior Vice President at Motorola that Rein did not have the necessary skills for a position he had been pursuing, despite being unfamiliar with Rein's prior background and training. Kofman also repeatedly sabotaged Rein's efforts to find a position by telling other managers at Motorola that Rein was "not a team player" and did not work well with others. It was at this time that, Rein first discovered the existence of the Leadership and Talent Supply Meetings and that neither Stark nor Kofman had forwarded his name for consideration.

38.    With both Stark and Kofman deliberately undermining his ability to find another position within Motorola, Rein's efforts ultimately proved unsuccessful.

39.    Since the termination of his employment by Motorola, effective February 23, 2004, Rein remained unemployed until October 18, 2004. Although Rein is currently employed, he is earning substantially less than he did when working for Motorola.

## COUNT I - AGE DISCRIMINATION UNDER M.G.L.c. 151B (MOTOROLA)

40.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 39 above and incorporates them by reference herein.

41.    Rein is over forty (40) years of age and a member of a class protected by the provisions of G.L.c. 151B of the Massachusetts General Laws.

10

42.    Rein was qualified to perform his job and was performing it in a competent and professional manner.

43.    Motorola discriminated against Rein on the basis of his age in violation of G.L.c. 151B, Section 4 by terminating his employment on or about February 23, 2004.

44.    Motorola further discriminated against Rein, in violation of G.L.c. 151B §4, by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

45.    Motorola further discriminated against Rein, in violation of G.L.c. 151B §4, and G.L.c. 12 §11H by attempting to coerce, intimidate, and threaten Rein into releasing any potential claims he had against Motorola under the statute.

46.    Rein filed a timely Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

47.    Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

48.    As a direct and proximate result of Motorola's wrongful discrimination and wrongful retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

### COUNT II – AGE DISCRIMINATION UNDER ADEA (MOTOROLA)

49.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 48 above and incorporates them by reference herein.

50.    Rein is over forty (40) years of age and a member of a class protected by the provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 seq.

51.    Rein was qualified to perform his job and was performing it in a competent and professional manner.

52.    Motorola discriminated against Rein on the basis of his age in violation of 29 U.S.C. §623  by terminating his employment on or about February 23, 2004.

53.    Motorola further discriminated against Rein, in violation of 29 U.S.C. §623 and §626 by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

54.    Rein filed a timely Charge of Discrimination with the MCAD and the EEOC concerning Motorola's unlawful and discriminatory conduct.

55.    Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

56.    As a direct and proximate result of Motorola's wrongful discrimination and retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

### COUNT III – AGE DISCRIMINATION UNDER M.G.L.c. 151B (STARK)

57.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 56 above and incorporates them by reference herein.

12

58.  Stark discriminated against Rein on the basis of his age in violation of

G.L.c. 151B, §4 by aiding and abetting in the decision to terminate Rein's employment

on or about February 23, 2004.

59.  Stark further discriminated against Rein, in violation of G.L.c. 151B §4,

by retaliating against him for expressing concern that the decision to terminate him was

unlawful and indicating that he was considering contacting an attorney.

60.  Stark further discriminated against Rein, in violation of G.L.c. 151B §4

and G.L.c.12 §11H by attempting to coerce, intimidate, and threaten Rein into releasing

any potential claims he had against Motorola under the statute,

61.  Rein filed a timely Charge of Discrimination with the MCAD and the

EEOC concerning Stark's unlawful and discriminatory conduct.

62.  Subsequent to the expiration of ninety days after the filing of such Charge

of Discrimination Rein withdrew the Charge and commenced the instant action.

63.  As a direct and proximate result of Stark's wrongful discrimination and

retaliation Rein has suffered and continues to suffer damage, including, but not limited to,

lost wages, bonuses, stock options. health, disability, and pension benefits and other

benefits, and substantial emotional distress.

### COUNT IV – AGE DISCRIMINATION UNDER M.G.L.c.151B (KOFMAN)

64.  Rein hereby re-alleges each of the averments contained in paragraphs 1

through 63 above and incorporates them by reference herein.

65.  Kofman discriminated against Rein on the basis of his age in violation of

G.L.c. 151B. Section 4 by aiding and abetting in the decision to terminate Rein's

employment on or about February 23, 2004.

13

66.    Kofman further discriminated against Rein, in violation of G.L.c. 151B §4, by retaliating against him for expressing concern that the decision to terminate him was unlawful and indicating that he was considering contacting an attorney.

