## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAY S. REIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-12580 NG |
| | ) | |
| MOTOROLA, INC., CLYDE KOFMAN | ) | |
| and JUERGEN STARK | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PLAINTIFF'S CONTINUED DEPOSITION AND FOR SANCTIONS

### I.    Introduction

This case arises from the termination of the employment of the Plaintiff, Jay Rein ("Rein") by Motorola, Inc. ("Motorola"). This Motion to Compel Plaintiff's Continued Deposition and for Sanctions is necessitated by Rein's failure to comply with his clear discovery obligations; his belated return of Motorola's laptop computer which, upon return, contained nothing but inaccessible data; and his apparent spoliation of evidence during this pending litigation.

Motorola hired Rein as a Principal in its start-up Professional Services Group ("MPS"). He worked for the company for less than two years. As is customary at Motorola, Rein executed an agreement upon hire pursuant to which he promised to return Motorola's property when he departed from the company.[1] Among this property was Motorola's laptop computer, which Rein used daily during his Motorola employment to access confidential and proprietary Motorola

---

[1]  Rein Employment Agreement, attached to the Affidavit of Kristin Glennan McGurn ("McGurn Aff.") as Exhibit A. In addition, Rein reaffirmed his obligation to return the company's computer in a post-termination email to Motorola's Human Resources department. Rein email to Peter Tobin dated February 25, 2004, attached to the McGurn Aff. as Exhibit B.

documents, and to conduct business for Motorola from his home office.[2]   During deposition,

Rein testified that he also routinely used the laptop to create documents and presentations for

MPS, and to send and receive email communications to and from Motorola employees and his

MPS colleagues.[3]

Three weeks before Rein's termination, he celebrated his fortieth birthday.[4]  Following

his termination, Rein sued Motorola and two managers, alleging that the termination was

discriminatory on the basis of his age; that it breached some nebulous contractual obligation or

other promise made to Rein; and that the defendants somehow interfered with Rein's efforts to

obtain subsequent employment.  Defendants categorically deny Rein's allegations and are

vigorously contesting his claims.

## II.    Procedural Posture

The parties have pursued discovery in this case diligently.  Testimony and written

discovery of all defendants, the plaintiff, and several third-party witnesses have been taken.

Motorola's First Set of Interrogatories to Plaintiff and its First Request for the Production of

Documents, served on March 3, 2005, each required Rein to produce discovery concerning such

topics as Rein's efforts to mitigate his damages[5]; Rein's alleged complaints of discrimination and

---

[2] Deposition of Jay S. Rein ("Rein Dep.") at 30-33.  Excerpts of the Rein Dep. are attached to the McGurn Aff. as Exhibit C.

[3] Rein Dep. at 33, 160-62, 165.

[4] Rein Dep. 42-44.

[5] For example, Interrogatory No. 8 seeks detailed information about Rein's efforts to find employment outside Motorola, including job inquiries and applications.  Rein produced a few hard-copy documents concerning certain on-line job searches, which he may well have conducted from Motorola's laptop computer.  Document Request No. 16 seeks documents concerning these and any other efforts by Rein to find alternate employment.  Interrogatory No. 9 seeks information regarding any post-termination period during which Rein was not so engaged in a job search. Excerpts of Motorola's discovery requests are attached to the McGurn Aff. as Exhibit D.

his communications regarding his employment, his termination and this litigation[6]; and Rein's

several positions of employment following his departure from Motorola.[7]

There can be no doubt that Rein was obligated by Fed. R. Civ. P. 34(a) to produce any

electronic documents and data compilations in his possession that responded to these discovery

requests. Knowing that Rein had failed to return Motorola's laptop, Motorola highlighted this

obligation by specifically incorporating Rule 34(a) into its definition section of the First Request

for Production. Motorola also specifically requested that Rein produce "all *documents, items*

*objects and effects* that [he] took with [him] from Motorola following [his] termination."[8]

