FILED
UNITED STATES DISTRICT COURTS OFFICE
FOR THE DISTRICT OF MASSACHUSETTS

2005 NOV -7 A 11: 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| JAY S. REIN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-12580 NG |
| | ) | |
| MOTOROLA, INC., CLYDE | ) | |
| KOFMAN, and JUERGEN | ) | |
| STARK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPPOSITION OF PLAINTIFF, JAY S. REIN, TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S DEPOSITION AND FOR SANCTIONS

### Introduction

On its face, the Motion of Defendants Motorola, Inc. ("Motorola"), Clyde

Kofman ("Mr. Kofman") and Juergen Stark ("Mr. Stark") (collectively the "Defendants")

purports to be about compelling the Plaintiff, Jay S. Rein ("Mr. Rein" or the "Plaintiff")

to travel from his home in Atlanta to Boston, for a third day of deposition testimony. The

Defendants also seek sanctions against Mr. Rein for failing to appear for a deposition

they scheduled on October 27th, 2005, including: (i) reimbursing Motorola for the costs it

chose to incur to hire a third party consultant to examine a laptop computer that had

previously been in Mr. Rein's possession (approximately $6,500); (ii) any future costs

Motorola incurs in actually taking Mr. Rein's depositions; and (iii) the costs Motorola

incurred in bringing this motion (including time apparently spent by Motorola IT

department). Finally, Motorola "reserves the right" to seek additional sanctions against

Mr. Rein for the spoliation of supposedly relevant evidence on the hard drive of a laptop computer he had in his possession.

As an initial matter it should be noted that the Defendants are seeking to "punish" Mr. Rein for failing to attend a deposition they were not authorized to take. The Defendants have already spent two full days and almost 13 hours deposing Mr. Rein. That is nearly double the amount of time permitted under the Federal Rules. Fed. R. Civ. P. 30(b)(2) is very clear that for a deposition to exceed seven (7) hours, the prior authorization of the Court must be obtained (or the parties must stipulate to additional time). Motorola, apparently blinded by its own sense of entitlement, never sought such authorization. Thus, the Defendants are now seeking sanctions against Mr. Rein for failing to attend a deposition they were never authorized to take in the first place.

However, putting aside for a moment the inherent irrationality of the Defendants' position, there is an even more important point that needs to be made- this Motion has very little to do with the loss of potentially relevant information, and even less to do with Motorola having a legitimate need to depose Mr. Rein for a third day. Notwithstanding the Defendants' efforts to misstate, mischaracterize and misconstrue the record, it is clear that the laptop computer that had been in Mr. Rein's possession contained no additional information not in the Defendants' possession already. Similarly, as counsel has repeatedly told the Defendants, Mr. Rein did not deliberately destroy any information stored on this computer. If such information has indeed been lost, the Plaintiff does not know how such loss occurred.

Moreover, in both prior communications between counsel and in this Motion itself, the Defendants have repeatedly accused Mr. Rein of deliberately "wiping" the hard

drive of his computer to destroy the data it contained. It is clear that, regardless of how Mr. Rein testifies if he is deposed, they intend to accuse him of spoliation and seek additional sanctions. Since both Mr. Rein's denial of any wrongdoing and the Defendants' disregard of this denial and subsequent accusations of spoliation are a foregone conclusion, compelling Mr. Rein to return to Boston for a third day of deposition testimony is an expensive, burdensome, disruptive and ultimately pointless exercise.

Finally, the Court needs to understand that the Defendants' underlying accusations of spoliation are themselves completely without merit. They are nothing more than a cheap diversionary tactic designed to deflect attention away from the fact that discovery has not been going well for the Defendants. Rather than trying to address the damaging evidence Mr. Rein has unearthed during discovery, the Defendants would prefer to engage in wild and completely unfounded speculation about the "treasure trove" of information they supposedly would have discovered if only Mr. Rein's computer had not been damaged.

### A.   Background

In this case a somewhat lengthy review of the discovery that has taken place to date is necessary for several reasons. First, it reveals the Defendants' that their accusations that Mr. Rein has deliberately failed to comply with his discovery obligations is outrageous, particularly in light of Defendants' own bad faith. Second it shows that, had the Defendants truly been interested in questioning Mr. Rein about the information on his computer, they could have waited until after they examined its contents to resume

3

his deposition. Third, it demonstrates that the Defendants assertion that they believe Mr.

