UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN,<br>    Plaintiff,<br><br>    v.<br><br>MOTOROLA, INC., CLYDE KOFMAN<br>and JUERGEN STARK,<br>    Defendants. | Docket No. 04-CV-12580-NG |

GERTNER, D.J.

**MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO COMPEL CONTINUED
DEPOSITION AND FOR SANCTIONS**
December 29, 2005

I.  **INTRODUCTION**

Plaintiff, Jay S. Rein's ("Rein") employment at Defendant, Motorola, Inc. ("Motorola"), was terminated February 23, 2004. Subsequently Rein brought action against defendants Motorola, Clyde Kofman ("Kofman"),[1] and Juergen Stark ("Stark")[2] for breach of contract, promissory estoppel, interference with advantageous relations, and age discrimination pursuant to M.G.L. c. 151B, and 29 U.S.C. § 621 in Massachusetts state court.

On December 9, 2004, the defendants removed the case to federal court, asserting subject matter jurisdiction based on both diversity and the existence of a federal question. Motorola is a corporation incorporated in Delaware, whose principle place of business is Schaumburg, Illinois.  Defendants Kofman and Stark are citizens of the state of Illinois. Plaintiff, Rein, is a

---

[1] Plaintiff's co-worker.

[2] Plaintiff's superior.

citizen of Massachusetts. Rein seeks to recover lost wages of $130,000, in addition to compensatory damages up to $300,000.

As to the federal question, Count II of the plaintiff's amended complaint alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 (2005).

A.   **Background: Claim**

Rein, who is over 40 years of age, had been employed at Motorola as the Motorola Professional Services Group's ("MPS") Principle of North America, working from his home in Holliston, Massachusetts. The MPS Group sold services to existing voice and data product consumers. Additionally, the MPS group was given the task of developing relationships with new customers.

After two years of positive individual reviews Rein was terminated on February 23, 2004, due to a "salary imbalance" and Motorola's desire to hire two "less expensive" people to fulfill Rein's responsibilities, a pretext for discrimination.  Plaintiff further contends that Motorola did not aid in the search for an alternate position within the company, which the plaintiff contends is customary practice.  The defendants' answer maintains that Rein's employment was terminated because his group did not meet performance goals.

B.   **Background: Motion**

On August 16, 2005, defendants' attorney conducted plaintiff's deposition at defendants' attorney's office.  Upon

agreement of the parties, the deposition spanned two days. During the deposition, plaintiff was questioned as to where, generally, he had obtained the documents that he had produced in response to Motorola's request for the production of documents. (Pl.'s Dep. 20:1-3.) Specifically, plaintiff was questioned as to where he had obtained copies of email communications he had produced. (Id. 20:14.) The plaintiff responded that the emails were contained in files on his company issued computer. (Id. 20:17-24.)

Plaintiff was further questioned as to the contents of the computer's hard drive. (Id. 32:23-24.) Plaintiff responded that the computer likely contained PowerPoint presentations related to his employment, corresponding to hard copies, which he had retained. (Id. 33:1-4.)

Plaintiff was asked whether he had searched the computer in response to Motorola's request for the production of documents. (Id. 33:17.) Plaintiff responded that he had not searched the computer, as Motorola had "deactivated" it upon his termination. (Id. 33:24, 34:1-2.) Because of this deactivation Plaintiff stated that he no longer had access to emails or documents associated his employment; however the emails should be contained on Motorola's servers. (Id. 36:10-21.)

On August 16, 2005, immediately following the deposition, defendant faxed a request to plaintiff's counsel requesting

production of Rein's Motorola issued laptop computer.  (Coster Aff. Ex. 7.)  Subsequently, plaintiff shipped the computer to Defendant, and Motorola received it on August 26, 2005. (<u>Id</u>.)

