UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04-12580 NG |
| ) | |
| MOTOROLA, INC., CLYDE KOFMAN ) | |
| and JUERGEN STARK ) | |
| ) | |
| Defendants. ) | |
| ) | |

### **DEFENDANTS' RENEWED MOTION FOR SANCTIONS**

Defendants Motorola, Inc., Clyde Kofman and Juergen Stark (collectively, "Defendants") hereby renew their Motion for Sanctions against the Plaintiff, Jay Rein ("Rein") pursuant to Fed. R. Civ. P. 37, and as contemplated by Defendants' Motion to Compel Plaintiff's Continued Deposition and for Sanctions [Docket No. 16] ("Motion") and this Court's December 29, 2005 Order on the Motion [Docket No. 30] ("Order").

**I.    Introduction**

This Renewed Motion for Sanctions ("Renewed Motion") is necessary because the evidence, including Rein's own testimony concerning the condition of Motorola's laptop computer ("Laptop"), when he finally returned it to Defendants, reveals that relevant electronic data was lost while the Laptop was in Rein's exclusive possession. The evidence establishes that all active and deleted data on its hard drive was wiped clean, and on August 22, 2005 while Rein had custody of the Laptop, its drive was reformatted.

In light of these blatant circumstances, Defendants seek the following monetary sanctions: the costs that Motorola incurred in engaging an outside forensic expert to recover the Laptop's hard drive; costs associated with Rein's continued deposition; certain costs associated with the deposition of Charles Lehwald; and reasonable fees associated with the Motion and

Renewed Motion.  Motorola also seeks instructions to be issued at trial that Rein: violated clearly-articulated Motorola policy concerning the use of computer resources, which constitutes grounds for termination pursuant to Motorola's policies; and, in the face of discovery requests, he intentionally destroyed data relevant to this litigation, which can be presumed to have been adverse to his claims.

## II.     Procedural Posture

On October 31, 2005, Defendants filed the initial Motion because Rein dragged his feet before returning the Laptop to Motorola despite his repeated promises to return it[1]; Defendants served unambiguous discovery requests in March 2005, that called for Rein to produce the Laptop, as well as responsive electronic data stored on it, but he did not[2]; and Rein failed to heed Motorola's written and verbal requests for the Laptop's return.[3]  Rein finally hand-delivered the Laptop to counsel for Motorola at the beginning of the second session of his deposition in August 2005,[4] effectively precluding questioning at the deposition regarding the data (or lack of data) on its hard drive.  Motorola later learned that the Laptop's hard drive, when returned, contained no active or deleted user files but only metadata files that are created when a drive is formatted, a few system-added files, and zeroed out sectors. This surprised Defendants, since Rein had used the Laptop daily during his employment with Motorola and routinely saved his

---

[1] Exhibits A and B to the Declaration of Kristin Glennan McGurn ("McGurn Decl."), filed herewith.

[2] Exhibit C to McGurn Decl.

[3] Excerpts of Jay Rein's deposition testimony ("Rein Dep.") are attached to the McGurn Decl. as Exhibit D.  Rein Dep. 33:10-16; 42:6-43:18; 696:2-697:15.  See also Exhibit E to McGurn Decl.

[4]  Rein Dep. 594:20-595:2; 777:3-779:24.  At the same time, he delivered handwritten notes, binders and other responsive materials that he had not produced with his initial production.  Rein Dep. 672:12-17.  Shortly thereafter, Rein returned additional documents and computer equipment.  Rein Dep. 678:2-7.  In an eleventh hour supplementation, Rein again surfaced responsive documents days before his continued deposition.  Rein's counsel permitted Defendants' counsel to make arrangements to copy these documents the day before the continued deposition, although Rein claimed to have located them "around Christmastime."  Rein Dep. 622:23-623:11.

documents to the Laptop's hard drive.[5] Rein refused to provide an explanation for the absence of electronic evidence on the hard drive, other than to report through counsel that he "did not know why" there was no data on the drive.[6] He refused to appear for his properly noticed deposition, thereby requiring Defendants to incur the expense of moving to compel.

