## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **JAY S. REIN,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-12580 NG** |
| | ) | |
| **MOTOROLA, INC., CLYDE** | ) | |
| **KOFMAN, and JUERGEN** | ) | |
| **STARK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## OPPOSITION OF PLAINTIFF, JAY S. REIN, TO
## DEFENDANTS' RENEWED MOTION FOR SANCTIONS

Plaintiff Jay S. Rein ("Rein") hereby files his Opposition to the Defendants'

Renewed Motion for Sanctions (the "Renewed Motion").  The Renewed Motion should

be denied for the reasons set forth below.

## I.    <u>Introduction</u>

The Renewed Motion seeks significant monetary sanctions and an adverse

inference instruction that would completely eviscerate <u>all</u> of the Plaintiff's underlying

claims.  The Defendants argue that this draconian punishment is warranted because the

evidence conclusively demonstrates that Rein intentionally destroyed potentially relevant

data contained on a laptop computer in his possession.  There are two fundamental

problems with the Defendants' argument.  First, the evidence does not establish that Rein

damaged or destroyed any data.  Second, even after engaging in unrestrained speculation,

enhanced with a healthy dose of wishful thinking, the Defendants have been unable to

identify any <u>potentially</u> relevant evidence that <u>might</u> have been destroyed.

However, there is something far more troublesome than the Defendants simply misrepresenting the underlying facts in their effort to persuade the Court to impose sanctions on the Plaintiff.  The Plaintiff believes, and the credible evidence seems to support, that it is the Defendants' themselves who deliberately tampered with the Laptop and then tried to pin it on the Plaintiff.

## II.    **Background**

The Defendants contend that their original Motion for Sanctions was necessitated "because Rein dragged his feet before returning the laptop … and Rein failed to heed Motorola's written and verbal requests for the Laptop's return".[1]  Apart from being fundamentally illogical (Rein had voluntarily returned the laptop computer nearly two and a half months before the Defendants filed their Motion) this assertion completely misrepresents the underlying facts.

Clearly the Defendants wish to create the impression that Rein was initially unwilling to return the Laptop to Motorola, presumably because it contained a treasure trove of information damaging to his underlying claims.  However, the undisputed facts tell a different story.  It was Rein, not Motorola, who initially offered to return the Laptop at the time he was discharged by Motorola.[2]  Motorola never even bother to respond to Rein's offer.   In fact, although the Defendants now try to fault Rein for not seizing the initiative and simply returning the Laptop to Motorola, the company's own policies require that anything returned to Motorola must be sent to a specifically

---

[1] Defendants' Renewed Motion for Sanctions [Docket No. 46], pg. 2.
[2] In Rein's February 25, 2004 e-mail to Peter Tobin he reminded Tobin that he had "resources" that belonged to the company and offered to return them.  (A copy of this e-mail is attached as Exhibit B to the Affidavit of Kristin McGurn ("McGurn Affidavit")[Docket No. 50].

"designated Motorola representative".[3]  Since Motorola never designated such a

representative, and cut off all lines of communication with Rein in April of 2004,[4]

Motorola effectively made it impossible for Rein to return the Laptop.

     The Laptop was not discussed again until the first day of Rein's deposition, on

August 16, 2005, when Rein <u>volunteered</u> to return the computer once Motorola told him

who it should be delivered to.[5]   Immediately following this deposition, on August 16th,

2005, Motorola's counsel wrote Rein's attorney to request the return of the computer.

This was the first and only time Motorola specifically requested Rein to return the

computer.[6]  Ten days later Rein personally delivered the computer to Defendants'

counsel.

     Despite the Defendants' efforts to misrepresent the record, Rein has been

forthcoming about the return of the Laptop, and his behavior is entirely consistent with

Plaintiff's contention that there was nothing on the Laptop that prejudiced his claims.

Rather, it is the Defendants' initial behavior that is inconsistent with their current

assertion that the Laptop contained highly relevant evidence.

     Moreover, Motorola continued to ignore the Laptop even after it was returned.

