UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN )<br>)<br>　　　　　Plaintiff, )<br>)<br>v. )<br>)<br>MOTOROLA, INC., CLYDE KOFMAN )<br>and JUERGEN STARK )<br>)<br>　　　　　Defendants. )<br>) | CIVIL ACTION NO. 04-12580 NG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Motorola, Inc. ("Motorola"), Clyde Kofman ("Kofman"), and Juergen Stark ("Stark") (collectively, the "Defendants") submit this Memorandum in support of their Motion for Summary Judgment. On February 23, 2004, Motorola terminated the employment of the plaintiff Jay S. Rein ("Rein") in a restructuring of a fledgling professional services group. By then, the group already had been splintered and downsized from 200 to five employees in less than two years. It had never met its revenue goals. The group was disbanded entirely shortly after Rein's termination. On November 14, 2004, Rein, who turned forty only a month before the termination, filed a nine count complaint[1] alleging age discrimination under G. L. c. 151B, § 4 ("c. 151B") (Counts I, III, IV) and the Age Discrimination in Employment Act ("ADEA") (Count II), breach of contract (Count V), promissory estoppel (Count VI), and interference with advantageous relations (Counts VII, VIII, IX). On December 9, 2004, the Defendants removed

---

[1] Rein filed his first Superior Court complaint on November 14, 2004 and an Amended Complaint on November 24, 2004. References to "Complaint" in this Memorandum are to the Amended Complaint. All cited deposition transcripts and exhibits and unpublished cases are submitted as attachments to the Affidavit of Peter Tobin and Declaration of Kristin G. McGurn, filed herewith.

the case to federal court. On the undisputed facts, the Defendants are entitled to judgment as a matter of law on all counts.[2]

## Argument

Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the evidence establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party may satisfy its burden by showing that "the opposing party has no reasonable expectation of proving an essential element of the case at trial." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127 (1997); *see also Kourouvacilis* v. *Gen. Motors. Corp.,* 410 Mass. 706, 711 (1991) ("failure of proof concerning an essential element of the [plaintiff's] case renders all other facts immaterial"). "Even in an employment discrimination case, where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Smith* v. *Stratus Computer, Inc.*, 40 F.3d 11, 13 (1st Cir. 1994). Here, Rein has no reasonable expectation of proving any of his claims against any of the Defendants.

**I.    Rein's Age Discrimination Claims Fail as a Matter of Law.**

Rein's age discrimination claims, brought against Motorola under both the ADEA and G.L. c. 151B, and the individual Defendants under G.L. c. 151B,[3] must fail. Rein cannot show a

---

[2] Defendants have filed a Motion for Sanctions ("Motion") against Plaintiff, in which they seek monetary and evidentiary sanctions. On July 28, 2006, this Court granted Defendants leave to reply to Plaintiffs Opposition to the Motion. Defendants respectfully reserve the right to request permission to supplement its submissions in support of summary judgment if the disposition of that pending Motion renders such supplementation appropriate.

[3] No Massachusetts appellate decision has held that supervisors are subject to individual liability for age discrimination under G.L. c. 151B. While in *Beaupre* v. *Cliff Smith & Associates*, 50 Mass. App. Ct. 480, 491 (2000), the Appeals Court held that G.L. c. 151B(4) permits liability for "aiding and abetting" discrimination against a supervisor who personally sexually harassed a plaintiff, that factually inapposite decision does not support individual liability for age discrimination against a supervisor who implements a reduction in force. Therefore, the G.L. c. 151B claims against the individual defendants should be dismissed on the alternative grounds that there is no individual liability for age discrimination under G.L. c. 151B on these facts.

prima facie case of discrimination. Further, he cannot show that the Defendants' legitimate, nondiscriminatory reason for eliminating his position was a pretext for age discrimination.

Under both G.L. c. 151B and the ADEA, to establish a prima facie case in connection with a reduction in force ("RIF"),[4] Rein must show that: 1) he is over forty years old; 2) he was performing his job to Motorola's legitimate expectations; and 3) he was terminated. *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 41 (2005) (G. L. c. 151B); *LeBlanc* v. *Great American Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (ADEA). The fourth element of the prima facie case arising from a RIF, under the ADEA, requires Rein to show that "the employer did not treat age neutrally or that younger persons were retained in the same position." *LeBlanc*, 6 F.3d at 842. Under G.L. c. 151B, the fourth element requires Rein to produce "some evidence that [his] layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." *Sullivan,* 444 Mass. at 45. If Rein were to establish a prima facie case, then the Defendants must articulate a legitimate, non-discriminatory reason for the termination; the burden then would shift back to Rein to prove that the basis of the decision was unlawful discrimination. *Id.* at 50-51, 54-55; *LeBlanc,* 6 F.3d at 842-43. To defeat summary judgment, Rein cannot simply cast doubt on the wisdom of the Defendants' justification for his termination, but rather must introduce evidence that the real reason for the action was discrimination. *Villanueva v. Wellesley College*, 930 F.2d 124, 127-28 (1st Cir. 1999).

