UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MOTOROLA, INC., CLYDE KOFMAN )<br>and JUERGEN STARK )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 04-12580 NG |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SANCTIONS

Defendants Reply because Plaintiff's Opposition merely posits misleading, implausible hypotheses, unsupported by any evidence. It offers no reason to deny to Defendants' request for sanctions.[1] Instead, the Opposition makes outrageous and unsupported allegations, including the totally unfounded charge that Defendants have "shown a willingness to alter and delete evidence." There is *absolutely* no such evidence, and Plaintiff offers none.[2] Defendants' request for sanctions should be granted.

**A.  Plaintiff's agrees that Motorola's expert is credible and his conclusions are accurate.**

Plaintiff's concedes that Motorola's expert, Kroll Ontrack, would not "deliberately falsify" data. Opposition at 8. Accordingly, the following facts are undisputed:

- Although there was no external damage to the Laptop's hard drive, it had internal mechanical problems and one damaged sector;

- Notwithstanding this damage, Kroll recovered 99.99% of the drive;

- There is only one partition on the drive, and no active or deleted files;

---

[1] Indeed, Plaintiff concedes that he can offer no proof that legitimately implicates Defendants. Opposition at 14 n.42.

[2] To support this irresponsible assertion, the Opposition relies not on any evidence concerning the Laptop inspection but solely on the unproven allegation in Plaintiff's Complaint that Defendant Stark threatened to "manufacture the documentation necessary to support the Plaintiff's termination." Stark denies the allegation and Plaintiff's own testimony adds nothing. Rein Dep. at 169:16-18, attached as Exhibit A to the McGurn Declaration filed on August 1, 2006 with Defendants' pending Motion for Summary Judgment [Docket No. 57].

- Only metadata (created when a drive is partitioned) and very few system-added files exist on the drive and the remaining sectors were zeroed out, with a hex 0x00 pattern; and

- The drive was formatted according to the BIOS date/time of 8/22/2005 21:54:04 (as evidenced by metadata) and the date and time for all other files and folders is 8/22/2005 21:54:38.[3]

On August 22, 2005, the Laptop was in Plaintiff's exclusive possession and control and his deposition was underway. As this Court's December 29, 2005 Order ("Order") found, suspicion is raised, and bad faith can be inferred. Order at 11, 13.

**B.    Plaintiff's theories are implausible and unsupported by any evidence.**

1.    **Deactivation.**  Plaintiff offers no evidence that the appropriate steps that Motorola took to deactivate Rein, a former employee, from its network systems resulted in the Laptop's current condition. Relying solely on his own speculations, Plaintiff asserts that Motorola might have deleted the data stored on the Laptop when it disabled Rein's access to its systems in April 2004. Plaintiff concedes, however, that he "does not have any specific information that would suggest" that Motorola did so, or possessed technology capable of doing so. Opposition at 8 n.20. Indeed, there is sworn testimony to the contrary, confirming that Motorola did not do so, and simply could not have caused the Laptop's current condition remotely.[4] Plaintiff's unfounded theory also fails to account for the August 22, 2005 date associated with the current Laptop files – a date that bore no significance as of April 2004.

2.    **Time/Date Stamp**.  Likewise, Plaintiff's theories about the time/date stamp on the Laptop's metadata and files ignore the evidence. Plaintiff contends that during the year and a half that he failed to return the Laptop to Motorola, its clock battery could have expired, thereby rendering the date/time stamp inaccurate. Opposition at 9. Of course, even assuming that the internal battery would recharge once the Laptop was recharged (a proposition for which Plaintiff

---

[3] Since all other data sectors had a hex 0x00 pattern, Kroll concluded that the drive either was a replacement or all data sectors were wiped before the new partition was formatted. For reasons that he explained at deposition, Charles Lehwald ("Lehwald"), Senior Forensic Analyst for Motorola Information Protection Services ("MIPS"), concluded that the drive was wiped. See *infra* at 4 n.9.

