UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN, | ) |
|                 Plaintiff, | ) CIVIL ACTION NO. 04-12580 NG |
| v. | ) |
| MOTOROLA, INC., CLYDE KOFMAN and JUERGEN STARK, | ) HEARING OCTOBER 23, 2006 |
|  | ) LEAVE TO FILE GRANTED ON SEPTEMBER 28, 2006 |
|                 Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants submit this reply because Plaintiff's Opposition ("Opposition") distorts and misstates the record and inaccurately states the law.[1] The Opposition steadfastly ignores critical undisputed evidence, including the legitimate business reasons for the elimination of Rein's position during one of many Motorola Professional Services ("MPS") reorganizations. In the end, despite Plaintiff's efforts to advance a concocted theory that his termination resulted solely from a company-wide conspiracy born of malice harbored by a number of Motorola managers,

---

[1] In this way, the Opposition is reminiscent of Rein's Opposition to Defendants' Motion for Sanctions, which similarly attempted to weave conspiracy theories out of thin air. Defendants were forced to file the Motion for Sanctions because when Rein, after beginning his deposition, finally returned the Motorola laptop that he had used during his employment, Defendants' experts determined that it had been wiped clean and reformatted while in Rein's exclusive possession. Defendants were thus deprived of the opportunity to assess relevant data admittedly stored there, including for example documents supporting the legitimacy of Defendants' reasons for selecting Rein's position for elimination, which could have impacted this dispositive Motion. Courts have not hesitated to impose significant sanctions for similar infractions. *See e.g. Plasse v. Tyco Elec. Corp.*, 2006 U.S. Dist. LEXIS 65463 (D. Mass. Sept. 7, 2006) (dismissal); *Krumwiede v. Brighton Associates, L.L.C.,* 2006 WL 1308629 (N.D. Ill. May 8, 2006) (same); *Spiller v. U.S.V. Labs,* 842 F.2d 535, 537 (1st Cir. 1988) (same); *Turner v. Hudson Transit Lines,* 142 F.R.D. 68, 74 (S.D.N.Y. 1991) (adverse inference); *Arndt v. First Union Nat'l Bank,* 613 S.E.2d 274 (N.C. Ct. App. June 2005) (same); *Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.,* 132 F.R.D. 523 (D. Ariz. 1990) (fees and expenses).

the Opposition plainly fails to reveal such evidence. It raises <u>no</u> material factual dispute capable of defeating summary judgment.[2] The record evidence unquestionably shows:

- The decision to again reorganize MPS and eliminate the position that Rein held for less than two years, in lieu of another position, bore absolutely no relationship to the fact that Rein had just turned forty, but rather was based on undisputed and legitimate business factors;

- No one expressly or impliedly agreed or promised to alter the at-will nature of Rein's employment, and Rein offers no evidence of reasonable reliance; and

- No one interfered with Rein's redeployment or outside job opportunities or legal rights.

Ultimately, the Opposition does no more than outline Rein's disagreement with his supervisors' assessment of his skills and Motorola's business needs. Even <u>if</u> sincerely held, Rein's disagreement is insufficient to defeat summary judgment. Because Rein fails to offer any evidence of age bias, of enforceable promises of employment for a definite period, or of intentional interference, Defendants are entitled to judgment as a matter of law on each of Plaintiff's counts.

**1.    Defendants Are Entitled to Summary Judgment on Rein's Age Claims.**

    **a.    Rein Has No Prima Facie Age Claim.**

Seeking to manufacture some *prima facie* age case, Rein argues that the restructuring that resulted in his termination was not a reduction in force ("RIF"). This is wrong. A RIF occurs when an employer eliminates even <u>one</u> position because of business considerations, such as a desire to reorganize functions -- whether or not the reorganization is driven principally by an effort to reduce costs. *See LeBlanc* v. *Great American Ins. Co.*, 6 F.3d 836, 845 (1st Cir. 1993) (reorganization resulting in plaintiff's termination was a RIF even though additional employees were hired in same job in different region); *Lewis* v. *City of Boston*, 321 F.3d 207 (1st Cir. 2003)

---

[2] Defendants decline Rein's invitation to indicate which of his 65 paragraphs of "Additional Material Facts," is disputed. PSMF at 16 n.2. While the statement is rife with misstatements, none of the "facts" Rein propounds is material or capable of defeating summary judgment for Defendants.

