UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-12580 NG |
| | ) |
| MOTOROLA, INC., CLYDE KOFMAN, and JUERGEN STARK, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The Plaintiff submits the Sur-Reply to respond to the factual representations and legal arguments made by the Defendants in their Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (the "Reply").

Although the Defendants' contend that the purpose of their Reply is to correct the distortions and misstatements contained in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, the majority of their Reply is spent reiterating the same facts they set forth in support of their summary judgment motion. Long on rhetoric, the Reply is almost entirely devoid of specifics on how the Plaintiff's Opposition has misstated the record. Instead, the Defendants either ignore the material facts raised by Plaintiff's Opposition in favor of their own less damaging version of events, or challenge the reasonable inferences the Plaintiff has drawn from those facts not in dispute. In doing so,

the Defendants' Reply inadvertently highlights the numerous material facts that are in dispute, thereby making it clear why their summary judgment motion must be denied.[1]

## 1. Defendants Are Not Entitled to Summary Judgment on Rein's Age Claims

### a. Rein Has Made Out a Prima Facie Case

Despite overwhelming evidence that Rein was not terminated as part of a reduction in force ("RIF"), the Defendants steadfastly cling to this fiction because it is the only way they can challenge Rein's prima facie case. To support their position the Defendants misconstrue the relevant case law, misrepresent or ignore the relevant facts, and advance arguments that border on the frivolous.

The Defendants commence this section of their Reply by arguing that, other courts have held that a RIF can affect a single employee and need not be motivated by financial considerations. Unfortunately, the two cases cited by Defendants, *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 845 (1st Cir. 1993) and *Lewis v. City of Boston,* 321 F.3d 207 (1st Cir. 2003), do not support this assertion. In *LeBanc*, the court states that the RIF was implemented because the defendant was experiencing "financial problems" and observes that this was an "economically driven reduction in force". The court also notes that a total of twenty two people were terminated as part of this RIF, seventeen in the year following the plaintiff's termination. *LeBlanc,* 6F.3d at 845.

---

[1] Perhaps the most vivid illustration of the Defendants' unwavering refusal to acknowledge, much less address, the numerous material facts in dispute is their decision to completely ignore Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (the "Response"). Thus, although this Response disputes, with specific citations to the record, substantial portions of Defendants' Statement of Material Facts, the Defendants' continue to insist that none of these facts are in dispute and the Reply continues to cite to various <u>disputed</u> paragraphs of the Statement as evidence that the facts contained therein are <u>undisputed</u>. Moreover, Defendants simply ignore the additional material facts set forth by the Plaintiff in his Response although they make they make a vague and wholly unsupported assertion that that the additional facts set forth by the Plaintiff are "rife with misstatements" and not material. (Reply, pg. 2, fn. 2). Obviously, this blanket assertion, lacking any specifics, is hardly helpful to the Court in determining whether there are disputed material facts.

2

Similarly, in *Lewis* the court's recitation of the relevant facts states that superintendent of schools made the decision to eliminate the plaintiff's position due to "budget cuts" and, "in addition to eliminating [the plaintiff's] position, the City terminated thirty-one other relatively high-level, supervisor employees". *Lewis,* 321 F.3d 207, 212.  Clearly neither of these cases is similar to the RIF in Rein, which was <u>not</u> motivated by budget cuts[2], and which did not affect any other employee.  Rather these cases merely reinforce the argument initially raised in Plaintiff's Opposition that a RIF is normally implemented as a cost savings mechanism and, in a company like Motorola with thousands of employees, would normally affect more than one individual.

Next, the Defendants contend that "Rein's claims that the Defendants sought to replace him "are demonstrably false"; and, despite overwhelming evidence to the contrary, continue to argue that they never intended to "replace" the Plaintiff.  (Reply, pg. 3).  However, this argument puts the Defendants in the untenable position of having to disavow statements contained in their own documents.

