UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 04-12580 NG |
| | ) |
| MOTOROLA, INC., CLYDE KOFMAN | ) **HEARING REQUESTED** |
| and JUERGEN STARK | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

The Defendants, Motorola, Inc., Clyde Kofman and Juergen Stark (collectively, "Defendants") hereby oppose Plaintiff's Motion to Compel ("Motion"). Plaintiff's complaint about Defendants' supplemental discovery responses rings hollow because Defendants have timely provided initial and supplemental discovery of the relevant information to which Plaintiff is entitled, and he is not entitled to the personal and irrelevant information that he now seeks.

Further, Plaintiff makes this unworthy motion having himself failed to make timely and complete supplemental productions, notwithstanding this Court's clear instructions and his explicit obligations under the Federal Rules. Plaintiff's Motion should be denied.

**INTRODUCTION**

Plaintiff is not entitled to the relief his Motion seeks. He deserves neither additional information concerning bonuses paid by Motorola in 2004 (or thereafter), nor further discovery on the prospective positions he explored at Motorola after his position in MPS was eliminated. Defendants have interposed sound objections to Document Request No. 15 and Interrogatories 12 and 14. Nevertheless, Defendants have produced information about Plaintiff's MPS

colleagues' compensation. Defendants otherwise have timely and completely supplemented discovery. *See, e.g.*, Exhibit E to John Coster's Affidavit in Support of the Motion to Compel ("Coster Aff."). There is no basis to order Defendants to make further unnecessary supplementations, and Plaintiff's motion should be denied.

## DISCUSSION

1.  <u>Plaintiff's inadequate supplementation continues to prejudice Defendants.</u>

Plaintiff explicitly acknowledged last year at status conferences with this Court, and more recently at the October 23rd hearing, that his discovery responses regarding damages warranted supplementation. Notwithstanding this express acknowledgment, Plaintiff's Motion stated that he "anticipates" providing a "portion" of the requested information by November 1st. Yesterday, ten days after the hearing and eight days before the parties' final pretrial conference, Defendants received from Plaintiff a *portion* of the information to which they are indisputably entitled: four pages, including W-2 forms, concerning the wages Plaintiff earned from GTSI and Worldspan, his post-Motorola employers in 2004 and 2005. Copies are attached at Exhibit A to the Declaration of Kristin G. McGurn in Opposition to the Motion to Compel ("McGurn Decl."). **These pages establish that Plaintiff earned more wages from these employers collectively in 2005 than he earned during either of his two years with Motorola**.

Plaintiff has not supplemented his interrogatory responses fully on the issue of damages;[1] he has offered *no* evidence of non-wage remuneration to which he was entitled at these

---

[1] After the close of business on November 1st, the Plaintiff delivered an incomplete and patently inaccurate supplementation (missing a page and providing only partial supplementation) to Defendants' damages interrogatory. Defendants continue to evaluate the incomplete supplementation, but it is clear that the sworn response misrepresents Plaintiff's Motorola (and, apparently, GTSI) earnings, flatly contradicts record evidence and contains profoundly speculative and unsupportable components of alleged damage.

2

companies, thereby preventing a full assessment of his damages claims;[2] and he has not responded to Defendants' request for supplementation on any other categories of discovery.[3] Defendants' Notices to Supplement Discovery are attached as Exhibit C to the McGurn Decl. Plaintiff's failure to seasonably supplement this discovery continues to disadvantage Defendants as they prepare for trial. Plaintiff should be barred from using evidence that he failed to timely produce to Defendants as support for his alleged damages.

2. <u>Plaintiff has received the Motorola Incentive Plan ("MIP") bonus information for 2004 to which he is entitled.</u>

Plaintiff apparently intends to argue to a jury that, but for the elimination of his position in February 2004, he would have remained employed at Motorola through 2004 (or 2008, as his supplemental interrogatory response on damages now suggests). If so, his argument apparently will go, he might have been entitled to significant bonuses in each of those years. He plans to make this claim notwithstanding all of the following:

- Plaintiff's claims are grounded on the allegation that he expected to remain with MPS only through June 2004 (Amended Complaint ¶ 18; Rein Dep. 320-21, 337.) [4]

- Plaintiff repeatedly has acknowledged that MPS was an exploratory and marginal endeavor for Motorola and that he was concerned about its survival throughout his employment, thereby contradicting any reasonable expectation of employment through

---

[2] Plaintiff's offer letter from GTSI establishes that he was entitled to both incentive bonuses and stock options at GTSI. Exhibit B to McGurn Decl. It is likely that Plaintiff was entitled to similar remuneration at Worldspan, but Plaintiff has failed to produce *any* information regarding Worldspan aside from the above-described W-2 form. Defendants are pursuing this information by subpoena.

