UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN<br><br>            Plaintiff,<br><br>v.<br><br>MOTOROLA INC., CLYDE KOFMAN and<br>JUERGEN STARK<br><br>            Defendant. | CIVIL ACTION NO. 04-12580-NG<br><br>**HEARING REQUESTED** |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING JAY S. REIN'S DAMAGES DUE TO HIS UNVESTED MOTOROLA STOCK OPTIONS AND UNEARNED FUTURE BONUSES

Defendants Motorola, Inc. ("Motorola"), Clyde Kofman and Juergen Stark (collectively, "Defendants") move this Court for an order precluding Plaintiff Jay S. Rein ("Rein") from introducing any evidence concerning his future unearned bonuses and unvested, unexercised stock options at the trial in this matter. As grounds for this motion, Defendants state that any evidence concerning Rein's future bonuses is too speculative because, inter alia, (i) Rein *never* received a bonus under Motorola's Incentive Plan ("MIP"), the plan in place for his Motorola Professional Services group ("MPS") in 2004; (ii) any such bonus would not have been paid until long after his position was eliminated; and (iii) a significant component of the MIP bonus is performance-based.

Moreover, Defendants argue that any evidence concerning Rein's unvested stock options is inadmissible because (i) the stock options would not have vested until long after his job elimination and he cannot prove whether, and for how long, he would have remained employed at Motorola; (ii) Rein has failed to designate an expert to testify as to the value of his unvested,

unexercised stock options, but plans to offer only his own lay opinion testimony concerning these damages, which is inadmissible pursuant to Federal Rule of Evidence 701; and (iii) Rein's own self-serving opinions concerning the value of his unvested, unexercised stock options are more prejudicial than probative, especially since his own supplemental disclosure reflects that he is severely misguided concerning the appropriate method for calculating the value of such options.

## Argument

### 1. Plaintiff's Claim for Future Unearned Bonuses and Unvested Stock Options is Purely Speculative.

It is well settled that a plaintiff cannot recover for speculative or conjectural losses. See *Restatement (Second) of Contracts*, § 352 (1981) ("[d]amages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty"); 17A *Massachusetts Practice*, § 26.7 ("damages must be capable of ascertainment by reference to some definite standard, either of market value, established experience, or direct inference from known circumstances"). Front pay, lost profits, and awards for future bonuses or stock options are prime examples of purely speculative losses. Indeed, "an award of front pay is based on speculation.... An award of damages for unrealized stock option appreciation is similarly speculative." *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1246 (10th Cir. 2000); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 355 (1st Cir. 1998) ("[a]n award of front pay . . . is necessarily speculative").

Courts do not hesitate to deny recovery where claims for damages are purely speculative. See *Lawton v. Nyman*, 327 F.3d 30 (1st Cir. 2003) (denying plaintiffs' speculative claim that, had they known the company would be sold, they would have retained their stock for sixteen months). In *Vesprini v. Shaw Industries, Inc.*, 221 F. Supp. 2d 44, 63 (D. Mass. 2002), aff'd, 315

F.3d 37 (1st Cir. 2002), this Court, applying Georgia contract law, held that the plaintiff could not sustain a damages claim based on a bonus allocation because the plaintiff's "bonus claims are exceedingly speculative." The Court recognized that resolving the bonus claim required "several extraordinary leaps of faith" including how much the company would have made, how large the bonus pool would have been, and what percentage of the bonus pool would have gone to the plaintiff had he run the business the way he wanted to. *Id.* at 63-64. Although mathematical precision is not required when calculating future damages, any damages award must have a "rational basis in the evidence." *Camar Corp. v. Preston trucking Co., Inc.*, 221 F.3d 271, 279 (1st Cir. 2000) (*quoting Thermo Electron Corp. v. Schiavone Constr. Co.*, 958 F.2d 1158, 1166 (1st Cir. 1992)). Rein has no rational basis to support his claim for damages based on future bonuses and unvested, unexercised stock options. On the contrary, the record evidence establishes that Plaintiff had no reasonable expectation of remaining in the MPS group for any extended period after February 2004. Therefore, evidence of such damages is inadmissible.

### A. Any Evidence Concerning Damages Based On Rein's Unearned Bonuses Is Too Speculative And This Court Must Exclude It.

