UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAY S. REIN,                                    ) | |
|                                                 ) | |
|     Plaintiff,              ) | |
|                                                 ) | |
| v.                                              ) | Civil Action No. 04-12580 NG |
|                                                 ) | |
| MOTOROLA, INC., CLYDE                           ) | |
| KOFMAN, and JUERGEN STARK,                      ) | |
|                                                 ) | |
|     Defendants.              ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION IN LIMINE FOR THE EXCLUSION OF ALL
EVIDENCE RELATING TO REIN'S LAPTOP COMPUTER**

The Defendants have indicated in their Pre-Trial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(3) that they intend to introduce into evidence at trial exhibits (and potentially testimony) concerning Rein's alleged deletion of the data contained on the hard drive of the laptop computer issued to him by Motorola, including the following documents: (i) Standard Operating Procedure E-62; (ii) Confidential MIPS Final Report; (iii) Progressive Discipline Policy; (iv) Kroll Investigative Analysis; (v) Standard Opertating Procedure E-60.  Presumably, these exhibits will be offered in the guise of "after acquired evidence" to show that, after terminating Rein, Motorola discovered that Rein has violated some company policy that would, in any event, justify his termination.

As the Court well knows, this is not the first occasion the Defendants have raised the issue of Rein's laptop computer.  Thus, the Court has already been treated to a Motion for Sanctions (with an accompanying Memorandum of Law), a Reply, a Renewed Motion for Sanctions (with Memorandum of Law), another Reply, and hundreds of pages of

accompanying exhibits. In fact, as recently as five days ago, the Defendants were still including a reference to possible sanctions relating to the laptop in a footnote to their Pre-Trial Disclosures.[1] Unfortunately, even though this issue has consumed nearly a year of discovery, thousands of dollars of legal and expert fees, and resulted in the substandial delay of this trial, the Defendants apparently believe they can get further mileage out of this controversy by interjecting it into the underlying merits of the case. They should not be permitted to do so.

Argument

In a discrimination claim, "after acquired evidence" has no bearing on liability and is only admissible on the issue of damages. *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d. 92 (1st Cir. 1997). Where applicable, its sole impact on a plaintiff's claim is to prevent him from recovering front pay damages or reinstatement and, potentially, to terminate the accrual of back pay damages beyond the date defendant first discovered an employee's wrongful conduct. *McKennon,* 513 U.S. at 362.

To bar relief based on "after acquired evidence" there must be proof that the misconduct was of such severity that it would have justified discharge on those grounds alone, and that the employer would have actually discharged the employee. *McKennon*, 513 U.S. at 362-63; *Dalton v. Wal-Mart Stores, Inc.* 1996 U.S. Lexis 22786 (D.N.H. 1996), *citing O'Neil v. Runyon*, 898 F. Supp. 777, 781 (D. Col. 1995); *Ricky v. Mapco, Inc.,* 50 F.3d. 874, 876 (10th Cir. 1995). Moreover, the burden of proof falls squarely on

---

[1] See Defendants' Pretrial Disclosures, pg. 1, fn.1. Of course the propriety of attempting to reargue this issue, yet again, in a document supposedly devoted to disclosing witnesses and exhibits is highly questionable.

the defendant. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072, (9th Cir. 2004), *cert. den'd.* 544 U.S. 905, 125 S.Ct. 1603, 161 L.Ed.2d 279 (2005).

Based on the foregoing, there are at least five reasons the Defendants should not be permitted to introduce at trial "after acquired" evidence concerning Rein's alleged deletion of data from the laptop. First, it is clear that the Defendants intend to use this evidence to influence the jury's verdict with respect to liability, and it is doubtful that a limiting instruction from the Court would be sufficient to insure that the evidence is used solely for the purposes of calculating damages.

Second, in the traditional situation where "after acquired" evidence is used there is no debate about whether the employee actually committed some infraction of company policy. In this case, Rein vigorously disputes that he engaged in any improper conduct and has credible evidence to support this assertion. Allowing the Defendants to introduce this evidence will essentially create a separate trial within a trial, with disastrous consequences. Technical evidence relating to computer forensics will become part of the case, potentially requiring expert testimony on both sides. The length of trial will increase dramatically. The potential for jury confusion is great.[2]

Third, there is a fundamental problem with causation. Typically, "after acquired" evidence relates to some infraction an employee committed <u>while he was an employee</u>, but that was unknown to the employer at the time they discharged him. *See e.g. McKennon,* 513 U.S. at 362-63. Here, the infraction Rein is accused of occurred after he had been terminated, and is a direct outgrowth of the very litigation he is bringing against Motorola. The laptop is an issue because the Defendants discriminated against Rein,

---

[2] The Court need only look at the prior motions, briefs, and exhibits that have been filed by the parties in conjunction with the Defendants' Motion for Sanctions to appreciate what they jury has to look forward to at trial if this issue becomes a part of the case.

3

terminated his employment, and then demanded the return of the laptop in conjunction with this litigation. Absent this chain of events, which was initiated by the Defendants' discriminatory conduct, Rein would still be happily working at Motorola using his laptop to create value for the company.

Fourth, it is far from clear that the conduct Rein is accused of violates <u>any</u> Motorola policy. Based on the exhibits the Defendants proposed to introduce, it appears that they will argue that Rein's alleged deletion of data from the hard drive violates its policy against "the destruction or waste of Motorola property".[3] The problem is that Motorola's policies and procedures are like the Bible, sufficiently comprehensive, voluminous and vague that something can be found within them to support nearly any proposition. In this case, assuming <u>arguendo</u> that Rein actually did delete data from the hard drive of his computer, this conduct did not destroy anything, since the laptop remained undamaged.[4]

Fifth, even if the Defendants could get over this hurdle, they must show not only that Rein's conduct violated this policy but that, standing alone, it would have resulted in his immediate termination. Relevant to this inquiry would be what other employees have been accused of destroying company property in general and computer data in particular. If the Defendants are permitted to introduce this evidence and pursue this line of argument, fundamental fairness requires that Rein be permitted an opportunity to do additional expedited discovery on this issue.

---

[3] Progressive Discipline Policy, pg. 2 (MSP0156).
[4] Concededly, the data on Rein's computer was destroyed. However, this data consisted primarily of drafts of various word documents, spreadsheets and presentations Rein had worked on. Deleting this information is no different than throwing away a draft of a written document; and, to be consistent, anytime an employee threw away a paper copy of a document Motorola would have to terminate his employment immediately.

4

Clearly, admitting this evidence would be like opening a veritable Pandora's box. It will require additional testimony from both lay and expert witnesses, create a host of subsidiary issues that the jury must resolve, substantially lengthen the duration of the trial, result in confusion for the jury, and potentially taint their deliberations on the issue of liability.

JAY S. REIN

By his attorney,

/s/ John G. H. Coster
John G. H. Coster
(BBO #101450)
92 State Street, Suite 900
Boston, Massachusetts 02109
(617) 423-2224

CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1

Pursuant to L.R. 7.1 on November 6, 2006 I conferred with Defendants' counsel in a good faith effort to resolve or narrow the issues raised in the instant Motion. Plaintiff's and Defendants' counsel were unable to come to an agreement regarding the Plaintiff's Motion.

/s/ John G. H. Coster

Certificate of Service

I hereby certify that a true and correct copy of this document was served on the attorney of record the Defendants by ECF on November 6, 2006.

/s/ John G. H. Coster
John G. H. Coster