## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAY S. REIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-12580 NG |
| | ) | |
| MOTOROLA, INC., CLYDE KOFMAN | ) | |
| and JUERGEN STARK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT PRE-TRIAL MEMORANDUM

**1.     Names, Addresses and Phone Numbers of Trial Counsel.**

Plaintiff will be represented at trial by:

John G.H. Coster
92 State Street
Suite 900
Boston, MA 02109
Telephone:     (617) 423-2224

Defendants will be represented at trial by:

Lynn A. Kappelman
Kristin G. McGurn
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800

**2.     Whether Case is to Be Tried with or without a Jury.**

The case will be tried with a jury.

**3.     Summary of the Evidence.**

**      A.     Summary of Plaintiff's Evidence.**

        Rein was recruited by Russell Reynolds, a prominent executive recruiting firm, to come to work for Motorola.  In early June of 2002 Rein was offered the position of Principal for North

America in Motorola's Professional Services Group (the "MPS Group") and commenced working for the company.  Rein received a base salary of $190,000 per year (subsequently increased to approximately $194,000 per year), plus bonus, stock options and other benefits. Rein's employment was terminated without warning in February of 2004.

      (1)    Evidence Relating to Rein's Promissory Estoppel Claim

The evidence will show that prior to terminating Rein, Motorola made specific promises and representations to Rein to induce him not to explore other potential job opportunities or to accept a position with another company, including: (i) a promise by Stark, who was then Rein's manager, that his position with the company was secure and that he, and the other members of the MPS Group would be given until June 30, 2004 to show that the MPS Group had the potential to create value for Motorola; (ii) a "retention bonus" paid to Rein and other members of the Group; and, (iii) written and oral representations in a performance review he received only weeks before being fired that  2004 would be a very good year for Rein, that he would have the opportunity for his capabilities to come through more clearly, and that the MPS Group would be given the opportunity to create value for the company.

The evidence will further show that Rein reasonably relied on these promises in declining an offer of employment from another company (Invoke Solutions) in mid-January of 2004.

Finally, the Plaintiff will show that, several weeks after Rein turned down this position and notwithstanding its earlier promises and commitments to him, Motorola terminated his employment.

      (2)    Evidence Relating to Rein's Discrimination Claim

The evidence will also show that Motorola discriminated against Rein on the basis of his age and that the individual defendants, Stark and Kofman, aided and abetted such discrimination.

It is undisputed that Rein was 40 at the time his employment was terminated.  It is also undisputed that, prior to his termination, Rein had never received any warnings or reprimands concerning his performance.  In fact, Rein's performance evaluations were uniformly positive. Notwithstanding the foregoing, on or about February 23, 2004 Kofman terminated Rein's employment.

The evidence will show that none of the reasons advanced by Kofman to support his decision to terminate Rein are credible and that each is a pretext for discrimination.  For example, the Plaintiff will show that Kofman's criticisms of Rein's underlying performance are inconsistent with his earlier evaluations and statements concerning Rein; and that the "reorganization" of the MPS Group that supposedly necessitated the termination of Rein's employment never even took place.  In addition, Rein will show that the very purpose of this supposed "reorganization" was to replace him with one or more "younger", "less experienced" employees.

(3)    <u>Evidence Relating to Rein's Retaliation Claim</u>

Rein engaged in activity protected under state and federal discrimination laws and the Older Workers' Benefit Protection Act (OBRA), including complaining to Motorola about that he felt the termination of his employment was unfair and potentially discriminatory, and indicating that he wanted to seek the advice of counsel before agreeing to release any potential claims he had against the company. The evidence will show that the Defendants retaliated against Rein for engaging in this protected activity by, <u>inter alia.</u>: (i) threatening to create and or falsify documentation to support the termination of his employment; (ii) threatening to withhold severance payments Rein was entitled to receive; and, (iii) maliciously interfering with Rein's efforts to obtain other positions within Motorola by, among other things, making untrue and disparaging comments about his performance.

(4)    <u>Evidence Relating to Rein's Interference with Advantageous Relations Claim</u>

After being notified that his position within the MPS Group had been eliminated, Rein diligently pursued other opportunities within Motorola and was interviewed for a number of positions. The evidence will show that Kofman deliberately interfered with Rein's efforts to secure another position at Motorola by making disparaging comments about Rein's performance. The evidence will further show that these comments were improper in motive and means; and made with actual malice with a purpose unrelated to any legitimate corporate interests. As a result of this malicious interference, Rein was unable to secure another position at Motorola.

(5)    <u>Rein's Damages</u>

The evidence will show that Rein suffered the following damage as a result of the Defendants' wrongful conduct:

(a)    <u>Back Pay Damages</u>

After being terminated by the Defendants, Rein was out of work for over half a year. The position he was eventually able to secure a position but with significantly less compensation than he was earning at Motorola. The evidence will show that the termination of Rein's employment caused him to lose salary, bonuses, stock options and other compensation the Plaintiff has estimated to be in excess of seven hundred thousand dollars ($700,000).

(b)    <u>Front Pay Damages</u>

Rein will continue to suffer economic damages going forward. The evidence will show that, projecting the current discrepancy between his actual compensation and what he would have earned had he remained at Motorola forward through 2008, Rein's future damages will be in excess of two hundred thousand dollars ($200,000).

(c)    <u>Emotional Distress Damages</u>

The evidence will show that as a result of Defendants' wrongful conduct, Rein suffered significant emotional distress, for which he is entitled to be compensated.

(d)    <u>Liquidated, Multiple and/or Punitive Damages</u>

The evidence will show that the Defendants discrimination against Rein was willful and that he is entitled to have any damage award either doubled or trebled.

**B.    Summary of Defendants' Evidence.**

On February 23, 2004, Motorola terminated the employment of plaintiff Jay Rein ("Rein") in a restructuring of a fledgling professional services group. By then, the Motorola Professional Services ("MPS") group had already been splintered and downsized from 200 to five employees in less than two years. It had never met its revenue goals. The group was disbanded entirely shortly after Rein's termination.

At trial, the evidence will show that:

o  the defendants' decision to again reorganize MPS and eliminate the position that Rein held for less than two years, in lieu of another position, bore absolutely no relationship to the fact that Rein had just turned forty, but rather was based on exclusively on legitimate business factors;

o  the defendants did not make any sufficiently definitive promise to continue to employ Rein, an at-will employee, for any period and Rein neither relied on any promises nor was his reliance, if any, reasonable under the circumstances;

o  the individually-named defendants neither interfered with Rein's redeployment nor retaliated against him.

In 2002, Motorola launched MPS, a start-up professional service organization, as part of its corporate division. Professional services was a new business line for Motorola through which it sought to provide services, expertise and consulting to customers to complement its traditional core products and technologies.

Motorola hired Rein into this group as a Principal in June of 2002, when he was 38 years of age. He was not then assigned to any particular industry, region or client. He was an at-will employee. Although Motorola was based in Illinois and has many offices, Rein worked out of his home in Holliston, Massachusetts. He held the title of Principal throughout his employment. Rein had worked at start-ups and new divisions before.