67.    Kofman further discriminated against Rein, in violation of G.L.c. 151B §4, and G.L.c. 12 §11H by attempting to coerce, intimidate, and threaten Rein into releasing any potential claims he had against Motorola under the statute.

68.    Rein filed a timely Charge of Discrimination with the MCAD and the EEOC concerning Kofman's unlawful and discriminatory conduct.

69.    Subsequent to the expiration of ninety days after the filing of such Charge of Discrimination Rein withdrew the Charge and commenced the instant action.

70.    As a direct and proximate result of Kofman's wrongful discrimination and retaliation Rein has suffered and continues to suffer damage, including, but not limited to, lost wages, bonuses, stock options, health, disability, and pension benefits and other benefits, and substantial emotional distress.

## COUNT V – BREACH OF CONTRACT (MOTOROLA)

71.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 70 above and incorporates them by reference herein.

72.    On or about October 17, 2003 Motorola entered into an oral agreement with Rein wherein Motorola agreed that if Rein agreed to continue working at Motorola and remained committed to the company he would have until at least June 30, 2004 to demonstrate positive trends in business activity indicative of the MPS group's ability to fulfill the commitments set forth in their business plan.

73.     Rein fulfilled his obligations under the agreement by continuing to work for Motorola, devoting his best efforts to generate revenue for the company, and rejecting an offer of employment from another company.

74.     On February 23, 2004 Motorola breached its obligations under the agreement, without justification, by summarily terminating Rein's employment.

75.     As a result of Motorola's breach Rein has been damaged.

## COUNT VI – PROMISSORY ESTOPPEL (MOTOROLA)

76.     Rein hereby re-alleges each of the averments contained in paragraphs 1 through 75 above and incorporates them by reference herein.

77.     In October of 2003 Motorola made certain promises and commitments to Rein concerning the security of his employment to induce him to remain at the company, continue working and forego other potential job opportunities.

78.     In early January of 2004 Motorola paid Rein what it characterized as a "retention bonus". Rein was told by Motorola, and understood, that one of the purposes of the "retention bonus" was to induce him to remain at Motorola and the MPS group to help it achieve the goals and objectives set forth in the 2004 business plan.

79.     On January 13th, 2004, during Rein's performance review, Motorola again renewed the commitments it had made the previous October by again promising Rein that he would be given the opportunity to continue to create value for the company in 2004. Rein understood this to mean that he would have until at least June 30th to demonstrate progress towards meeting the commitments set forth in the MPS group's 2004 business plan.

15

80.     Rein reasonably relied on these promises and commitments, to his detriment, by declining a lucrative job offer from Invoke on January 18, 2004.

81.     On February 23, 2004 Motorola breached its promises and commitments to Rein by summarily terminating his employment without cause.

82.     As a result of Motorola's breach, Rein has been damaged.

## COUNT VII – INTERFERENCE WITH ADVANTAGEOUS RELATIONS (STARK)

83.     Rein hereby re-alleges each of the averments contained in paragraphs 1 through 82 above and incorporates them by reference herein.

84.     Rein was a full time employee of Motorola and had an ongoing advantageous relationship with the company.

85.     Stark knowingly interfered with Rein's advantageous relationship with Motorola by, inter alia.: (i) inducing the company to terminate Rein's employment; and, (ii) deliberately undermining his efforts to find another position within Motorola.

86.     Stark's interference with Rein's advantageous relations was motivated by malice, including, inter alia.: (i) an unlawful bias against Rein, based upon his age; and, (ii) a desire to punish Rein for refusing to accept Motorola's offered severance package and sign a general release, and expressing concern that there was a potentially unlawful motive for his termination.

87.     As a result of Stark's knowing and intentional interference with Rein's advantageous relationship with Motorola, Rein was terminated from his position and was unsuccessful in obtaining another position within the company.

16

## COUNT VIII - INTERFERENCE WITH
## ADVANTAGEOUS RELATIONS (KOFMAN)

88.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 87 above and incorporates them by reference herein.

89.    Rein was a full time employee of Motorola and had an ongoing advantageous relationship with the company.

90.    Kofman knowingly interfered with Rein's advantageous relationship with Motorola by, inter alia.: (i) inducing the company to terminate Rein's employment; and, (ii) deliberately undermining his efforts to find another position within Motorola.