## III.    Facts Relevant to this Motion

Rein's deposition commenced on August 16, 2005 and, by agreement, was continued on

August 26, 2005. During the first day of Rein's testimony, he admitted that he failed to return

Motorola's laptop computer when he left the company, and that he understood that he was

obligated to do so.[9] He further testified that he had saved relevant and responsive documents on

the laptop.[10] Some of these documents, for example, apparently were Rein's drafts of MPS

power point presentations on which he collaborated with others in the MPS group. Others

apparently were presentations that Rein used to highlight for Juergen Stark his work for MPS

and his proposals for the group's future focus. The nature of Rein's ability to effectively

collaborate, to successfully work in a team, and to help drive the group's collective goals are at

the heart of this case, since a factor in the decision to select Rein's position for elimination was

---

[6] Interrogatory No. 12 seeks information about Rein's communications, including via email, with any person regarding his claims or their knowledge of facts that allegedly support those claims. Document Request Nos. 1, 3, 4, 7, 17 and 18, collectively, seek documents regarding (i) MPS and Rein's employment with Motorola; (ii) communications with Motorola employees, including about his alleged claims; (iii) alleged promises made to Rein; and (iv) Rein's termination.

[7] Interrogatory No. 7 requests information about Rein's employment after leaving Motorola.

[8] Document Request No. 5 (emphasis added).

[9] Rein Dep. at 42-43.

[10] Rein Dep. at 32-33, 40.

his conduct and experience within the group. Rein was questioned about his obligation, and failure, to return the laptop.[11] During the course of the deposition, undersigned counsel insisted that Rein immediately return the laptop and followed up this request with a letter dated August 16, 2005.[12] Rein resisted shipping the laptop back to Motorola, citing cost as a concern.[13] In response, undersigned counsel sent a letter to Rein's attorney, dated August 22, 2005, again demanding the laptop's return.[14] Although Motorola offered to pay for the shipping charges, and gave Rein explicit shipping instructions, Rein persisted in refusing to ship the laptop back to the Company. On August 26th, when Defendants continued Rein's deposition, he hand-delivered the laptop to undersigned counsel, together with some handwritten notes, binders and other responsive materials that he had previously withheld from production.[15]

On October 5, 2005, this Court entered an Order concerning discovery, pursuant to which the parties were given until October 31, 2005 to complete certain limited discovery tasks. The Order essentially endorsed the parties' September 30, 2005 Joint Motion, in which they agreed, among other things, that Motorola would reserve its rights to continue Rein's deposition in order to attend to issues arising from Rein's tardy return of the laptop. [Docket No. 15].

When Motorola received the laptop, it immediately delivered the computer to its information protection services ("MIPS") staff and asked them to determine whether the hard-drive contained any relevant and responsive electronic data.[16] A member of Motorola's MIPS

---

[11] Id.

[12] McGurn letter to John Coster ("Coster"), dated August 16, 2005, attached to the McGurn Aff. as Exhibit E.

[13] Coster letter to McGurn, dated August 19, 2005, attached to the McGurn Aff. as Exhibit F.

[14] McGurn letter to Coster, dated August 22, 2005, attached to the McGurn Aff. as Exhibit G.

[15] Some of these documents post-date Rein's termination and raise serious questions, as does the laptop's condition generally, about Rein's apparent unauthorized access to Motorola's computer equipment.

[16] Undersigned counsel, as well as Motorola's legal and IT departments, maintained an appropriate, and documented, chain-of-custody. Evidence Control and Chain of Custody communications, attached to the McGurn Aff. as Exhibit H. While Defendants cite certain documents in support of this motion that reflect communications

staff immediately noted that the hard-drive door retention screw was in place, but a 9.5

millimeter drive adapter, which is required to operate the computer and is specific to hard drives

used in Dell laptops such as the one at issue, had been removed. Also, the pins were slightly

bent, which is common when adapters are removed from the drive.[17] This suggested that the

laptop's drive had been manipulated and damaged. When the IT staff attempted to retrieve data

from the laptop's hard-drive, it was unable to recover any electronic documents whatsoever.