Rein's computer contained potentially relevant information is disingenuous.

On April 29, 2005 Mr. Rein propounded his first document request on the

Defendants. After requesting and receiving several extensions, Motorola finally

responded to the Plaintiff's document request on June 22, 2005. At that time Defendant's

counsel represented that, but for some voluminous documents such as employee

handbooks and manuals, the Defendants production was complete.[1]

By agreement of the parties, Mr. Rein's deposition was scheduled to go forward

on July 15, 2005 in Boston. Defendants knew and understood that Mr. Rein no longer

lived in Boston, and presumably would have to fly up on the 14th to meet with counsel

and prepare for his deposition on the following day. On July 13th, Motorola disclosed

that it had "recently discovered" e-mails relevant to the Plaintiff's claims (and the

Plaintiff's document request). Counsel stated that she was in the process of reviewing

these e-mails and that it was likely "a few" might be introduced as exhibits in Mr. Rein's

deposition.[2] In fact, these newly discovered e-mails turned out to encompass a large

number of documents and comprised approximately one quarter of the forty nine exhibits

eventually used in Mr. Rein's deposition.

At this same time, Motorola advised Plaintiff's counsel for the first time that she

was still awaiting documents from one of Mr. Rein's former employers,[3] and that, if one

of these employers subsequently produced documents that Motorola deemed relevant to

---

[1] Letter from Kristen McGurn to John Coster, dated June 22, 2005, attached hereto as Exhibit 1.

[2] Letter from John Coster to Kristen McGurn, dated July 13, 2005, attached hereto as Exhibit 2.

[3] As part of its discovery, Motorola sought records from <u>four</u> of Rein's former employers. Motorola deliberately timed these request so they would be served on Plaintiff's counsel the day after he left on a two week vacation, thereby effectively preventing him from seeking a protective order. See letter from John Coster to Kristen McGurn, dated July 14, 2005, attached hereto as Exhibit 3.

4

this litigation, Mr. Rein might have to return to Boston to answer questions about these documents[4]. Based on the foregoing, to prevent Mr. Rein from having to return to Boston to continue his deposition, Rein's counsel insisted that the deposition be postponed.[5]

By agreement of counsel, Mr. Rein's deposition eventually went forward on August 16, 2005. Unfortunately, once this deposition commenced it became clear that the Plaintiff's expectation that this deposition would be completed in a single day had been more than a little naïve. In fact, as the day wore on, Plaintiff's counsel felt compelled to note, on the record, that the Defendants were moving at a "glacial pace".[6] Moreover, he specifically warned Defendants counsel that the Federal Rules of Civil Procedure imposed a time limitation on the length of depositions, which it appeared the Defendants were going to exceed.[7] When asked, near the end of the day, how much additional time would be required to complete Mr. Rein's deposition, Defendants' counsel replied "several additional hours".[8]

Given the limitations imposed by Fed. R. Civ. P. 30(d)(2) the Plaintiff could have insisted that the Defendants complete their examination of Mr. Rein that day. However, in the spirit of cooperation and civility, and based on counsel's representation that she only had "several additional hours", Plaintiff's counsel agreed to make Mr. Rein available for a second day. The Defendants' response to this courtesy was to insist that Mr. Rein make himself available for the resumption of his deposition within the next two weeks,

---

[4] Significantly, at no time during these discussions did Motorola's counsel indicate that, given the fact that she intended to introduce some 49 exhibits and question him in excruciating detail about such vital issues as the names and ages of his children, where his wife's parents lived, there was no chance that she would complete Mr. Rein's deposition in a single day.

[5] See letters from John Coster to Kristen McGurn, dated July 13th and 14th.

[6] Deposition of Jay S. Rein ("Rein Deposition"), Vol. 1, pgs. 215-18, attached hereto as Exhibit 4.

[7] Rein Deposition, Vol. 1, pgs. 215, 218.

[8] Rein Deposition, Vol. 1, pg. 218.

and to refuse to go forward with the Plaintiff's previously scheduled depositions until Mr.