Approximately three weeks following August 26, 2005, Charles Lehwald ("Lehwald") received and examined the computer.  (Lehwald Aff. ¶ 3.)  Lehwald is a Senior Forensic Analyst at Motorola, working in the Information Protection Services group. (<u>Id</u>.) Lehwald opened the computer; upon his examination of the hard drive Lehwald noted that the EIDE cable, which allows the hard drive to interface with the computer, had been disconnected. (Pl.'s Ex. 9.) He also noted that the connection pins had been slightly bent, which often results when the EIDE cable is removed from the hard drive. Lehwald then physically removed the hard drive from the computer, and placed it in a FireWire external hard drive enclosure in order to examine data contained on the hard drive by connecting it to a diagnostic computer. The hard drive made clicking noises, indicative of hard drive damage. Thus, Lehwald could not ascertain what data was contained on the drive. (<u>Id</u>.) Lehwald concluded that the hard drive had been removed from the computer and damaged. (Lehwald Aff. ¶ 4.)

Consequently, Lehwald gained authorization from Motorola to enlist the services of Kroll Ontrack ("Kroll") in an attempt to obtain a forensic image of the data contained on the hard drive. Kroll successfully imaged the hard drive. However, all

unallocated and data had been zeroed out, indicating the computer's hard drive had been "wiped clean" and formatted with Microsoft NT File System. (Id. ¶ 5.) Based upon the Master File Table ("MFT") time stamp, Lehwald determined that the computer's hard drive had been reformatted on August 22, 2005, meaning the computer's data was erased on or before that date. (Id.)

Lehwald further indicated that Motorola's "deactivation" of Plaintiff's computer would not render it inoperable as stated by Plaintiff. (Pl.'s Br. in Opp'n to Def. Mot. for Sanctions.) The deactivation did constitute a denial of Rein's access to Motorola's network services, including email; however Rein would still have been able to use the computer for all non-Motorola related purposes, including alternate email services. (Id.)

On October 14, 2005, defendants sent a letter to plaintiff's counsel detailing the Lehwald's findings, and requesting an additional deposition date (Coster Aff. Ex. 11.)  Defendants scheduled a third day of deposition for October 27, 2005, which plaintiff did not attend.  Plaintiff has denied tampering with the hard drive.

Subsequently, on October 31, 2005, defendants filed a motion to compel plaintiff's continued deposition and for sanctions.  On November 7, 2005, plaintiff filed an opposition to defendants' motion, on November 16, 2005, defendants filed a reply to plaintiff's opposition, and on November 29, 2005, plaintiff filed

a sur-reply to defendants' motion for continued deposition and for sanctions.

## II. MOTOROLA'S MOTION TO COMPEL PLAINTIFF'S CONTINUED DEPOSITION AND FOR SANCTIONS

Motorola's Motion to Compel asks that the Court to render a decision requiring: (1) Rein to pay the costs of defendants' forensic analysis of the computer's hard drive; (2) Rein to submit to a continued deposition in order to inquire into his conduct with respect to the computer; and (3) Rein to pay costs of the continued deposition.  In support of its motion defendants argue:

1. Rein testified at his deposition that relevant documents resided on the computer;
2. The electronic documents residing on Rein's computer fall under defendants' initial written discovery;
3. Rein did not deliver the computer along with other documents to defendants until August 26, 2005;
4. Defendants' forensic expert determined the hard drive had been erased August 22, 2005, at which point, plaintiff was aware of his discovery obligations;
5. Plaintiff's contention that the computer was "disabled" lacks merit;
6. Rein has caused Motorola to incur unnecessary investigative expense;
7. The computer contained potentially relevant evidence whose loss may adversely affect Motorola, thus Motorola is entitled to continued deposition, based upon notions of fairness.

Plaintiff's Opposition to Defendants' Motion to Compel, and Plaintiff's subsequent Sur-Reply argue:

1. Defendants are not authorized to require plaintiff to submit to additional deposition beyond one day of seven hours;

2.  Defendants are unable to identify any relevant evidence lost as a result of the damaged hard drive;
3.  Defendants could have questioned plaintiff with regard to the computer during the August 2005 deposition but did not, and did not reserve the right to continue at a later date;
4.  Additional deposition of plaintiff would be a waste of time since plaintiff has already denied tampering with the computer, and plaintiff has stated he does not know the cause of the damaged hard drive;
5.  Subjecting plaintiff to sanctions would require unnecessary investigation -- with regard to the damaged hard drive -- expense, and delay.