On December 29, 2005, this Court ordered Rein to appear for questioning regarding the condition of the Laptop[7] and, "absent a credible explanation," to reimburse Motorola for investigative costs and the costs of additional depositions relating to the Laptop.[8] The Order recognized that the loss of relevant data from the Laptop "warrants consideration of the factors enumerated in *Townsend*" (concerning sanctions). Order at 12. This Court noted that although Rein denied knowing how the loss of data occurred, "the act of erasing and reformatting a computer hard drive does not occur simultaneously." Order at 11. This Court went on to state that the timing of the loss of data "raised additional suspicions" and that "one might infer bad faith." Order at 13.

Rein has not offered any plausible explanation for the loss of relevant electronic data stored on the Laptop while it remained in his possession. Defendants are entitled to sanctions.

## III.  Background

The Defendants' Renewed Motion arises against the following backdrop. Rein worked for Motorola's Professional Services group ("MPS") as an at-will employee for approximately

---

[5] Rein Dep. 30:18-24; 31:17-24: 32:13-24; 33:1-9; 165:4-166:12; 752:19-753:8.

[6] Exhibit F to McGurn Decl. See also Order at 11.

[7] Rein's counsel obstructed the continued deposition at every turn, for instance, by instructing Rein not to answer on no fewer than a dozen occasions. By way of example only, Rein's counsel instructed him not to answer the following questions: (1) How did you determine which emails to print for purposes of discovery when you were going through your Yahoo account? (Rein Dep. 662:10-14); (2) Were there emails that you did not print from that Yahoo account? (Rein Dep. 662:15-18); (3) Had you reviewed files prior to your production of [supplemental] documents on August 26, [2005]? (Rein Dep. 667:2-5).

[8] See also this Court's Electronic Order dated January 5, 2006. ("[I]f there is a basis to the accusation -- that plaintiff knowingly destroyed relevant evidence -- that will be the least of plaintiff's concerns. Monetary sanctions will be ordered.")

3

eighteen months between mid-2002 and early 2004.[9]  Motorola terminated Rein's employment in the last of many MPS reorganizations, which were necessitated by its persistent failure to meet business goals.  The group was entirely disbanded shortly after Rein's departure.  Rein left Motorola in April 2004 and within six (6) months he had accepted employment in a comparable position.[10]  Rein turned forty (40) just a month before Motorola notified him of his termination.[11]  He claims that the reasons for his termination were age-related, that Defendants breached a promise to retain him through June, 2004 (i.e. a few months longer than his actual tenure), and that Defendants somehow interfered with his efforts to obtain subsequent employment.  He seeks nearly half a million dollars in damages.

### IV.   Discussion

#### A.   Defendants Are Entitled To Sanctions.

When a party intentionally, negligently or maliciously destroys evidence relevant to pending litigation, sanctions are appropriate and serve both as a deterrent as well as to alleviate prejudice to the opposing party.  *Townsend v. Am. Insulated Panel Co., Inc.*, 174 F.R.D. 1, 4 (D. Mass. 1997); *Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 74 (S.D.N.Y. 1991).  This court has broad inherent powers to assess discovery misconduct and to fashion an appropriate remedy.  *Headley v. Chrysler Motor Corp.,* 141 F.R.D. 362, 364-65 (D. Mass. 1991).  Rein is subject to sanctions because significant, relevant electronic data was lost while the Laptop was in his possession, and at a time when he was well aware of his obligation to protect and produce it.  *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (S.D. Cal. 1984).

---

[9] Rein Dep. 42:24-43:5.

[10] Rein Dep. 59:18-60:2.

[11] Rein Dep. 43:19-44:1.