For example, although the Defendants now accuse Rein of "effectively precluding

---

[3] Motorola Employment Agreement, attached as Exhibit A to the McGurn Affidavit.
[4] Deposition of Jay Rein ("Rein Deposition"), pgs. 42-43, 696, attached as Exhibit 1 to the Affidavit of John G. H. Coster ("Coster Affidavit").
[5] Rein Deposition, pg. 43.
[6] Motorola now argues that Request No. 5 of its First Request for Production of Documents should also be construed as a request for the return of the Laptop.  This request calls for Rein to "produce for inspection and copying the following <u>documents</u> … Request No. 5: All documents, items, objects and effects that you took with you from Motorola following your termination." [Emphasis added].  (A copy of Defendants' First Request for Production of Documents is attached as Exhibit 2 to the Coster Affidavit).  Obviously, a document request, which anticipates the duplication of relevant documents and the inspection, testing and sampling of tangible things is not an appropriate mechanism for transferring possession of an item from one party to another.  *See* Fed. R. Civ. P. 34(a).

questioning at the deposition regarding the data … on his hard drive"[7] it is of course Defendants' counsel, not Rein, who controlled the scheduling of this deposition.  In fact, not only did Defendants' counsel decide to resume Rein's deposition before the Laptop had been returned, she insisted that Plaintiff's counsel could not go forward with depositions he had previously scheduled until after she had completed Rein's deposition. She also requested that the deposition be scheduled within the next two weeks.[8]  Finally, it was the Defendants' counsel who made the determination, at the conclusion of day two of Rein's testimony, that she had completed the deposition and had no further questions for Rein.[9]

This was not a mere oversight on the part of Defendants' counsel.  Rein's deposition had previously been postponed on several occasions because Defendants' counsel was awaiting what she thought might be potentially relevant documents from Rein's current and former employers and she insisted on having the opportunity to question Rein on these documents.[10]  Clearly, had the Defendants believed that the Laptop contained potentially relevant information they would have insisted Rein return the computer before resuming his deposition, or at the very least expressly reserved their right to recall him.

Finally, after ostensibly completing Rein's deposition on August 26th, 2005, the Defendants' continued to ignore the Laptop.  Thus, according to Defendants' Evidence Seizure Form, the Laptop was not delivered to Motorola until September 16, 2005,

---

[7] Renewed Motion, pg. 2
[8] Letter from K. McGurn to J. Coster, dated August 22, 2005.
[9] Rein Deposition, pgs. 587-88.
[10] Letter from J. Coster to K. McGurn, dated July 13, 2005 and attached as Exhibit 4 to the Coster Affidavit.

approximately three weeks after Rein returned it to Defendants' counsel.[11] Once Motorola received the Laptop, yet another week elapsed before any effort was made to examine its contents.[12]

It was only after the Defendants "discovered" that the Laptop contained no recoverable data that they began arguing that it contained valuable evidence available nowhere else, accusing Rein of spoliation, and demanding the opportunity to again depose him. Although the Defendants now argue that they "properly noticed" Rein's deposition and that his failure to appear at the scheduled date and time is somehow evidence of bad faith, it is the Defendants who acted improperly in attempting to unilaterally depose Rein yet again.

Fed. R. Civ. P. 30(d)(2) specifically provides that for a deposition to exceed seven (7) hours, the prior authorization of the Court must be obtained. Plaintiff's counsel had specifically reminded the Defendants of this limitation during the first day of Rein's deposition.[13] Notwithstanding this limitation, Rein voluntarily made himself available for a second day of deposition testimony, even though it required him to take additional time off from his new job and again travel from Atlanta (where he had relocated) to Boston. By failing to obtain leave of Court, as required by Fed. R. Civ. P. 30(d)(2), the Defendants had not "properly noticed" Rein's deposition and did not have an absolute right to depose him for a third day.[14]

---

[11] Attached as Exhibit K to McGurn Affidavit.
[12] Id.
[13] Rein Deposition, pgs. 215, 218.
[14] Defendants' counsel also accuses Rein's attorney of "obstructing the continued deposition at every turn". (Renewed Motion, pg. 3, fn. 7). Counsel's objections were nothing more than a legitimate, though largely futile, effort to require the Defendants confine their questioning to the issues set forth in the Court's December 29, 2005 and January 5, 2006 Orders.

Predictably, the additional six hours the Defendants spent deposing Rein did nothing either to illuminate or help resolve this dispute. Rein merely confirmed that he did not delete or damage the data contained on his Laptop.[15] Just as predictably, notwithstanding Rein's testimony, on July 5, 2006 the Defendants filed the Renewed Motion, seeking monetary sanctions in excess of $11,000 and additional sanctions relating to the merits of Plaintiff's claims.