> **A.    Rein Cannot Establish a Prima Facie Case of Age Discrimination.**

Rein cannot establish the fourth element of his prima facie case of age discrimination under any statute. He cannot show that the Defendants failed to treat age neutrally in eliminating his position or retained younger workers in the same position, as he must under federal law.

---

[4] A reduction in force occurs when an employer eliminates even one position within the company because of business considerations. *LeBlanc* v. *Great American Ins. Co.*, 6 F.3d 836, 845 (1st Cir. 1993).

Likewise, he cannot show that the layoff raises a reasonable inference of unlawful discrimination, as he must under state law.

>    1.  **Rein Cannot Show that the Defendants Failed to Treat Age Neutrally, or that the Circumstances of His Layoff Raise a Reasonable Inference of Discrimination.**
>
>        a.  **The Undisputed Facts Show Age Neutral Reasons for the Layoff.**

As of February 2004, the Motorola Professional Services ("MPS") group had chosen Kofman, MPS' Managing Principal, as its leader. Kofman assumed supervisory authority over the two remaining Principals (Rein and John Gillardi), and two lower level employees, Michael Humpleby and Clay Brice. Statement of Undisputed Facts ("SOUF") ¶¶44-47. MPS, which had gone from 200 to five employees since 2002, had yet to achieve expectations or revenue goals. It faced aggressive new targets. SOUF ¶¶14, 20-21, 29, 42-44, 48. Kofman determined that the group had too many high-level employees devoted to business development and not enough focused on delivering services to customers. SOUF ¶66. Rein and others had observed that the lack of delivery personnel was impeding performance. SOUF ¶67. As a result, Kofman concluded MPS should eliminate one of the highly-paid Principals and contemplated hiring lower-level delivery personnel to provide cost-effective consulting services to customers. SOUF ¶¶68-69.

Kofman chose Rein's position for elimination based on several factors: (1) Rein was not adequately focused on the group's chosen area of field service mobility and had less experience in that area than John Gillardi; (2) Rein's 2003 leadership assessment had revealed eight "blind spots," or areas where he rated himself significantly higher than his then-manager Thomas Niersbach and a coworker; and (3) Kofman's belief, corroborated by feedback from coworkers, that Rein could be abrasive and difficult as part of a team. SOUF ¶¶49, 57-58, 70-75. Stark

4

agreed and approved the decision. SOUF ¶¶76-79. When Kofman notified Rein of the termination, he explained the group's imbalance[5] and the need to hire delivery personnel, and Kofman and Rein independently gave the same explanation to Rein's coworkers. SOUF ¶¶80, 83. After the termination, at Rein's urging, Stark spoke to certain of Rein's Motorola colleagues, who confirmed that Kofman's assessment was reasonable and not influenced by personal dislike or any inappropriate factors.[6] SOUF ¶¶81-82. Thus, there is no material dispute that the decision was age-neutral.

### b. There Is No Evidence of any Age Bias.

In the face of strong evidence of age-neutral reasons for his layoff, Rein has presented no evidence of any age bias. Rein does not contend that younger employees were treated more favorably. SOUF ¶86. He never complained to Stark or Human Resources of any unfair treatment by Kofman. SOUF ¶81. Indeed, the fact that Kofman is two years *older* than Rein makes it very unlikely that the termination decision was motivated by age bias. SOUF ¶3, 84. *Elrod* v. *Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991); *Connell* v. *Consolidated Edison of New York*, 109 F. Supp. 2d 202, 209 (S.D.N.Y. 2000).

Rein's allegation that Kofman told him that Kofman contemplated hiring "less expensive" delivery personnel as part of the reorganization is not probative of age bias as a matter of law. A company's desire to save salary costs is a permissible, nondiscriminatory termination factor, because age and compensation levels are analytically distinct. *See Poce v.*

---

[5] Rein claims that Kofman called it a "salary imbalance," Deposition of Jay S. Rein ("Rein Dep.") at 372, which is consistent with Kofman's consideration of eliminating a senior business development position in favor of lower level delivery positions.

[6] Rein claims that when he complained to Stark about the termination, and stated that his performance reviews had been positive, Stark responded by "implying/threatening" that he could generate negative documentation in Rein's personnel file if necessary. Complaint, ¶32; Rein Dep. at 169; Deposition of Juergen Stark ("Stark Dep.") at 156. This allegation, which Stark denies, is irrelevant, since Rein does not allege that anyone actually generated any such negative documentation, and the performance-related issues that contributed to Rein's selection for the RIF are amply corroborated by other employees and documents. *See* SOUF ¶¶17-19, 52-58, 71, 74, 82.