[4] Lehwald Dep. 83:22-24; 175:23-176:2; 177:6-12; 178:1-7, attached as Exhibit H to the McGurn Declaration, filed in support of the Renewed Motion [Docket No. 50]. Indeed, Plaintiff offers no evidence that any such technology, allowing for a remote physical hard drive to be remotely "zeroed out", exists.

offers no technological support)[5] and the clock thereafter restarted, the theory utterly fails to account for the coincidence of the August 22, 2005 date.

Further, without a shred of supporting evidence, Plaintiff contends that Motorola may have reset the Laptop's clock to August 22, 2005 in order to implicate him. The theory completely ignores the following facts:

- Kroll and Lehwald both explained that the time/date stamp correlates to the computer on which the reformatting is accomplished. (Exhibit I to the McGurn Affidavit, filed with Defendants' Initial Motion to Compel and for Sanction [Docket No. 18] ("Motorola's Report")); Exhibit J to McGurn Declaration [Docket No. 50] ("Kroll's Report")). Here, the evidence reveals that the reformatting occurred on a computer other than the Laptop.[6] Accordingly, the lengthy period of inactivity and potential expiration of the clock battery, as well as the time/date stamp, of the Laptop are irrelevant.

- Lehwald provided a sworn affidavit in which he confirmed that he did not alter the clock of the Laptop or any other computer in connection with his investigation. (Affidavit of Charles Lehwald, filed with Defendants' Renewed Motion [Docket No. 47]).

- As a certified forensic examiner for Motorola, Lehwald's profession requires him to comply with the Code of Ethics established by the International Society of Forensic Computer Examiners, which comprise *high ethical standards* and are designed to protect the *certification process, the individual certificant and finally the client consumer*. See Exhibit C to Supplemental McGurn Declaration.[7] Needless to say, Lehwald's job requires him to comply with Motorola's Code of Conduct as well. Exhibit D to Supplemental McGurn Declaration. Lehwald simply had no motive to falsify data, and every reason not to.

3. **Damaged Heads.** Similarly, Plaintiff's contention that the drive's damaged heads would have precluded him from deleting and reformatting the drive steadfastly ignores the evidence. Lehwald testified that, considering the recovered metadata and system files, the drive heads very likely were damaged *after* the reformatting occurred (likely during transport in Rein's

---

[5] See Lehwald Dep. at 169:10-17, attached as Exhibit A to Supplemental McGurn Declaration filed herewith.

[6] See Lehwald Dep. at 167:3-13, attached as Exhibit H to the McGurn Declaration. This is far from a "new" position. *See* Opposition at 9, n.24. The very *first* investigative report that Motorola issued revealed that when Rein returned the Laptop to Motorola it was missing a necessary adapter. The drive was loose in its bay, secured only by a replaced retention screw. These facts substantiate Lehwald's conclusion that Rein used another computer to accomplish the reformatting. Motorola's Report was issued on October 27, 2005 but supplemented an earlier report (which Defendants shared with Rein's counsel on October 19, 2005), days after the inspection was completed. Exhibit B to Supplemental McGurn Declaration.

[7] See also Lehwald Dep. at 14:12-14, attached as Exhibit A to the Supplemental McGurn Declaration.

3

suitcase,[8] precisely because the drive adapter that was meant to secure and protect the drive was missing).

        4.    **New Drive**.  Finally, Plaintiff seizes language in the Kroll Report to argue that the recovered drive's hex0x00 pattern might suggest that the drive installed in the Laptop while Rein worked at Motorola had been replaced with a new drive.  The Opposition conveniently mischaracterizes Lehwald's testimony on the point.[9]  Moreover, even if the drive was a new one, despite Lehwald's testimony casting doubt on such a theory, there is no evidence that anyone at Motorola replaced it.  The Opposition even concedes that Rein could have done so himself, resulting in the same deprivation of evidence – and rendering sanctions appropriate.