(applying RIF *prima facie* test when plaintiff's position was eliminated as part of reorganization that created new position that included some of plaintiff's duties).

Further, Rein's claims that Defendants sought to replace him with a younger employee are demonstrably false. Rein misleadingly emphasizes and quotes certain testimony and exhibits,[3] attempting to create the false impression that Defendants admitted to "replacing" Rein with more junior employees. Opposition at 4-5, PSMF ¶¶ 161, 163, 175. The cited testimony says no such thing. Instead, it attests to the undisputed fact that Rein's position was eliminated and never refilled, and that the contemplated new, "delivery services" positions – at a lower compensation and grade level – were never realized and MPS was disbanded.[4] Defendants' Statement of Undisputed Facts ("SOUF"), ¶¶ 66-69, 78, 110-12; Kofman Dep. Ex .11 (Ex. T to McGurn Decl.). Of course, this provides no evidence of age-related bias since compensation and experience levels are analytically distinct from age.[5] *See* Memorandum at 5-6.[6] Indeed, Rein

---

[3] Rein's attorney interprets a document that he claims is a job requisition for the new delivery personnel, which calls for an employee with "5-10 years of experience." Opposition at 5, PSMF, ¶ 175. This characterization by Rein's attorney, and the document (offered through his declaration rather than any witness' sworn testimony), should not be considered on summary judgment. The document clearly distinguishes, however, between the newly created job and Rein's old job ("Primary responsibility is delivery of consulting engagements.") The term "replacement" appears on the second page, but there is no evidence in the record of the meaning of the notation, and the box after "If replacement, name of employee" is tellingly blank. See PSMF, ¶ 175, Ex. S to Coster Affidavit. It is undisputed that the requisition was never filled. SOUF, ¶¶ 109-11.

[4] Rein insinuates in a footnote that Motorola reconsidered its plan to hire personnel into new positions because he had filed his MCAD charge. This claim is wholly unsupported and patently false. Opposition at 5 n.2. It is undisputed that the positions were never filled because the group was refocused and then disbanded. SOUF, ¶¶ 109-11.

[5] In support of his argument that because Motorola sought more junior employees it meant to hire younger employees, Rein cites only *Bray v. Community Newspaper Co., Inc.*, 67 Mass. App. Ct. 42, 45-46 (2006). The case is inapposite. In *Bray*, the plaintiff survived summary judgment by alleging a pervasive practice of poor treatment because of age, and a management preference for hiring young, attractive women at a lower salary in lieu of older workers in the same position. This is nothing like the present case, in which Rein does not allege that younger workers were treated more favorably at Motorola generally. SOUF ¶ 86. Further, Rein's position was eliminated and never re-filled.

[6] *See also Hazen Paper Co.* v. *Biggins*, 507 U.S. 604 (1993) (termination based on years of service does not violate ADEA because analytically distinct from age); *Bramble* v. *American Postal Workers Union*, 135 F.3d 21 (1st Cir. 1998) (salary structure linked to retirement status does not violate ADEA); *Sack* v. *Bentsen*, 51 F.3d 264 (1st Cir. 1995) (hiring system that awards more points for recent degree or experience does not violate ADEA; *see also*

has offered no evidence, statistical or otherwise, to demonstrate a correlation between age and the factors on which he relies to attempt to establish his *prima facie* case.  Rein's pure supposition that candidates with a bachelor's degree and 5-10 years of relevant experience (criteria that he derives from an unsworn document, *see* n.2, above) must be 25-31 years old has no factual, analytical, or record support.  A person with such credentials could be any age, which is precisely why the courts have held that experience and salary levels are analytically distinct from age.  *See* n.6, above.

Because Rein's termination occurred as part of a RIF, he cannot satisfy the fourth prong of his *prima facie* case.  Memorandum at 4-7.  However, even if Rein's termination had not been part of a RIF, his *prima facie* case would still fail because he offers no evidence that he was replaced with a younger employee.  Opposition at 4.  There is no such evidence because he indisputably was not.  SOUF, ¶¶ 88, 109-110.