For example, in the February 11, 2004 Memorandum Kofman submitted to Stark recommending that Rein be terminated (the "Termination Memo"), Kofman specifically states his intention to hire two to three individuals who "will <u>permanently replace</u> the E15 position eliminated above [Rein]".  (Kofman Deposition Exhibit 11).  This characterization is confirmed in the job requisition form Motorola prepared for this position, which identifies the individual to be hired as a replacement.  (Exhibit S to the Affidavit of John G. H. Coster (the "Coster Aff.")).

The Defendants' try to negate this evidence with two arguments.  First, they contend that the term "replacement" is somehow ambiguous  This argument is hardly

---

[2] Deposition of Juergen Stark ("Stark Dep.") pgs. 119-20.

3

persuasive in the best of circumstances, and borders on the frivolous in the context of a summary judgment motion, where the Court must draw all inferences from the underlying facts in a light most favorable to the non-moving party. *Attorney Gen. v. Bailey*, 386 Mass. 367, 371 *cert. den'd.* 459 U.S. 970 (1982).

Second, the Defendants argue that the Court should simply ignore the job requisition because the document itself was submitted into the record by way of an affidavit by Plaintiff's counsel. Significantly, the Defendants do not, and in fact cannot challenge the authenticity of this document. In fact, Kofman testified that he filled out a job requisition form for this position; and this is the only job requisition form produced by the Defendants. (Plaintiff's Response to Statement of Material Facts in Support of Summary Judgment ("PMF"), ¶175; Coster Aff. ¶20).

However, ultimately it is immaterial whether the Plaintiff's contention that Motorola intended to replace Rein is more credible than the Defendants contention that this was a RIF because, at the very least, there are material facts in dispute that can only be resolved by a jury.

The Defendants insistence that Rein "misleadingly emphasizing" certain testimony to support his assertion that the individuals hired to replace Rein would be younger, is similarly flawed. With all due respect, there is nothing "misleading" about drawing the Court's attention to the fact that both Kofman and Stark testified that, after terminating Rein, they anticipated hiring a "less experienced" individual and that one of the reasons for eliminating Rein's position was to enable them to substitute one or more

"junior" persons for a "senior" person.³  It is also not "misleading" to point out that the job requisition form prepared by Kofman specified that Motorola was seeking someone with a bachelor's degree and 5-10 years of experience.

The Defendants attempt to discount this incriminating evidence by arguing that a jury could potentially view these statements as innocuous since it is theoretically possible for a "less experienced", "junior employee" who had only been out of college between five and ten years to actually be older than Rein.⁴  Of course, as the party moving for summary judgment, it is not the Defendants who are entitled to have these statements interpreted in the light that is most favorable to their position.  Clearly, whether the Defendants intended to hire someone substantially younger than Rein is a disputed issue of material fact.  At the very least, the Plaintiff has clearly satisfied his relatively modest burden of establishing a prima facie case.

      b.    **<u>Rein Has Established Pretext</u>**

As an initial matter, Defendants contend that Rein never argues "that the real reason for his termination is age bias". (Reply, pg. 4)  This is simply not true.  In Plaintiff's Opposition Rein argues that "age was a key factor in Kofman's desire to terminate him", and convincingly marshals the relevant evidence to support this assertion.

---

³ Rein himself has testified that Kofman actually told him he planned to hire "younger" employees.  (PMF, ¶161).  Of course, the Defendants argue that, rather than creating a disputed material fact, this testimony should simply be ignored altogether.

⁴ Although it is true that each of these criteria are "analytically distinct" from age, they are also closely correlated with it.  *See Hazen Paper v. Biggins,* 507 U.S. 604, 611 (1993).  Because of this close correlation, a reasonable jury could infer that these selection criteria were merely a proxy for insuring that Rein's replacement was substantially younger, and thus be justified in finding the requisite discriminatory intent.  *Biggens* at 612-13 ("We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older [*613] thereby engages in age discrimination.").  In this case the Defendants will presumably be hard pressed to explain why "lack of experience" was an important qualification for Rein's replacement.

(Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition"), pg. 23).

However, the overarching flaw in Defendants' Reply is their effort to sugarcoat the numerous material facts that are in dispute by characterizing them as "self-serving" and "irrelevant" "disagreements". (Reply, pg. 5). Tellingly, nearly every Statement of Undisputed Fact cited by the Defendants in this section of the Reply has in fact been disputed in Plaintiff's Response[5] and, for each of the justifications advanced by the Defendants for terminating Rein's employment, the Plaintiff has come forward with credible evidence of pretext.

### (i) Kofman did not have a legitimate business reason for reorganizing MPS

Kofman contends that there were legitimate business reasons for reorganizing the MPS Group to eliminate Rein's position (which was focused on both business development and delivery) and replacing him with 2-3 "less experienced" individuals focused exclusively on delivery. Rein has advanced four reasons why this assertion is not credible.

First, there is evidence that, at the time Kofman made this decision the MPS Group was not having trouble delivering on its engagements, but was falling far short in its efforts to develop business. (PMF, ¶¶ 142, 157; Rein Dep., pgs. 319-22, 324). Thus, firing Rein was fundamentally illogical.

Second, notwithstanding the fact that the entire rational for firing Rein was to free up resources to hire additional "delivery people", no one was actually hired and, it appears that only a single person was even interviewed. (PMF, ¶¶176-78). In fact, it

---

[5] *See e.g.* PMF ¶¶18, 58, 66-74, 76-78, and 82.

subsequently turned out that Motorola was able to handle the MPS Group's delivery needs internally. (PMF, ¶178).

Third, Rein was already performing both a business development and a delivery function. (Rein Dep. pg. 125). Should the MPS Group's delivery needs increase, Rein could have devoted 100% of his efforts to delivery. Replacing Rein with a "less experienced" individual to perform these services did not make sense.[6]

Fourth, by firing Rein, without having any replacement lined up, Kofman actually exacerbated the very problem he was supposedly trying to solve - he now had one less person to provide either business development or delivery services. As Clay Brice, another member of the MPS Group noted, firing Rein actually hampered the MPS Group's efforts to be successful. (PMF, ¶157).

Based on the foregoing, Rein's evidence of pretext is not simply that he disagreed with Kofman's decision, but that there are at least four objective reasons that the finder of fact could conclude that the Defendants' supposed justification for reorganizing the MPS is not credible. Ultimately this is a disputed issue of fact that must be left to the jury to resolve.

### (ii) **Kofman's contention that Rein had significant behavioral issues that warranted his termination is not credible**

The Defendants also contend that there are no disputed issues of material fact concerning Kofman's second rational for firing Rein, that he failed to "exhibit the 4e's +1 leadership behaviors required of Motorola staff"; that he "lacked respect for others", and that he was "often confrontational and argumentative". (PMF, ¶166). This assertion

---

[6] Although, Defendant contends that replacing Rein with a less experienced employee would reduce costs, Kofman specifically recommended not trying to achieve these same cost savings by keeping Rein but lowering his grade level. (Kofman Ex. 11).

7

ignores fundamental inconsistencies in Kofman's evaluation of Rein[7], as well as the complete absence of any specific facts to support Kofman's subjective and conclusory criticisms of the Plaintiff.

Thus, Rein has come forward with a performance review prepared by Kofman approximately a month before he fired the Plaintiff which is completely inconsistent with his later criticisms of Rein. Not only does this document fail to make any reference to Rein's alleged performance problems, it contains a statement that directly contradicts Kofman's later criticisms. Thus, this performance review contains a joint summary of Rein's performance, agreed to by both Rein and Kofman, which states that Rein "consistently meets predefined goals, while using the expected 4…e's … +  Always 1 behaviors". (PMF, ¶165-66). Although Kofman now attempts to argue that this review does not mean what it says, the undeniable fact remains that this is part of the joint summary of the Plaintiff's performance that he and Rein agreed to.[8]

That approximately one month later on February 11, 2004 Kofman prepared the Termination Memo recommending that Rein be terminated because he "does not exhibit the 4e's + 1 leadership behaviors required of Motorola staff …" is a fairly significant inconsistency. (PMF, ¶166).