[3] Regardless of whether Plaintiff has been overseas for the past week, his tardiness in supplementing discovery should not be excused. Defendants requested this information in discovery over a year ago; Plaintiff's obligation to supplement has been on-going; and the information he has provided to date is woefully incomplete.

[4] The referenced excerpts of Rein's deposition testimony and exhibits are attached to the Declaration of Kristin McGurn filed in Support of Defendants' Motion for Summary Judgment [Docket No. 57].

2004 (or 2005 or 2006 or 2007 or 2008) (Rein Dep. 130-31; 137; 140; 154; 219-20; 296; see also Exhibit D to McGurn Decl.)[5];

- MPS was in fact disbanded shortly after Plaintiff's position was eliminated;[6]

- Plaintiff personally received no bonus for 2002 (Rein Dep. 346) and, like his MPS colleagues, he received only a nominal bonus in 2003 (Rein Dep. 346-49; Exhibit E to McGurn Decl.);

- The bonus plan applicable to MPS in 2004 and thereafter was based on a significant individual performance factor and it is nothing short of rank speculation for Plaintiff to surmise what his performance evaluation rating would have been in 2004 (or 2005 or 2006 or 2007 or 2008) for purposes of calculating a bonus payout under the plan;[7] and

- The bonus plan also factored in group/business performance factors and it is pure speculation to attempt to determine whether the group would have performed better or worse in 2004 (or 2005 or 2006 or 2007 or 2008) had Rein remained a part of the MPS team.

Because the information Plaintiff requests is designed to support only the most speculative of calculations, Plaintiff's motion should be denied. *See Vesprini v. Shaw Ind., Inc.,*

---

[5] Plaintiff testified that there was "significant impact" on MPS during his tenure because the group "started as 200 people [and] wound up being five people." He was "concerned about the MPS's group's ability to meet its objectives established in 2003." He even contacted the recruiting firm that placed him with MPS to discuss the "demise of the Motorola Professional Services group" that he was recruited into and to "talk to the people that had a piece of the *responsibility* for placing me there to see if they had a feel for what Motorola's plans were," because he was concerned *in 2003* that MPS would be disbanded. He told them that he remained concerned that Stark would disband the group in late 2003.

6 On October 27, 2006, Defendants supplemented their production with further evidence of the dismantling of MPS.

7 Plaintiff claims that the "individual performance factor" for "each of" Rein's colleagues is "clearly the most appropriate source from which to extrapolate what Rein's 'individual performance factor' would have been." Memorandum in Support of the Motion, at p. 5-6. He provides no basis or foundation for this proposition, which is anything but "clear."

4

221 F. Supp. 2d 44, 63 (D. Mass. 2002) (claims for future bonus payments are "exceedingly speculative" and cannot be considered at trial when it is "utterly unclear what the [group] would have made, how large the bonus pool would have been, and what percentage of the bonus pool would have gone to [Plaintiff]"; *Raimondo v. Amax, Inc.*, 843 F. Supp. 806, 810 (D. Conn. 1994) (where bonus system is not mandatory and plaintiff did not always receive a bonus in prior years, calculation of future bonus would be "purely speculative and inappropriate" tantamount to rear-view fortunetelling or speculative hindsight (citation omitted)). If Plaintiff's Motion is granted, "mini-trials" will be required in a fruitless effort to compare Plaintiff's *anticipated* performance with the *actual* performance of his peers, to test Plaintiff's self-serving theory that his peers' bonus awards provide a reasonable measure for his own.