In his Supplemental Response to Defendants' Interrogatories, which he served on November 2, 2006, Plaintiff alleges that if Defendants had not eliminated his job in February 2004, he would have been entitled to a bonus under Motorola's Incentive Plan ("MIP") in 2004 ($111,919.41) as well as in 2005 ($104,315.25). He also seeks front pay for potential bonuses in 2006, 2007 and 2008. Rein's calculation of such future bonuses is too speculative and this Court should exclude any evidence concerning them.

BO1 15810010.1

First, Rein was never entitled to a bonus under the MIP during his tenure. *Raimondo v. Amax, Inc.*, 843 F. Supp. 806, 810 (D. Conn. 1994) (where bonus system is not mandatory and plaintiff did not always receive a bonus in prior years, calculation of future bonus would be "purely speculative and inappropriate" tantamount to rear-view fortunetelling or speculative hindsight (citation omitted)).  Second, even Rein admits that Motorola only pays out its MIP bonuses to employees who are employed on December 31st of each year.  For Rein to be entitled to his MIP bonus, he would have had to remain employed at Motorola through December 31, 2004.[1]  There is absolutely no evidence that he would have done so.  Indeed, the evidence reflects that MPS was a speculative and exploratory endeavor throughout its existence.  The evidence reveals that Rein elected to seek alternative employment outside of MPS in January and February of 2004, before learning of the elimination of his position.  The evidence confirms that the other MPS members had been terminated or redeployed by December 31, 2004, by which point MPS was disbanded.  As such, Rein's claimed entitlement to MIP bonuses for December 31, 2004, (and 2005, 2006, 2007 and 2008) is preposterous.

Moreover, the MIP performance bonus is discretionary, and Motorola does not, and has no obligation to, pay out MIP every year.  In addition, Motorola calculates the MIP bonus using a formula that takes into account the Company's overall performance for the

---

[1] The MIP was "established to ... reward employees for strong business performance." The Plan is "based on successive calendar-year performance periods commencing 1 January" and, to be eligible to participate, employees must be "active on a Motorola payroll as of the end of the Plan Year (i.e. December 31st). 2004 MIP at p. 1, filed with Plaintiff's Motion to Compel. The Plan further states that it "does not constitute a guarantee of employment nor does it restrict Motorola's rights to terminate employment at any time or for any reason." *Id.* The Plan and any individual award is "offered as a gratuitous award at the sole discretion of Motorola." *Id.* It does not create "vested rights of any nature nor does it constitute a contract of employment or of any other kind." *Id.* Awards under the plan "shall not become a part of any employment condition, regular salary, remuneration package, contract or agreement, but shall remain gratuitous in all respects." *Id.* at p. 2.

BO1 15810010.1

year as well as the individual's performance for that year. Here, there is no way to calculate the performance-based component, because Rein was only employed for two months in 2004. The ultimate irony is that Rein did not receive the MIP, or any other Sales Incentive Plan bonus, for the two years that he was with Motorola since he did not meet his individual or group goals. Certainly, jurors would need to resort to rank speculation and conjecture to arrive at a performance-based bonus component for Rein in 2004 and future years.

Finally, even Rein indicates on page 6 of his supplemental damage analysis, that he has no basis for his estimates concerning the amount of any MIP bonus he would have received after he left Motorola, and he adds that he merely "assumes that his performance bonus from Motorola for 2006 would be the same as he *would have* received in prior years." (emphasis added).[2]

As such, allowing Rein to present information about this bonus is more prejudicial than probative, and this Court should exclude it.

### B. Any Evidence Concerning The Value Of Rein's Unpaid Stock Options Is Inadmissible.

#### i. Rein's stock options would not have vested until long after his job elimination and he cannot prove whether, and for how long, he would have remained employed at Motorola.

With respect to Rein's claims for damages based on his unvested stock options, he claims in his recently filed damages analysis that he should be entitled to the value of his stock options which would have vested if he was still employed on May 6, 2004, July 1, 2004, September 9, 2004, December 20, 2004, May 6, 2005, September 9, 2005, July 1,

---

[2] Needless to say, there are a lot of "ifs" in this theory. As mentioned, Rein did not receive Incentive Plan bonuses in prior years so there is no record evidence to support this misleading statement.