Rein's signed his Application for Employment, on or about June 24, 2002, directly below the paragraph that stated:

> Nothing in this application nor in any prior or subsequent oral or written statement is intended to create any contract of employment or to create any rights in the nature of a contract of employment. This application does not bind either party for a specific period of time regarding employment. You understand that no one other than the Motorola Inc. Vice President and Director of Human Resources has any authority to enter into any agreement contrary to the foregoing. If hired, nothing in this application shall restrict your right as an employee nor the right of Motorola as an employer to terminate your employment at any time.

Throughout Rein's tenure, Motorola underwent significant reorganizations and reductions in force. In particular, the experimental MPS group struggled from its inception, and thus Rein and other members of the group were concerned from the outset about job security. Neither the group nor Rein met sales or financial targets for 2002. Rein testified that he does not believe that his 2002 performance review was motivated in any way by age discrimination, and that his then-manager, DeBarros, never treated him unfairly.

In March 2003, the MPS group was reorganized and downsized; following this restructuring, only about 26 members of the original group of 200 continued to operate as the group, including Rein. The group was moved out of the corporate division and into the Commercial Government and Industrial Solutions Sector ("CGISS"). Its interim manager was Tom Niersbach. Rein testified that he does not believe that Niersbach ever treated him unfairly. In July 2003, Motorola hired Juergen Stark as a Corporate Vice President with supervisory responsibilities over 700 employees, including the reduced MPS group.

As of October 2003, the group was losing money, none of its members were generating revenue and they had not met their plan. Stark met with the group to determine, among other things, if the fledgling group would continue. Stark was disappointed with the group's initial business plan, which lacked boldness and clarity. He told the group that he was not willing to move the group forward based on the plan they presented, and asked them to improve it. At the conclusion of this meeting, Rein and others in the group had concerns that Stark would disband MPS.

After the group presented a revised plan several days later, Stark was sufficiently satisfied to allow the exploratory group to continue. Stark gave the group a pep talk in which he acknowledged the group's past challenges, expressed the desire to see progress against the plan the group had adopted, and said he would revisit the group's progress monthly as well as in June 2004 to monitor whether they were meeting goals. As of these October meetings, Rein had not told Stark or Kofman that he was looking for or offered jobs outside Motorola.

Rein believed the group's goals were aggressive but was relieved that the group had survived. Rein understood that if the group didn't execute on the plan, Stark or anyone could reassess and make changes, or eliminate the group, before June 2004. Stark never promised any member of the group any definite period of employment, nor did he have any authority to do so. He never said that the group would necessarily survive until June 2004, much less promise any

specific member of the group continued employment until that time. Rein could not reasonably have interpreted this encouragement as a promise of continued employment.

In the final quarter of 2003, MPS was again reorganized and downsized, leaving only five members in the group. Stark asked the group of five to choose their leader, and they chose Clyde Kofman, a Managing Principal, whom Motorola had hired into MPS in July 2002. Kofman assumed supervisory authority over the two remaining Principals, Rein and John Gillardi, and two lower level employees, Michael Humpleby and Clay Brice. In this role, Kofman was responsible for all managerial responsibilities including the group's business decisions and results, evaluating the group's members, and discipline or termination of members as necessary. In late 2003, the group presented to Stark different scenarios with varying numbers of employees – or "head count" – in the group.

Rein's 2003 performance review was drafted primarily by Thomas Niersbach ("Niersbach"), who had managed Rein in 2003 before Stark or Kofman became his managers and had assessed his leadership skills in 2003. Kofman finalized Rein's 2003 review, adding a few generic sentences about 2004 bringing an opportunity for the group to add value and for Rein to show his own value "more clearly". Rein could not reasonably have interpreted this review as a promise for continued employment for a definite time. Rein testified that he did not believe that his 2003 performance evaluation was motivated in any way by age discrimination.

In 2003, the Company also completed a Leadership Relative Performance Assessment ("RPA") on Rein. In the "4-Es" component of the RPA, Rein first rated his own performance, and then his manager at the time, Niersbach, and a coworker, rated Rein's performance in those same areas. Rein's assessment revealed eight of what Motorola terms "blind spots," or areas in which he rated himself significantly higher than his manager or peers. Rein's blind spots were in important areas including delivering on commitments to customers, demonstrating constant respect for people, keeping the organization focused on executing the plan, meeting key short-term objectives, and honesty.

Neither Rein nor the group met goals for 2003. In 2003, certain members of MPS had their bonus calculated based on Motorola's Sales Incentive Plan ("SIP"), and others had their bonuses calculated based on Motorola's Incentive Plan ("MIP"). Because the MPS group and its individual members failed to meet their goals in 2003, those on the SIP were due to receive no bonus. Kofman arranged for his group to receive a modest bonus award in January 2004. Rein could not have reasonably interpreted this bonus as a promise for continued employment. Indeed, it was also paid in January 2004 to an MPS employee whose employment had been terminated in December 2003. Rein was concerned that the "volume and velocity" of the group's activity in 2003 was insufficient to meet plan. As of December 2003, Rein did not feel that the group was headed in the right direction and he admits that he and Kofman did not see eye to eye on how the business was evolving. The group continued to refine its plans and priorities, and to consider various scenarios with varying numbers of employees – or "head count" – in the group.

In January 2004, realizing that there were no guarantees that he would continue to have a job at Motorola, Rein pursued a job opportunity at another company called Invoke Solutions. He told no one at Motorola that he was pursuing the opportunity, including in particular, Kofman

and Stark. Though Rein received a job offer from Invoke, he turned it down, not because he was relying on any promise of continued employment at Motorola but because he believed Invoke's compensation package was too low.

In early February 2004, realizing that there were no guarantees that he would continue to have a position in MPS, Rein began to pursue other potential opportunities at Motorola.

By February 2004, MPS had not yet achieved expectations or revenue goals. Facing aggressive new targets, Kofman determined that the group had too many high-level employees devoted to business development and not enough focused on delivering services to customers. In fact, Rein himself had observed that the lack of delivery personnel was impeding his own and the group's performance. As a result, Kofman concluded that in order to keep MPS afloat he should eliminate one of the highly-paid Principal positions. He contemplated hiring delivery personnel at a lower-level to provide cost-effective consulting services to customers.

Kofman chose Rein's position for elimination based on several factors: (1) Rein was not adequately focused on the group's chosen area of "field service mobility" and had less experience in that area than John Gillardi; (2) Rein's 2003 leadership assessment had revealed eight "blind spots" in key areas, and (3) Kofman's belief, corroborated by feedback from coworkers, that Rein could be abrasive and difficult as part of a team. After reviewing the rationale, Stark agreed and approved the decision.

When Kofman notified Rein of the termination, he explained the group's imbalance and the need to hire delivery personnel. Kofman – who was himself older than Rein – said nothing about Rein's age, or about hiring younger employees. In fact, when Kofman and Rein independently explained Rein's layoff to coworkers, they both explained the imbalance and need to hire delivery personnel, and neither suggested that age or the need to hire younger employees had anything to do with the decision. The evidence will show that Rein's late-concocted contention that Kofman mentioned age in the termination conversation is demonstrably false, and contradicts his own previous accounts of the termination conversation. He swore under oath that at least two of these accounts were accurate. Rein testified that he never heard Stark make any reference to his age.