91.    Kofman's interference with Rein's advantageous relations was motivated by malice, including, inter alia.: (i) an unlawful bias against Rein, based upon his age; (ii) a desire to punish Rein for refusing to accept Motorola's offered severance package and sign a general release and expressing concern that there was a potentially unlawful motive for his termination; and, (iii) a desire to eliminate a peer whose underlying job performance and contributions to the company were demonstrably superior.

92.    As a result of Kofman's knowing and intentional interference with Rein's advantageous relationship with Motorola, Rein was terminated from his position and was unsuccessful in obtaining another position within the company.

## COUNT IX - INTERFERENCE WITH
## ADVANTAGEOUS RELATIONS (MOTOROLA)

93.    Rein hereby re-alleges each of the averments contained in paragraphs 1 through 92 above and incorporates them by reference herein.

94.    As a senior executive with substantial salary requirements and many years of experience, many positions for which Rein is qualified are filled by executive level

17

recruiting firms. Frequently potential positions are not even advertised, and promising candidates are first identified and then solicited by the recruiting firm.

95.    Once a recruiting firm has identified a promising executive, it is advantageous for the firm to maintain a continuing business relationship with him throughout his career. Not only can this individual potentially be recruited to fill another position, he can also be used as a point of contact with the company in which he has been placed. Recruiters therefore ordinarily attempt to maintain and cultivate their relationship with the executives they have placed.

96.    Similarly, from the executive's standpoint, it is advantageous to maintain a continuing business relationship with the recruiting firms because such firms can be instrumental is assisting the executive to find other positions or advance his career.

97.    Rein had precisely such a mutually advantageous relationship with Russell Reynolds, the company that recruited him to fill a position with Motorola, and a senior Russell Reynolds Partner, regularly contacted Rein for an update on what was happening at Motorola. On those occasions when Rein telephoned or e-mailed this Partner, his messages were usually returned within 24 hours. In fact, several weeks before Rein's employment was terminated, he was contacted by another representative of Russell Reynolds, who told him that he was meeting with Motorola. Russell Reynolds was seeking information from Rein on the various resignations, departures and reorganizations that had occurred at MPS since Rein joined Motorola in June 2004. Rein objectively presented facts to Russell Reynolds about the changes that had occurred.

98.    Since the termination of his employment by Motorola, Rein has repeatedly telephoned and e-mailed his primary contact at Russell Reynolds as part of his efforts to

find another position. Russell Reynolds has virtually ignored Rein, failed to return all of his phone calls, and been of no assistance in finding potential employment.

99.     Upon information and belief, Motorola, has knowingly interfered with Rein's advantageous relationship with Russell Reynolds.

100.    Upon information and belief, Motorola's interference with Rein's advantageous relations was motivated by malice, including, inter alia,: (i) an unlawful bias against Rein, based upon his age; and (ii) a desire to punish Rein for refusing to sign a general release, and to retaliate against him for having filed a complaint with the MCAD.

101.    As a result of Motorola's knowing and intentional interference with Rein's advantageous relationship with Russell Reynolds, Rein efforts to find another position have been severely compromised.

## REQUESTS FOR RELIEF

WHEREFORE, Rein requests that this Court:

(i)     Enter judgment on his behalf as to Counts I through IX;

(ii)    Award him compensatory damages, including damages for emotional distress to the extent that such damages are recoverable, in an amount to be determined at trial, with respect to Count I through IX;

(iii)   Award him multiple and/or liquidated damages in an amount to be determined at trial with respect to Counts I, III and IV, pursuant to G.L.c. 151B of the Massachusetts General Laws;

(iv)    Award him multiple and/or liquidated damages in an amount to be determined at trial with respect to Count II, pursuant to 29 U.S.C. §626

(v)     Award him costs and reasonable attorney's fees, pursuant to G.L.c. 151B of the Massachusetts General Laws and 29 U.S.C. §626;

(vi)    Award him interest; and,

(vii)   Award him such other relief as the Court shall deem just and reasonable.

## PLAINTIFF DEMANDS A JURY
## TRIAL AS TO ALL ISSUES SO TRIABLE

JAY S. REIN

By his attorney,

John G. H. Coster
(BBO #101450)
92 State Street, Suite 900
Boston, Massachusetts 02109
(617) 423-2224

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the this document was served on each of the above named defendants by first class mail on November 24, 2004.

John G. H. Coster