Final Report at p. 1.

Thereafter, the MIPS staff employed the services of an independent forensic computer

expert, Kroll Ontrack, to assist in the recovery attempt and to attempt to create a full image copy

of the hard drive. After Kroll successfully created the image copy and studied the hard-drive, it

was determined that the drive had been damaged and wiped clean using a third-party utility,

because all unallocated space and relevant data were "zeroed" out. Final Report at pp. 2, 9

("Summary of Recovery Steps"). Based on the file properties, it was determined that this

destruction of files occurred on August 22, 2005, as evidenced by the boot volume file creation

time stamp. Significantly, August 22, 2005 fell between the first and second sessions of Rein's

deposition and was the very same date that undersigned counsel sent him written demand for the

computer's return. Final Report at p. 10-43 ("Log File Parser" and "File Listing").

Prior to pursuing this Motion, Defendants requested in writing that Rein explain why the

laptop's hard-drive was returned containing no recoverable data.[18] To date, he has failed to

---

with, or instructions by, in-house and outside counsel, Defendants do not thereby intend to waive the privilege.
Defendants cite these materials merely to establish their diligence with respect to maintaining the integrity of the
data on the laptop, and their efforts to retrieve it. To the extent that the Court may view this as a waiver at all, it
should be viewed as very limited in nature, and Defendants reserve all rights with respect to that issue.

[17] Motorola's IT departments' conclusions are contained within its Final Report p. 1, attached to the McGurn Aff. as
Exhibit I. This report was finalized on October 27, 2005 and supplemented an interim report, which Defendants
previously shared with Rein's counsel, by including Kroll's statement of work and chain-of-custody materials,
among other things.

[18] McGurn letter to Coster dated October 14, 2005, attached to the McGurn Aff. as Exhibit J.

provide a written response and, through counsel, states simply that he "does not know" what happened to the data on the computer. On October 20, 2005, Motorola issued a deposition notice scheduling plaintiff's continued deposition for October 27, 2005.[19] In response, Rein's counsel reported that he would not voluntarily produce Rein for further testimony, but he failed to file a motion for protective order.

## IV.  Argument

### 1.    Defendants are entitled to additional deposition testimony from the Plaintiff.

Fed. R. Civ. P. 26(b) and 34(a) together require the production of electronic documents to the same extent that hard-copy documents must be produced. "Electronic documents are no less subject to disclosure than paper records." *Zubulake v. UBS Warburg*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) (citations omitted). Thus, Rein had a clear obligation to produce all electronic documents that are potentially relevant to his claims and Motorola's defenses, as well as an obligation to preserve such evidence. Rein failed to comply with this obligation by (i) refusing to return Motorola's laptop computer when he left the company; (ii) by dragging his feet with respect to the return of the laptop and the production of electronic documents, both of which clearly were requested in discovery; and (iii) by failing to produce all electronic documents and the laptop *prior* to his deposition, which would have permitted Defendants an opportunity to inquire about such discovery.

Plaintiff has given several hours of deposition testimony in this case, to date. Although Fed. R. Civ. P. 30(d)(2) provides, generally, for seven hours of testimony in one day, the rule is not absolute. This Court has the discretion, pursuant to the federal rules governing discovery, to order such additional discovery as is appropriate. Indeed, Rule 30(d)(2) provides that the Court "*must* allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the

---

[19] Notice of Deposition scheduling Plaintiff's continued deposition for October 27, 2005 is attached to the McGurn Aff. as Exhibit K.

deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." *See Horsewood v. Kid "R" Us*, 1998 U.S. Dist. Lexis 13108, at *10 (D. Kan. 1998).