Rein's deposition was completed.[9]

During day one of his deposition one of the items Mr. Rein was questioned about,

in excruciating detail, was what efforts he had made to respond to the Defendants' First

Request for Production of Documents, and what potentially relevant documents he had in

his possession.  Mr. Rein testified that the only documents he had in his possession

responsive to the Defendants' Document Request were tax records, pay stubs, e-mails and

some Power Point presentations he had made to one of the Defendants.[10]  Mr. Rein

further testified that he had produced all the relevant, non-privileged documents

responsive to the Defendants' Document Request.[11]

It was during this questioning that Mr. Rein volunteered that he still had a laptop

computer in his possession that he had used while employed by Motorola.[12]  Defendants

counsel then questioned him at length about this computer, and what, if any information

was stored on it.  This questioning elicited several facts important to this Motion that

have either completely mischaracterized or deliberately omitted by the Defendants:

(a)     The only documents Mr. Rein could recall being on this computer were
         copies of e-mails and copies of Power Point presentations Mr. Rein made
         to one of the Defendants, Juergen Stark ("Mr. Stark").  Mr. Rein testified
         that he had retained hard copies of the Power Point presentations and at
         least some of the e-mails.[13]

(b)     All of the e-mails Mr. Rein sent to or received from any Motorola
         employee would also have been stored on Motorola's servers.[14]

---

[9] Letter from Kristin McGurn to John Coster, dated August 22, 2005, attached hereto as Exhibit 5.
[10] Rein Deposition, Vol. 1. pgs. 29-33.
[11] Rein Deposition, Vol. 1, pgs. 36-37.
[12] Rein Deposition, Vol. 1, pgs. 30-31.
[13] Rein Deposition, Vol 1, pgs 30-34, 39-40.
[14] Rein Deposition Vol. 1, pg. 39.

6

(c)    In approximately March of 2004, Motorola remotely deactivated Mr. Rein's computer. Since that time Mr. Rein has been unable to access the computer's hard drive or use any of its functions.[15] Thus, <u>for the last year and a half Mr. Rein's computer has been completely disabled.</u>

Mr. Rein further testified that he had not returned this computer to Motorola because no one had asked him for it, and he had never received any instructions who to send it to.[16] He volunteered that he was prepared to return it to Motorola if asked.[17]

On August 16, 2005 Motorola's counsel took Mr. Rein up on his offer and demanded that he return Motorola's computer to the company.[18]

Although Motorola now contends that Mr. Rein "resisted shipping the laptop back to Motorola"[19] and "persisted in refusing to ship the laptop back to the Company",[20] the facts tell a different story. At no time did the Plaintiff ever indicate that he would not return the computer. During his deposition Mr. Rein testified that Motorola had never asked him to return the laptop and that he would be happy to return it to the Company. [21] Plaintiff's counsel responded to Motorola's subsequent written demand for the return of the computer, by again agreeing to its return, asking only how Motorola planned to cover the costs of shipment.[22] In fact, Motorola's counsel first demanded the return of the

---

[15] Rein Deposition, Vol. I, pgs. 33-35.

[16] In their Motion the Defendants argue that, at the very least, Mr. Rein was obligated to produce the computer in response to Document Request No. 8 "all documents, items, objects and effects that [he] took with [him] from Motorola following his termination". Putting aside for the moment whether a laptop computer that had always been in Mr. Rein's possession was an "item" he "took with him", there is another problem with Defendants' argument. The Request itself is clearly overbroad, particularly to the extent that Defendants appear to interpret it to require the return of every item that Motorola arguably has a claim to, including presumably the paper in his printer, the box of paperclips in his desk drawer and the stapler on his desk. Based on the foregoing the Plaintiff objected to this request as being overbroad. See Plaintiff's Responses and Objections to Defendants Request for Documents, attached hereto as Exhibit 6.

[17] Rein Deposition, Vol. I, pg. 42-43.

[18] Letter from Kristen McGurn to John Coster, dated August 16, 2005, attached hereto as Exhibit 7.

[19] Defendants' Memorandum in Support of Motion to Compel Plaintiff's Continued Deposition, pg. 4

[20] Id.

[21] Rein Deposition, Vol. 1, pg. 42-43.

[22] Letter from John Coster to Kristin McGurn, dated August 19, 2005, attached hereto as Exhibit 8.

computer on August 16th and by August 26th, a mere ten days later, it was in her

possession.