**B.   Defendants' Motion to Compel Continued Deposition**

Time and duration of a deposition are governed by Fed. R. Civ. P. 30(d). Rule 30(d)(2) limits the duration of a deposition to one day of seven hours, unless otherwise stipulated by the parties or the court. Further, the court must allow additional time needed for fair deposition, or if the deponent or another person impedes or delays examination. Finally, Rule 30(d)(3) gives the court discretion to impose sanctions upon persons who impede fair examination.[3]

---

[3]
(2) Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for fair examination of the deponent or it the deponent or another person, or other circumstance, impedes or delays the examination.

(3) If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as the result thereof.

Fed. R. Civ. P. 30(d).

Defendants argue that because the computer was not produced in connection with defendants' written discovery prior to the initial two-day deposition, fair examination of plaintiff was not possible. Motorola presents a valid argument. If Rein had produced the computer prior to his August 2005 deposition, the contents of its hard drive would have been known. As a result, Motorola would have been given a more thorough opportunity to depose Rein.

Plaintiff argues that the computer is an unnecessary source of evidence. He contends, and defendants do not dispute, that electronic communications associated with Rein's employment at Motorola are likely contained on Motorola's own servers. Further, documents including presentations, mentioned during Rein's deposition, were likely disseminated to defendants already, or have been retained by plaintiff in hard copy form. That may well be so but it is irrelevant. The defendants should be given an opportunity to determine whether that is the case or whether the plaintiff had other business-related information on this computer and no place else.

It could not be said that defendants were given a fair opportunity to question plaintiff with regard to the laptop computer at the initial deposition, since the information contained on the computer was unknown to defendants at the time.

I **GRANT** Defendants' Motion to Compel Continued Deposition.

C.      **Motion for Sanctions Resulting from Spoliation**

Although Rein has cited both federal and state case law, federal law controls the issue.[4] Townsend v. Am. Insulated Panel Co., Inc., 174 F.R.D. 1, 4 (D. Mass 1997). Spoliation is "the intentional, negligent, or malicious destruction of relevant evidence." Id. at 4. The doctrine of spoliation is based upon two rationales: first, to alleviate the prejudice caused by destruction of evidence; second, to impose sanctions such to deter parties from destroying evidence. Turner v. Hudson Transit Lines, 142 F.R.D. 68, 74 (S.D.N.Y. 1991).

The duty to preserve relevant evidence arises when a party has received notice that the information or documents in its possession are "reasonably calculated to lead to the discovery of admissible evidence," or the information or documents "[are] reasonably likely to be requested during discovery, and/or [are] the subject of a pending discovery request."[5] Wm. T. Thompson Co.

---

[4] The authority of the court to imposed sanctions upon a party for spoliation of evidence has been derived from both the Federal Rules, and the inherent powers of the court to regulate litigation. Fed.R.Civ.P. 37(b) states: "If a party... fails to obey an order to provide or permit discovery… the court in which the action pending may make such orders in regard to the failure as are just . . ." (See Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166 (D.Colo. 1990). Where courts have been hesitant to rely on Rule 37, deciding that it does not specifically address spoliation, courts may still impose sanctions, relying upon "inherent power to regulate litigation, preserve and protect the integrity of proceedings before [them], and sanction parties for abusive practices." Capellupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989); Turner, 142 F.R.D. 72.

[5] "Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discover of admissible evidence, and destroys such documents and information. While a litigant is under no duty to retain every document in its possession once a complaint is filed, it is under a duty to keep or retain every document in its possession

v. Gen. Nutrition Corp., 593 F.Supp. 1443, 1455 (C.D.Cal. 1984); See Computer Assocs. Int'l, Inc., 133 F.R.D. at 169.

If a court determines that relevant evidence has been destroyed, it should consider the following factors in order to determine the severity of the sanction warranted: "(1) whether the defendant was prejudiced as a result of [the destruction of evidence]; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded." Townsend, 174 F.R.D. at 4; Mayes v. Black & Decker, 931 F.Supp. 80, 83 (D.N.H. 1996) (quoting multiple cases from other district courts).