### 1. The Laptop Irrefutably Contained Relevant Data With Practical Importance To The Issues In This Case.

As soon as Rein joined Motorola, he began using Motorola's Laptop daily for all of his work on behalf of the company.[12] Rein worked remotely from his home in Holliston and on the road visiting customers and prospects,[13] and the Laptop was the computer that he consistently used for company business.[14] Rein routinely used the Laptop off-line (without accessing Motorola's network),[15] saving electronic data to its hard drive,[16] including while traveling on Motorola business.[17] Rein continued to use the Laptop post-termination.[18]

Rein saved all of the following types of documents to the Laptop's hard drive:

- Versions of Word documents concerning clients and colleagues;

- Versions of Power Points and other materials used for presentations to clients and prospects;[19]

- Drafts of presentations that reflect Rein's attempts to collaborate with his MPS colleagues[20] and that bear on MPS's strategy and business plan as they related to Rein;[21]

---

[12] Rein Dep. 595:3-13; 626:19-627:19; 628:2-10; 753:1-8.

[13] Rein Dep. 31:17-24; 595:20-596:8.

[14] Rein Dep. 608:2-4; but see Rein Dep. 657:4-658:11.

[15] Rein Dep. 794:7-795:20. Rein acknowledged that he prepared Power Point, Excel, Word and Visio documents (using locally stored applications), without access to Motorola servers. Rein Dep. 597:12-19, 607:3-8. On or about April 9, 2005, after Rein rejected Motorola's enhanced severance package, Motorola disabled Rein's access to Motorola systems as called for by its information protection policies. Exhibit G to McGurn Decl. Rein contends that he did not thereafter use the Laptop (Rein Dep. 651:13-652:18; 751:5-21), but Charles Lehwald explained how such use could have occurred notwithstanding deactivation. This Court permitted Rein to depose Lehwald regarding his investigation of the Laptop, in connection with Rein's attempt to offer a credible explanation for the absence of data. Rein's counsel deposed Lehwald on June 21, 2006. Excerpts of the Charles Lehwald deposition testimony ("Lehwald Dep.") is attached to the McGurn Decl. at Exhibit H. Lehwald Dep. 69:3-70:19; 71:2-20. See also Rein Dep. 34:20-24. Whether Rein continued to use the Laptop after Motorola deactivated his access to its network does not impact whether data from the hard drive was lost. It indisputably was.

[16] Rein Dep. 161:5-162:24; 600:24-601:2; 630:2-14; 713:18-714:23.

[17] Rein Dep. 603:15-17.

[18] Rein Dep. 595:10-13.

[19] Rein Dep. 600:24-601:2.

[20] Rein Dep. 632:23-634:8; 715:10-13; 727:21-728:20.

- Versions of reviews of client opportunity "pipelines";[22]

- Excel spreadsheets used for managing, measuring and charting such things as sales targets and revenue;[23] and

- productivity reports and forecasts.[24]

Rein acknowledged that certain versions of such documents were on the Laptop's hard drive when he last used it.[25] Rein also acknowledged that he had used Motorola's Laptop to communicate with a prospective alternative employer, Invoke, in January 2004 -- a month before he learned that Motorola would terminate his employment.[26] Not one of these documents is now stored on the Laptop.

As this Court noted in its Order, it is irrelevant that certain documents that Rein stored on the Laptop's hard drive may also exist in some version on Motorola's servers or in Plaintiff's hard-copy files.[27] Order at 8. Defendants deserved the opportunity to determine whether versions of such documents, or other business-related material, existed on the Laptop. They were deprived of this opportunity. Moreover, Rein is not relieved of his burden of production

---

[21] For example, Rein testified that he saved to the Laptop's hard drive certain presentations regarding ExpressLINK, a client whose needs fell outside the MPS group's business plan but in whom Rein had invested significant effort. The presentations concerned "whether we should continue forward with [the ExpressLINK] opportunity or not" (Rein Dep. 714:15-716:24). Rein does not recall producing such presentations in hard-copy. Rein Dep. 724:10-725:24; 732:2-3.