## II.    <u>Argument</u>

### A.    **Defendants' Motion for Sanctions Must Be Denied**

Federal law governs the issue of whether the Defendants are entitled to have sanctions imposed on Rein for the alleged spoliation of relevant evidence. *Townsend v. American Insulated Panel Company, Inc.*, 174 F.R.D. 1, 4 (D. Mass. 1997). In deciding whether the imposition of sanctions is appropriate, the federal courts employ a five factor test. *McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 156 (D. Mass. 1997); *Chapman v. Bernards, Inc.*, 167 F.Supp.2d 406, 413 (D. Mass. 2001). These factors are:

> (1)    whether the adversary was prejudiced by the destruction of evidence;
>
> (2)    whether the prejudice can be cured;
>
> (3)    the practical importance of the evidence;
>
> (4)    whether the destruction was in good or bad faith;
>
> (5)    the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned.

*McGuire,* 175 F.R.D. 149, 156; *Chapman*, 167 F.Supp.2d 406, 413.

---

[15] Rein Deposition, pgs. 757-62.

None of these factors support the sanctions the Defendants are seeking. In fact, the Defendants have been unable to satisfy a prerequisite that is so basic that its presence is normally both assumed and undisputed in a motion for sanctions, that the party being sanctioned is in fact responsible for the destruction of the evidence. *But see*, *Townsend*, 174 F.R.D. 1, 5 (Plaintiff could not be sanctioned for the destruction of evidence by a third party over whom he exercised no control); *see also, Gardner v. Dynetics Corporation*, 862 F.Supp. 1303, 1307-08 (M.D. Pa. 1994).

## 1.    Rein Did Not Delete Any Data From The Laptop

Ever since the Defendants made their first accusations against Rein, they have repeatedly claimed that the evidence <u>conclusively</u> <u>shows</u> that: (i) the Laptop's hard drive was deliberately deleted and zeroed out; and (ii) the damage occurred on August 22, 2005, when the Laptop was in Rein's possession.[16] When Rein subsequently denied these accusations and sought limited discovery to defend himself Motorola refused, necessitating a Motion to Compel and the intercession of this Court. After this discovery was permitted, it revealed that there are <u>at least</u> three plausible explanations for what happened to the Laptop's hard drive; that there are several serious problems with the underlying accusations made against Rein; and that there is compelling evidence that it is the Defendants who are in fact responsible for damaging the hard drive.

---

[16] *See* October 14, 2005 letter from K. McGurn to J. Coster, "I received <u>confirmation</u> today from our third-party forensic computer expert that, as we suspected, Mr. Rein tampered with the hard drive of Motorola's laptop computer … On August 22, 2005 he "wiped clean" the hard drive, and rendered its data unrecoverable"[Emphasis added], attached as Exhibit F to McGurn Affidavit; Affidavit of Charles Lehwald, ¶5, "All unallocated space and relevant data was zeroed out, meaning the computer's hard drive had been wiped clean and then formatted with NTFS (Microsoft NT File System). Based on the creation time stamp of the Master File Table ("MFT"), it was determined that all files were wiped clean on or prior to August 22, 2005 and the drive was formatted on August 22, 2005." [Docket No. 25]; Defendants' Renewed Motion for Sanctions, pg. 1, "[t]he evidence establishes that all active and deleted data on [the Laptop's] hard drive was wiped clean, and on August 22, 2005, while Rein had custody of the Laptop, its drive was reformatted." [Docket No. 46].

(a)    **The Three Possible Scenarios**

For purposes of this Motion the Plaintiff has chosen to accept the underlying <u>facts</u> contained in the Investigative Analysis Report[17] prepared by Defendants' expert, Kroll Ontrack ("Kroll").[18]  Thus, the underlying dispute relates solely to the conclusions that can be drawn from these facts.

The Defendants contend that the data recovered by Kroll conclusively established that on August 22, 2005 Rein utilized software he had purchased to "zero out" or permanently delete all the data contained on his Laptop and then reformatted his hard drive.  This is one possible scenario that would account for the data recovered by Kroll. However, both Kroll (in its updated report), and Lehwald (in his deposition testimony) concede that there are two equally plausible scenarios that would account for the data Kroll recovered from the hard drive.

If we accept for the moment that all data was intentionally zeroed out,[19] the date such information was deleted is critical.  If the data was deleted before August 26, 2005 it appears that Rein is responsible, since he was in possession of the computer.[20]  However, if the data was deleted anytime after August 26, 2005, only Motorola (or its agents) could have tampered with the data because the Laptop was in their possession.

---

[17] A copy of this Report is attached as Exhibit J to the McGurn Affidavit.

[18] Plaintiff's own expert, Kryptos Forensics ("Kryptos"), did inspect the Laptop and review both the initial and the updated Kroll report.  However, it was decided that duplicating the forensic recovery performed by Kroll was an unnecessary additional expenditure because it was unlikely that Kroll, an independent expert, would deliberately falsify the underlying data it was able to recover.