*John Toomey Co., Inc.,* 1996 Mass. Super. LEXIS 215, at *16-17; *Pagliarini* v. *Gen. Instrument Corp.*, 855 F. Supp. 459, 462 (D. Mass. 1994).  At deposition, Rein changed his account of the termination conversation to allege that Kofman said he would hire, "two less-expensive, two *younger* heads for delivery services that were badly required by the group."  Rein Dep. at 371-72 (emphasis added).   This suspiciously late-made allegation contradicts the account in Rein's sworn MCAD Charge, ¶7, both Superior Court complaints, ¶ 30, his sworn Answer to Interrogatory ("Ans. Int."), No. 14, and his account to coworkers at the time, SOUF ¶ 83.  It thus cannot defeat summary judgment.  Rein cannot create a factual dispute for summary judgment by contradicting his own previous sworn allegations.  *See Gartland* v. *Hermetic Seal Corp.*, 1990 U.S. Dist. LEXIS 11591, at * 4 n.3 (D.Mass.); *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630, 634 n.5 (1996).[7]

    Further, this one stray comment – the only one Rein alleges Kofman or Stark ever made – even if made, would be insufficient to establish that Motorola did not treat Rein's age neutrally.  Rein Dep. at 477.  *See, e.g.*, *Shenker* v. *Lockheed Sanders, Inc.*, 919 F. Supp. 55, 60 (D.Mass. 1996) (no prima facie case despite decision-maker's stray comment that older plaintiff could bear a layoff better); *Gartland*, 1990 U.S. Dist. LEXIS, at * 5-6 (no prima facie case despite decision-maker's comment that "we should get bright young people in" and "get rid of deadwood" in RIF).  This is particularly so given that Stark, whom Rein admits never commented on his age, agreed with and approved the decision. SOUF ¶87.  Therefore, there is no material dispute that the termination decision was unbiased and age-neutral.

---

[7] The allegation also contradicts Rein's account of the termination in an e-mail he wrote to the company during severance negotiations, in which Rein said that he had only *inferred* that the delivery personnel the company intended to hire would "probably" be younger.  SOUF ¶96.  Further, the fact that the eventual leading candidate for the delivery personnel job had 15 to 20 years of professional experience belies any contention that Kofman contemplated replacing Rein with a significantly younger employee.  SOUF ¶109.

6

### 2. The Defendants Did Not Retain Younger Employees in Plaintiff's Position.

Rein cannot establish that the Defendants retained younger employees in Rein's position. Indeed, Rein admits that he was *not* replaced by a younger employee. SOUF ¶88. It is undisputed that Rein's Principal position was eliminated and never re-filled, and that thereafter the group was disbanded before anyone else was hired.[8] SOUF ¶¶110-12. The only Principal who remained in the group after Rein was terminated was John Gillardi, who was 37 years old at the time.[9] SOUF ¶ 85. A three year age difference is insufficient as a matter of law to support a prima facie case of age bias.[10] *See Knight v. Avon*, 438 Mass. 413, 425 (2003) (5 year disparity required); *Williams* v. *Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000) (same).

### B. The Defendants Have Articulated Legitimate Nondiscriminatory Reasons for the Elimination of Rein's Position.

Even if Rein could establish a prima facie case of discrimination, which he cannot, the Defendants have articulated legitimate nondiscriminatory reasons for the decision and have produced credible evidence that those are the true reasons – namely, a plan to reorganize a struggling start-up to deliver services to customers more effectively. The reasons are bolstered by the fact that they are consistent with the contemporaneous document from Kofman to Stark explaining the decision, and the explanation that Kofman and Rein independently gave Rein's coworkers at the time. SOUF ¶¶76, 82-3. *Sullivan* v. *Liberty Mutual Ins. Co.*, 444 Mass. at 54

---

[8] The fact that at least one of Rein's client prospects was later transitioned to another department is irrelevant, not only because he has not shown that a younger employee assumed any of his duties, but also because, even if he had, a prima facie age case may not be established in a RIF situation simply by showing that the surviving duties of the eliminated position are being performed by younger employees in addition to their existing responsibilities. *See Lewis* v. *City of Boston*, 321 F.3d 207, 216 (1st Cir. 2003); *Plante* v. *Shawmut Bank*, 1998 Mass. Super. LEXIS 8, at *16; *Nason, et al.* v. *Revlon,* C.A. No. 98-1949, at p. 5 (Mass. Super. 2001).

[9] Michael Humpleby and Clay Brice, who were 37 and 29 years old at the time of Rein's termination, were not Principals of the group and therefore not in the relevant class of employees considered in the RIF. SOUF ¶ 85. Kofman, age 42, was a Managing Principal. SOUF ¶¶ 16, 84.

[10] Stark too was only three years younger than Rein. SOUF ¶84.

(fact that decision-maker's reasons given at termination, long before litigation anticipated, remained consistent demonstrates legitimacy).

      **C.**      **Rein Cannot Show the Reasons Were a Pretext for Discrimination.**

Rein cannot show that the Defendants' articulated reasons lack reasonable support in evidence or are wholly implausible. *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 448 (1996). In assessing pretext, the court's focus must be "on the perception of the decision-maker, that is, whether the employer believed its stated reason to be credible." *Goldman* v. *First Nat'l Bank of Boston*, 985 F.2d 1113, 1118 (1st Cir. 1993). *See also Matthews v. Ocean Spray Cranberries, Inc.,* 426 Mass. at 128 (reasons may be "unsound or even absurd, and the action may appear arbitrary or unwise, nonetheless [employer] has fulfilled its obligation"); *Mesnick* v. *General Electric Co.*, 950 F.2d 816, 825 (1st Cir. 1991) (courts may not sit as "super personnel departments, assessing the merits – or even the rationality" of nondiscriminatory decisions). Here, Rein's pretext argument rests on allegations that he was a good employee, that Kofman disliked him personally, that there were other ways to reorganize the group, and that Kofman referenced the hiring of "younger" employees. None of these arguments comes close to demonstrating that the decision was a pretext for discrimination.