**C.**    **Motorola had no motive to destroy data on the Laptop.**

The Opposition acknowledges that Kroll's Report is consistent with the conclusion that Rein wiped clean and reformatted the Laptop's hard drive.  Opposition at 8.  Rein returned the Laptop to Motorola during pending litigation.  In that context, Motorola had a legitimate interest in reviewing the contents of its hard drive – and had absolutely no motive to destroy the very information that it sought to recover.[10]  Each step that Lehwald took with respect to the Laptop was wholly consistent with MIPS policies[11] and, for the reasons discussed above, Lehwald had no stake in the litigation and no motive to falsify his findings or conclusions.  Lehwald's

---

[8] Lehwald Dep. at 142:3-4; 187:2-5, 2-188:1, attached as Exhibit A to the Supplemental McGurn Declaration; Rein Dep. at 778:5, attached as Exhibit D to the McGurn Declaration [Docket No. 50].

[9] Lehwald's cited testimony does *not* state that a new drive "would have the same 'hex0x00 pattern.'" Lehwald Dep. 163-165, attached to the Coster Affidavit [Docket No. 52].  Further, Lehwald specifically stated that his research led him to conclude that the drive was of a size and model that suggested that it was an OEM [original equipment manufacturer] drive "in that 2002 time frame when the laptop was originally manufactured." Lehwald Dep. at 165.  Plaintiff apparently misconstrued the testimony to mean that Lehwald conducted this research in *response* to Kroll's Report (May 2006), at a time when he did not have the hard drive in his possession (and could not confirm the model number). (Opposition at 12 n.35). Lehwald never so testified and, in fact, his web-based research occurred in connection with Motorola's Report (October 2005). Lehwald Dep. at 153:23-154:3, attached as Exhibit A to Supplemental McGurn Declaration.

[10] Plaintiff asserts that the destruction of this evidence, the resulting motion practice, expert fees and supplemental discovery comprise the "single best thing that has happened to Defendants in this litigation." Opposition at 13. Nothing could be further from truth or reason.  Plaintiff's conduct concerning the Laptop, and his intransigence in response to Motorola's legitimate inquiries regarding its condition, have unnecessarily and significantly burdened Defendants in this litigation.

[11] Lehwald Dep. at 49:8-15; 110:1-6; 121:6-10, attached as Exhibit H to the McGurn Declaration.

decision to obtain authorization to engage an outside expert (at significant expense) is entirely consistent with his conclusions. Lehwald simply had no motive to falsely accuse Rein.[12]

### D.   Defendants are entitled to appropriate sanctions.

Weighty evidence compels a finding that Plaintiff intentionally destroyed electronic data relevant to this litigation. This Court noted in its Order that since the Laptop's data is now unavailable, it is impossible to determine precisely what evidence has been lost. Order at 12. Still, Defendants have produced evidence from which this Court can conclude or infer that Rein did not produce in hard copy certain relevant documents that he saved only to the drive; such documents are not otherwise available to Defendants; and the prejudice to Defendants resulting from the Laptop data's destruction therefore cannot be cured.[13] Sanctions are appropriate.

Plaintiff argues that if the Court awards monetary sanctions against him, it must omit certain amounts for which he believes he should not be held responsible. These include: $1,000 in Kroll charges for deletion of archived data[14]; $2,496.00 for Kroll's analysis of Lehwald's conclusions[15]; and $670.00 for expediting the transcription of Rein's and Lehwald's deposition testimony.[16] *All* expenses related to the Laptop inspection resulted *directly* and *exclusively* from

---

[12] Plaintiff makes no claim (and surely could not prove) that either of the individual defendants, whom he alleges harbored some animosity toward him, were in any way involved in the Laptop inspection. See also Lehwald Dep. at 94:19-23, attached as Exhibit A to Supplemental McGurn Declaration.

[13] See Memorandum in Support of Renewed Motion at 5-7, 9-10.

[14] At Motorola's request, and consistent with typical confidentiality protocol, Kroll deleted all data that it recovered and/or prepared for Motorola at each phase of its involvement in the inspection. Kroll appropriately charged Motorola twice for such charges, since it performed its analysis in separate phases.