      **b.**      **Rein Has Shown No Evidence of Pretext.**

Notably, in support of his claim of pretext, Rein does not argue that the real reason for his termination was age bias.  Opposition at 7-13.  Instead, he second-guesses the wisdom of Motorola's decision to choose his position for elimination, and he attempts to reveal inconsistencies in Kofman's assessments of his performance.  Neither shows pretext.

First, Rein acknowledges that the court may not act as a "super personnel department," yet that is precisely what he implores the court to do.[7]  He argues that (1) Motorola was misguided to focus on delivery instead of business development, (2) it could have allowed the

---

*Schiltz* v. *Burlington Northern Railroad*, 115 F.3d 1407 (8th Cir. 1997) (use of factors such as grade level and salary in hiring decisions does not violate ADEA); *Anderson* v. *Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994) (discharge of worker for salary reasons does not violate ADEA).

[7] The Opposition misrepresents Rein's evaluations, claiming that they are "filled with nothing but praise for Rein's performance," Opposition at 11.  Instead, overall, they reflect evenhanded praise and clear opportunities for improvement.  SOUF, ¶¶ 18, 52-58.

4

highly-paid Rein to perform more low level delivery work,[8] and (3) Motorola wrongly concluded that Rein had less field service mobility experience than relevant comparators.[9]  Opposition at 7-9.  The undisputed facts show that Kofman concluded that business needs called for further MPS reorganization, that it served the business best to eliminate Rein's position, and that Stark agreed.  SOUF, ¶¶ 66-79.  Based on Kofman's personal observations and reports from others,[10] and consistent with Rein's previous manager's assessment,[11] he also concluded that Rein was the most difficult to work with.  It is undisputed that Stark's own due diligence confirmed Kofman's assessment.  SOUF, ¶ 82.  Rein's disagreement with these assessments is as self-serving as it is irrelevant.  SOUF, ¶ 74; Opposition at 9-12.[12]  That Rein would have made a different judgment to save his own job is simply immaterial to pretext.

---

[8] Indeed, it is undisputed that Rein himself appreciated MPS's need for additional delivery resources.  SOUF, ¶ 67.

[9] In yet another misrepresentation, Rein alleges that Kofman had insufficient familiarity with Rein or Gillardi to have decided that Gillardi had more field service mobility experience (citing Kofman's deposition at 265-66). PSMF ¶ 158.  In the cited testimony, Kofman states unequivocally that Rein had limited experience, that Gillardi had more, and that Kofman knew that from first-hand observation.  Notably, Rein's friend Mr. Brice shared Kofman's view. SOUF, ¶71.  Indeed, Rein never argues that he had more relevant experience than Gillardi. Moreover, field service mobility experience was far from a "new" issue, as Rein contends.  SOUF, ¶ 76.

[10] At deposition Kofman named particular coworkers who confirmed Rein's difficult work style, particularly harsh e-mail communications by Rein, and a specific project on which Rein was unnecessarily difficult.  SOUF, ¶ 74 and testimony cited therein.  The fact that Kofman could not recall every detail of each observation more than 1 ½ years later does not illustrate pretext or create an issue of fact as to the truthfulness of Kofman's impression at the time.

[11] In an attempt to get around the undisputed fact that his previous manager, Thomas Niersbach, had also ranked Rein much more poorly than he ranked himself on numerous issues including various "people skills," Rein speculates in a footnote that the document bearing the heading "Jay Rein, Primary Manager:  Thomas Niersbach," and which Kofman confirmed was written by Niersbach, SOUF ¶¶ 58, 73, must not actually have been written by Niersbach.  Opposition at 11 n.11.  This speculation is unsupported by any record evidence and cannot be considered on summary judgment.  Moreover, the court should disregard Rein's unwarranted accusation that this review -- written by Niersbach -- was somehow "Stark making good on his threats."  Opposition at 13 n.13.