---

[7] Defendants actually contend that the fact that "Kofman assessed [Rein's] performance inconsistently likewise is no evidence of pretext". (Reply, pg. 6). Not surprisingly, the Defendants cite no authority for this position, since the relevant case law holds precisely the opposite. Obviously, a jury "may properly take into account … inconsistencies, incoherencies or contradictions in the employer's proferred legitimate reasons for its actions. *City of Salem v. Massachusetts Comm'n Against Discrimination*, 44 Mass. App. Ct. 627, 643 (1998); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3rd Cir. 1994); *see also Ruffino State Street Bank & Trust Co.,* 908 F. Supp. 1019, 1046-47 (D. Mass. 1995) (inconsistent evaluations evidence of retaliatory motive). In fact, where an employers proferred reasons for terminating an individual are based on inherently subjective criteria such inconsistencies and contradictions may well be one of the few ways a plaintiff can show pretext.

[8] Even if the actual language was generated by Kofman's selection of an overall rating of "Meets Expectations", it was Kofman who selected this option (and the computer generated language that came with it) and who apparently felt it accurately reflected Rein's performance.

8

The devastating criticisms of Rein's leadership, ability to work with others and ultimate viability as an employee of Motorola contained in the Termination Memo are also completely at odds with a memorandum Kofman prepared only a few weeks earlier. In this memorandum Kofman states that he is "willing to explore with Janiece [another manager] an opportunity for you [Rein] to work in her group". (Kofman Ex. 10, PMF, ¶164). However, notwithstanding this earlier statement in the Termination Memo Kofman specifically states that he does not recommend "keeping [Rein] in this group [MPS] in a lower level, nor do I recommend attempting to move him to another E-15 position".[9]

The Defendants attempt to avoid these glaring contradictions by engaging in a strained and wholly unconvincing parsing of Termination Memo. Thus, even though Kofman is highly critical of Rein's leadership and ability to work with others in this memorandum and recommends: (i) eliminating Rein's position at "this grade level"; (ii) that Rein not be kept "in this group at a lower grade level"; (iii) that Rein "not be moved to another E15 position"; and (iv) that Rein "be terminated", the Defendants argue that Kofman never specifically stated that he would not recommend that Rein be transferred to another position <u>at a lower grade</u>. (Kofman Ex. 11; PMF ¶156).

Apparently it is the Defendants' contention that there is no inconsistency in Kofman's position because a reasonable jury could infer from Termination Memo that Kofman was willing to support Rein being transferred to another division at a lower

---

[9] In fact, when subsequently contacted by Janiece Webb ("Ms. Webb") about whether he would recommend Rein for a position within her group, Kofman tells her that the Plaintiff is not a "good fit" for the position, not a "team player", and that he would "not recommend her taking [Rein] on". (PMF ¶171; Rein Dep., pg. 508).

9

grade, and that his prior statement that he was willing to explore a transfer into Ms. Webb's group <u>implicitly</u> meant a transfer into a position at a lower grade.

Defendants' interpretation is not only outlandish, it turns the summary judgment standard on its head and requires the Court to interpret the underlying facts in the light most favorable to the party moving for summary judgment.  Moreover, Kofman's own testimony makes it clear that had no intention of recommending Rein for a transfer within Motorola, regardless of the salary grade of the position.  Thus, when questioned about his decision not to retain Rein within the department at a lower grade, Kofman explained that, in his view, asking an employee to accept a reduction in his grade level rarely worked.  (Kofman Dep., pgs. 289-90, attached as Exhibit C to the Affidavit of John G. H. Coster).