More importantly, Defendants already have provided Plaintiff the relevant and non-prejudicial information to which he is entitled, including the following salary and bonus information:

- Salary information for the members of MPS from 2002 through 2005 (for example, Exhibit F to the Coster Affidavit);

- Information regarding the special award paid in early 2004 (for the 2003 performance year (Exhibit E to McGurn Decl.);

- The 2002 SIP and MIP, the 2003 Transition SIP, and the 2004 MIP (the latter was Exhibit F to the Coster Aff.);

- Rein's incentive target, business performance factor and individual performance factor information during his tenure (Exhibit E to McGurn Decl).[8]

---

[8] See right-hand columns for target MIP %, estimated business performance factor ("Est. Bus. Perf. Factor") and estimated award factor ("Est. Special Award") based on individual performance rating (i.e. "A" (for a factor of .5) through "D" (for a factor of 0, i.e. no bonus)).

Plaintiff claims he deserves still more. He does not. Information regarding bonuses received by others in 2004 are wholly unreliable predictors of what Plaintiff might have earned in 2004 or what might have been be paid in subsequent years. Such information is, therefore, irrelevant. Defendants' objection to producing this additional bonus information is well-founded, and Plaintiff's Motion to Compel should be denied.

3. <u>Plaintiff does not need supplementation concerning other positions.</u>

Plaintiff disingenuously claims that he also is entitled to supplemental discovery concerning certain opportunities that he pursued after his position at MPS was eliminated. Plaintiff himself repeatedly has acknowledged that the positions he was seeking had not received approval (thus, there were no vacancies or positions with approved personnel requisitions with which Kofman could have interfered). (Rein Dep. 485-86, Exs. 31, 37, 40, 47).[9] In light of these admissions, Plaintiff is not entitled to supplementation.

Nevertheless, in the context of witness preparation for trial and, specifically, in response to Plaintiff's request for supplementation, Motorola followed up with certain witnesses regarding Plaintiff's pursuit of opportunities with other Motorola business divisions. After conducting a further search of files, one of these witnesses located a telling email, authored by the Plaintiff himself, which provides an additional acknowledgement of the tentative nature of the opportunities that he was pursuing. **Motorola hereby further supplements its production by**

---

[9] Following the elimination of his MPS position, Plaintiff reached out to people with whom he had worked while at MPS to determine whether their business units would consider launching a professional services initiative into which he could be hired. There is no evidence that any of these initiatives were being supported by management (particularly in light of MPS's failures) or that the people whom Plaintiff contacted were authorized to hire for positions (through an open requisition). None were. Instead, as Plaintiff's own emails establish, he was exploring only prospective *opportunities*. He refers to the "possibility" of joining another Motorola division; his "exploration" of potential "opportunities"; the "vision" of an "evolving" business model; the need to "sell" the value of his services to management; and, most important, the need to seek "approvals" for requisitions to enable a hire.

6

**attaching these emails (Bates numbered MSP20018-21 as Exhibit 1 to this Opposition.[10]**

Notably, Rein did not include the email – which he authored – in his own production.

Plaintiff's own words in this email are instructive for many other reasons.  For example, they establish that he was seeking an opportunity outside MPS in early February, *two weeks before* he was notified of the elimination of his position in MPS.  The evidence's impact on Rein's credibility, and on the viability of his claims (particularly his promissory estoppel claim), is obvious.

## CONCLUSION

For all of the foregoing reasons, Defendants request that the Plaintiff's Motion to Compel be denied.

                                              Respectfully submitted,

                                              MOTOROLA, INC., CLYDE KOFMAN,
                                              and JUERGEN STARK,

                                              By their attorneys,

                                              /s/ Kristin Glennan McGurn
                                              Richard L. Alfred (BBO# 015000)
                                              Kristin G. McGurn (BBO# 559687)
                                              SEYFARTH SHAW LLP
                                              World Trade Center East
                                              Two Seaport Lane, Suite 300
                                              Boston, MA 02210-2028
                                              Telephone:     (617) 946-4800

> **Certificate of Service**
> I hereby certify that a true and correct copy of the above document was served upon the attorney of record for the plaintiff via ECF and by mailing a copy of same, postage prepaid, to John G. H. Coster, Attorney at Law, 92 State Street, Suite 900, Boston, MA  02109 on November 2, 2006.
>
>                                      /s/ Kristin G. McGurn

---

[10] Defendants continue their diligent search in an effort to respond to Plaintiff's request for supplementation, and acknowledge their obligation to provide further supplementation if additional responsive documents are located.