2005, May 6, 2006, July 1, 2006, September 9, 2006, December 20, 2006 and May 6, 2007. This Court should exclude any evidence concerning these unvested stock options because it is too speculative for many of the same reasons set forth above.

In addition, Rein had to be employed at Motorola on the vesting date, for each of his stock options to vest under the Stock Option Agreements.[3] There is absolutely no evidence supporting his claim that he would have remained employed at Motorola through the first vesting date on May 2004, let alone the final vesting date of May 2007. Even taking everything Rein says as true in his Complaint, Stark's promises were, at best, only to review the viability of MPS as of June 2004, promising to make some serious decisions at that time. Indeed, the evidence reflects that the entire MPS group had abandoned its mission as of December 2004, and its members had been redeployed or separated from the Company by then.[4] As such, Rein's claimed entitlement to the value of his unvested stock options through December 2006 is purely speculative.

### ii. Rein's claims that he would not have exercised his options until 2006 is neither credible not admissible.

In his supplemental damage analysis, Rein calculates the current value of his stock options by taking the difference between the exercise price and the current trading value of each share, multiplied by the number of options. As set forth in sections B(ii) and B(iii), below, this sophomoric method of calculating the value of stock options is not widely accepted among accountants and experts in the field. It would merely confuse the jury if the

---

[3] Rein admits to conduct that constitutes an independent ground for canceling his Option Agreements pursuant to their own terms, providing further support for excluding his option calculations.

[4] Another member of MPS, Michael Humpleby, was terminated in a wide-scale reduction in force in mid-2005. John Gillardi left voluntarily shortly before that RIF got underway.

Court permits such testimony because it significantly and unjustifiably overinflates the value of Rein's alleged damages.

Finally, it is absurd to suggest that if Rein's options had vested, he would not have exercised them until now -- as if he had some omniscient knowledge of the potential for Motorola's stock price growth, or that he would not have chosen to exercise them earlier for some other personal financial reason.[5]

### iii. The Federal Rules of Evidence Prohibit Rein From Providing Lay Opinion Testimony as to the Value of his Stock Options.

Rein has not designated an expert witness to testify concerning the value of his stock options, and he offers only his own lay view of how much they should be worth. Rein simply does not qualify under Rule 701 to give lay opinion testimony concerning the value of Motorola stock options. Pursuant to Federal Rule of Evidence 701 "[a] witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are ... not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701(c); *see also Freedom Wireless, Inc. v. Boston Comm. Group, Inc.*, 369 F. Supp. 2d. 155, 157 (D. Mass. 2005); *U.S. v. Maher*, 454 F. 3d 13, 24 (1st Cir. 2006).

Rein is not an accountant. He is not a stock broker or a financial analyst. Rein has not alleged, nor has he provided any evidence that would allow this court to conclude, that he is qualified to testify, even as a lay witness, on the value of unvested, unexercised stock options. Therefore, his testimony on this issue is inadmissible under Fed. R. Evid. 701 and this Court should exclude any evidence concerning his unvested, unexercised stock options.

---

[5] Notably, Motorola's stock price was markedly lower in 2004 than it is today. Rein's own pattern of exercising and same-day-selling his vested options belies his absurd calculations.

Courts have consistently held that valuation in the business context is a subject matter that squarely fits into the *Daubert* requirements because it is an area that "employs specific methodologies published in peer-reviewed journals." *See, e.g., Frymire-Brinati v. KPMG Peat Marwick*, 2 F. 3d 183, 186-87 (7th Cir. 1993).

Disputes over the valuation of stock options take the form of a "battle of the experts" in Court where both sides are permitted to contest the validity and relative strengths of the opposing party's method of valuation. *See, e.g., Mathias v. Jacobs,* 238 F. Supp. 2d 556 (S.D.N.Y. 2002) (ruling on whether a jury verdict was against the weight of the evidence when the jury accepted one expert's accepted methodology over another's). Indeed, courts consistently exclude lay testimony on such valuation in the business context. *Ullman-Briggs, Inc. v. Salton/Maxim Housewares, Inc.*, 1996 WL 535083 (N.D. Ill. 1996) (excluding lay opinion testimony as to the valuation of business assets where the opinion-giver had no reliable basis for his opinion); *See Golden West Refining v. Price Waterhouse*, 392 F. Supp. 2d. 407 (D. Conn. 2005) (doubting the admissibility of lay opinions with respect to business valuation).