After the termination, at Rein's urging, Stark spoke to certain of Rein's Motorola colleagues, who confirmed that Kofman's assessment was reasonable and not influenced by personal dislike or any inappropriate factors. At the time of Rein's termination, Rein had just turned 40 years old. Kofman, at age 42, was older than Rein; Stark, John Gillardi and Michael Humpleby were each 37 years old. The evidence will show that age had absolutely nothing to do with the decision to terminate Rein. Other than disputing his termination, Rein does not contend that younger employees were treated more favorably at Motorola.

Following Rein's termination, Human Resources sent him a letter offering him the Company's standard severance package of over $31,677 or an enhanced package (an additional $7,453.00) that he could receive in exchange for signing a standard release. Motorola explicitly advised Rein that he had the right to have an attorney review the agreement and accompanying release. Rein immediately began negotiating with Human Resources for a further enhanced package in which he could maintain employee status for an extended period so he could

7

represent to prospective employers that he still worked at Motorola. Just as some had found Rein abrasive while working at Motorola, he was very difficult to deal with, and even deceptive, during the severance negotiations. Stark counseled Rein not to burn bridges in the process of leaving the Company. The evidence will show that neither Stark nor anyone else ever threatened Rein during the negotiations.

Motorola ultimately acceded to Rein's request and offered him an enhanced package that would allow him to extend his termination date until May 31, 2004 in exchange for a standard release. During these negotiations, Motorola continued to make payments to Rein. Had Rein accepted this arrangement (which he had proposed), certain stock options would have vested prior to his effective separation date. Ultimately, on or about April 9, 2004, Rein refused to sign. He thereafter received the $31,677 standard severance package.

While Rein was negotiating his separation from the Company, he continued to seek other opportunities within the Company. One of the Motorola managers with whom Rein sought an opportunity, Janiece Webb, asked Kofman or Stark for feedback on Rein's performance. Stark referred her to Kofman, Rein's direct manager, and Kofman gave his honest opinion of Rein's strengths and weaknesses. Neither the potential opportunity with Ms. Webb, nor any other potential opportunity that Rein sought during this time had received final approval for hiring. At the time, Motorola continued to undergo significant company-wide reductions in force. Neither Stark nor Kofman spoke to any other prospective manager or employer about Rein. They did nothing to interfere with Rein getting another job at Motorola or anywhere else. Ultimately, Rein accepted a senior position at a different company in October 2004 with an attractive salary and bonus package.[1]

After Rein's termination, Kofman wrote a job requisition for a new delivery employee for MPS and conducted an interview to fill the position. The primary candidate Kofman considered had 15 to 20 years of work experience. However, Kofman and Stark thereafter made the decision not to fill the position; the group was once again re-focused. It was disbanded altogether late in 2004. Some of the former MPS members have moved to other parts of Motorola while others have resigned or been impacted by further workforce reductions at the Company. Therefore, the evidence will show that the Defendants are entitled to a judgment on all counts of Rein's complaint.

Moreover, Rein cannot show any entitlement to damages resulting from his termination. Motorola made payments to him through April 9, 2004 – that is, through only about 8 weeks prior to June 2004, the month until which he claimed he was promised employment. He then received a generous severance package equal to 8.5 weeks' pay. Rein cannot establish that Defendants engaged in willful discrimination, and thus cannot recover liquidated or punitive damages. Nor can Rein show that had Defendants not eliminated his position, he would have remained employed by Motorola for any measurable period. Rein cannot establish a link between Defendants' conduct and his inability to obtain another job within Motorola. To the extent that Rein claims entitlement to options that were scheduled to vest before June 2004 (or

---

[1] Defendants await supplementation concerning Rein's post-Motorola remuneration and entitlements and have issued subpoenas to obtain additional information.

thereafter), he has offered no rational non-speculative basis on which to value them.[2]  Rein has been employed in a series of increasingly lucrative management positions from October 2004 to the present, and as of August 2005, was earning a base salary of $180,000/year at Worldspan.[3] He admits that any physical symptoms of emotional distress from his termination were limited to rosacea and a couple of skin breakouts, that his emotional distress mostly ended when he got a new job a few months after he left Motorola, and that he never sought any treatment from any health care professional for any claimed distress.

## 4.    Agreed Facts.

1.    Motorola is a global leader in wireless and broadband communications. It is headquartered in Schaumburg, Illinois, and employs over 65,000 employees worldwide. Plaintiff's Response to Statement of Material Facts in Support of Defendants' Motion for Summary Judgment ("PRSMF") ¶ 1.

2.    In 2002, Motorola began a start-up professional services organization, called the Motorola Professional Services group ("MPS"), as part of its corporate division. Professional services constituted a new business line for Motorola through which it sought to provide services, expertise and consulting to customers to complement its traditional core products and technologies.  PRSMF ¶ 5.

3.    In 2002, Motorola engaged Russell Reynolds, a professional recruiting firm, to help MPS screen candidates with consulting backgrounds. Rein learned of the MPS opportunity through Russell Reynolds. PRSMF ¶ 6.

4.    On or about June 12, 2004, Motorola offered Rein the position of Principal of North America in the MPS group.  The terms of his offer were set forth in an offer letter.

5.    Rein accepted employment with Motorola and commenced work on June 24, 2002.  Answer to Amended Complaint, ¶¶ 7, 8.

6.    Rein was responsible for developing, selling and delivering services and products to existing and prospective clients of Motorola.

7.    At the time of Rein's hire at Motorola, the MPS group contained approximately 200 employees worldwide. PRSMF ¶ 14.

8.    At the time of his hire, Rein reported to Len DeBarros ("DeBarros"), a Senior Vice President in charge of MPS in the Americas. PRSMF ¶ 15.

---

[2] Reins's other trenches of options were not scheduled to vest until months or years later and the evidence will show that Rein had no reasonable expectation of remaining employed at Motorola until then.  By the express terms of the Option Agreement, Motorola options are cancelled (and thereafter unexercisable) upon termination.  Rein's unvested Motorola options also are subject to being cancelled because he violated the Option Agreement by attempting to persuade colleagues to leave the Company for other employment.

[3] See footnote 1.

9.    In July 2002, Motorola hired Kofman as a Managing Principal for the MPS group, also reporting to Len DeBarros. PRSMF ¶ 16.

10.    MPS did not meet its revenue goals in 2002. In 2002, Rein did not meet his individual sales goals and was not eligible for an Incentive Bonus. PRSMF ¶ 17.

11.    At the end of the 2002 year, Motorola gave Rein a modest salary increase and granted him stock options for 4000 shares of Motorola stock. Answer to Amended Complaint, ¶ 10.

12.    In February 2003, Plaintiff received a $5,000 Bravo Award. Answer to Amended Complaint, ¶ 11. In May 2003, Motorola granted Rein an additional 6500 stock options. Answer to Amended Complaint, ¶ 14.