Rein's belated return of the company's laptop computer requires that he be made available for additional testimony. During the initial sessions of Rein's testimony, Defendants were precluded from questioning him in detail regarding the laptop's contents and his conduct, since Defendants were not aware of the hard-drive's condition until Motorola completed its investigation. This investigation concluded on October 12, 2005, well after Rein's second session of testimony. Since Defendants contemplated that the return of the laptop might lead to additional discovery and testimony, they explicitly reserved their rights, in the parties' Joint Motion, to pursue such additional discovery. Fairness demands that they now be permitted to resume Rein's testimony, for the limited purpose of inquiring about this new subject: Rein's conduct with respect to the contents of the laptop's hard-drive.

## 2. Defendants are entitled to recover their costs and fees associated with the inspection of the laptop, Rein's continued deposition, and this Motion.

"The obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (citations omitted). In some cases, a question arises over when this duty to preserve attaches. Here, however, there can be no doubt that Rein was aware of his discovery obligations, including the requirement that he preserve and protect evidence in his possession, long before he returned Motorola's laptop in August of 2005. Rein filed his Charge at the Massachusetts Commission Against Discrimination in June 2004, and removed to this Court in November 2004. He had threatened to bring suit ever since February 2004. By failing to protect the data on the laptop in his possession during suit, Rein unquestionably failed to execute his duty to preserve potentially

7

relevant electronic evidence, at a time when he had a clear duty to do so. "Once the duty to

preserve attaches, any destruction of documents is, at a minimum, negligent." *Id.* at 220.[20]

Sanctions may be imposed for discovery-related abuses under Fed. R. Civ. P. 37, which

provides, among other things, that if a party fails to obey an order to provide or permit discovery,

the Court may order appropriate sanctions. Fed. R. Civ. P. 37(b)(2). In addition, this court has

broad inherent powers to determine whether discovery misconduct has occurred and to fashion

an appropriate remedy. *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 364-65 (D. Mass.

1991). Further, the doctrine of spoliation allows a court to "impose sanctions ... for the

destruction of evidence in civil litigation, 'based on the premise that a party who has negligently

or intentionally lost or destroyed evidence known to be relevant for an upcoming legal

proceeding should be held accountable for any unfair prejudice that results.'" *Wiedemann v. The

Bradford Group*, 444 Mass. 698, 705 (2005) (citations omitted). This is so because "the

destruction of relevant evidence ... has a pernicious effect on the truth-finding function of our

courts." *Id.*

In formulating a sanction, the court has wide latitude to "make such orders . . . as are

just". Fed. R. Civ. P. 37(b). In appropriate cases, sanctions can include monetary penalties,

adverse inferences or even default judgment or dismissal. *See Velazquez-Rivera v. Sealand Serv.

Inc.*, 920 F.2d 1072, 1076-77 (1st Cir. 1990) (sanction took the form of dismissal); *National

Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976); *Spiller v. U.S.V. Labs.*, 842

F.2d 535, 537 (1st Cir. 1988).

This Court has held that important factors to be considered when evaluating alleged

violations of the discovery rules include prejudice and surprise suffered by the opposing party,

---

[20] Of course, counsel must monitor his client's efforts to "retain and produce the relevant documents" and has a duty to make sure that discoverable information is not lost. *Zubulake v. UBS Warburg*, 2004 U.S. Dist. LEXIS 13574 * 94 (S.D.N.Y. 2004).

and the ability to cure the prejudice. *See Headley*, 141 F.R.D. at 365. Here, the Defendants have suffered significant surprise and prejudice, having learned that the files on the hard-drive of the laptop formerly used by Rein, and about which he testified, were somehow rendered inaccessible while the laptop was in Rein's possession. As a result of the loss of this data and more, the Defendants have been deprived of the opportunity to discover an incalculable number of potentially relevant electronic documents created, received or stored by Rein. Under the circumstances, this prejudice to the Defendants is incapable of being cured.[21]

Rein testified, or other documents discovered in this litigation have revealed, that Rein used Motorola's laptop to access confidential and proprietary Motorola documents, to conduct MPS business, and to communicate with his MPS friends, colleagues and clients, as well as outsiders. Rein's communications about the future of the MPS group, Rein's role and relationships within it, and Rein's efforts, before and after termination, to find work outside MPS are at the core of the parties' dispute. In addition, discovery suggests that Rein may have pursued his post-Motorola job search, and encouraged other Motorola employees to leave the company, using Motorola's laptop.[22] In short, it appears that Rein engaged in unauthorized access to, and tampering with, Motorola's computer equipment. As a result, relevant, responsive electronic documents, which might have assisted Motorola to defend against Rein's claims, or to prosecute its own claims against him, were lost while the laptop was in Rein's possession.