Indeed, notwithstanding the assertions of Defendants' counsel that Mr. Rein was

somehow dilatory in returning the computer, it apparently took her twice as long to

forward the computer to Motorola;[23] and it then took Motorola an additional ten days to

forward the computer to its expert Kroll Ontrack.[24]

Because Defendants' counsel insisted that she wanted to resume Mr. Rein's

deposition as soon as possible, and refused to permit the Plaintiff to take any of the

depositions that he had previously scheduled until she had completed Mr. Rein's

deposition, on August 26th Mr. Rein again arranged to be absent from work and flew to

Boston for the resumption of his deposition.[25]

Although Defendant's counsel had, at the conclusion of the first day of Mr. Rein's

deposition, indicated that she only had "several more hours", by mid-afternoon of day

two, she was still going strong. Mr. Rein, who had made the mistake of taking counsel at

her word and booked a late afternoon flight back to Atlanta, advised Defendants' counsel

that if he stayed much longer he would miss his plane. The Defendants' response was to

threaten to bring him back for a third day. To avoid the expense, further disruption to his

schedule and the potential for additional delays in the depositions the Plaintiff had

noticed, Mr. Rein rescheduled his flight. Plaintiff's counsel and the court reporter also re-

arranged their schedules. The deposition then continued until nearly 6:00 p.m., at which

---

[23] Evidence Seizure Form, attached hereto as Exhibit 9.

[24] Id.

[25] As Defendants counsel knew from the Mr. Rein's earlier deposition testimony, he had just started a new job on August 1st, making his repeated absences from work extremely problematic. Rein Deposition, Vol. 1, pgs. 66-67.

8

time Defendants' counsel indicated that she had completed the deposition and "had no further questions for this witness".[26]

By the time the Defendants indicated that they had finished their examination of Mr. Rein, he had been questioned for nearly thirteen hours. Approximately 49 separate exhibits had been introduced. The court reporter had generated a transcript that was nearly 600 pages in length. But at least Mr. Rein was finally done - or so he thought.

On October 14, 2005 Motorola's counsel wrote a letter stating that she had "received confirmation from a third party forensic computer expert that, as we had suspected, Mr. Rein tampered with the hard drive on Motorola's laptop computer" and contending that on "August 22, 2005 he 'wiped clean' the hard drive and rendered its data unrecoverable".[27] Notwithstanding the fact that this missive expressed no doubt about whether Mr. Rein improperly deleted the computer's hard drive, Defendants' counsel indicates that she "was able to prevail upon my clients to permit Mr. Rein an opportunity to account for his actions".[28] In subsequent conversations, Defendants' counsel made it clear that the "opportunity" she had in mind involved Mr. Rein flying back up to Boston to make himself available for another day of deposition testimony. Not surprisingly, the Plaintiff declined this generous invitation, suggesting through counsel that if the Defendants truly believed Mr. Rein had intentionally destroyed evidence material to this case, they should file the appropriate motion with the Court.[29]

---

[26] Rein Deposition, Vol. 2, pg. 588, attached hereto as Exhibit10.
[27] Letter from Kristin McGurn to John Coster, dated October 14, 2005, attached hereto as Exhibit 11.
[28] Id.
[29] E-mail from John Coster to Kristin McGurn, dated October 26, 2005, and attached hereto as Exhibit 12.

9

**B.    Argument**

1.    Defendants should not be authorized to subject Mr. Rein to a third day of depositions

Fed. R. Civ. P. 30(d)(2) provides in pertinent part that "unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day and seven hours". The Committee notes construing this section make it clear that the parties may exceed this limitation by agreement, but that "absent agreement a court order is necessary." *Committee Notes on Rules - 2000 Amendment, Subdivision (d), Malec v. Trustees of Boston College, et al.*, 208 F.R.D. 23 (D. Mass. 2002). The party seeking such a court order "is expected to show good cause to justify such an order". *Committee Notes on Rules - 2000 Amendment, Subdivision (d)*.

In its supporting Memorandum of Law the only reference to the actual duration of Mr. Rein's prior depositions characterizes them as being "several hours[30]" in length. In actuality, the Plaintiff has already been deposed for almost 13 hours. It is also undisputed that the Defendants never obtained an order from the Court prior to attempting to compel Mr. Rein to appear in Boston for a third day of deposition testimony. Therefore, it is Motorola, not Mr. Rein, who has failed to comply with the relevant Rules of Civil Procedure; and there is simply no basis for sanctioning the Plaintiff.