Courts have found bad faith where it has been determined that a party "intentionally destroyed evidence after the obligation to preserve it arose, and after [the party] had clear notice of that obligation."Century ML-Cable Corp. v. Conjugal P'ship Composed By Edwin Carrillo, 43 F.Supp.2d 176, 184 (D. Puerto Rico 1998).

Punishment for the willful or negligent destruction of evidence ranges from monetary sanction, to adverse inference, to default judgment.  Default judgment may be imposed where the

---

once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discover of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."  Wm. T. Thompson Co., 593 F.Supp. at 1455.

party seeking evidence is so severely prejudiced by the destruction of evidence that no other sanction would be adequate. See Computer Assocs. Int'l, Inc., 133 F.R.D. at 169-70.  Where the prejudice resulting from the destruction of evidence can be remedied by the formation of an adverse inference against the spoliator, the court may do so, based upon the rationale that "the risk the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." Turner, 142 F.R.D. at 75. Where appropriate, courts may also impose monetary sanctions for the destruction of evidence. Harkins Amusement Enters., Inc. v. Gen. Cinema Corp., 132 F.R.D. 523 (D. Ariz. 1990).

   Assuming Kroll's MFT time stamp determination is correct, the computer's hard drive was erased and reformatted on August, 22, 2005, six days following Motorola's August 16, 2005 request for its production.  Certainly, on August 22, 2005, Rein was on notice that the computer was the subject of a discovery request, and further, Rein physically possessed the computer.  Therefore, the duty to preserve the contents of computer's hard drive was especially clear.

   Plaintiff has stated, through his attorney, that he is unaware how the loss of data occurred. However, the act of erasing and reformatting a computer hard drive does not occur spontaneously. Additional suspicion is raised given the timing of

the drive's reformatting, just days following the request for production.

Plaintiff does not dispute defendants' contention that relevant evidence was contained on Plaintiff's computer. An argument to the contrary seems unreasonable given that the computer was company-issued to Plaintiff for use during his employment. Thus, the loss of relevant evidence warrants general consideration of the factors enumerated in Townsend.

Since the hard drive has been erased it is impossible to determine precisely what evidence has been lost.  Therefore, the degree to which defendants have been prejudiced is unclear. Defendants have yet to point to specific essential information contained on the hard drive.  Defendant do not dispute plaintiff's contention that emails and presentations stored on the computer could be obtained by other means, either in hard copy or on Motorola's own servers.[6]  Absent an inference to the contrary, it is likely that defendants are not substantially prejudiced by the destruction of evidence.  Thus, because other sources of the information probably exist, the evidentiary imbalance may be cured through additional discovery or deposition, as previously discussed.

---

[6] Plaintiff is not relieved from his burden of production even if Plaintiff's emails were contained on Motorola's servers; Fed. R. Civ. P. 26(b) permits parties to obtain discovery of all relevant non-privileged matters unless otherwise limited by the court as unreasonably duplicative.

Still, one might infer bad faith based upon the timing of the destruction of evidence. Here the facts raise suspicion with regard to Rein's actions. The computer's hard drive was erased days following its request for production, while under the control of plaintiff.

At minimum, the destruction of Rein's computer data has caused defendants to incur costs with regard to attempted data recovery.  Absent a credible explanation, plaintiff should be required to reimburse defendants' investigative costs, and pay costs of additional depositions.

I hereby **GRANT IN PART** defendants' motion to compel continued deposition **[document #16]** but will defer resolution of the motion for sanctions until after plaintiff's continued deposition.  At that point, defendants will file a motion outlining precisely what sanctions they seek, and the basis for them.  Plaintiff will reply in the usual course.  I **GRANT** Defendants' Motion to Enlarge Time **[document # 28]** and adopt the new deadlines outlined therein.

**SO ORDERED.**

**Date:  December 29, 2005         /s/NANCY GERTNER, U.S.D.J.**