[22] Rein Dep. 630:15-24.

[23] Rein Dep. 712:12-713:14.

[24] Rein Dep. 631:5-13; 636:10-18.

[25] Rein Dep. 32:19-33:1; 629:19-637:4.

[26] Rein Dep. 827:19-828:14. But compare Rein Dep. 684:17-24 (where Rein denied using Motorola resources to communicate with others about leaving the company for alternative employment). Rein's counsel instructed him not to answer further questions regarding the Invoke communications. Rein Dep. 684:1-14. Rein's communications with Invoke may have bearing on the claims and defenses in this litigation to the extent that they may shed light on Rein's true expectations regarding his tenure at Motorola, or may reveal the reasons why Rein was seeking alternative employment prior to learning of the MPS reorganization that resulted in his termination.

[27] For the most part, they do not. See discussion *infra*, p. 10.

6

even if some such documents also were on Motorola's servers, because Fed. R. Civ. P. 26(b) permits discovery of all relevant, non-privileged information, unless discovery is otherwise limited as duplicative. Order at 12, n.6.

### 2. The Timing Of The Data's Destruction Is Indicative Of Bad Faith.

By February 23, 2004, Rein was aware that his employment with Motorola was to terminate. For the next six (6) weeks, Motorola negotiated with Rein over the terms of an enhanced severance package.[28] Ultimately, Rein rejected Motorola's enhanced severance offer and filed suit. During discovery, Defendants requested that Rein produce any Motorola property that he had not returned at the end of the negotiation period (such as the Laptop), as well as all relevant electronic documents.[29] Rein did not return the Laptop until months later, when his deposition was well underway.[30] He acknowledged that he knew that the Laptop, a pager and related Motorola electronic devices were in his possession post-termination, but he neither returned them nor searched the Laptop, or his home computer, in response to Defendants' discovery requests.[31]

---

[28] Rein Dep. 525:17-526:6; 550:14-20. During the negotiation period, Rein remained on Motorola's payroll.

[29] Exhibit C to the McGurn Decl. Although Rein testified that he did not perform work for Motorola from his home computer, he produced a handful of Yahoo emails, which he contends initiated from that computer and not the Laptop. These emails, sent to Rein's Motorola colleagues concerning prospective employment outside Motorola, violated Rein's option award agreement, and thus potentially impact damages. Rein Dep. 117-19. Exhibit I to McGurn Decl. Motorola cannot learn whether other similar communications existed on his home computer, however, because he gave that computer away to his housecleaners when he relocated from Holliston to Atlanta in August 2005 – the same month in which he finally returned the Laptop to Motorola. Rein Dep. 658:3-9. Notably, Rein also testified that he had replaced the hard drive in that computer sometime in "2003, 2004 or 2005." Rein Dep. 762:4-16; 765:2-24.

[30] Rein Dep. 778:18-779:5.

[31] Rein Dep. 33:17-34:2; 754:7-11; 786:23-787:5. But see Rein Dep. 30:10-24. For example, Rein was asked, "Did you have an awareness at that time, when you received the document request, that there were documents on the laptop that might be called for? A: No, I did not. Q: Why? A: I don't know. I don't know why the brain does what it does. Q: What do you mean by that? A: I don't know why I didn't think about the computer. The computer was inactive to me." Rein Dep. 785:10-20. He moved the Laptop from Holliston to his new home in Atlanta, however, in August 2005. Rein Dep. 756:10-757:14.