[19] As will subsequently be discussed, there is at least one other possible explanation for the data recovered by Kroll.

[20] Their may be technology that exists that would have enabled Motorola to "zero out" the hard drive at the same time they disabled the password Rein used to access the Laptop (in April of 2004).  *See* Rein Deposition, pgs. 771-72.  However, Motorola has denied that it possesses this technology, and at this time the Plaintiff does not have any specific information that would suggest otherwise.

The Defendants contend that the data recovered from the hard drive by Kroll indicates that the hard drive was formatted on August 22nd, thereby implicating Rein. What they neglect to mention is that the date and time of formatting is taken from the computer's internal clock. This clock is located on the motherboard of the computer and, in the case of a laptop, is powered by a battery.[21]

These details are extremely significant for two reasons. First, a computer's internal clock is very easy to alter - its date and time can be changed. Asked if this was difficult to accomplish Lehwald, the Motorola employee who initially examined the laptop, candidly replied, "not for me".[22] Thus, if Motorola wished to delete the data on the hard drive, and then blame Rein for this deletion, all it would have to do is reset the computer's internal clock prior to reformatting the hard drive.

Second, it is important to remember that from April of 2004 until September of 2005 the Laptop sat in Rein's basement and was not recharged. If during that year and a half period the battery went dead (which seems likely) the clock would have either reset to the UNIX start date or the original date of manufacture of the computer.[23] Thus, had Rein actually deleted and reformatted the hard drive, at least while it was still installed in the Laptop, it is extremely doubtful the computer's internal clock would show the correct date and time.[24]

Finally, there is a third possible scenario that would account for the data recovered by Kroll - a new hard drive was substituted for the hard drive in Rein's

---

[21] Deposition of Charles Lehwald, ("Lehwald Deposition") pgs. 167-172, attached as Exhibit 5 to the Coster Affidavit..
[22] Lehwald Deposition, pg. 172.
[23] Lehwald Deposition, pgs. 169-70.
[24] The Defendants attempt to deal with this uncomfortable fact by now speculating that Rein did not leave the hard drive in his laptop when he deleted it, but instead dismantled the computer, removed the hard drive, attached it to another computer, deleted the hard drive, reformatted it, removed the hard drive from this second computer, and then reinstalled it in the Laptop.

computer by either Rein or Motorola. Both Kroll and Lehwald concede that new hard drive that had never had any data stored on it would have the same "hex 0x00 pattern" of data that was found by Kroll on the hard drive they examined.[25] If this is what actually happened, there is again no way to determine if it was Rein or Motorola that removed the existing hard drive and replaced it with a new one.[26]

Based on the foregoing, it is impossible to ascertain with certainty whether the Plaintiff or the Defendants tampered with the hard drive. However, although Rein cannot definitively prove that it is the Defendants who are responsible, there is strong circumstantial evidence implicating them.

> **(b)    The Weight Of The Credible Evidence Implicates the Defendants**

It is no surprise that the Defendants avoid the issue of who is responsible for deleting data from the Laptop's hard drive by misrepresenting the underlying facts and contending that the evidence only implicates Rein. A careful analysis of the circumstantial evidence exonerates Rein and implicates the Defendants.

Perhaps the most compelling evidence in Rein's favor is his own behavior. Remember that when the Defendants first made their accusations against Rein they asserted that an independent third party forensic expert had <u>conclusively established</u> that Rein had wiped the Laptop's hard drive on August 22, 2005.[27] In short, the Defendants contended that they had caught Rein "red handed".

Faced with these accusations only someone who was confident in his innocence, would have acted as Rein did. Thus, before Rein knew of any of the information that

---

[25] Investigative Analysis Report of Kroll Ontrack, dated May 16, 2006, pg. 4, attached as Exhibit J to McGurn Affidavit [Docket No. 50]; Lehwald Deposition, pgs. 163-65.
[26] The date the hard drive was formatted also becomes immaterial, because Motorola did not need to have the Laptop in its possession to format the new hard drive.
[27] *See* footnote 17.

implicates the Defendants in the destruction of this data, he stated repeatedly and under oath that he had not deleted information from the hard drive. He demanded an opportunity to conduct discovery, incurred legal fees to obtain the right to such discovery and incurred additional fees and expenses to pursue this discovery and retain his own expert. At the time, Rein had no idea what information he would learn through discovery or what his own expert would find. If he were actually guilty, Rein ran the risk of spending substantial sums merely to confirm his own guilt. Rein pressed forward because he knew he was innocent and therefore that there <u>had</u> to be another explanation for what happened.