First, the fact that Rein's performance appraisal had positive elements, that he was not explicitly warned prior to the layoff, and that he had recently received a bonus, do not show pretext. It is undisputed that Rein had some strong skills, and his reviews (which Rein concedes were not motivated by discrimination) reflect an even-handed assessment of both his strengths and weaknesses. SOUF ¶¶17-19, 52-58. It is likewise undisputed that he and others in the group, including an employee who had already been terminated, received a modest bonus in January 2004 in an effort to make up for a perceived inequity in prior bonus awards. SOUF ¶¶ 62-65. These facts do nothing to cast doubt on the termination decision; especially in a RIF, in

8

which an employer must assess the relative merits of a group of employees to select one or more for termination, the fact that the terminated employee had some good skills does *not* demonstrate that the employer's reasons for the termination were false. *See e.g., Sullivan*, 444 Mass. at 54-57 (summary judgment for employer who laid off plaintiff instead of lower-rated peers when decision based on comparing performance and business needs); *Pagliarini*, 855 F. Supp. at 463 (D. Mass. 1994) (RIF justified when plaintiff had good skills but other employees had more immediate value); *Poce*, 1996 Mass. Super. LEXIS 215, at *17 (RIF justified by fact that otherwise skilled employee is resistant to change); *Frankina* v. *First Nat'l Bank of Boston*, 1993 U.S. App. LEXIS 7714, at *10-11 (1st Cir. 1993) (RIF justified despite "outstanding" review and no warnings when employer believed plaintiff was least qualified of group).

Second, Rein's allegation that Kofman personally disliked him does not show pretext. Rein testified at deposition that the "key reason" that Kofman terminated him was a conversation in which Rein allegedly complained to Kofman that the group was not generating sufficient business, and that he might tell Stark that the group had made a mistake in selecting Kofman as its leader. Rein Dep. at 320-24, 474-76. Though Rein never complained to Stark before the termination, he later told Stark that he believed Kofman terminated him because of personal dislike. SOUF ¶81. Rein admits that the alleged conversation, and any animosity it may have engendered, had nothing to do with age. Rein Dep. at 476. Further, this alleged conversation, part of an ongoing difference of opinion about the group's direction, SOUF ¶75, corroborates Kofman's nondiscriminatory reasons in choosing Rein's position for elimination, including his perception that Rein did not agree with the group's focus, and could be difficult and abrasive.

Third, Rein suggests that Motorola could have achieved its business goals differently, without eliminating his position, for example by adding to his responsibilities or asking him to take a short term salary reduction; he even went so far as to imply that Kofman should have fired

9

himself because he made a higher salary. Complaint ¶20; Rein Dep. at 383-84; SOUF ¶96. However, it is well-settled that the fact that the Defendants could have made different choices does not demonstrate that their reasons were not the real ones. *See, e.g., Sullivan*, 444 Mass. at 56 (age claim fails despite claims that employer "improperly relied on subjective and unreliable assessments, compared [plaintiff] to employees it should not have, and failed to compare her to employees it should have"); *LeBlanc*, 6 F.3d at 847 (no evidence that financial concerns behind RIF were a "sham" even if finances could be seen in more optimistic light); *Holt* v. *The Gamewell Corp.*, 797 F.2d 36, 38 (1st Cir. 1986) (summary judgment for employer despite suggestion that employer should have fired more junior person instead or demoted plaintiff).[11] By the same token, the fact that Motorola later decided not to hire the delivery personnel that it had considered hiring is not probative of pretext; it is undisputed that Motorola posted and interviewed for the position, but did not fill the position because the department was yet again refocused and then disbanded. SOUF ¶¶109-11.

Finally, as discussed above, Rein's newfound allegation that Kofman told him he wanted to hire "younger" and less expensive delivery personnel, contradicts all of Rein's previous sworn accounts; in any event, it is insufficient to raise a material issue of fact as to whether the reasons for Rein's termination were pretextual. *Lee* v. *President & Fellows of Harvard College*, 60 Mass. App. Ct. 836, 840-1 (2004) (summary judgment for employer despite superiors' comment "younger is cheaper"); *Tardanico*, 41 Mass. App. Ct. at 450 (summary judgment for employer despite comment that the plaintiff "had been around a long time" and that perhaps his "bag was getting too heavy"); *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 301-2 (1991)

---

[11] Nor did Motorola have any legal obligation to place Rein elsewhere in the company. Therefore, allegations that Motorola did not do enough to find him another job, such as Rein's quibbling with how many weeks it took Motorola to submit his name to its Leadership and Talent Supply program, which is sometimes successful in matching displaced executives with open positions in the company, are not probative of pretext. *See* Complaint, ¶ 34-35, Ans. Int. No. 14.