[15] Kroll was engaged during its second phase of work simply because Plaintiff had insisted on Laptop Inspection Protocols that required Motorola's "outside expert" (i.e. Kroll) to provide the drive's hash value, in order to confirm that all experts were reviewing the same data. (As it turned out, this work was unnecessary since, remarkably, Plaintiff elected not to have his expert recover the drive or conduct an independent review. (Opposition at 8 n.18)). At the same time, Motorola asked Kroll to review Lehwald's finding. The associated charges are appropriately included in the requested sanctions, but Defendants agree to omit them from the calculus because they were not expressly required in order to provide the hash value.

Had Plaintiff's expert performed any analysis at all on the equipment that Motorola shipped to him (including the hard drive) pursuant to the parties' stipulated protocols, he would have confirmed for Plaintiff that the evidence seizure forms' model number reference indeed included a typographical error, as he correctly suspects. Opposition at 12. The Hitachi website that Plaintiff apparently consulted in order to provide Exhibit 6 to the Coster Affidavit [Docket No. 52] provides the same confirmation. It reveals no such thing as a D**S**23-DA-20F drive.

[16] The reporters at the Rein and Lehwald depositions billed $384.00 and $285.00, respectively, for this service. Supplemental McGurn Declaration at ¶ 6.

the related facts that (i) when Rein returned the Laptop to Motorola, MIPS could not recover its drive and (ii) when Kroll did so, it contained no active or deleted files. It is appropriate to hold Rein responsible for all ensuing reasonable charges related to the Laptop inspection. Nevertheless, Motorola agrees that certain decisions that it made during the Laptop inspection, while reasonable, increased expenses.[17] Therefore, Defendants are willing to reduce the amount of requested monetary sanctions by $ 4,166.00.

Plaintiff's Opposition is grounded on his absurd theory that the Laptop, which he used every day while working for Motorola[18], "simply is not a source of potentially relevant evidence." Opposition at 16.[19] The Order and the Federal Rules recognize Defendants' entitlement to discover Rein's responsive electronic documents.[20] Plaintiff's assertion that there was "nothing on the laptop that prejudiced his claims," aside from being incapable of proof, fundamentally misconstrues Defendants' rights in discovery. Defendants were entitled to review any electronic evidence stored on the Laptop that responded to discovery that was reasonably calculated to lead to admissible evidence regarding Plaintiff's claims or Defendants' defenses.[21] The Plaintiff deprived Defendants of this opportunity, and sanctions are warranted.

---

[17] Other decisions reduced them, such as conducting Lehwald's deposition in Boston.

[18] Rein Dep. 30:18-24; 31:17-24: 32:13-24; 33:1-9; 752:19-753:8, attached as Exhibit D to McGurn Declaration [Docket No. 50].

[19] Incredibly, Plaintiff asserts that Motorola "effectively made it impossible for Rein to return the Laptop." Opposition at 3. See Exhibit A and B to McGurn Affidavit [Docket No. 18].

[20] Thus, regardless of Plaintiff's arguments regarding the scope of Fed. R. Civ. P. 34(a), there can be no dispute that Motorola was entitled to the return of its property, and to the production of electronic documents including those housed on the Laptop.

[21] Plaintiff's testimony does not support the Opposition's categorical statement that "the final versions" of all documents saved in draft form on the Laptop "would have been presented to Rein's colleagues or superiors." Opposition at 15. See *supra* at 6 n.17.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Memorandum in Support of their Renewed Motion for Sanctions, Defendants respectfully move for an order granting monetary and evidentiary sanctions against the Plaintiff.

Respectfully submitted,

MOTOROLA, INC., CLYDE KOFMAN, and JUERGEN STARK,

By their attorneys,

/s/ Kristin G McGurn
Richard L. Alfred (BBO# 015000)
Kristin G. McGurn (BBO# 559687)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document was served upon the attorney of record for the plaintiff via ECF and by mailing a copy of same, postage prepaid, to John G. H. Coster, Attorney at Law, 92 State Street, Suite 900, Boston, MA 02109 on August 10, 2006.

/s/ Kristin G. McGurn