[12] Rein claims that customers had given him "uniformly positive" feedback on questions such as, "Have I become more or less effective as a leader in the past three months?" He cites one document containing two customers' feedback.  Opposition at 12.  In fact, the cited commentary (although insignificant individually and in the aggregate) shows that both clients rated him between "no change" and "a little more effective."  Rein Dep. Ex. 27A (Ex. X to Coster Affidavit).

Rein's claim that Kofman assessed his performance inconsistently likewise is no evidence of pretext. Rein contends that, when recommending Rein's termination, Kofman stated that Rein did not exhibit the "4Es+1" (a Motorola performance metric during the relevant timeframe). Rein claims that this is inconsistent with a previous statement made by Kofman in connection with Rein's annual review. However, Kofman's undisputed testimony is that *he did not write* the statement about the 4Es+1 in Rein's review, which was primarily drafted by a previous manager. Kofman Dep. at 157-59. Rein offers no evidence to the contrary. Rather, it is undisputed that Kofman's only contribution to the review was to choose the overall rating "Meets Expectations" (resulting in an automatic computer-generated definition that mentions the 4Es+1) and to draft a three sentence "comments" section that speaks generically about the MPS group and offers no praise for Rein. *Id.* After managing Rein directly for a period of months, Kofman indisputably concluded that Rein did not exhibit the "4Es +1" behaviors. This conclusion evidences neither inconsistency nor pretext.

Similarly, Rein's efforts to manufacture an inconsistency between Kofman's stated willingness to allow Rein to transfer to IESS and his later assessment of Rein fall flat. The undisputed facts show that Kofman told Rein that if Rein wanted to transfer to the IESS group, and if IESS thought he could add value, Kofman would explore the move. Kofman Dep. at 250-52. Later, when recommending Rein's termination, Kofman acknowledged that he did not recommend moving Rein to another <u>senior executive</u> position – he did not rule out <u>all</u> transfers, and Rein offers no evidence to the contrary. SOUF, ¶ 76, Kofman Dep. Ex. 11 (Ex. T to McGurn Decl.).[13] When Janiece Webb of IESS contacted Kofman post-termination, he gave an

---

[13] While Rein attempts to put words in Kofman's mouth by alleging what Ms. Webb told him Kofman had said, PSMF ¶ 171, such testimony, which is offered for the truth of the assertion, is inadmissible hearsay that cannot be considered on summary judgment. *See also* Memorandum at 19.

6

honest, balanced opinion of Rein's performance, as he was legally privileged to do. *See* Memorandum at 19. Because Rein fails to establish a *prima facie* age case and offers no evidence of pretext, Defendants are entitled to summary judgment on his age claim.

**2.    Motorola is Entitled to Summary Judgment on Rein's Contract and Promissory Estoppel Claims.**

It is undisputed that Rein signed an Employment Application in which he explicitly agreed that he was employed at-will, that no subsequent oral statement could create a contract, and that no one other than the V.P./Director of Human Resources had authority to enter into an employment contract for a definite term. SOUF, ¶ 9. While Rein argues that the Application was "arguably superseded," Opposition at 16 n.18, he fails to point to any language in any other agreement that contradicts the express language in the Application; in fact, critical language is reiterated in Rein's Employment Agreement (Rein Dep. Ex. 3 (Ex. AA to Coster Affidavit)) and the Company's Human Resources policies.[14] Rein's irrelevant objections – he signed the document on his first day of work, it was called an "application" – offer no way out. Rein remained at all times an at-will employee and he is bound by this agreement. Significantly, the only time that Motorola proposed an agreement to employ Rein for a definite time – the separation agreement and release sent to Rein post-termination that proposed keeping him on payroll until May 31, 2004 as he requested – the V.P./Director of Human Resources indeed signed on Motorola's behalf. SOUF, ¶ 92, Rein Dep. Ex. 45 (Ex. P to McGurn Decl.).[15]

---

[14] *See, e.g.,* Exhibit A to Supplemental McGurn Declaration. The cases Rein cites for the proposition that boilerplate language buried in an employee handbook may not itself be sufficient to demonstrate that an employee handbook is not a contract, Opposition at 16 n.19, are inapposite. Here, the statements were specific and printed in the same size font as the rest of the document. Rein signed the Agreement directly below them.