Finally, in their Reply, the Defendants argue that Kofman is not obligated to remember "every detail" that supports his conclusion that Rein had "behavioral issues" that necessitated his termination.  (Reply, pg. 5, fn. 10).  The problem with this argument is that, with the exception of an e-mail he thought was harsh, Kofman cannot remember a single specific example of Rein's "behavioral issues".  Nor can the Defendants come forward with any  documentation that supports these supposed "behavioral issues".  In fact, it is uncontested that Rein never received any warnings about his underlying performance.

Faced with these vague, unsupported and conclusory accusations, Rein has done his best to establish that none of his other managers, his peers, or the individuals he worked with outside of Motorola shared Kofman's view, and that he was well-regarded

10

by everyone he worked with.[10] This evidence, combined with: (i) the Defendants inability to provide any specific examples of Rein's alleged "behavioral issues"; (ii) the undisputed fact that Rein never received any warnings about his performance and was in fact receiving bonuses and positive evaluations right up to the time he was terminated; and, (iii) the inconsistencies and contradictions contained in Kofman's assessment of Rein's performance give rise to disputed issues of material fact about whether the Defendants' asserted grounds for firing Rein are a pretext. This issue must be left to the jury to resolve.

2.  **Defendants Are Not Entitled to Summary Judgment on Plaintiff's Contract and Promissory Estoppel Claims**

In their Reply, the Defendants rest their argument that the specific commitments made by Stark about Rein's future employment are not enforceable on the proposition that a single boilerplate phrase contained in six page employment application Rein signed approximately a year and a half earlier rendered these commitments unenforceable as a matter of law. The Defendants cite no authority for this proposition.

Instead, the Defendants attempt to distinguish the cases cited by the Plaintiff holding that such boilerplate language may be disregarded by arguing that the statement in the employment application is "specific and printed in the same size font as the rest of the document". (Reply, pg. 7 fn. 14). However, the boilerplate language disregarded by the court in each of these cases is neither less specific than the language in Defendants' employment application, nor set forth in smaller type. *Derrig v. Wal-Mart Stores*, 942 F. Supp. 49, 50 and 55 (D. Mass. 1996); *Ferguson v. Host Int'l*, 53 Mass. App. Ct. 96. 100

---

[10] Thus, he has introduced favorable performance reviews from his prior managers. (PMF ¶¶113-125). He has introduced the positive ratings he has received from Motorola's customers. (Rein Dep. Ex. 27A). He has introduced the favorable performance ratings of a direct report and the testimony of one of his co-workers. (PMF, ¶¶149-153, Brice Dep., pgs. 121-22, 139).

11

n.4, 103 (Mass. App. Ct. 2001); *see also Salvas v. Wal-Mart Stores*, 2004 Mass. Super. Lexis. 598, at pgs. 12-13 (Mass. Super. Ct. 2004).

Moreover, the fact that this language appears in an employment application, a document that is ordinarily prepared before an employment relationship even exists, makes the underlying effect of this provision ambiguous at best. The underlying ambiguity of this provision is further exacerbated by poor draftsmanship. Thus, the document states:

> This <u>application</u> does not bind either party for a specific period of time regarding employment. You understand that no one other than the Motorola, Inc. Executive Vice President and Director of Human Resources has any authority to enter into any agreement contrary to the foregoing. [Emphasis added]. (Rein Dep. Ex. 7).

Obviously, the most sensible reading of this provision is that only the Director of Human Resources has the authority to enter a contrary agreement relating to the <u>application</u> for employment. Thus, this document simply does not address agreements relating to the terms and conditions of existing employees, because the individual signing this application has ordinarily neither been offered nor accepted a position at Motorola.