8

# Exhibit 1

| | |
|---|---|
| **Subject:** | Updated: Getting Back In Touch - Jay Rein |
| **Location:** | Your Office Schaumburg |
| **Start:** | Tue 2/10/2004 3:00 PM |
| **End:** | Tue 2/10/2004 4:00 PM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Accepted |
| **Required Attendees:** | Rein Jay-REIN; Holtsberg Warren-AWH001; McMillan Catherine-ACF004 |

Warren,

It has been almost a year since we last worked together -- on the Sportsvision opportunity at IRL; recall I was the lead from Motorola Professional Services (MPS) who was engaged and attended the meeting with Buddy McAtee from IRL.

Anyhow, it has been a while and I thought it might be interesting for us to get together during my next pass through Schaumburg, next week. MPS has evolved quite a bit over the past twelve months and while we are making great strides, I am also observing quite a bit of opportunity in the VC space. Living up here in the Boston-area, I thought that there might be a need to explore opportunities for me to assist your organization in the coming year.

If this time works for you, I will come by your office next Tuesday.

Regards,
JSR

Jay Rein
Principal
Motorola Professional Services
617-899-2699

MPS20018

Page 1 of 1

From: Holtsberg Warren-AWH001
Sent: Tuesday, February 10, 2004 6:06 PM
To: McMillan Catherine-ACF004
Subject: FW: Follow-Up Message from Jay Rein

C-resumes.

-----Original Message-----
From: Rein Jay-REIN
Sent: Tuesday, February 10, 2004 5:48 PM
To: Holtsberg Warren-AWH001
Subject: Follow-Up Message from Jay Rein

Warren,

Thank you for taking time from you busy day to meet with me. Attached for your review is my latest resume.

As discussed, while we are making modest progress at IMS (aka MPS) within CGISS, I am interested in exploring other venues within Motorola that could more effectively utilize my skills and capabilities. As you chart the course for Motorola Ventures post meeting with Ed Zander, please consider me for opportunities as they may arise.

I am on vacation next week, so I will touch base within you upon my return... to hopefully hear of a positive meeting with Ed; and an opportunity to talk again.

Sincerely,

JSR

**Jay S. Rein**
Motorola Professional Services
*Architects of Intelligent Mobility Solutions*

508-893-6926 - office
847-761-4814 - fax
617-899-2699 - cell
Rein@Motorola.com

MPS20019

**Jay S. Rein**
75 Johnson Drive, Holliston, MA 01746-2244
Office: (508)893-6926•rein@motorola.com•Cell: (617)899-2699•Home: (508)893-6925•jaysrein@yahoo.com

## Summary

Executive with business development, sales, strategic planning, operational and marketing experience. Particular expertise in program development, project management, executive-level client relationship management and P&L statement management.

Key successes include:
- Development of *Think, Build and Manage*, a methodology that enables companies to better manage the various stages and investments associated with major projects.
- Introduced *Solution Selling, Large Account Management Programs*, and *Scenario-Based Planning* [to various organizations] in order to improve new business development and delivery activity along with overall client satisfaction.
- "Turnaround" of a venture capital backed company to facilitate the sale of the company.

## Experience

**Motorola Professional Services, Motorola Inc.; 2002 - Present, *Principal***
Member of Americas Leadership Team responsible for developing and selling a "mobility-based" Professional Services business model for Motorola Inc.
- Introduced Motorola to over $70M in new business opportunities; created professional services funnel and pipeline management processes for an organization accustomed to running assembly-line oriented processes.
- Developed various collateral for solution-based Security and CRM-based offers; (1) asset tracking and location-based services, (2) the mobilization of the field service representative and (3) video for entertainment and security applications via WLAN.
- Hired "lieutenants" into organization to help promote Motorola Professional Services in the marketplace.

**Epsilon, Burlington, MA; 1999 - 2001, *Vice President & General Manager, Client Services***
Key member of executive team who directed 70+ person staff responsible for selling, developing and managing complex CRM/Database Marketing Solutions and Analytic Support for mid to large size client companies of this $115M Marketing Solutions Provider.
- Successfully delivered 13% of the company's revenue and 20% of full-year EBIT. Met revenue plan for FY2001 and exceeded EBIT plan by 20%.
- Developed and executed a turnaround strategy: grew revenue by 15%, turned earnings positive and sold company for 6x EBITDA.
- Led a team of 37 customer care / call center personnel supporting five pharmaceutical clients and their compliance with regulatory mandates governing pharmaceutical marketing programs.
- Successful client development and project activity at 16 "top-shelf" companies, including IKEA International, IBM, Colgate and Lorillard Tobacco, Kaiser Permanente and Ross Products.