Rein's testimony does not meet the standards under Rule 702 or under *Daubert*. First, Rein has not laid any foundation for his ability to testify on the subject of stock option valuation. Second, Rein has not identified any reliable method by which he calculated the value of his unvested, unexercised stock options. Rein may not offer unsupported subjective beliefs as to the value of his stock options, especially where doing so requires speculative hindsight. Rather, Rein must base his opinion on a requisite scientifically-tested or peer-accepted methodology. Rein has simply failed to do so, and as such, Rein's testimony as to the value of his stock options is inadmissible and this Court should exclude it.

### iv. Rein has Failed to Employ a Reliable or Acceptable Methodology for Calculating the Value of his Stock Options.

In his supplemental damages analysis, Rein does not even pretend to use one of the many reliable or acceptable methodologies for calculating the value of his unvested stock options. Fed R. Evid. 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if ... the testimony is the product of reliable principles and methods." *See* Fed. R. Evid. 702. Such an opinion must be based on "knowledge" -- something more than a subjective belief or unsupported speculation. *See U.S. v. Varoudakis*, 1998 U.S. Dist. LEXIS 13728, *7-8 (D. Mass. 1998). Under *Daubert v. Merrell Dow Pharmaceuticals*, 113 S. Ct. 2786, 2796 (1993), this Court must assess whether the reasoning or methodology underlying such opinion testimony is scientifically valid. Leaving aside the issue of whether or not Rein is a qualified expert, Rein has failed to base his opinion as to the value of his stock options on any reliable principle or method.[6]

In fact, calculating the value of unvested, unexercised stock options is complicated and technical. Under the standard valuation theories, the value of an option is a probability-weighted present value calculation. For example, using one standard method, the Black-Scholes approach, the valuation of a call option is expressed as a function of six parameters: (i) the stock price, (ii) the exercise price, (iii) the life of the option, (iv) the expected dividend yield, (v) the risk free rate of interest, (vi) the unexpected stock price volatility. In yet another approach, the binomial tree approach, a tree representing possible future stock price movements is constructed and the option is valued by working back through the tree from the end to the beginning of the life of the option, calculating the value of the option at each node of the tree.

---

[6] Rein has not provided any information regarding his qualifications to testify as to stock option valuation, nor has he designated an expert to testify on the subject.

## Conclusion and Request for Hearing

Accordingly, the Defendants respectfully request that this Court preclude Rein from introducing at trial any evidence concerning his alleged front pay damages suffered due to his unvested, unexercised stock options and unearned future bonuses. If this Court decides to permit such evidence at trial, Defendants anticipate that they will file a Motion seeking a trial continuance so that they may complete expert discovery in this matter, solely on the issue of damages.

Defendants believe that a hearing will assist in the resolution of this Motion, and hereby request a hearing.

| Dated: November 6, 2006 | Respectfully submitted,<br>MOTOROLA INC., CLYDE KOFMAN AND JUERGEN STARK<br>By their Attorneys,<br><br>/s/ Kristin Glennan McGurn |
|---|---|
| **CERTIFICATE OF SERVICE**<br><br>I hereby certify that a true and correct copy of the above document was served upon the attorney of record for the plaintiff via ECF and by mailing a copy of same, postage prepaid, to John G. H. Coster, Attorney at Law, 92 State Street, Suite 900, Boston, MA 02109 on November 6, 2006.<br><br>/s/ Kristin G. McGurn | Lynn A. Kappelman (BBO# 642017)<br>Kristin G. McGurn (BBO # 559687)<br>Seyfarth Shaw LLP<br>World Trade Center East<br>Two Seaport Lane<br>Suite 300<br>Boston, MA 02210-2028<br>Telephone:  (617) 946-4800<br>Telecopier:  (617) 946-4801 |

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

Pursuant to Local Rule 7.1, on November 4 and 6, 2006, counsel for Defendants conferred with Plaintiff's counsel regarding the matters addressed herein, but the parties were unable to resolve or narrow their dispute.

/s/ Kristin G. McGurn