13.    In March 2003, after a reorganization of the MPS group in the Americas, only about 26 members of the original group of 200, including Rein and Kofman, continued to operate as MPS. Instead of reporting to Corporate, the new group of 26 instead reported to the Commercial Government and Industrial Solutions Sector ("CGISS") group. PRSMF ¶¶ 20-1.

14.    Also in mid-2003, DeBarros, the MPS manager to whom Rein initially reported, left Motorola. PRSMF ¶ 22.

15.    During 2003, Rein was concerned that the MPS group might be disbanded, and he and his coworkers in MPS discussed this shared concern. PRSMF ¶ 23.

16.    In July 2003, Motorola hired Juergen Stark as a Corporate Vice President responsible for managing Motorola's Integrated Services Division and CGISS's strategic development, as well as the reduced MPS group. PRSMF ¶ 27.

17.    Stark then managed over 700 employees, approximately twenty-five of whom worked in MPS. PRSMF ¶ 28.

18.    By October 2003, the MPS group still was not profitable. PRSMF ¶ 29.

19.    By October 2003, MPS had changed its name from MPS to Intelligent Mobility Solutions or "IMS" in an effort to re-brand itself and to distance the group from the prior unsuccessful "MPS" brand. PRSMF ¶ 30.

20.    IMS had its first group, in-person meeting with Stark on October 14, 2003. PRSMF ¶ 31.

21.    Rein and others in the group were concerned that Stark might "pull the plug" on IMS if he did not approve of the group's business plan. In fact, one of Stark's purposes in holding the meeting was to determine if the fledgling IMS group would continue to operate as a stand alone organization, or whether its members would be terminated or redeployed within other Motorola divisions. PRSMF ¶ 32.

22.    Stark was disappointed in the IMS group's business plan. He felt that the group's initial business plan lacked specificity with respect to financial targets and business development, and did not seem bold enough. PRSMF ¶ 33.

23.    He told the group that its work was not of the caliber that he expected from them. Stark said that based on the presented plan, he was not willing to move the group forward. PRSMF ¶ 34.

24.    At the conclusion of this meeting, Rein and other members of the group were concerned that Stark would disband IMS, and Stark himself had doubts about whether to move forward with the group. PRSMF ¶ 35.

25.    Stark gave the group an opportunity to rethink the plan and to present a more specific and aggressive business plan to him several days later. PRSMF ¶ 36.

26.    Rein believed that if the second presentation was not successful, the group would probably "live until the end of the fiscal year (2003) and then be gone." PRSMF ¶ 37.

27.    The IMS group made a second presentation to Stark, after which Stark made the decision not to disband the group at that time. PRSMF ¶ 38.

28.    At the end of 2003, the group was again reorganized. PRSMF ¶ 43.

29.    Following the October 2003 meetings with Stark, IMS continued to refine its plans and periodically reported to Stark, as expected, regarding the group's progress. IMS was under substantial pressure to generate business and achieve the profitability that previously had eluded the group. PRSMF ¶ 48.

30.    Rein was concerned that the "volume and velocity" of the group's activity was insufficient to meet the plan. As of December 2003, Rein did not feel that the group was headed in the right direction to meet its goals for June 2004. PRSMF ¶ 51.

31.    During 2003, Rein did not reach the goals set for him individually, and his team similarly failed to reach its goals. Rein neither received nor became eligible for a Sales Incentive Bonus for 2003 because he did not meet his targets. PRSMF ¶ 52. In January of 2004, Motorola paid each member of MPS a bonus. Rein's was in the amount of $14,000. Answer to Amended Complaint, ¶ 14.

32.    In January of 2004, Kofman delivered Rein's performance evaluation. Rein's overall performance rating for 2003, and that of the other members of the IMS group, was "meets expectations." PRSMF ¶ 55-6.

33.    On or about February 11, 2004, Kofman delivered a Memorandum to Stark concerning the termination of Rein's employment. PRSMF ¶ 77.

34.    In addition to approving Rein's termination, Stark initially authorized Kofman to hire one additional delivery person, and agreed that the group could hire a second as new business was generated. PRSMF ¶ 79.

35.     On February 23, 2004, Rein responded to messages from Kofman by telephoning him, at which time Kofman informed Rein of his termination.  PRSMF ¶ 80, Answer to Amended Complaint, ¶ 28.

36.     That same day, Rein requested and received a meeting with Stark to discuss the termination of his employment.  PRSMF ¶ 81.

37.     At the time of Rein's termination, Kofman was approximately 42 years of age. Stark was approximately 37 years of age.  PRSMF ¶ 84.

38.     At the time of Rein's termination, John Gillardi and Michael Humpleby were each approximately 37 years old and Clay Brice was approximately 29 years old.   PRSMF ¶ 85.

39.     After Rein's termination, Motorola never hired any additional employees for the MPS group.  PRSMF ¶ 88.

40.     Rein contacted other employees of Motorola in an effort to find another position with the Company. Answer to Amended Complaint, ¶ 33.  His efforts to secure another position within Motorola were unsuccessful.  Answer to Amended Complaint, ¶ 37.  Rein's termination became effective on March 20, 2004. Answer to Amended Complaint, ¶ 39.

41.     The parties have entered a Stipulation executed by Rein, dated August 11, 2005. ("Stipulation") (stipulating that evidence of certain Collection and Benefits Activity not be admissible in this action).

42.     Ultimately, Rein accepted a new position as a Senior Director at GTSI, on October 18, 2004 at a salary of $150,000, with a 25% bonus and option eligibility.  Plaintiff's Answers to Interrogatories No. 7, 9; PRSMF ¶ 102.  By July 2005, he assumed a more lucrative position at Worldspan, earning a base salary of $180,000.

43.     Rein has not sought treatment from any health care professional for emotional distress or any health problem associated with his employment at Motorola.  Plaintiff's Answer to Interrogatory No. 5.

**5.      Contested Issues of Fact.**

      **a.      Plaintiff's Statement of Contested Factual Issues.**

1.     Whether the MPS Group had an "organizational mix issue" that necessitated terminating Rein's employment and replacing him with 1-2 less experienced individuals focused on delivery.

2.     Whether Rein lacked the 4e's + 1 leadership behaviors required of Motorola staff at his grade level.

3.     Whether Rein showed poor respect for others, was often confrontational and argumentative and tended to rub others the wrong way.

4.    Whether Rein had an inability to stay focused and came across as desperate to save his own job.

5.    Whether Rein lacked field service mobility experience and, if so, whether this lack of experience played a role in the decision to terminate Rein's employment.

6.    Whether Rein was told he was being fired because Motorola wanted to replace him with younger, less experienced, junior employees, who would be less expensive.

7.    Whether one or more of the reasons advanced by the Defendants for terminating Rein are a pretext for age discrimination.

8.    Whether Stark and Kofman aided and abetted in the discrimination against Rein.

9.    Whether Defendants discrimination against Rein was willful.

10.    Whether Rein told Stark that the decision to terminate his employment was unfair and potentially discriminatory.

11.    Whether Rein told Stark that he did not want to release his potential claims against the company until he had consulted with an attorney.

12.    Whether Stark threatened Rein by telling him that if he challenged the termination of his employment Motorola could create the paperwork necessary to justify his termination.