Had Rein properly complied with his discovery obligations by producing relevant electronic documents and Motorola's laptop in a timely and well-preserved fashion, Defendants

---

[21] Certain documents that once resided on Rein's hard-drive may have made their way onto Motorola's server and, therefore, may have been compiled and reviewed in connection with this litigation. Nevertheless, Rein cannot establish that this is true for all documents that he stored on the laptop, nor would an attempt at such proof make sense. Rein's testimony proves otherwise. Moreover, Defendants are undoubtedly entitled to discover and review all non-privileged, non-identical copies of any responsive documents.

[22] Rein Dep. 117-119. Notably, the latter conduct was a direct violation of Rein's option award agreement, which prohibited Rein from recruiting, soliciting, allowing, permitting or aiding others to recruit, solicit or induce a Motorola employee to leave the company. Pursuant to the agreement's terms, such conduct would result in a forfeiture of options. A copy of Rein's July 1, 2002 Motorola Award is attached to the McGurn Aff. as Exhibit L.

would not have the need to re-notice his deposition. Had he been forthcoming with respect to the data on the laptop that he returned, Defendants might not have incurred such significant inspection expenses, or the expenses associated with the filing of this Motion. Accordingly, in light of the prejudice to Defendants and Rein's failure to abide by his clear discovery obligations, Defendants respectfully request that this Court award sanctions in the form of an Order compelling Rein to pay for: (i) Motorola's costs in conducting its investigation of the laptop's hard-drive, including Motorola's retention of Kroll Ontrack[23]; (ii) Motorola's costs for conducting Rein's continued deposition in Boston (*Zubulake,* 220 F.R.D. at 222); and (iii) Motorola's costs and fees incurred to pursue this Motion, which they were forced to file because Rein steadfastly refused to respond to Motorola's request for disclosure about his conduct with respect to Motorola's laptop.[24] Motorola respectfully reserves the right to pursue additional sanctions, including adverse inference instructions or dismissal, following completion of the continued deposition of Jay Rein.

## V.    Conclusion

WHEREFORE, the Defendants respectfully request that they be permitted to resume Rein's deposition for the purpose of obtaining testimony regarding documents stored on Motorola's laptop and Rein's conduct with respect to it and them. Defendants also respectfully request that this Court award sanctions against Rein in the form of payment for Motorola's costs

---

[23] As outlined in the Final Report, Kroll invoiced Motorola for a $6,500.00 fee.

[24] Defendants will submit an affidavit immediately to the Court, upon request, concerning the costs and fees incurred by Motorola's IT department in connection with its investigation, as well as by counsel for this Motion.

in conducting its investigation, including its retention of Kroll Ontrack, Motorola's costs in

concluding Rein's deposition, and Motorola's costs and fees incurred to pursue this Motion.

Respectfully submitted,

MOTOROLA, INC., CLYDE KOFMAN,
and JUERGEN STARK,

By their attorneys,

**Certificate of Service**

I hereby certify that a true and correct copy of the above
document was served upon the attorney of record for the
plaintiff by mailing a copy of same, postage prepaid, to John G.
H. Coster, Attorney at Law, 92 State Street, Suite 900, Boston,
MA 02109 on October 31, 2005.

/s/ Kristin G. McGurn

/s/ Kristin G. McGurn
Richard L. Alfred (BBO# 015000)
Kristin G. McGurn (BBO# 559687)
Yvette Politis (BBO# 644986)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800