However, even if the Court were to ignore the Defendants failure to comply with the procedures outlined in Fed. R. Civ. P. 30(d)(2) and treat their Motion for Sanctions as

---

[30] If nothing else, Defendants are consistent. This is the same phrase counsel used to describe the projected length of the second day of Mr. Rein's deposition - which ended up lasting over seven hours.

10

a request for additional time to depose Mr. Rein, it is crystal clear that the Defendants have failed to "show good cause to justify such an order".[31]

First, there is simply nothing to depose Mr. Rein about. Plaintiff's counsel has made it very clear to the Defendants that Mr. Rein denies tampering with the computer and does not know how the data on the hard drive was damaged. Requiring the Plaintiff to take more time off from his new job, fly to Boston, and report to the offices of Defendants counsel simply to deny the Defendants allegations in person is ridiculous.

It is particularly ridiculous in light of the fact that the Defendants have clearly already decided to accuse Mr. Rein of spoliation. In fact, the Defendants are currently seeking sanctions against Mr. Rein for allegedly destroying relevant evidence. Thus, nearly one half of Defendants' Memorandum of Law is devoted to a discussion of Mr. Rein's alleged spoliation of evidence and the sanctions Motorola is entitled to receive as a result of such spoliation.[32]

For example, neither the costs Motorola incurred to hire an outside expert to try to download material from Mr. Rein's computer, nor the costs of actually resuming Mr. Rein's deposition arise out of his refusal to be deposed. Rather these additional expenses relate solely to Mr. Rein's alleged deletion of the material on his computer. Indeed, the cases cited by the Defendants in their brief to support the sanctions they are seeking involve the spoliation of evidence, not a failure to appear for a previously scheduled deposition. *See Wiedmann v. The Bradford Group*, 444 Mass. 698, 705 (2005).[33]

---

[31] Examples of "good cause" are where the witness required an interpreter, the examination covers events occurring over a long period of time, the case involves a large number of documents, or someone has impeded or delayed the examination. *Beneville v. Pileggi*, 2004 U.S. Dist. Lexis 13586 (D.Del. 2004).

[32] Defendants' Memorandum of Law, pgs. 4-5, 7-11.

[33] Defendants' Memorandum of Law, pg. 8.

Second, the Defendants' underlying justification for resuming Mr. Rein's deposition, that he deliberately destroyed relevant evidence that would somehow be prejudicial to his case, does not withstand scrutiny. Try as they might the Defendants are unable to identify any relevant information that has been lost as a result of the damage that allegedly occurred to Mr. Rein's computer. Thus, although Defendants' claim that an "incalculable number of potentially relevant electronic documents" may have been destroyed, they have been unable to identify any potentially relevant information that might have been, much less actually was lost.

For example, Defendants argue that Rein used the laptop to "access confidential and proprietary Motorola documents". Even if this were true, as Defendants' own formulation makes clear, these were documents stored on Motorola's servers, not Rein's computer. Moreover, it is not clear that using his laptop to access these documents would even cause them to be saved to Mr. Rein's computer. Finally, simply because a document is confidential or proprietary does not mean it is relevant to Mr. Rein's underlying claims.

Similarly, although Mr. Rein did use the computer to send and receive e-mail from other Motorola employees; it is undisputed that all such e-mail communications would have been stored on Motorola's servers. It is unclear whether this information would have even been separately saved to Mr. Rein's computer.

Finally, the Defendants suggest that Mr. Rein may have used the computer to look for other jobs after he was fired by Motorola. There are two problems with this argument. First, it is undisputed that, after Mr. Rein rejected Motorola's severance package, his computer was disabled by the company. He therefore could not have used the computer to search for other jobs, or anything else for that matter. Second, even if

12

potentially relevant evidence of Mr. Rein's efforts to mitigate his damages was destroyed, it is difficult to understand how the Defendants were prejudiced by this destruction. If anyone would be prejudiced by the loss of this information it would be Mr. Rein.

Defendants' own conduct confirms that, notwithstanding their protestations to the contrary, even they do not believe Mr. Rein's computer contained any relevant information not already in Motorola's possession. Until they decided to accuse Mr. Rein of spoliation, the Defendants never viewed Mr. Rein's computer as the source of potentially relevant information. Motorola has apparently knows that Mr. Rein had this laptop in his possession since the time he was fired.[34] Although the Defendants now contend that this computer contained vital, relevant and potentially confidential material, between February of 2004 and August of 2005 Motorola made no effort to get Mr. Rein to return it.