7

When Rein finally returned the Laptop, Charles Lehwald, a Senior Forensic Examiner with Motorola's Information Protection Services group ("MIPS") employed customary best practices to attempt to obtain data from the Laptop without altering its metadata or otherwise affecting the evidence.[32] He determined that although the drive retention screw was in place, an adapter that is required to operate the drive was missing, and connection pins were bent. This indicated to him that the hard drive had been removed. When Lehwald attached the drive to a write-block device, the drive failed to mount and made rhythmic clicking sounds indicative of drive damage.[33] Lehwald obtained authorization to engage an outside expert, at significant expense, to attempt to recover the drive.[34] Motorola's forensic experts, Kroll Ontrack ("Kroll"), did so. They concluded that the Laptop's hard drive was wiped clean and then, on August 22, 2005, was reformatted.[35] Kroll reported that the time/date stamp associated with all metadata files that it recovered from the hard drive was 8/22/2005, 21:54:04. The time/date stamp for all other system files was 8/22/2005, 21:54:38. August 22, 2005 fell between two sessions of Rein's deposition.[36] As Kroll and Lehwald explained, such time/date information was derived not from the operating system on the Laptop, but from the operating system of whatever computer was

---

[32] Lehwald Dep. 49:8-15; 102:14-103:15; 110:1-21; 111:3-113:24; 114:1-116:23; 120:7-22. Lehwald testified that he has performed hundreds of data recoveries for Motorola, many in connection with pending litigation. Lehwald Dep. 49:22-50:4. He testified as to the protocol he employed to preserve the integrity of evidence. Lehwald Dep. 51:4-13; 53:10-57:22; 60:18-22. See also the Affidavit of Charles Lehwald, filed herewith.

[33] Lehwald Dep. 114:18-116:5.

[34] Lehwald Dep. 124:3-8.

[35] Exhibit J to McGurn Decl. Lehwald Dep. 141:1-16; 152:18-153:22; 162:24-163:17.

[36] Rein concedes that during his deposition he "became curious" about the data stored on the Laptop, and he claims that he attempted to determine what he had saved there. Rein Dep. 759:5-12. Rein further concedes that this could have been on August 22, 2005. Rein Dep. 776:13-22. Rein contends that he could not access documents saved on the Laptop but, his curiosity apparently abated, he sought no assistance to determine why. Rein Dep. 811:19-812:2.

used to accomplish the reformatting.[37] Although there is no evidence regarding which computer Rein used to reformat the drive, no one but Rein had access to it.[38]

### 3. Defendants Have Been Prejudiced By The Loss Of Data From The Laptop.

Rein, an at-will employee, was terminated for legitimate and non-discriminatory reasons in connection with one of many MPS reorganizations. Rein contends, based on Defendants' alleged comments, that he reasonably expected to continue to work for MPS at least through June 2004, and that one of his MPS colleagues should have been terminated in lieu of him. Based on these claims and Defendants' defenses, the following documents become critical: documents reflecting the reasons (and Rein's awareness of the reasons) why he was selected for termination over his peers; documents reflecting Rein's interactions with his peers, other Motorola colleagues, customers and his manager; documents reflecting the MPS group's and Rein's own business goals, and their respective efforts to achieve those goals (or not); documents reflecting Rein's ability to collaborate effectively and to work in a team toward MPS's collective goals (or not); and documents that shed light on the legitimacy of Rein's alleged expectation that he would remain with Motorola through June.

Thus, the correspondence and other documents evidencing Rein's interactions with colleagues and customers, which he had saved to the Laptop's hard drive, constitute important evidence. Likewise, Rein's presentations to clients and prospects are critical, as they may reveal the extent to which he was operating consistently with MPS's business plans and goals. In particular, Rein's own versions of such documents, on which his personal contributions and revisions would have been made, are vital. The loss of this data from the Laptop impairs Defendants' ability to analyze Rein's claims and to support their defenses.

---

[37] Exhibit J to McGurn Decl.; Lehwald Dep. 167:3-13.

[38] As mentioned, Rein's home computer is no longer available.