Moreover, Rein's assertion that the Defendants are responsible for deleting data from the Laptop is hardly far-fetched. The Defendants have shown a willingness to alter and delete evidence to support their decision to terminate Rein's employment and threatened him with dire consequences if he ever filed suit against Motorola. For example, after Rein's employment was terminated he pointed out to Defendant Juergen Stark ("Stark") that he had never received any warnings or negative feedback about his performance, and stated that he felt Motorola was acting unlawfully. Stark responded by threatening to manufacture the documentation necessary to support the Plaintiff's termination.[28] Similarly, when Rein rejected Motorola's enhanced severance package and refused to sign a release, Stark threatened to come after Rein with "an army of lawyers" and to withhold severance benefits the Plaintiff was legally entitled to.[29]

---

[28] Amended Complaint, ¶¶31 and 32.
[29] Amended Complaint, ¶36.

11

It is worth noting that Stark, who is a Vice President at Motorola, knows and has previously worked with Lehwald on two separate occasions relating to litigation brought against the company.[30]

There is also a troubling discrepancy in the Defendants' chain of custody documents. Defendants' Evidence Seizure Form identifies Rein's hard drive as being an 18.6 gigabyte Hitachi model D**S**23DA-20F.[31]   Kroll's chain of custody form indicates that it was sent a Hitachi model D**K**23DA-20F hard drive[32]; and according to the manufacturer's website, this model hard drive has a 20 gigabyte capacity.[33]  Admittedly this could be nothing more than a series of typos.[34]   However, in light of the fact that one possible scenario is that the hard drive Motorola removed from Laptop is not the same hard drive they sent to Kroll, these are particularly inopportune typos for the Defendants.[35]

Yet another problem for the Defendants is the physical condition of the hard drive at the time it was examined by Lehwald. Thus, Lehwald testified that when he attempted to duplicate the data on the hard drive, the drive made a "rhythmic clicking" sound and would not mount.[36]  Lehwald further testified that, in his view, this meant the "drive

---

[30] Lehwald Deposition, pgs. 95-96.

[31] Motorola's Evidence Seizure Form, attached as Exhibit K to McGurn Affidavit.

[32] Kroll's Evidence Control and Chain of Custody Document, attached as Exhibit K to McGurn Affidavit.

[33] Hitachi Specification sheet, attached as Exhibit 6 to the Coster Affidavit.

[34] The serial number of the drive recorded by Motorola does match the serial number recorded by Kroll.

[35] Also worth noting is Lehwald's testimony that after receiving Kroll's report indicating that one possible explanation for the data they recovered is that the hard drive they were analyzing was new, he discounted this possibility by researching the model number of the hard drive. Lehwald claimed to have determined that it was the type of hard drive that <u>could</u> have been original equipment in Rein's computer. Lehwald Deposition, pgs. 165-66.  However, if Lehwald's testimony is true, and the model number on Motorola's Evidence Seizure Form is a typo, he presumably would have discovered this fact when he did his alleged "research".  This is because, at the time he allegedly performed his "research", the Laptop was not in Motorola's possession and he would therefore have had to use the Evidence Seizure Form to get the model number of the hard drive.

[36] Lehwald Deposition, pgs. 115-119.

heads" were damaged.[37]   After hearing this noise, Lehwald immediately stopped the procedure and turned off his computers because he was concerned about "further damage" to the data on the hard drive.[38]   When Lehwald sent the hard drive to Kroll they confirmed that one or more drive heads had been damaged.[39]

This is a problem for the Defendants because they concede that, if the drive heads were damaged when the hard drive was in Rein's possession, it would have been impossible for him to delete or zero out the data on the hard drive.[40]

Finally, the Defendants have a far more compelling motive than Rein for deleting the hard drive.  Despite their protestations to the contrary, this ongoing dispute, which has nothing to do with the underlying merits, is the single best thing that has happened to the Defendants in this litigation.  Regardless of whether the Defendants eventually prevail on their Motion, they have managed to significantly increase Rein's legal fees and expenses and significantly delay this litigation.[41]   Moreover, if the Defendants are successful at the very least Rein will be assessed economic sanctions that may cripple his ability to continue funding this litigation.  Should the Defendants are also be granted non-monetary sanctions they will essentially eviscerate several of Rein's claims without having to show that this result is in any way warranted by the underlying merits of Plaintiff's claims.  For the Plaintiff however, there is no upside.  Although Rein