(affirming verdict for employer despite remark before hire that plaintiff was "way too old for the job"); *Vesprini* v. *Shaw Contract Flooring Services, Inc.*, 315 F.3d 37, 41 (1st Cir. 2002) (summary judgment for employer despite remark that plaintiff should "step back and let the young stallions" run business); *Speen* v. *Crown Clothing Corp. et al.,* 102 F.3d 625, 636 (1st Cir. 1996) (insufficient evidence of age bias to go to jury despite supervisor saying, "Why do I need a 71 year old when I can have a 51 year old?"); *Zisch* v. *Textron Defense Sys.,* 1996 Mass. Super. LEXIS 562, at *10 (summary judgment for employer despite supervisor comment that company "ought to get some young blood"). For these reasons, Rein cannot show that his layoff was discriminatory based on his age.[12]

## II.     Rein's Breach of Contract and Promissory Estoppel Claims Must Fail.

Rein brings counts against Motorola for breach of contract based on an alleged oral contract to retain him until at least June 30, 2004 (Count V) and for promissory estoppel based on alleged promises regarding job security through June of 2004, payment of a bonus and a general comment in a performance review (Count VI). These claims fail as a matter of law

---

[12] Rein embeds in his age counts allegations of retaliation under G.L.c. 151B and the ADEA, and "threats, intimidation and coercion" in violation of G.L. c. 151B § 4(4A) and the Mass. Civil Rights Act ("MCRA"). Complaint ¶¶ 44-5, 53, 59-60, 66-7. These claims, which do not set forth separate counts, are based on the disputed allegation that Stark called Rein during the severance negotiations to encourage him to conclude the protracted negotiations, take an enhanced severance package, sign a release, and move on. Rein claims that Stark said if Rein brought suit, Stark would hire an "army of lawyers" and "take severance off the table." SOUF ¶91; Complaint, ¶ 36; Rein Dep. at 170-72; Stark Dep. at 181-88. Rein cannot show the adverse action required for a retaliation claim because it is undisputed that he in fact was paid his full salary during the negotiations, through April 9, 2004 *plus* the entire severance package to which he was entitled without signing a release, and that he voluntarily declined to sign the release. SOUF ¶¶89-95. *See Cathey* v. *Fallon Clinic, Inc.*, 2001 Mass. Super. LEXIS 237, at *15-16 (withdrawing severance after MCAD charge not retaliation because lawful to condition severance on release and plaintiff refused to sign); *Jackson* v. *Lyons Falls Pulp & Paper, Inc.*, 865 F. Supp. 87, 95 (N.D.N.Y. 1994) (no retaliation when employer refused certain severance after plaintiff declined to sign release). *See also Cronin* v. *ITT Corp.,* 737 F. Supp. 224 (S.D.N.Y. 1990); *Miller* v. *Eby Realty Group*, 241 F. Supp. 2d 1247, 1256 (D.Kan. 2003). Further, the alleged statement, which is a hyperbolic but nonetheless valid statement of Motorola's rights and the consequences of failing to sign the release, does not rise to the level of threats, intimidation or coercion. *See, e.g., Haufler* v. *Zotos*, 446 Mass. 489, 505-06 (2006) (not threats, intimidation or coercion for defendant to do something within legal rights). Moreover, several courts have held that MCRA claims arising out of employment disputes are preempted by G.L.c. 151B. *See, e.g. Bergeson* v. *Franchi*, 783 F. Supp. 713, 721 (D.Mass. 1992); *Balakrishnan* v. *Western New England College.*, 1993 Mass. Super. LEXIS 169, at *3-4. Finally, the threats, coercion and intimidation claim cannot stand against Kofman for the further reason that there is no allegation that he was even involved in the severance negotiations, much less that he pressured Rein to release any claims.

because Rein had an expressly at-will employment relationship and there was no promise to retain him that could give rise to liability for breach of contract or promissory estoppel.

      **A.**      **Plaintiff Had No Employment Contract with Motorola.**

           **1.**      **Rein's Employment Was Expressly At-Will.**

Rein concedes that he understood that he was an employee at will. SOUF ¶10. *Gasior* v. *Mass. Gen. Hosp.*, 446 Mass. 645, 650 (2006) (employment in Massachusetts presumptively at-will). Rein signed an employment application that expressly stated that he was an at-will employee who could be terminated any time, that no subsequent oral statement could create an employment contract, and that no one other than the Motorola Vice President and Director of Human Resources had authority to change the at-will nature of the employment. SOUF ¶9. Rein does not contend that the Vice President and Director of Human Resources ever entered into any agreement to change the nature of the at-will relationship.

           **2.**      **Stark Did Not Promise Employment for a Definite Term, and Lacked Authority to Do So.**

Rein contends that Motorola breached an oral agreement to employ him until at least June 30, 2004. This claim is based on a pep talk that Stark gave the group in October 2003, following the second of two business plan presentations by the group. Complaint, ¶72. It is undisputed that Stark agreed to allow the still-experimental group to continue (after asking them to rework and embolden their business plan), and that in doing so, he discussed the group's past hardships, his need to see progress, and his intention to revisit the group's progress regularly and in June 2004. SOUF ¶¶31-40. Rein further alleges that Stark told the group that he wanted them to be excited about their future at the company, and to know they had the company's full support, but that if positive trends were not evident by June then the company might be forced to make hard decisions about the group's future. Complaint, ¶18. At deposition, Rein embellished his

previous accounts to add that Stark said the group should not worry about their jobs.  Rein Dep. at 273-74, 293-96.  Under these facts, there was no oral contract.