[15] Despite Rein's unsupported contention to the contrary, the fact that Stark had some authority for deciding whether the fledgling MPS group would continue to function is not equivalent to authority to enter into a contract with Rein for employment for a definite duration and Rein cites no support to the contrary. Opposition at 19.

Rein essentially admits that the Defendants made no promises of job security sufficient to give rise to a contract or promissory estoppel claim. Memorandum at 12-17. In his Opposition, he argues unpersuasively that "even if there were some ambiguity to Stark's comments" on which Rein relies to attempt to establish a term contract, the attendant circumstances somehow transformed the vague statements into binding commitments. Opposition at 17. Rein's story that Stark promised job security because he "needed to insure that the MPS group remained intact," is wholly unsupported by <u>any</u> citations to the record, and flies in the face of the undisputed facts: the MPS group was not performing well, and Rein's job and the very group itself were constantly at risk. In fact, both were subsequently eliminated. SOUF, ¶¶ 88, 111.

**3.      The Intentional Interference Claims Must Fail.**

Rein offers no evidence of malice, so his interference claims are doomed.[16] Arguing that Kofman made "deliberate misrepresentations about Rein's character, leadership and ability to work with others," Opposition at 22, Rein again confuses his personal disagreement with Kofman's conclusions for <u>evidence</u> that those conclusions were deliberately false. Rein offers no evidence of deliberate falsity, but resorts to conspiracy theories: he felt like the group's "natural leader" and suspects that Kofman felt "threatened." Not surprisingly, Rein offers no record support for these theories. Opposition at 23.[17]

---

[16] Rein does not even argue in his Opposition in favor of his unfounded claim that the Defendants intentionally interfered with his relationship with Russell Reynolds – no doubt because it is unsupported by even the tiniest shred of evidence. Summary judgment is warranted for the Defendants on this claim.

[17] Of course, even a showing that a superior acted out of personal gain or dislike is insufficient as a matter of law to show malice. Memorandum at 18. In the case that Rein relies on, *Weber* v. *Community Teamwork*, 434 Mass. 761, 781-84 (2001), Opposition at 22, the court held that there was insufficient evidence of actual malice despite findings that the manager had abruptly and callously fired plaintiff without giving any reasons and arbitrarily replaced plaintiff with a less qualified employee. In discussing malice, the court cited to *King* v. *Driscoll*, 418 Mass. 576, 587-88 (1994), which, as noted in Defendants' moving papers, held that there was no malice although supervisors fired plaintiff out of "ill will, spite and greed, intending to secure more power and money for themselves."

8

Rein also fails to offer record support for his claim that Kofman interfered with prospective employment. Rein argues that "it seems reasonable to infer" that Kofman's comments to Janiece Webb were "sufficiently negative to insure that Rein did not get [the IESS] position," Opposition at 22 n.21. The inference is unsupported by any evidence, however. It is undisputed that the only arguably prospective employer within Motorola to whom Kofman spoke was Ms. Webb.[18] Kofman gave her his honest, balanced opinion of Rein's performance. SOUF, ¶¶ 98-99. Rein has presented no evidence of any specific job opening for which he would have been selected but for Kofman's reference: he has not shown that any specific opening existed, including in IESS;[19] whether other candidates were considered; or why Rein was not selected. Indeed, Rein has presented no admissible evidence of what Kofman said to Ms. Webb; his own self-serving testimony of what Ms. Webb told him Kofman said is inadmissible. Nor does Rein even attempt to refute the well-established legal principle that Kofman had "a privilege, if not a duty," Memorandum at 19, to provide an honest reference. Rein cannot show any interference with a prospective job, let alone malicious interference.

**4.     Rein Cannot Prevail On any Retaliation or Civil Rights Claim.**

Having thrown retaliation and civil rights claims into his complaint with scarcely any supporting factual allegations and without so much as distinguishing them as separate counts, Rein now attempts to resuscitate these claims. He cannot prevail.