3.     **<u>Plaintiff is Entitled to a Trial on His Intentional Interference Claim</u>**

In the Reply, the Defendants argue that there is no evidence that Kofman made deliberate misrepresentations about Rein's character, leadership and ability to work with others, and therefore the Plaintiff has failed to show that the Defendant acted out of malice. Once again, the Defendants simply ignore the veritable mountain of evidence produced by the Plaintiff showing Kofman's underlying bad faith. When this evidence is contrasted with the Defendants' inability to come forward with a single example to support Kofman's conclusory assertion Rein had "behavioral issues" and did not exhibit

12

the leadership behaviors required of Motorola staff, a reasonable jury would certainly be warranted in concluding that the Defendant acted out of malice. Once again, disputed issues of material fact preclude the granting of summary judgment.

Defendants also argue that there is only hearsay evidence of what Kofman said to Ms. Webb when she contacted him about offering Rein a position within her group. This is due in large part to the fact that Kofman has conveniently forgotten any of the negative comments he made about Rein. (PMF, ¶170). Kofman does concede that he told Ms. Webb about the areas he thought Rein "could improve on". However, in light of Kofman's statements in the Termination Memo that he had prepared only a few week earlier that were highly critical of Rein's leadership and ability to work with others; and that recommended that he not be transferred to another department - a reasonable jury could certainly infer that his comments to Ms. Webb were substantially similar and therefore sufficient to torpedo this opportunity for Rein.

**4.    Defendants Are Not Entitled to Summary Judgment on Rein's Retaliation or Civil Rights Claims**

Defendants contend that Rein cannot pursue these claims because, at the time Stark threatened to withhold all severance benefits, Motorola had already sent the Plaintiff a letter offering him an enhanced package (the "Severance Letter")(Reply, pg. 10). Frankly, this argument does not make a great deal of sense.

Stark made these threats because Rein was refusing to release his claims against Motorola and agree to the terms set forth in the Severance Letter, which provided him a modest increase in the severance benefits he was entitled to. Clearly, Rein felt he had a number of potentially meritorious claims against Motorola, and wanted to at least consult with a lawyer before releasing these claims. Stark's threats were designed to intimidate

Rein, prevent him from seeking the advice of counsel, and pressure him into signing a release that would foreclose him from pursuing the legal remedies otherwise be available to him. The fact that Stark was threatening to withhold severance that Rein was legally entitled to does not somehow prevent these threats from being retaliatory.[11]

The Defendants also argue that Stark did not have authority to make good on these threats and that only Motorola's Human Resources Department had authority to handle severance negotiations. (Reply, pg. 10). However, there appears to be no evidence in the record to support this assertion.[12]

Moreover, regardless of whether Stark had actual authority to follow through on these threats, he certainly implied that he had such authority. At the very least, the question of whether Stark had the actual authority to make good on his threat; or, lacking such actual authority, whether it was reasonable for Rein to believe he had such authority are additional disputed material facts which must be resolved by the jury.

---

[11] In fact, the Defendants appear to be arguing exactly the opposite of what they argued in their original Motion for Summary Judgment, where they incorrectly stated that Stark was threatening to withhold only the enhanced severance benefits Rein was not otherwise entitled to - which was undeniably his right to do if the Plaintiff did not agree to the condition for receipt of these benefits, the release of his potential claims against Motorola. (Defendants' Memorandum in Support of Motion for Summary Judgment, pg. 11, fn. 12.).

[12] The Defendants' citation to pgs. 187-88 of Stark's deposition testimony provides no support for these factual representations.

**Conclusion**

Based on the foregoing, the Plaintiff respectfully requests that the Defendants' Motion for Summary Judgment be denied in its entirety.

>JAY S. REIN
>
>By his attorney,
>
>/s/John G. H. Coster
>John G. H. Coster
>(BBO #101450)
>92 State Street, Suite 900
>Boston, Massachusetts 02109
>(617) 423-2224

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorney of record by ECF and first class mail on October 19, 2006.

>/s/John G. H. Coster