**Logica, Lexington, MA; 1998 - 1999, *Vice President, Customer Relationship Management, Financial Services***
Member of the Financial Services Division Team who directed the successful development and delivery of initiatives related to Voice Commerce, Electronic Commerce, and Mobile Commerce for the North American Division of this Global Systems Integrator.
- Grew CRM practice to $4.0 million of revenue and associated earnings within one year.
- Successful client development and project activity included work with New England Securities and The Financial Times.

**AT&T Solutions, Washington, DC; 1996 - 1998, *Senior Manager***
Designed and implemented innovative and strategic customer contact solutions for clients of the Transportation, Hospitality and Supply Chain Management Practice of this professional services organization within AT&T.
- Co-developed a customer contact solution that merged cellular and pager technology with customer information and transactional data – the precursor to mLife from AT&T and EasyUpdate from United Airlines.
- Successful client development and project activity included work with United Airlines, Sol Melia Hotels, Kmart and Alcoa.

MPS20020

Jay S. Rein, Page 2

## Experience (Continued)

**Accenture, Dallas, TX; 1993 - 1996, *Director, Transportation & Travel Services Practice***
Supported new business development for a $220 million practice revenue stream.
- Primary area of focus was new distribution channels of the future and customer touchpoint analysis. Participated in various strategy engagements that created new paradigms for customer interaction.
- Successful client development and project activity included work with Marriott Hotels, CAAC, Aeroflot, JAL, ANA, British Airways, Delta Air Lines and the Allied Pilots Association.
- Published in Airline Business; quoted in BusinessWeek and Informationweek. Multiple keynote speaking engagements.

**AMR Corporation, Dallas, TX; 1989 - 1993**
AMR Corporation is the parent company to American Airlines and its affiliated businesses.
- *The SABRE Group, 1992 - 1993, Manager Financial Planning*
Developed and administered an $800 million revenue and expense budget. Managed of a staff of eleven financial planners for the computer reservations system then owned by American Airlines. Re-engineered the corporate planning process by segregating annual planning and strategy processes from budgeting processes. Responsible for monthly forecasting, capital expenditure planning and approval and monthly results reporting.
- *The SABRE Group, 1991, Manager Business Development*
Managed a staff of three analysts responsible for the development and presentation of financial models supporting the international distribution of the SABRE computer reservations system. Structured opportunities for partnerships in Mexico, Argentina and Korea.
- *American Airlines, 1989-1990, Senior Financial Analyst, Airline Profitability Analysis*
Developed the strategic and financial framework for the acquisition of TWA's London route assets. Led junior analysts through project work that modeled financial performance of re-engineered route structures and airline operations.

**Texas Instruments, Santa Clara, CA; 1984 - 1987, *Field Sales Engineer, Semiconductor Division***
Managed a sales territory of PC start-ups and technology clients in Silicon Valley. Worked with engineering and procurement of IBM PC-clone oriented companies within a $2.5 million sales territory. Achieved 33% growth in sales versus industry-wide growth of 17%. Ranked in the top 5% of Texas Instrument's North American sales force. Noteworthy clients included Sigma Designs, Maxtor, Diasonics and Marshall Industries.

## Education
MBA Finance/International Business, New York University, 1989
BS Applied Mathematics and Engineering, University of Vermont, 1984

## Training courses attended
- Solution Selling
- Sportsmind
- Karrass Negotiations Skills Workshop
- Covey Training

## Other Information
- Commercial Pilot with Certified Flight Instructor rating; single-engine land and seaplane; member of AOPA
- Captain in the Civil Air Patrol – Air Force Auxiliary
- Coach for 5-year old Kindergarten Soccer Clinic
- Volunteer – Junior Achievement, Dallas, TX
- Enjoy travel; established and managed a student travel agency while earning my MBA

February 2004
Page 2

MPS20021