13.    Whether Stark threatened Rein by telling him that if he refused to release all his potential claims against Motorola and contacted an attorney the company would not pay him severance benefits he was legally entitled to receive and would send an "army of lawyers" after him.

14.    Whether Stark and Kofman retaliated against Rein by interfering with his efforts to find another position within Motorola.

15.    Whether the Defendants retaliated against Rein for engaging in protected activity.

16.    Whether Stark promised Rein that his position with the company was secure and that he, and the other members of the MPS Group would be given until June 30, 2004 to show that the MPS Group had the potential to create value for Motorola.

17.    Whether the $14,000 bonus paid to Rein in January of 2004 was a "retention" bonus.

18.    Whether Kofman made specific written and oral representations to Rein, during his performance review in January of 2004, designed to induce Rein into believing that his position at Motorola was secure, there would be no further reorganizations of the MPS Group in 2004 and he would be given a reasonable opportunity for his capabilities to come through and to create value for the company.

19.    Whether the Defendants intended that Rein rely on their representations and promises concerning the security of his position at Motorola and made such representations and promises

13

to induce Rein not to explore other employment opportunities or to accept a position with another company.

20.     Whether Rein relied on these promises and representations to his detriment when he declined a job offer from Invoke Solutions in January of 2004.

21.     Whether Kofman deliberately interfered with Rein's efforts to secure another position at Motorola by making disparaging comments about Rein's performance.

22.     Whether Kofman's disparaging comments about Rein were false.

23.     Whether Kofman's disparaging comments were made with actual malice and with a purpose unrelated to any legitimate corporate interest.

24.     Whether, as a result of Kofman's malicious interference, Rein was unable to secure another position within Motorola.

      **b.**     **Defendants' Statement of Contested Factual Issues.**

Contested issues of fact include:

1.     Was the layoff that resulted in Rein's termination age-neutral, or did it occur in circumstances that would raise a reasonable inference of unlawful discrimination?

2.     Was the decision to reorganize MPS and eliminate Rein's Principal position, in favor of a new position at a lower grade level performing delivery services, based on legitimate, nondiscriminatory business factors?

3.     Did Stark or Kofman expressly or impliedly agree or promise to alter the at-will nature of Rein's employment?

4.     Did Rein rely to his detriment on any statements or promises concerning continued employment, and was any such reliance reasonable?

5.     Did Kofman or Stark interfere with any prospective job for Rein at Motorola?

6.     Did Motorola retaliate against Rein or interfere with his legal rights during the severance negotiations?

7.     Did Rein destroy evidence on his computer(s), and if so, what evidence is unavailable at trial as a result and what sanctions are Defendants entitled to?

8.     Did Rein suffer any monetary damages?

**6.**     **Jurisdictional Questions.**

The parties are aware of no jurisdictional questions at this time.

7.    **Questions Raised by Pending Motions.**

a.    **Plaintiff's Motions.**

Plaintiff has filed a Motion to Compel in order to (i) obtain documents responsive to Request No. 15 of Plaintiff's First Request for Production of Documents that the Defendants have refused to produce; and (ii) to require the Defendants to supplement their responses to Interrogatory Nos. 12 and 14 of Plaintiff's First Set of Interrogatories. This outstanding discovery relates to issues of liability – i.e. whether, at the time Rein was seeking other positions at Motorola, any such positions were available and, if so, who was eventually hired. It also relates to issues of damages – i.e. information relating to the MIP Bonus program for which Rein would have been eligible had he remained at Motorola, together with information about the bonuses, options and other compensation the remaining members of the MPS Group earned after Rein was terminated.

b.    **Defendants' Motions.**

The Defendants have two motions pending before the Court:

Defendants' Motion for Sanctions, which alleges that when Rein, after beginning his deposition, finally returned the Motorola laptop that he had used during his employment. Defendants' experts determined that it had been wiped clean and reformatted while in Rein's exclusive possession. Defendants were thus deprived of the opportunity to assess relevant data admittedly stored there, including, for example, documents (1) that corroborate Defendants' defenses, including the legitimacy of Defendants' reasons for selecting Rein's position for elimination; (2) that reflect Rein's pursuit of alternative employment in January 2004 and thereafter; and (3) that reveal Rein's violations of certain Company policies and agreements, which would serve as an independent basis to justify Rein's termination and/or to cut off any entitlement to damages.

Defendants' Motion to Strike Portions of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Defendants seek to strike footnote 15 of Plaintiff's Opposition, which violates the terms of a clear and unambiguous Stipulation executed by the parties on August 11, 2005, in which Plaintiff acknowledged that efforts by administrative representatives of Motorola's Payroll Department to collect from him a perceived overpayment of wages would not be admissible in this litigation for any purpose.

8.    **Issues of Law, Including Evidentiary Issues, with Supporting Authority.**

a.    **Plaintiff's Issues.**

1.    Whether Rein has made out a prima facie case of age discrimination against each of the Defendants. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed2d 668, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-3, 257, 67 L.Ed.2d 207, 101 S.Ct. 1089 (1981); *Sullivan v. Liberty Mutual Ins. Co.*, 444 Mass. 34, 38 (2005).

2.    Whether Rein has shown that that it is more likely than not that at least one of the reasons advanced by the Defendants for terminating his employment was false. *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 505 (2001).

3.    Whether the Defendants discrimination against Rein was willful.

4.    Whether the Defendants retaliated against Rein for engaging in protected activity.  G.L.c. 151B, §4, 29 U.S.C. §§623, 626.

5.    Whether Kofman interfered with an Rein's advantageous employment relationship with Motorola and whether he further interfered with other positions Rein applied for within Motorola.

6.    Whether Kofman's interference was motivated by a spiteful, malignant purpose, unrelated to the legitimate corporate interest, such as ill will exceeding personal dislike. *King v. Driscoll*, 418 Mass. 576, 587 (1994); *O'Brien v. New England Tel & Tel.*, 422 Mass. 686, 690 (1996).

7.    Whether, under the doctrine of promissory estoppel, the specific oral promises and representations made to Rein concerning his future employment are enforceable. *Restatement (Second) of Contracts*, §89B; *Loranger Const. Corp. v. E.F. Hauserman, Co.*,  376 Mass. 757, 760-61 (1978).

8.    The Plaintiff has filed the following Motions in Limine:

i.    Motion for the exclusion of all evidence relating to Rein's employment prior to commencing work at Motorola;

ii.    Motion for the exclusion of evidence relating to Motorola's Leadership Assessment Multi-Rater Feedback Report; and

iii.    Motion for the exclusion of all evidence relating to Rein's laptop computer.

**b.    Issues of Law Raised by Defendants.**

1.    Defendants contend that the prima facie test for a reduction in force ("RIF") should be applied in this case.  A RIF occurs when an employer eliminates even one position because of business considerations, such as a desire to reorganize functions – even if new positions are contemplated in the reorganization.  *See LeBlanc* v. *Great American Ins. Co.,* 6 F.3d 836, 845 (1st Cir. 1993) (reorganization resulting in plaintiff's termination was a RIF even though additional employees were hired in same job in different region); *Lewis* v. *City of Boston,* 321 F.3d 207 (1st Cir. 2003) (applying RIF prima facie test when plaintiff's position was eliminated as part of reorganization that created new position that included some of plaintiff's duties).  Motorola has presented clear evidence that Rein's termination was part of a reduction in force under this broad test.