After Defendants counsel discovered Mr. Rein had the computer and questioned him about its contents, she could have postponed the continuation of this deposition until the computer had been returned and Motorola had examined it. Instead, she chose to insist that Mr. Rein's deposition resume as soon as possible.

During the second day of Mr. Rein's deposition, counsel could have asked Mr. Rein additional questions about the computer. She failed to do so. At the conclusion of this second day of deposition testimony, counsel could have suspended and indicated that she wanted to reserve her right to resume the deposition after she had examined the contents of Mr. Rein's computer. Instead she stated that she had completed her examination.

---

[34] E-mail from Jay Rein to Peter Tobin, dated February 25, 2004 and attached hereto as Exhibit 13.

Once counsel received this computer, she could immediately have forwarded it to Motorola so that she could use any information contained in the hard drive to assist her in preparing for the upcoming depositions of the Defendants. Instead, the computer apparently remained in her office, untouched, for nearly three weeks.

The Defendants' complete disregard of Mr. Rein's computer as a potential source of relevant information was not the result of sloppiness or inattention. Given the nature of the Plaintiff's underlying claims and the facts that are in dispute there is almost no chance that Mr. Rein's computer contained any new information that would be even remotely relevant to this action. The Plaintiff understands this - and so do the Defendants.

2.    Defendants should not be permitted to pursue additional sanctions against Mr. Rein for spoliation

As previously discussed, although the Defendants characterize this as a Motion to Compel, it is, at least in part, a motion to sanction the Plaintiff for allegedly destroying potentially relevant evidence. Since the Defendants have chosen to pursue this issue in their present Motion, and both sides have briefed the issue, the Defendants should not be permitted to reserve their right to take a second bite at the apple, as they are apparently attempting to do.[35]

The doctrine of spoliations is "based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant ... should be held accountable for any unfair prejudice that results". *Keene v. Brigham and Women's Hosp., Inc.* 439 Mass. 223, 234 (2003), *Westover v. Leiserv, Inc.*, 2005 Mass. App. Lexis 710 (Mass. App. Ct. 2005). Putting aside for the moment the fact that Mr. Rein

---

[35] Defendants' Memorandum of Law, pg 10.

vigorously disputes that he destroyed any information, either intentionally or negligently, there is simply no evidence that the contents of Mr. Rein's computer contained any information that was relevant to this claim. There is also no evidence that the Defendants have been prejudiced in any way. Mr. Rein should not be subjected to sanctions based solely on the unfounded speculation of the Defendants.

Moreover, should the Defendants be permitted to continue pursuing sanctions, it will open up a veritable "can of worms" that will unnecessarily deplete the parties' resources and obscure those issues that actually relate to the underlying merits of the Plaintiff's claims. To defend himself against Motorola's accusations and the attack on his character, the Plaintiff will need to do additional discovery. For example, he will need to depose employees of Motorola to ascertain whether the data on the hard drive was actually destroyed when the Company disabled the computer in March of 2004. He will need to depose employees of Motorola (and potentially employees of Seyfarth Shaw) to ascertain what happened to the computer after it left his custody. He will need to depose the computer consultants retained by Motorola to ascertain the basis for their conclusion that he tampered with the computer and to explore whether there are alternate explanations for how this data could have been destroyed. He will need Motorola to return the laptop computer so that he can have his own expert examine it. In short, this one issue will necessitate a second round of depositions and document requests that could well be more costly and time consuming than the discovery relating to the underlying merits of this case. The Defendants should not be permitted to hijack this litigation to pursue these unfounded allegations against Mr. Rein.

WHEREFORE, the Plaintiff respectfully requests that:

15

(i)     the Defendants' Motion to Compel Plaintiff's Continued Deposition be denied;

(ii)    the Defendants' Motions for Sanctions arising out of Plaintiff's alleged spoliation of evidence be denied; and,

(iii)   the Defendants be prohibited from pursuing additional sanctions against Mr. Rein for spoliation.

JAY S. REIN

By his attorney,

John G. H. Coster
(BBO #101450)
92 State Street, Suite 900
Boston, Massachusetts 02109
(617) 423-2224

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorney of record for each of the Defendants by hand on November 7, 2005.

John G. H. Coster

16