9

Further, Rein's deposition testimony confirms that many of the documents that he had saved to the Laptop's hard drive are not available elsewhere, and were not produced in hard-copy. Rein testified that he rarely printed documents from the Laptop's hard drive.[39] When asked why, Rein replied, "[b]ecause we are an e-mail and computer-centric society and if I would save every piece of paper that I printed, I wouldn't have room to walk around my office."[40] On the rare occasion when he did print hard-copies, Rein said that he typically destroyed the printed version.[41] He confirmed that he also periodically and selectively deleted files from the hard drive,[42] and saved few documents in hard-copy format.[43] Accordingly, Rein acknowledged that he could not establish that he had produced hard copies of all relevant documents that he had saved to the Laptop's hard drive.[44]

### 4. Rein Offered No Credible Explanation For The Loss Of Data On The Laptop.

There is no evidence that anyone other than Rein is responsible for the loss of data from the Laptop's hard drive. Rein has offered this Court no credible alternative explanation. Accordingly, Defendants are entitled to sanctions.

In a transparent but futile attempt to exculpate himself, Rein points a finger at all others who handled the Laptop following its return to Motorola. A comprehensive chain of custody

---

[39] Rein Dep. 642:20-22; 682:15-19; 683:2-8.

[40] Rein Dep. 663:14-23.

[41] Rein Dep. 663:18.

[42] Rein Dep. 664:24-665:12.

[43] Rein Dep. 665:19-666:2.

[44] See also Rein Dep. 812:3-813:5.

10

reveals, however, that none of them mishandled the Laptop or took any steps that could have compromised the evidence stored there.[45]

Rein also vaguely speculated that Motorola may have sent a "bullet" (i.e. a virus or worm) via its network to the Laptop, which he contends could have destroyed data on its hard drive when Rein attempted to log in post-deactivation.[46] Rein apparently has read about such technology in computer journals.[47] He acknowledged that he did not know if such a "bullet" would zero out data or affect the Laptop's mechanics so as to cause the Laptop's current condition.[48] As Lehwald testified, Rein's implausible theory amounts to no more than fictitious musings, unsupported by any evidence. Lehwald attested that Motorola did not possess technology capable of remotely copying data at the time of Rein's termination, and it cannot remotely zero out data.[49] Moreover, even under Rein's theory, such a tool would require Rein to be linked to Motorola's network, and he was not after on or about April 9, 2006.[50] In addition, the Laptop's current condition (wiped and reformatted) requires physical possession and manipulation of the equipment. Only Rein had such access on August 22, 2005.

---

[45] Exhibit K to McGurn Decl. Indeed, the Laptop was maintained in a locked cabinet from the date it was returned to Motorola (Lehwald Dep. 121:19-122:4), and the drive sat in a sealed evidence bag, stored in a safe, from the time Kroll performed the initial data recovery (Lehwald Dep. 120:18-22; 134:14-16), until Motorola shipped the equipment to Plaintiff's expert for inspection on May 31, 2006 (Lehwald Dep. 147:1-4). See also Affidavits of Loretta Schumacher and Paulette Hradnansky, filed herewith.

[46] Rein Dep. 772:12-773:3.

[47] Rein Dep. 773:4-13.

[48] Rein Dep. 772:12-773:3; 796:8-20.

[49] Lehwald Dep. 83:22-24; 175:23-176:2; 177:6-12; 178:1-7.

[50] Rein Dep. 752:12-24; Exhibit G to McGurn Decl.. Of course, the August 22, 2005 date associated with the recovered metadata and system files would have had no significance to Defendants at the time of Rein's deactivation in April.

### B. The Court Has Wide Discretion To Determine The Appropriate Scope Of Sanctions.

In determining the scope of sanctions, this Court has wide latitude. Fed. R. Civ. P. 37(b). Factors such as the nature of the prejudice, the extent to which it can be cured, the practical importance of the lost evidence, whether the destruction was in bad faith, and the potential for abuse if the evidence is not excluded, affect the scope of sanctions. *Id.* at 4. Adverse inference instructions, as well as monetary sanctions, may be appropriate. *Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 74 (S.D.N.Y. 1991); *Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.,* 132 F.R.D. 523 (D. Ariz. 1990) (fees and expenses); *Spiller v. U.S.V. Labs,* 842 F.2d 535, 537 (1st Cir. 1988) (dismissal).