---

[37] Lehwald Deposition, pgs. 115-119
[38] Lehwald Deposition, pgs. 117-118.  It is unclear whether the damaged drive heads could themselves be responsible for data being deleted from the hard drive.  Lehwald initially testified that he didn't know whether the bad heads could have accounted for the loss of data to Rein's hard drive, but almost immediately contradicted himself, testifying that in his opinion it could not have caused the loss of this data.  Lehwald Deposition, pgs. 140-141.
[39] Lehwald Deposition, pgs. 139-140, Kroll Ontrack Summary of Recovery Steps, attached as Exhibit 7 to the Coster Affidavit.
[40] Lehwald Deposition, pgs. 141-42.
[41] The deadline for filing dispositive motions, originally set for October of last year has been repeatedly postponed at Defendants' request on the grounds that the Court needs to address their Motion for Sanctions. The previously scheduled trial date has also been postponed twice because of this Motion.

vehemently denies having done anything to tamper with the data stored on his Laptop, and has little doubt that it is the Defendants who are responsible for the loss of any data, ultimately he has no way to prove these allegations.[42]

The Defendants' attempt to argue that Rein's motive for deleting the hard drive was to prevent them from obtaining evidence that would be devastating to his underlying claims. However, as will be discussed more fully below, the Defendants have been unable to identify <u>any</u> information stored on Rein's Laptop that would undercut the Plaintiff's claims or help exculpate the Defendants from liability. Moreover, there is an even more serious flaw with Defendants' contention - it assumes that Rein is a kind of idiot-savant, someone who possesses both the technical sophistication necessary to delete the entire contents of his hard drive in a way that no data could be recovered and the stupidity to believe that: (i) Motorola would not notice that the data had been deleted; and, (ii) his conduct would have no repercussions.

> **2.      There Was No Relevant Evidence Stored On The Laptop's Hard Drive.**

In its Opposition to Defendants' original Motion to Compel and for Sanctions, the Plaintiff argued at some length that prior to "discovering" that there was no data on the hard drive, neither the Plaintiff nor the Defendants treated the Laptop as a potential source of relevant information. Since that time, the Defendants have deposed Rein for an additional 6 hours and have questioned him in excruciating detail about what documents and information were stored on the hard drive. Defendants now have a complete

---

[42] Rein seriously contemplated filing a cross-motion against the Defendants seeking sanctions. However, just as the Defendants cannot establish that he is responsible for the destruction of this data, Rein cannot establish that they are responsible. Ironically, the very fact that the Defendants' conduct is such an egregious act of bad faith makes it that much more difficult for Rein to prove that the Defendants are responsible for the loss of this data. Such a cross-motion would also invariably create further delay and expense for Rein, which he can ill-afford.

inventory of the hard drive's contents; yet they have been unable to establish that a single document relevant to this litigation has been lost or destroyed.

In its Renewed Motion for Sanctions the Defendants list a variety of documents potentially contained on the Laptop's hard drive that they now contend are relevant. These documents include: <u>versions</u> of Word documents concerning clients and colleagues; <u>versions</u> of Power Points and other materials used for presentations; <u>drafts</u> of presentations that reflect Rein's attempts to collaborate with colleagues; <u>versions</u> of reviews of client opportunity pipelines;[43] Excel spreadsheets used for charting sales targets; and productivity reports and forecasts.[44]

None of these documents are relevant to this litigation. In fact, precisely because they are irrelevant, the Plaintiff never agreed to produce any of these documents in the first place. Moreover, arguably none of these documents are responsive to any of Defendants' documents requests.

A review of Defendants' Request for Production of Documents, and Plaintiff's Responses and Objections to Defendants' Request is highly illuminating. None of the twenty four separate requests prepared by the Defendants expressly calls for the production of any of the documents identified above.[45] The only requests that even arguably relate to these documents are Request No. 1 - to the extent that it calls for "all documents concerning your employment", and Request No. 5 - to the extent that it requires Plaintiff to produce "all documents … you took with you from Motorola".[46] Of

---

[43] Defendant is referring to earlier drafts and versions of these documents. The final versions would have been presented to Rein's colleagues or superiors and would already be in the possession of Motorola. Clearly the destruction of these drafts is viewed by the Courts in a different light than destroying the final version of a document. *McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 155-56 (D. Mass. 1997).
[44] Renewed Motion, pgs. 5-6.
[45] Defendants' First Request for Production of Documents.
[46] Defendants' First Request for Production of Documents.

course, for either of these requests to be interpreted as calling for the production of the documents contained on Rein's hard drive, they must be read so broadly that they include every document in Rein's possession that in any way relates to Motorola.