To be enforceable, a contract must be sufficiently definite as to all essential terms so that the parties' intentions may be discovered and the nature and extent of their obligations ascertained.  *Cygan* v. *Megathlin*, 326 Mass. 732, 733-34 (1951).   Under this standard, Stark's pep talk – even as described by Rein – is simply too indefinite as a matter of law to give rise to an enforceable oral contract for a definite term of employment.  Rein, a sophisticated business executive who had previously worked at a failed start-up, had lived through numerous restructurings at Motorola, and worried throughout his employment that the group could be disbanded altogether (as it was, only months after his termination).  SOUF ¶¶13, 20, 23, 32, 35, 37, 42-43, 111.  Rein conceded he knew "Stark or anyone" could reassess the group prior to June 2004 if it was not meeting its plan, and that he himself was concerned that the group was *not* on track.  SOUF ¶¶42, 51.   Courts have not hesitated to grant summary judgment to the employer where, as here, a plaintiff rests his contract claim on mere expressions of hope for the future rather than a definitive promise of continued employment for any period of time.  *Tennaro* v. *Ryder Sys., Inc.*, 832 F. Supp. 494, 501 (D.Mass. 1993) (summary judgment on contract claim premised on annual reviews and comment on promising future at company); *Engler* v. *C.R. Bard, Inc.*, 1997 WL 136249, at *4-6 (D. Mass.) (summary judgment on contract claim premised on statements by acquirer of plaintiff's company that existing management would continue to run company post-acquisition); *Webber* v. *Frelonic Corp.*, 1994 Mass. Super. LEXIS 28, at *6-7 (summary judgment on contract claim premised on remark, "if you last for more than the year, the chances are you will be with this company for life"); *Lehmann* v. *AAA Cincinnati*, 1999 Ohio App. LEXIS 1208, at *6 (summary judgment on contract claim premised on boss' stated intention to reevaluate at-will employee in three months).

13

Further, Stark had no actual or apparent authority to bind Motorola to a contract for a definite time, particularly where Rein had agreed in writing that no one other than the Vice President and Director of Human Resources could alter the at-will relationship. *See, e.g., Theos & Sons* v. *Mack Trucks, Inc.*, 431 Mass. 736, 743-45 (2000) (apparent authority requires words or conduct by *principal* to indicate principal's consent to agent's authority to bind principal); *Goldman,* 985 F.2d at 1121-22 (personnel officer with hiring power had no apparent authority to enter into lifetime employment contract). Defendants are entitled to judgment as a matter of law on Rein's contract claim.

### B. Rein Has No Viable Claim for Promissory Estoppel.

Rein does not have a viable promissory estoppel claim either. In order to succeed on a promissory estoppel claim, Rein must prove that he reasonably relied on an "unambiguous promise" by Motorola. *Upton* v. *JWP Businessland*, 425 Mass. 756, 760 (1997); *Rhode Island Hosp. Trust Nat'l Bank* v. *Varadian*, 419 Mass. 841, 848 (1995). Thus, Rein must establish that Motorola "made a promise, offer or commitment that was sufficiently definite and specific that [it] should have anticipated that it would reasonably induce reliance on the part of the person to whom it was made." *Engler*, 1997 WL 136249, at *5; *see also Varadian*, 419 Mass. at 849-50. Even a plaintiff's "well-founded hope" is insufficient to support reasonable reliance. *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 94 (1987). Further, Rein must show that he reasonably relied on the promise to his detriment. *Id.* at 93-94.

Rein claims that three events gave rise to a binding promise[13] by Motorola to employ him through June, 2004: (1) Stark's October 2003 pep talk; (2) a statement in his review that "2004 brings an opportunity for Jay's capabilities to come through more clearly and for MPS to

---

[13] Rein has walked this ground before: he sought money from his last employer in part based on his allegation that the employer had led him to believe he would be employed for a particular period and that he had foregone alternative employment as a result. SOUF ¶¶11-12.

14

continue to create value for CGISS"; and (3) the January 2004 bonus. Complaint, ¶¶ 77-80. None of these, alone or together, can support a viable claim for promissory estoppel because there was no "unambiguous promise" to continue his employment, Rein did not in fact rely to his detriment on any promise, and any reliance would have been unreasonable as a matter of law.

### 1.     There Was No Unambiguous Promise of Continued Employment.

First, there was no unambiguous promise to continue Rein's employment for a definite period. As demonstrated above, Stark's pep talk to the whole group in October 2003 was a statement of encouragement rather than a definite promise to employ Rein, in particular, until June 2004. *Tinkham* v. *Jenny Craig, Inc.*, 45 Mass. App. Ct. 567 (1998) (no promissory estoppel where plaintiff signed "at will" statement and understood contingencies attached to promises of promotion); *Engler*, 1997 WL 136249, at *4 (repeated statements that acquirer would keep management of acquired company could not have been understood by experienced businessperson to be a firm promise of employment).