First, Rein argues that Stark told him that if he retained counsel, Stark would take severance "off the table." Rein insists that Stark was referring to <u>all</u> severance, not just the

---

[18] Accordingly, Rein cannot blame anyone else for the fact that, despite efforts, he was not redeployed post-reorganization to another position within Motorola.

[19] Rein admitted that when he last heard from Ms. Webb, the potential position in IESS had not been approved. Rein Dep. at 486, 509.

9

enhanced severance that Rein would receive only if he signed the release. Opposition at 13-15. He claims that this statement violates the requirement under the Older Worker's Benefit Protection Act that an individual be advised of the right to seek counsel prior to signing, and that the threat itself constitutes actionable retaliation. Opposition at 13 n.14.

The problem for Rein is that the following facts are undisputed: When Stark allegedly spoke to Rein on March 18, 2004, Motorola already had sent to Rein, in a letter dated March 11, 2004, a proposed release to be signed as part of an enhanced severance package. The release <u>explicitly advised Rein in writing to consult with counsel</u> as required by the OWBPA. SOUF, ¶ 92, Rein Dep. Ex. 45 (Ex. P to McGurn Decl.).[20]  Pursuant to Motorola's established rules (which were indisputably outside Stark's area of expertise) regarding which severance package Rein would receive if he signed versus if he elected not to sign the release, Motorola's Human Resource Department (and not individual managers) were charged with handling severance negotiations. Stark Dep. at 187-88.[21]  A threat of the type that Rein now alleges, even if made, cannot ground a retaliation claim where Motorola had <u>committed</u> to the basic severance in writing and pursuant to company policy, Rein had negotiated with HR for <u>over a month</u> about the package – both before and after the alleged threat – and Motorola had <u>agreed</u> to Rein's request for enhanced benefits and advised him in writing of his entitlement and right to seek counsel. This is especially true since Stark had no actual or apparent authority to alter the package available to Rein. *See also* Memorandum at 11 n.11. Finally, Rein cites no legal support for his claim that a "threat" made by someone with no authority to carry it out, which

---

[20] Also, by this time, Rein essentially had raised the specter of litigation by outlining claims against the Company. *See* Exhibit Q to McGurn Declaration.

[21] *See* Exhibit B to Supplemental McGurn Declaration.

10

was in fact never carried out, and which resulted in absolutely no damages at all, can give rise to a retaliation claim.[22]  Defendants are entitled to summary judgment.

                                        Respectfully submitted,

                                        MOTOROLA, INC., CLYDE KOFMAN,
                                        and JUERGEN STARK,

                                        By their attorneys,

                                        /s/ Kristin Glennan McGurn
                                        Richard L. Alfred (BBO# 015000)
                                        Kristin G. McGurn (BBO# 559687)
                                        SEYFARTH SHAW LLP
                                        World Trade Center East
                                        Two Seaport Lane, Suite 300
                                        Boston, MA 02210-2028
                                        Telephone:     (617) 946-4800

Dated:  October 4, 2006

                                        Certificate of Service

                     I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand on October 4, 2006.

                                        /s/ Kristin Glennan McGurn

---

[22] Finally, Defendants are compelled to address a footnote in the Opposition, in which Rein's desperation to contrive a disputed fact is perhaps best revealed.  He asserts that Motorola's Payroll Department's independent and perfunctory administrative efforts to collect a perceived overpayment to Rein somehow prove his retaliation conspiracy theory.  Opposition at 14 n.15.  As Rein acknowledges, he stipulated over a year ago, in exchange for consideration and after detailed discussions among counsel, that the proceedings were inadvertently and mistakenly pursued by persons unaware of this suit, and unbeknownst to <u>anyone</u> involved in this litigation, and therefore could not possibly have been retaliatory, discriminatory or punitive.  A copy of the parties' Stipulation is filed with Defendants' Motion to Strike and accompanies this Reply.  Rein agreed that evidence of the Payroll Department's efforts would not be admitted or admissible in this action for any purpose.  The Opposition intentionally and indisputably violates the parties' unambiguous Stipulation, but Rein has refused Motorola's request that he comply with the parties' Stipulation and remove the offending footnote from his Opposition.  Accordingly, Motorola was forced to file the accompanying Motion to Strike.