Therefore, under both G.L. c 151B and the ADEA, to establish a prima facie case in connection with a RIF, Rein must show that: 1) he is over forty years old; 2) he was performing his job to Motorola's legitimate expectations; and 3) he was terminated. *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 41 (2005) (G. L. c. 151B); *LeBlanc* v. *Great American Ins. Co.*, 6 F.3d at 842 (ADEA). The fourth element of the prima facie case arising from a RIF, under the ADEA, requires Rein to show that "the employer did not treat age neutrally or that younger persons were retained in the same position." *LeBlanc*, 6 F.3d at 842. Under G.L. c. 151B, the fourth element requires Rein to produce "some evidence that [his] layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." *Sullivan*, 444 Mass. at 45.

2.     The fact that Motorola sought to eliminate Rein's position, and create a new, more junior level (and lower paid) position to perform a different function, was a permissible, nondiscriminatory termination factor, because age, compensation and experience levels are analytically distinct. *See Poce* v. *John Toomey Co., Inc.*, 1996 Mass. Super. LEXIS 215, at *16-17; *Pagliarini* v. *Gen. Instrument Corp.*, 855 F. Supp. 459, 462 (D. Mass. 1994). *See also Hazen Paper Co.* v. *Biggins*, 507 U.S. 604 (1993) (termination based on years of service does not violate ADEA because analytically distinct from age); *Bramble* v. *American Postal Workers Union*, 135 F.3d 21 (1st Cir. 1998) (salary structure linked to retirement status does not violate ADEA); *Sack* v. *Bentsen*, 51 F.3d 264 (1st Cir. 1995) (hiring system that awards more points for recent degree or experience does not violate ADEA); *see also Schiltz* v. *Burlington Northern Railroad*, 115 F.3d 1407 (8th Cir. 1997) (use of factors such as grade level and salary in hiring decisions does not violate ADEA); *Anderson* v. *Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994) (discharge of worker for salary reasons does not violate ADEA).

3.     Defendants have filed the following motions *in limine:*

   a.   to exclude hearsay evidence;

   b.   to exclude evidence of Rein's late-concocted allegation concerning the single comment allegedly made by Kofman to Webb;

   c.   to exclude any evidence of the activity that is the subject of the parties' negotiated Stipulation;

   d.   to exclude evidence concerning Kofman's compensation and performance;

   e.   to exclude evidence of future unearned bonuses and unvested, unexercised options as an element of damages and to preclude Rein's testimony concerning their valuation;

   f.   to exclude evidence of punitive damages; and

   g.   regarding after-acquired evidence concerning Rein's violation of Company Policy, including his failure to return, and protect, Motorola assets and confidential information.

9.    **Requested Amendments to the Pleadings.**

The parties do not request to amend the pleadings at this time.

10.    **Additional Matters to Aid in the Disposition of Action.**

Defendants await supplementation from Plaintiff regarding a number of interrogatory responses, and intend to obtain from him a release to authorize them to obtain relevant records from Yahoo.com concerning the Yahoo account from which Rein testified that he communicated with former colleagues at Motorola as well as prospective employers.

The Plaintiff is seeking supplementation of Defendants' Answers to Interrogatories and Responses to Requests for Production of Documents concerning the following items: (i) the compensation, including bonuses, options, etc., Kofman, Gillardi, Brice and Humpleby have received from Motorola from the date of Rein's termination to the present; (iii) information concerning Motorola's Incentive Plan bonus program; (iv) information concerning positions for which Rein was qualified in Janiece Webb's group.

The parties are not aware of any additional matters at this time.

11.    **Probable Length of Trial.**

Defendants estimate that the trial will take approximately eight to ten days.

Plaintiff estimates that the trial will take approximately six days.

12.    **Witnesses to be Called.**

a.    **Plaintiff's Witnesses.**

Plaintiff expects to call the following witnesses:

Jay S. Rein
John Gillardi
Clyde Kofman
Juergen Stark
Clay Brice[4]
Janiece Webb
Peter Tobin

Plaintiff reserves the right to supplement these responses as necessary up to and including the time of trial.

---

[4] In the alternative, Rein may present Brice's testimony by way of a deposition transcript, pgs. 22-31, 35-46, 121-32, 134-37, 151-52 and 161-62.

b.      **Defendants' Witnesses.**

Defendants expect to call the following witnesses, listed in alphabetical order by last name.

Chris Banakis
Michael Humpleby
Clyde Kofman
Ana Maria Lopez
Thomas Niersbach
Paul Lanci
Juergen Stark
Peter Tobin

Defendants may also call one or more of the following witnesses, listed in alphabetical order by last name.

Matt Aden
Jason Bergenson
Simon Blanks
Clay Brice[5]
Len DeBarros
John Gillardi
Rodney Hedeen
Warren Holtzberg
Paula Hubbard
Charles Lehwald
Jann Melman
Thomas Niersbach
Lindsay Smith

Defendants reserve the right to supplement these responses as necessary up to and including the time of trial. Defendants reserve the right to call any witness listed by the Plaintiff in this Pre-trial Memorandum or in his Answer to Defendant's Interrogatories, and such additional unlisted witnesses as are necessary to respond to or rebut testimony by listed witnesses, to impeach the credibility of listed witnesses, or to lay the foundation for the introduction of documents.

---

[5] Defendants reserve the right to present Brice's testimony by way of counter designation, and reserve the right to call Janice Webb, if possible.

13.    **Proposed Exhibits.**

The parties stipulate to the following exhibits:

| Exhibit 1 | 6/12/02 | Offer of employment letter from A. Guillen to J. Rein |
|---|---|---|
| Exhibit 2 | 6/24/02-12/9/02 | Five Personnel Action Forms of J. Rein, C. Brice, M. Humpleby and J. Gillardi |
| Exhibit 3 | 7/1/02; 9/9/02; 12/20/02; 5/6/03 | Motorola, Inc. Award Documents for J. Rein |
| Exhibit 4 (4a and 4b) | 2002/ 2003 | Personal Commitment Dialogue Record Reports |
| Exhibit 5 | 10/14/03 | E-mail from Gillardi to Kofman with attachment "Motorola Professional Services – Moving 2004" |
| Exhibit 6 | 10/17/03 | Email from J. Rein to C. Kofman attaching Powerpoint Presentation |
| Exhibit 7 | 10/17/03 | E-mail from J. Rein to C. Kofman attaching "Intelligent Mobility Solution" Powerpoint |
| Exhibit 8 | 10/20/03 | Email from J. Rein to C. Kofman and J. Gillardi attaching Intelligent Mobility Solutions Pov |
| Exhibit 9 | 12/1/03 | Email from Stark to ISD Worldwide |
| Exhibit 10 | 12/18/03 | Email from C. Kofman to J. Stark re: December 2003 Update |
| Exhibit 11 | 12/18/03 | Email from J. Schaf to T. Niersbach |
| Exhibit 12 | 12/19/03 | Intelligent Mobility Solutions – Q4 '03 Status Update |
| Exhibit 13 | | 2004 Motorola Incentive Plan |
| Exhibit 14 | 1/5/04 | Letter from S. Blanks at Invoke Solutions to J. Rein |
| Exhibit 15 | 1/18/04 | E-mail from J. Rein to S. Blanks at Invoke |
| Exhibit 16 | 2/3/04-2/4/04 | Email from J. Stark to C. Kofman attaching email from J. Rein |
| Exhibit 17 | 2/3/04-2/4/04 | E-mails between J. Rein and J. Stark with cc to C. Kofman re: "Direction" |
| Exhibit 18 | 2/7/04 - 2/11/04 | Email exchange from C. Kofman to P. Tobin |
| Exhibit 19 | 2/11/04 | Email from C. Kofman re: "Pre-read IMS Update – CONFIDENTIAL" with attachment "IM Update February 2004" |