#### 1. Bad Faith Can Be Inferred.

As this Court already has noted, suspicion is raised by the timing of the hard drive's reformatting. The metadata and system files reveal a date that falls between two sessions of Rein's testimony. Order at 10. Indeed, Rein conceded that following the first day of his deposition he became "curious" about what remained stored on the Laptop, and attempted to review its files.[51] He says that he could not access them. When Motorola received the Laptop shortly thereafter, it was devoid of any active or deleted files.

#### 2. Monetary Sanctions Are Appropriate.

Monetary sanctions can be imposed as a sanction for the destruction of evidence. *Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.,* 132 F.R.D. 523 (D. Ariz. 1990). Such sanctions are appropriate here, because Rein obstructed Defendants' efforts to determine what data remained on the Laptop's hard drive, and forced Defendants to incur significant unnecessary expense. These costs include Defendants' outside experts' investigative fees ($9,490.00)[52],

---

[51] Rein Dep. 754:13-20.

[52] Exhibit L to the McGurn Decl.

Motorola's costs associated with Rein's continued deposition ($1,396.70)[53], and certain costs incurred as a result of the Lehwald deposition ($880.50).[54] Defendants also are entitled to reasonable attorneys fees associated with the Motion and Renewed Motion.[55]

### 3. Defendants Are Entitled To An Adverse Inference Instruction.

"Where prejudice resulting from the destruction of evidence can be remedied by the formation of an adverse inference against the spoliator, the court may do so, based upon the rationale that 'the risk the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.'" Order at 11, citing *Turner*, 142 F.R.D. at 75. An adverse inference instruction against Rein is warranted, since the prejudice to Defendants cannot otherwise be remedied. Data that Defendants called for in discovery and sought from the Laptop is now irretrievably lost. Therefore, Defendants request that the Court issue instructions that Rein violated clearly-articulated Motorola policy, which would have merited his termination,[56] and that he intentionally destroyed data relevant to this litigation, which can be presumed to have been adverse to his claims and favorable to Defendants' defenses.

## V. Conclusion

WHEREFORE, the Defendants respectfully request that this Court award monetary sanctions against Rein in the amount of ($11,767.20) to cover Motorola's costs in engaging Kroll Ontrack to conduct forensic investigations, its costs in concluding Rein's deposition and certain costs for Lehwald's deposition, and reasonable fees associated with the Motion and Renewed

---

[53] Exhibit M to the McGurn Decl.

[54] Exhibit N to the McGurn Decl. The parties have agreed that Defendants will not seek costs associated with Lehwald's (or Motorola's Senior Labor Counsel's) travel to Boston for Lehwald's deposition.

[55] If requested, Defendants will submit an affidavit to support an assessment of fees.

[56] At deposition, Rein conceded that he was aware of the company's code of conduct, which requires employees to protect Motorola property including computer resources and electronic data. Rein Dep. 620:8-622:9; 624:1-22. See also Exhibit O to McGurn Decl. ("Class III Infraction").

13

Motion.  Defendants also respectfully request that this Court issue an instruction at trial that Rein violated clearly-articulated Motorola policy concerning the use of computer resources, that such a violation would have subjected him to termination had he still been employed, and that he intentionally destroyed data relevant to this litigation, which can be presumed to have been adverse to his claims.

                                                      Respectfully submitted,

MOTOROLA, INC., CLYDE KOFMAN,
and JUERGEN STARK,

By their attorneys,

/s/ Kristin G. McGurn
Richard L. Alfred (BBO# 015000)
Kristin G. McGurn (BBO# 559687)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800

**Certificate of Service**

I hereby certify that a true and correct copy of the above document was served upon the attorney of record for the plaintiff via ECF and by mailing a copy of same, postage prepaid, to John G. H. Coster, Attorney at Law, 92 State Street, Suite 900, Boston, MA  02109 on July 5, 2006.

/s/ Kristin G. McGurn