In fact, it is precisely for this reason that the Plaintiff objected to each of these requests. With respect to Request No. 1, Rein specifically stated that the only documents being produced were those "concerning any contracts or agreements relating to his employment, the terms and conditions of his employment, his personnel files, his job duties and his performance evaluations".[47] With respect to Request No. 5, Rein refused to produce any documents on the grounds that the request was "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence".[48] Although Rein served his Responses and Objections on the Defendants over a year ago, the Defendants have never moved for an Order compelling the Plaintiff to supplement his production.

The Defendants' failure to request in discovery the documents it now contends are relevant was not a simple oversight. Given the nature of Plaintiff's claims, and the underlying defenses raised by the Defendants, Rein's Laptop computer was simply not a source of potentially relevant evidence. The first three Counts of Plaintiff's Amended Complaint allege that each of the Defendants discriminated against Rein on the basis of his age and retaliated against him for engaging in protected activity.[49] Defendants deny these allegations and contend that Kofman, Rein's immediate supervisor, made a legitimate business decision to terminate Rein based on his determination that Rein's group had a "mix problem" and that one of the groups "four executive-level sales

---

[47] Plaintiff's Responses and Objections to Defendants' Request for Documents ("Plaintiff's Responses and Objections"), Response to Request No. 1, attached as Exhibit 9 to the Coster Affidavit.
[48] Plaintiff's Responses and Objections, Response to Request No. 5.
[49] Amended Complaint, Counts I-IV.

employees" needed to be terminated and replaced with "one or two associates who could efficiently perform delivery tasks for existing and future clients".[50]  Kofman contends that he weighed the performance reviews of each of the four executive level sales employees and selected Rein because, even though his performance reviews indicated that the Plaintiff was in the "solidly effective category", they indicated he "needed improvement in several areas".[51]  Finally, Kofman considered the prior work experience of each employee and decided that each of the other employees had more "meaningful prior work experience in Field Service Mobility than Rein".[52]

Against this backdrop it is difficult to conceive of a document contained on Rein's Laptop that would be relevant to Plaintiff's claims or the defenses raised by the Defendants.  Certainly Kofman cannot contend that information he was completely unaware of played a role in his decision to terminate Rein.  Similarly it is difficult to argue that working drafts of Word documents, Powerpoint presentations and Excel spreadsheets would somehow contain information that would exonerate the Defendants from liability.

The next two Counts of Rein's Amended Complaint allege that Motorola breached an oral contract and certain oral promises and representations concerning his continued employment, and that he relied on these commitments in turning down a position with another company, Invoke Solutions.[53]  Clearly documents created by Rein on the Laptop while performing his daily responsibilities for Motorola have no relevance to these

---

[50] Defendant Motorola, Inc.'s Answers to Plaintiff's First Set of Interrogatories, Answer No. 5, attached as Exhibit 8 to the Coster Affidavit.
[51] Id.
[52] Id.

[53] Amended Complaint, Counts V and VI.

claims.  Moreover, Rein has testified that his communications with Invoke were by e-mail, which was stored in his Yahoo account, not on a computer.[54]  Finally, Plaintiff's have produced all the relevant documents in Rein's possession relating to Invoke.

The final three Counts of the Amended Complaint allege that Defendants Stark and Kofman interfered with his advantageous relationship with Motorola by inducing the company to terminate his employment and preventing him from securing another position within Motorola, and that Motorola interfered with his advantageous relationship with a corporate recruiter, Russell Reynolds.[55]  To date, the Defendants have not even attempted to argue that information stored on the Laptop bears any relevance to these claims.

### 3.    Defendants Were Not Prejudiced By The Loss Of Data From The Laptop

Given the fact that none the information contained on Rein's Laptop was neither responsive to the Defendants' discovery requests, nor relevant to the Plaintiff's underlying claims, it is clear that the Defendants have suffered no prejudice as a result of the loss of this data, much less the kind of draconian sanctions they are now seeking.

### B.    The Sanctions Sought By Defendants Are Completely Unwarranted And Reveal Their Bad Faith In Bringing This Motion.

The Defendants seek both monetary and non-monetary sanctions in their Renewed Motion.  They are entitled to neither.

### 1.    Defendants' Request For Monetary Sanctions

The Defendants seek nearly $12,000 in monetary sanctions against Rein.[56]  They also contend that they are entitled to reasonable attorney's fees, although they neither

---

[54] Rein Deposition, pgs. 685-86.
[55] Amended Complaint, Counts VII-IX.
[56] Renewed Motion, pgs. 12-13.

specify the amount they are seeking nor cite to any legal authority to support this contention.