Even more obviously, a general statement in a review about an opportunity to create value in 2004 is not a promise of employment for any period; a contrary holding would negate the at-will status of any employee with even a faintly positive review. *Pitts* v. *Lucey*, 1995 Mass. Super. LEXIS 85, at *5-6 (no promissory estoppel based on regular reviews or statement that plaintiff's position had excellent growth potential); *DiGaetano* v. *Lawrence Firefighters Federal Credit Union*, 2002 Mass. Super. LEXIS 447, at *15-16 (no promissory estoppel based on having plaintiff prepare 5-year profit analysis and newsletter stating he would take department "into the new millennium," especially when he signed at-will statement); *Barth* v. *CBIS Federal, Inc.*, 849 F. Supp. 864, 870-71 (E.D.N.Y. 1994) (assessment of employee's ability to meet goals in upcoming review period does not equate a promise to employ during that period).

Neither does a modest bonus given to the entire group, even if termed a "retention bonus,"[14] convey a firm promise that Rein, in particular, would be retained for any definite period of time. SOUF ¶¶62-64; Complaint, ¶21. *See, e.g. Kelly* v. *Stamps.com*, 135 Cal. App. 4th 1088, 1102-3 (2005) (payment of first half of two stage "retention bonus" not promise of continued employment). The fact that an employee who received the same so-called "retention bonus" in January 2004 had been terminated by Motorola in December 2003 attests to the fact that the bonus was not a promise to retain any particular employee into 2004. SOUF ¶65.

### 2. Rein Did Not Rely on any Promise to His Detriment and any Reliance Would Have Been Unreasonable as a Matter of Law.

The undisputed facts show that Rein did not actually rely on any alleged promise. Rather, unbeknownst to any of the Defendants, Rein actively pursued alternative employment after Stark's pep talk. SOUF ¶59-61. While he claims that he relied on Motorola's promises by "declining a lucrative job offer from Invoke on January 18, 2004," Complaint, ¶ 80, it is undisputed that he told Invoke at the time that he was declining because the job offered a much lower salary. SOUF ¶60. *See Hinchey* v. *Nynex Corp.*, 144 F.3d 134, 143-44 (1st Cir. 1998) (no promissory estoppel when promises did not induce plaintiff to forego other employment). Moreover, any reliance on the pep talk, bonus or review by Rein – a seasoned executive who knew he was joining a startup group within Motorola when he took the job and was well aware of its risks – was unreasonable as a matter of law. SOUF ¶10; *Coll* v. *PB Diag. Sys., Inc.*, 50 F.3d 1115, 1124-25 (1st Cir. 1995) (reliance on promised compensation plan unreasonable as a matter of law); *Woolf* v. *Sapient Corp.*, 2001 Mass. Super. LEXIS 657, at *16 n.4 (reliance on comments to come "retire with us," and that "we've never lost a vice-president yet"

---

[14] It is undisputed that the bonus was intended to make up for a perceived inequity in bonuses for the group. SOUF ¶¶62-64. Rein claims that Kofman said it was a retention bonus because "the company wants us to remain focused and excited to continue to strive to achieve our goals in 2004." Rein Dep. at 350-51.

unreasonable as matter of law).[15]  Defendants are entitled to summary judgment on Rein's promissory estoppel claims because he cannot establish detrimental, or reasonable, reliance.

### III. Rein Cannot Show Interference with Advantageous Relations.

Finally, Rein claims that Kofman and Stark interfered with his relationship with Motorola by eliminating his position and undermining his effort to get a different job within Motorola. Complaint, ¶¶85, 90.  He claims that the interference was motivated by age bias and a desire to punish Rein for refusing to accept an enhanced severance package in exchange for a release, or for claiming there was a potentially unlawful motive for his termination.  He claims Kofman was motivated by his desire to eliminate a "demonstrably superior peer."  Complaint, ¶¶86, 91, 100. He also claims "on information and belief" that Motorola interfered with his relationship with the recruiting firm Russell Reynolds.  Complaint, ¶¶94-99.  The record evidence establishes that none of these claims withstand scrutiny.

To prevail in a claim for interference with advantageous relations, Rein must show: (1) he had an advantageous relationship with a third party; (2) the Defendants knowingly induced the third party to break the relationship; (3) the interference was improper in motive or means; and (4) he was harmed.  *Alba* v. *Sampson*, 44 Mass. App. Ct. 311, 314 (1998).   In the case of discharge by a supervisor, to show the interference with the employer was "improper in motive or means," Rein must demonstrate that the supervisor acted with actual malice, or a purpose unrelated to any legitimate corporate interest.  *Id.; Gram* v. *Liberty Mutual Ins. Co.*, 384 Mass. 659, 663-4 (1981); *Shea* v. *Emmanuel College*, 425 Mass. 761, 764 (1997).  Here, Rein cannot show any malicious interference with his Motorola employment relationship, and he has not

---

[15] Nor has Rein shown that declining the Invoke offer was to his financial detriment.  Had he accepted the Invoke job when it was offered in January 2004, he would have made about $130,000 in base compensation.  Instead, he was paid through April 9, 2004 by Motorola at a salary of over $190,000, received a severance package of over $30,000, and went on to accept a job later in 2004 that paid $150,000 in base compensation.  SOUF ¶¶8, 60, 102.

produced any evidence at all that the Defendants interfered with any relationship with Russell Reynolds.