| Exhibit 20 | 2/26/04 | Email from C. Kofman to J. Stark re: "IMS Financial Plan" |
| Exhibit 21 | 3/5/04 | Email from P. Tobin to J. Rein |
| Exhibit 22 | 3/8/04 | Email from J. Rein to P. Hubbard |
| Exhibit 23 | 3/11/04-3/12/04 | Emails exchange between J. Webb and J. Stark |
| Exhibit 24 | 3/16/04 | Email from J. Rein to M. Bennett |
| Exhibit 25 | 3/18/04 | Email from J. Stark to J. Rein |
| Exhibit 26 | 3/24/04 | Email from J. Rein to J. Stark re: "Conversation Recap" |
| Exhibit 27 | 3/24/04 | E-mail from J. Rein to C. Kofman re: "Recap of Our Conversation" |
| Exhibit 28 | 4/12/04 | 3 emails from J. Rein to (1) L. Smith, (2) J. Webb, and (3) W. Holtsberg |
| Exhibit 29 | 5/9/04 | Email from J. Rein to P. Tobin re: "2nd Message" |
| Exhibit 30 | | Resume of Jay S. Rein |
| Exhibit 31 | | J. Rein's inbox re: mitigation documents seeking alternate employment |
| Exhibit 32 | | Earnings Statement |
| Exhibit 33 | 2/13/04 | Email from J. Stark to ISD |

The Plaintiff anticipates entering into evidence the following additional exhibits:

| A | | Motorola Earnings Statement, dated 1/3/04 |
| B | | W-2 Wage and Tax Statement of Rein's from Motorola for 2004 |
| C | | W-2 Wage and Tax Statement of Rein's from GTSI for 2004 |
| D | | W-2 Wage and Tax Statement of Rein's from GTSI for 2005 |

| E | | W-2 Wage and Tax Statement of Rein's from Worldspan for 2005 |
|---|---|---|
| F | | Payroll stub of Rein from Worldspan showing earning through 9/30/06 |
| G | | Job Requisition Information, undated |
| H | | E-mail from Gregg Brown to All Motorola Government & Enterprise Assoc., 1/31/05 |
| I | | Motorola Incentive Plan, Motorola Professional Services, 2002 Results |
| J | | Memorandum from Kevin Loosemore to Motorola Professional Services Assoc., dated 2/4/03 re: 2002 MIP |
| K | | Motorola Impact of Freescale Separation on Motorola Rewards Program, dated 12/3/04 |
| L | | Plaintiff's Supplementation to his Answer and Objections to Defendants' First Set of Interrogatories |
| M | | 2004 Motorola Incentive Plan |

Plaintiff reserves the right to enter into evidence such additional unlisted documents as are necessary to respond to or rebut the testimony of any trial witness, to impeach the credibility of any trial witness, to respond to or rebut the exhibits entered by the Defendants, or to lay the foundation for the introduction of listed exhibits.

Plaintiff currently has a Motion to Compel pending and reserves the right to supplement his list of proposed exhibits with any additional documents the Defendants are ordered to produce by the Court.

Defendants anticipate entering into evidence the following additional exhibits:

| 1 | | Motorola, Inc. Standard Operation Procedure (SOP) E-62 Appropriate Use of Computer Resources |
|---|---|---|
| 2 | 12/99 | Motorola Code of Business Conduct |
| 3 | 1/22/02 | Separation Agreement and Release from Epsilon Data Management |
| 4 | 1/30/02 | Rein Notes re: seminar |
| 5 | | Rein notes entitled "Questions for Motorola" |

| 6 | 4/12/02 | Letter from J. Rein to R. Hedeen at The Relizon Company |
|---|---|---|
| 7 | 6/24/02 | J. Rein Application for Employment with Motorola |
| 8 | 6/24/02 | Rein Employment Agreement with Motorola |
| 9 | 9/14/02 | Email from J. Rein to A. Lopez |
| 10 | 12/31/02 and 3/31/03 | Focused Feedback – Survey Details for La Safe & Disney RFP Process |
| 11 | 6/30/03-7/1/03 | String of e-mails between/or copying J. Gillardi, J. Rein, P. Lanci, C. Kofman, T. Niersbach etc. |
| 12 | 8/22/03 | Motorola Diversity and Equal Employment Opportunity Policy |
| 13 | 10/2/03 | E-mail from J. Rein to P. Lanci, J. Gillardi, C. Kofman re: 10/14 slide deck revisited |
| 14 | 10/3/03 | E-mail from J. Rein to C. Kofman, P. Lanci, and J. Gillardi re presentation for Stark, with attached slides |
| 15 | 10/10/03 | E-mail from Rein to P. Lanci and C. Kofman, copies to J. Gillardi and T. Niersback re: update presentation with attached slides |
| 16 | 10/21/03 | E-mail from J. Rein to J. Gillardi, C. Kofman and P. Lanci |
| 17 | 12/18/03 | E-mail string between C. Kofman and J. Rein, with copies to J. Gillardi, C. Brice and M. Humpleby |
| 18 | 4/1/03 | Email from L. deBarros re: "SIP and quotas 2003" |
| 19 | 10/2/03 | Email from J. Rein to P. Lanci, J. Gillardi and C. Kofman re: "Pre-Stark Meeting" |
| 20 | 10/13/03 | Email from C. Kofman re: "Slides draft" |
| 21 | 10/3/03 | Email from C. Kofman to J. Rein, P. Lanci and J. Gillardi re: "Presentation for Stark" |
| 22 | 10/30/03 | Emails between J. Rein to C. Kofman, P. Lanci and J. Gilardi re: "Presentation for Stark" |
| 23 | 12/18/03 | Email from C. Kofman to J. Rein re: "Outline for tomorrow's discussion with Juergen" |
| 24 | 12/17/03 | Email from C. Kofman to C. Brice, J. Gillardi, J. Rein and M. Humpleby re: "Juergen Update" |
| 25 | 3/24/03 | Email from L. deBarros re: "enterprise booking" |