However, an analysis of the breakdown of expenses submitted by the Defendants reveals that these expenses have been deliberately inflated in an effort to maximize the economic hardship on the Plaintiff.  For example, in Kroll's original Statement of Work submitted to the Defendants it agrees to perform "a Forensic Recovery of the hard drive and a destruction of the archived data for $6,500". [Emphasis added].[57]  However, Motorola now seeks to be reimbursed an additional $500 for the "destruction of archived data" by Kroll.[58]  Thus, it appears that Kroll has billed Motorola twice for the same work, and Motorola is trying to pass that expense on to Rein.

Moreover, after paying Kroll to perform an initial forensic analysis of the computer, which formed the basis of Defendants' accusations that Rein had deliberately deleted the hard drive, Motorola apparently sent the Laptop back to Kroll to "substantiate" this finding.[59]  Kroll charged Motorola an additional $2,490.00 to perform this service.[60]  This is also not an expense that should be chargeable to Rein.

Similarly, when ordering the transcripts of both Rein's January 13, 2006 deposition, and Lehwald's June 21, 2006 deposition, Motorola paid a substantial premium for an expedited transcript.[61]  Again they seek to pass this additional expense on to Rein (who was content to make due with normal delivery).

### 2.    Defendants' Request For An Adverse Inference Instruction

---

[57] Statement of Work prepared by Kroll, attached as Exhibit L to the McGurn Affidavit.  It is worth noting that this quote is substantially higher than what the Plaintiff's expert would have charged for performing this work.
[58] 12/21/05 Kroll Invoice, attached as Exhibit L to the McGurn Affidavit.
[59] Lehwald Deposition, pgs. 151
[60] 5/24/06 Kroll Invoice, attached as Exhibit L to McGurn Affidavit.
[61] 1/17/06 and 6/21/06 LegaLink Invoices, attached as Exhibits M and N to McGurn Affidavit.

The Defendants are also requesting the Court to give the following "adverse inference instructions" to the jury: (i) that Rein violated Motorola policy by destroying data contained on the laptop, which would have merited his termination; and (ii) that it can be presumed that the data he destroyed would have been adverse to his claims.[62]

An adverse inference instruction is recognized as an onerous and draconian punishment for discovery abuse. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219-20 (S.D.N.Y.); *Jackson v. Harvard University*, 900 F.2d 464, 469 (1st Cir. 1990). Frequently, it is such a difficult hurdle for the spoliator to overcome that it effectively ends the litigation. *Zubulake*, 220 F.R.D. at 219. That is what the Defendants are attempting to do here, precisely because they wish to avoid having to address the underlying merits of Plaintiff's claim. It is also, not incidentally, why they have repeatedly sought to postpone the filing of dispositive motions until after the Court addressed their Motion for Sanctions.

Here in particular, even if we were to assume *arguendo* that Rein deleted the contents of his hard drive, the instructions sought by the Defendants are not warranted. Thus, although Defendants now want the Court to instruct the Jury that Rein's alleged deletion of data from the hard drive merited his termination, they have not even bothered to support this assertion. The Progressive Discipline Policy referred to by Motorola is ambiguous at best, and it is unclear that, even if Rein deleted the contents of his hard drive, he violated this policy. Moreover, Motorola offers no evidence that any employee has ever been terminated solely for deleting data. Finally, this instruction is particularly problematic because it fails to address at what point in time this "right to terminate" Rein became effective. Did it become effective when Motorola discovered the infraction (a

---

[62] Renewed Motion, pg. 14.

year and a half after it had already fired Rein) or can Motorola use an alleged infraction

Rein committed in August of 2005 to justify its termination of his employment in

February of 2004?

Similarly, Defendants seek an instruction that Rein intentionally destroyed data

relevant to this litigation without ever specifically identifying the relevant data that was

destroyed. Would this instruction apply to all of Rein's claims against the various

Defendants? Would it be completely open ended, leaving the jury to engage in idle

speculation about the nature of the evidence destroyed by Rein and its impact on this

case? Clearly, the Defendants have not even bothered to think through the sanctions they

are seeking, much less identify any specific prejudice they have suffered that would

justify the imposition of such a draconian punishment.

## III.    Conclusion

Based on the foregoing, the Plaintiff respectfully requests that the Defendants

Motion be denied.

> JAY S. REIN
>
> By his attorney
>
> /s/ John G. H. Coster
> John G. H. Coster (BBO #101450)
> 92 State Street, Suite 900
> Boston, MA 02109
> (617) 423-2224

<u>Certificate of Service</u>

I hereby certify that a true and correct copy of this document was served on the attorney of record
the Defendants by first class mail, postage prepaid, on July 19, 2006.

> /s/ John G. H. Coster
> John G. H. Coster