### A. The Claims against the Individual Defendants Must Fail.

As demonstrated above, there is no evidence that the termination decision was made with malice. There is strong evidence that the termination was based on a legitimate corporate interest; there is no evidence of any age bias. The termination *preceded* the negotiations concerning the severance and release and any suggestion by Rein of a legal claim. Kofman was not a peer of Rein's, but rather had been hired as a Managing Principal and was later chosen by the group as its supervisor. SOUF ¶¶ 16, 45-47. Moreover, allegations that Kofman acted out of personal dislike or self-interest, or even that his decision was unfair, are insufficient as a matter of law to show actual malice. *Gram*, 384 Mass. at 664-65 (no malice where supervisors disliked plaintiff even if investigation was "sloppy and unfair"); *King* v. *Driscoll*, 418 Mass. 576, 587-88 (1994) (no malice where supervisors fired plaintiff out of "ill will, spite and greed, intending to secure more power and money for themselves"); *Alba*, 44 Mass. App. Ct. at 314 (no malice where supervisor "uncivil" and derogatory to plaintiff); *Speen*, 102 F.3d 625 at 634-36 (supervisor's derogatory comment about plaintiff's age insufficient to show malice); *Portnoy, et al.* v. *440 Financial Group of Worcester, Inc.*, 938 F. Supp. 91, 94-95 (D. Mass. 1996) (no malice where defendant acted to protect own job).

Neither can Rein show that the Defendants interfered with any prospective position at Motorola. The undisputed facts demonstrate that the only person at Motorola who contacted Kofman or Stark to discuss Rein's qualifications was Janiece Webb, that Stark referred her to Kofman, and that Kofman simply gave his honest opinion of Rein's strengths and weaknesses.[16]

---

[16] Rein claims Kofman told Webb he was not a team player, was not a good fit for the group and that he couldn't recommend taking Rein on. Rein Dep. at 508-09.

SOUF ¶¶98-99.  "In response to an inquiry about a former employee," a supervisor has "a privilege, if not a duty, to speak the truth even if disclosure of the facts might negatively affect the subject's job prospects."  *Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 7-8 (1994); *Martinez* v. *New England Medical Center Hospitals, Inc.*, 307 F.Supp.2d 257, 267-68 (D. Mass. 2004).

Further, even if Rein could show that Kofman or Stark interfered with prospective opportunities at Motorola, he cannot show any malice because he cannot establish age bias and personal dislike or self-interest, even if established, are insufficient to prove malice.  Moreover, Rein cannot show that any conversation with a prospective employer was linked in any way to, or even postdated, the negotiations over the severance and release or the filing of a claim; in fact, Kofman, the only one who provided a single reference for Rein, was not even involved in the severance negotiations.  SOUF ¶95.  Finally, Rein cannot show any harm, because there is no evidence of any job opening, including in Webb's department, for which he would have been selected but for interference.  SOUF ¶97-101.  *See Galdauckas* v. *Interstate Hotels Corp. No. 16 et al.*, 901 F.Supp. 454, 466 (D.Mass. 1995) (fact that plaintiff listed former employer as reference on job applications and did not get a job insufficient as matter of law to show intentional interference).

    **B.**  **Motorola Did Not Interfere with any Relationship with Russell Reynolds.**

Rein's claim that Motorola intentionally interfered with his relationship with Russell Reynolds is utterly baseless.  There is not one shred of evidence that anyone at Motorola interfered with any relationship he had with Russell Reynolds.[17]  There is no evidence of *any* communications between Russell Reynolds and Motorola about Rein, or even that anyone at Motorola knew that he had any ongoing relationship with that firm.  There is also undisputed

---

[17] Nor is it at all clear that his relationship with Russell Reynolds – which consisted of the firm's placement of him one time in one job and quarterly phone calls – constituted an "advantageous relationship" that the law protects. SOUF ¶6, Rein Dep. at 482-83.

evidence that his contact at Russell Reynolds had no positions for which he might be a suitable candidate at the time. SOUF ¶¶103-108. Rein's base speculation that someone from Motorola must have disparaged him or else Russell Reynolds would have been more responsive to his calls cannot survive summary judgment. *See* Int. Ans. No. 16. For all of these reasons, the intentional interference claims must fail.

## CONCLUSION & REQUEST FOR ORAL ARGUMENT

For the foregoing reasons, the Defendants respectfully request that this Court grant it summary judgment on all counts of the Complaint. The Defendants request a hearing on the motion.

    MOTOROLA, INC., CLYDE KOFMAN, and JUERGEN STARK,

    By their attorneys,

    /s/ Kristin Glennan McGurn
    Richard L. Alfred (BBO# 015000)
    Kristin G. McGurn (BBO# 559687)
    SEYFARTH SHAW LLP
    World Trade Center East
    Two Seaport Lane, Suite 300
    Boston, MA 02210-2028
    Telephone:   (617) 946-4800

Dated: August 1, 2006

### Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by ECF and first class mail on August 1, 2006.

    /s/ Kristin G. McGurn
    Kristin G. McGurn

BO1 15792038.2