| 26 | 1/19/04 | Email from C. Kofman to J. Rein, J. Gillardi, C. Brice and M. Humpleby re: "MPS Kick-off Session Takeaways and To Do's" |
|---|---|---|
| 27 | 1/23/04 | Email from J. Rein to C. Kofman |
| 28 | 2/3/04 - 2/2/04 | E-mail string between J. Stark, C. Kofman, J. Rein re: Express Link |
| 29 | 2/9, 10, 25, '04 | E-mail string involving A. Bir, C. Kofman, J. Rein |
| 30 | 2/11/04 | Email from Rein to W. Holtzberg |
| 31 | 2/13/04 | E-mail from J. Stark to "ISD: State of the Division – February 2004" |
| 32 | 2/24/04 | Dialogue Record, Summary Report for 2003 of J. Rein, Manager – C. Kofman |
| 33 | 2/24/04 | Email from J. Hanson to J. Stark re: "Jay Rein" |
| 34 | 2/25/04 | Email from P. Tobin to J. Rein with attached letter |
| 35 | 2/25/04 - 2/26/04 | Email exchange involving C. Kofman, J. Hanson and D. Passanante re: "IMS/MPS" |
| 36 | 2/25/04 | Letter from P. Tobin to J. Rein – summary of severance pay and benefits |
| 37 | 2/27/04 | Email from P. Tobin to J. Rein |
| 38 | 2/27/04 | E-mail from P. Tobin to J. Rein re: Involuntary Separation Agreement |
| 39 | 2/28/04 & 3/17/04 | Emails from J. Rein to C. Kofman, re: Girl Scouts cookies |
| 40 | 3/10/04 | Email from P. Tobin to J. Rein with attached letter |
| 41 | 3/11/04 | Letter from C. Theros to J. Rein re Separation and Release Agreement |
| 42 | 3/15/04 | Email from J. Rein to P. Tobin re: meeting of 3/15/04 |
| 43 | 3/30/04 | E-mail string between J. Rein and J. Stark re: separation agreement and release |
| 44 | 4/6/04 | Email from P. Tobin to J. Rein re: "Our Conversation Monday Evening April 5" |
| 45 | 4/8/04 | Email from J. Rein to P. Tobin |

| 46 | 4/9/04 | Email from P. Tobin to J. Rein re: ISP |
|----|--------|----------------------------------------|
| 47 | 4/18/04 | Email from J. Rein to L. Smith |
| 48 | 4/22/04 | Email from J. Gillardi to C. Brice, C. Kofman and M. Humpleby re: Cheatle Resume |
| 49 | 5/18/04 | Email from J. Rein to L. Smith re: expense reimbursement |
| 50 | 5/24/04 | Emails from J. Rein to J. Mellman re: expense reimbursement |
| 51 | 6/22/04 | Email from J. Rein to J. Mellman re: BSC initiative |
| 52 | 7/29/04 | Email from J. Rein to P. Zellner |
| 53 | 10/11/04 | Letter from A. Bernstein, at GTSI, to J. Rein offering position of Senior Director, CRM |
| 54 | 12/29/04 | E-mail J. Rein to C. Brice |
| 55 | 3/1/05 | E-mail from J. Rein to C. Brice and J. Gillardi |
| 56 | | Motorola Leadership Assessment Multi-Rater Feedback Report for Performance Management & Development – Compete Report for 2003 |
| 57 | | Confidential MIPS INCD 2005-06-00001 Final Report |
| 58 | | Email from C. Kofman to T. Niersbach |
| 59 | | CQ798 2004 Budget |
| 60 | | Motorola 2003 Revenue Report |
| 61 | | CGISS North America – 2003 Sales Incentive Compensation Plans – Administrative Guidelines |
| 62 | | Progressive Discipline Policy |
| 63 | | Kroll Investigative Analysis |
| 64 | | Organizational Announcement |
| 65 | | Participant Status Detail Report |

| 66 | | Record Retention Policy |
|---|---|---|
| 67 | | MPS Enterprise Practice – CGISS |
| 68 | | Standard Operating Procedures E-60 |
| 69 | | 2003 MPS Enterprise/CGISS transition -- SIP |

Defendants reserve the right to enter into evidence such additional unlisted documents as are necessary to respond to or rebut testimony by any trial witness, to impeach the credibility of any trial witness, to respond to or rebut exhibits entered by Plaintiff, or to lay the foundation for the introduction of listed exhibits.

Defendants await supplementation on certain Interrogatories and Document Requests, and reserve the right to supplement this list of proposed exhibits with any additional documents the Plaintiff is ordered to produce by the Court.

**14.     Parties' Respective Positions on Any Remaining Objections to Evidence Identified in Pre-trial Disclosure under Fed.R.Civ.P. 26(a)(3).**

**A.  Plaintiff's Position**

1.     *Separation Agreement and Release from Epsilon; Letter from Rein to Hedeen* – Objection, based on Rule 404(a) of the Federal Rules of Evidence.  Defendants are introducing these exhibits as evidence of Rein's character or trait of character to prove that he acted in conformity therewith on a particular occasion. Plaintiff has filed a Motion in Limine with respect to this evidence.

2.     *Standard Operating Procedure E-62; Confidential MIPS Final Report; Progressive Discipline Policy; Kroll Investigative Analysis* – Objection. Defendants are attempting to introduce this "after acquired evidence" on the issue of liability which is clearly prohibited.  *See McKennon v. Nashville Banner Publ. Co.,* 513 U.S. 352, 115 S. Ct. 879 130 L.Ed.2d 852 (1995); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997).  Plaintiff has filed a Motion in Limine with respect to this evidence.

3.     *2003 Leadership Assessment for Rein* – Objection, based on Rules 802 and 901 of the Federal Rules of Evidence.  Plaintiff has filed a Motion in Limine with respect to this evidence.

4.     *E-mail from Gillardi to MPS dated 4/22/04* – Objection, based on Rules 802 and 901 of the Federal Rules of Evidence.

5.     *Exhibits Not Identified in Defendants' Pre-Trial Disclosures* –  Plaintiff reserves the right to object to any exhibit not identified in the Defendants' Pre-Trial Disclosures.

**B. Defendants' Position**

In addition to the positions taken in Defendants' Motion in Limine, Defendants raise the following objections:

1.      *Motorola Incentive Plan, Motorola Professional Services, 2002 Results; Memorandum from Kevin Loosemore to Motorola Professional Services Assoc., dated 2/4/03 re: 2002 MIP; 2004 Motorola Incentive Plan, Plaintiff's Supplementation to his Answer and Objections to Defendants' First Set of Interrogatories* – Objection.  Defendants object for the reasons set forth in their Motion in Limine to Exclude Evidence Regarding Plaintiff's Unearned Bonuses and Unvested, Unexercised Stock Options.

Respectfully submitted,

Dated:  November 7, 2006

JAY REIN

By his attorney,

/s/ John G.H. Coster
John G.H. Coster (BBO#101450)
92 State Street
Suite 900
Boston, MA 02109
Telephone: (617)423-2224

MOTOROLA, INC., CLYDE KOFMAN,
and JUERGEN STARK,

By their attorneys,

/s/ Kristin G McGurn
Lynn A. Kappelman (BBO # 642017)
Kristin G. McGurn (BBO# 559687)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800