**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

JAY S. REIN,                                )
                                                        )
                     Plaintiff,              )
                                                        )
v.                                                     )          Civil Action No. 04-12580 NG
                                                        )
MOTOROLA, INC., CLYDE            )
KOFMAN, and JUERGEN STARK, )
                                                        )
                     Defendants.          )
_____)

**PLAINTIFF'S MOTION FOR RECONSIDERATON OF THE COURT'S**
**DECISION GRANTING DEFENDANTS' MOTION IN LIMINE FOR THE**
**EXCLUSION OF EVIDENCE CONCERNING REIN'S STOCK OPTIONS AND**
**BONUSES**

Plaintiff, Jay S. Rein ("Rein" or the "Plaintiff") hereby submits this Motion for

Reconsideration and Request for Clarification of the Court's November 7, 2006 Order

excluding evidence of Rein's unvested stock options and future bonuses.  As grounds for

this Motion, the Plaintiff states the following:

The Defendants have moved for the exclusion of all evidence relating to the

bonuses Rein would have received and the stock options that would have vested had Rein

not been discriminatorily discharged in February of 2004.  On November 7, 2006, a day

after receiving this Motion, and prior to the Plaintiff filing his Opposition, the Court

granted Defendants' Motion.  The Plaintiff seeks the Court to reconsider portions of the

ruling.

A.    The Implication That Rein Had No Expectation of Employment Beyond June 30, 2004

In its Order, the Court bases a portion of its decision on the premise that Rein would not be entitled to recover for any options that vested or for any bonuses that were payable after June 30, 2004.  The Court appears to base this date on Rein's promissory estoppel claim, in which Rein contends that he was promised by Stark that his position would remain secure until June 30, 2004.

Rein has no issue with the Court's ruling to the extent that it applies to the damages he may recover based on his promissory estoppel claim.  Clearly, Plaintiff is only entitled to the compensation he would have received through June of 2004, which would render him ineligible for the 2004 year end bonus and any stock options that vested after that date.

However, Rein has also brought discrimination claims against the Defendants under state and federal law, and an interference with contractual relations claim against Kofman.  With respect to these claims, the Plaintiff respectfully suggests that the June 30, 2004 date is irrelevant.

In *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280, 299 (1975) the Supreme Court made it clear that the underlying purpose of the back pay remedy afforded under federal discrimination statutes is to make the plaintiff whole and to put him in the same position he would have been in but for the discriminatory treatment.  The First Circuit has interpreted *Albermarle* as teaching "that back pay is a <u>presumptive</u> <u>entitlement</u> of the victim of discrimination and that the discriminating employer is responsible for all wage losses that result from its unlawful

discrimination, <u>at least until the time of judgment</u>".[1]  *Johnson v. Spencer Press of Me., Inc.,* 364 F.3d 368, 382 (1st Cir. 2004) [Emphasis added]; *see also Carey v. Mt. Desert Island Hosp.*, 156 F.3d 31, 40-41 (1st Cir. 1998).  Here, there is no basis for the Court to unilaterally presume that Rein would have been terminated on July 1, 2004; and such a presumption is fundamentally at odds with Supreme Court and First Circuit precedent.

Moreover, it is clear both vested stock options and lost bonuses are recoverable compensatory damages under the federal discrimination statutes.  *See e.g. Green v. Safeway Stores, Inc.*, 210 F.3d 1237 (10th Cir. 2000) (stock options); *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1062 (8th Cir. 2002)(stock options); *Courtney v. Safelite Glass Corp.*, 811 F.Supp. 1466 (D. Kan. 1992) (stock options); *Cariglia v. Hertz Equipment Rental Corp.*, 343 F. Supp.2d 50 (D. Mass. 2004)(lost bonuses).

Similarly, under Massachusetts state law, a successful plaintiff in a claim of tortious interference with contractual relations is entitled to recover lost prospective earnings; and, even where the contract interfered with is terminable at will, it is presumed to run for an indefinite period.  *Tompkins v. Sulivan*, 313 Mass. 459, 461 (1943).

There is also no factual basis for concluding that Rein's employment would have terminated on June 30, 2004.  It is undisputed that the MPS Group remained intact through January 31, 2005 and that no other employee was terminated, transferred or demoted.  Moreover, contrary to the Defendants' assertion that the MPS Group "disbanded" at the end of 2004, Motorola's own records do not support this assertion.

---

[1] The Court also ruled on November 7, 2006 that Rein improperly deleted data from his Motorola issued computer and that his actions violated Motorola's policy and justified his immediate termination.  Given this ruling the Plaintiff concedes that, under "after acquired evidence" doctrine, Rein's back pay remedy is appropriately cut off after the date Motorola discovered this alleged deletion, which in this case was sometime in September, 2005.

Thus, the documents recently produced by Motorola establish that, on January 31, 2005 it was announced that:

> The Special Markets Division, currently under the acting leadership of Jim Sarralo and the Intelligent Mobility Solution team, led by Clyde Kofman, will be combined into our new Enterprise organization reporting to Jeff.[2] [Emphasis added].

In fact, since Rein was fired in February of 2004, to the Plaintiff's knowledge only one of the MPS Group members has also been terminated, Michael Humpleby in the summer of 2005.

Moreover, although the Defendants take great pains to emphasize the "experimental" nature of the MPS Group, and the tenuousness of the Group's existence, this fact does not impact Rein's interference with contractual relations claim, which is based, in part, on Kofman's interference with his efforts to find positions within other groups at Motorola.

B.    The Court's Assumption That Rein's Stock Options and Bonuses Are Too Speculative To Be Recoverable

Because the Court has recently ruled that, based on "after acquired evidence" obtained by Motorola, Rein is ineligible to recover any damages after September 2005, Rein's potential recovery for lost bonuses and stock options has been substantially diminished.  However, this ruling also reduces any potential uncertainty about the underlying value of these elements of Rein's compensation.

1.    Rein's Bonuses

As the Court correctly notes in its November 7th ruling, an individual must be employed at year end to receive a bonus for that year.  Thus, the only bonus payment

---

[2] E-mail from Greg Brown to All Motorola Government and Enterprise Associated Worldwide, dated January 1, 2005 and attached hereto as Exhibit A.

now at issue is for the 2004 fiscal year.   The Plaintiff respectfully submits that, with

respect to this bonus, there is sufficient evidence for a reasonable jury to conclude that

Rein would have received a bonus, and to calculate the amount of that bonus.

It is settled law that a plaintiff need not prove damages with mathematical

exactitude and that "juries are allowed to act on probable and inferential proof" and

"make a just and reasonable estimate of damage".  *Bigelow v. RKO Radio Pictures, Inc.*,

327 U.S. 251, 264-65 (1946).  Moreover, to the extent that there is a certain degree of risk

or uncertainty in calculating such damages, justice requires that it be the wrongdoer that

bears such risk.  *Id.* at 264.  The Court's have used these principles to permit a plaintiff to

recover damages under far more speculative circumstances.  *See Rombola v. Cosindas*,

351 Mass. 382, 383 (1966) (Plaintiff permitted to use past performance of race horse to

establish what its winnings would have been in a race it was unable to run).  In the instant

case, there is ample evidence of Rein's history of past performance to justify a jury

"betting on" Rein to perform at the minimal level needed to qualify for a bonus in 2004[3].

It is undisputed that, for the 2004 fiscal year, Rein, and all the other members of

the MPS Group were switched from the SIP bonus program, which was based on

individual and group revenue results, to the MIP bonus program, which was based on

company revenues and performance factors.  In calculating this award Motorola used the

following formula: Award = Eligible Earnings x Target Award % x Business

Performance Factor x Individual Performance Factor.[4]

---

[3] In fact, it would be revealing to see what, if any employees on the MIP Plan were performing so poorly that they had a performance factor of zero and were thus ineligible for any bonus.  Rein suspects that, virtually everyone eligible for such a bonus received one.  Of course, right now, only the Defendants have such information in their possession.
[4] 2004 Motorola Incentive Plan, attached as Exhibit B.

Of the four factors that would go into the calculation of Rein's 2004 bonus, three are fixed. Eligible earnings are determined by the Motorola's MIP Committee "for each country consistent with their legal and practical requirements".[5]    Thus, the definition of eligible earnings would be the same for all U.S. residents, and is presumably either their base pay, or some fixed calculation based on such compensation. We have this information for Rein.

Target Award % is based on the employee's country and pay grade.[6] Again we have this information for Rein.

Business Performance Factor is based on "operating earnings, operating cash flow, revenue growth and other factors" of the company and is the same for all employees participating in the plan.

The final factor is the "Individual Performance Factor" and this is the only part of the equation that involves any uncertainty whatsoever. Although Motorola has refused to provide the information necessary to ascertain how the "Individual Performance Factor" was calculated for 2004, it did provide such information for 2002.[7] Assuming that the factors for 2004 are identical or substantially similar, they include an employee's achievements as based on [his] "Personal Commitment, Relative Performance Assessment, and other results".[8]

Here we have all this data for Rein through January of 2004, the date of his last Performance Assessment by Kofman. Surely, this would provide a sufficient track record

---

[5] Id.
[6] Id.
[7] See Memorandum from Loosemore to All Motorola Professional Services Associates, dated February 4, 2003 and attached hereto as Exhibit C. Of course, it the Court grants Plaintiff's pending Motion to Compel, Rein will have this information for 2004 as well.
[8] Id.

for a jury to infer what Rein's underlying performance would have been for the remaining balance of 2004. In addition, this information could be supplemented with evidence concerning the bonuses and performance factors of the other four members of the MPS Group - Kofman, Gillardi, Humpleby and Brice. These individuals would be highly relevant comparators to Rein because: (i) they were all members of MPS Group; (ii) they were all performing similar duties; (iii) in the past they had all received similar or identical ratings concerning their overall performance.[9]

Gillardi in particular is an appropriate comparator because he reported directly to Kofman, had the same title as Rein, had the same pay grade as Rein, and had a substantially similar salary.

Moreover, if the jury had the performance factors and bonus information for each of the remaining members of the MPS Group, they would see the potential range of such bonuses and could make a calculation where Rein fit in to that range. In addition, should it turn out that the other members of the MPS Group all had the same or substantially similar Individual Performance Factors, it would provide compelling evidence that Rein's bonus would have been similar.[10]

2.    Rein's Stock Options

Again, the Court's November 7th ruling that, as of September, 2005 Motorola had an independent basis for terminating Rein's employment, substantially diminishes Rein's losses with respect to his vested stock options. Not only would he be limited to those

---

[9] See Personnel Action Forms (PAF) for Rein, Kofman, Gillardi, Brice and Humpleby, attached hereto as Exhibit D.

[10] It is for this reason that Rein renews his request that Motorola provide this information, which Plaintiff sought in his original discovery. The Court should grant this Motion because, even if it ultimately reaches the same conclusion about the underlying admissibility of this information, Rein will have had the opportunity to make his best case that these damages are not speculative. As things presently stand, the Court has made its ruling without knowing what additional information is available that could potentially undermine the Defendants' contention that these damages are speculative.

options that vested prior to September of 2005, a time limitation is now placed on him for the exercise of these options (since vested options must be exercised within a certain period after termination). This places both a cap and a floor on the underlying value of each option.

Although it is true that uncertainty still exists about the exact value of each option, this range provides a minimum value for the option. At the very least Rein should be permitted to enter the options into evidence and argue that he is entitled to recover the minimum potential value of each underlying option.[11]

<u>Conclusion</u>

The Court's exclusion of Rein's loss of stock options and loss of bonuses from the back pay he is entitled to recover dramatically reduces the Plaintiff's compensatory damages. Moreover, it fundamentally ignores a modern day reality for senior executives like Rein - that a substantial portion of their compensation is in the form of bonuses and stock options. Taking these damages off the table means that one of the fundamental goals of the antidiscrimination statute, that a successful plaintiff be made whole and placed in the same position he would be in if he had not been subject to discriminatory treatment, is not achieved. It also results in an unjust windfall for a defendant guilty of such discriminatory treatment.

Moreover, in this particular instance the Court made its ruling without providing the Plaintiff with the opportunity even to respond to the arguments raised by Defendants,

---

[11] Rein also respectfully disagrees with the Court's conclusion that expert testimony is required to value an option, particularly where the options themselves relate to stock in a publicly traded computation. Thus, the only variable to calculating the total value of the option is the date you pick to look up the price of the underlying stock. Everything else is a simple arithmetic computation that a talented third grader could perform. In other words, to fairly compensate Rein, the only decision a jury needs to make is when they think Rein would have exercised his options. These dates may be ascertained from Rein's own testimony or his past behavior. However, they are not a topic on which an expert can provide the jury any guidance.

and before it addressed Rein's own pending motion to compel the Defendants to provide

clearly relevant documents that could potentially establish that the Plaintiff's damages

(particularly with respect to 2004 MIP bonus) are neither speculative not difficult to

calculate.

Based on the foregoing, Rein respectfully requests that the Court reconsider its

November 7, 2006 ruling concerning the admissibility of Rein's damages concerning lost

options and lost 2004 MIP bonus, and grant Plaintiff's pending Motion to Compel.

JAY S. REIN

By his attorney,

/s/John G. H. Coster
John G. H. Coster
(BBO #101450)
92 State Street, Suite 900
Boston, Massachusetts 02109
(617) 423-2224

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document was served upon the attorney of record for each other party by ECF on November 8, 2006.

/s/ John G. H. Coster
John G. H. Coster

# EXHIBIT A

REDACTED

-----Original Message-----
**From:** Greg Brown [mailto:newsww01@dynalist.corp.mot.com]
**Sent:** Monday, January 31, 2005 7:11 PM
**To:** All Motorola Government & Enterprise Associates Worldwide
**Subject:** Organization Announcement



Feedback

A message from Greg Brown – 31 Jan 2005




Greg Brown

## Government & Enterprise Mobility Solutions

As previously announced, we have combined the former
Commercial, Government and Industrial Solutions Sector

(CGISS) with the Automotive group and the Secure Asset Solutions (SAS) organization – both of which were formerly in the Integrated Electronic Systems Sector (IESS). Additionally, we will now be hosting (on behalf of the CEO) the Global Relations and Resources Organization.

Our new organization is called Government & Enterprise Mobility Solutions. What follows is an overview of our new organization and a reaffirmation of the roles and responsibilities within our business.

**Government & Public Safety**

To best serve our customers, we will continue to operate the public-safety businesses within their geographical regions. Additionally, the product management and marketing groups for voice, data and application solutions will be managed within their respective regions. The continued strength within the public-safety business will enable us to further accelerate our momentum in 2005.   The following individuals report directly to me and are responsible for leading the regions as indicated below.

- Americas: Jim Sarallo
- Asia Pacific: John Gherghetta
- Europe, Middle East and Africa: John Doughty
- Israel: Elisha Yanay

**Automotive**

- Marios Zenios, Automotive, formerly of IESS, continues to lead this organization and also joins the senior leadership team of Government & Enterprise Mobility Solutions, reporting directly to me.
- Marios and the Automotive team will continue to pursue embedded automotive controls and architecture activities, and increase their focus on all mobile communication opportunities with major automobile manufacturers, including a new thrust around the connected auto.

**Enterprise**

Clearly the enterprise market represents a significant opportunity for Motorola; and therefore, we are elevating it to the senior leadership team level of our business. As part of our modified business strategy, we are launching a new worldwide go-to-market Enterprise organization under the interim leadership of Jeff Miller. Jeff, and the Enterprise Business Development organization, has moved into our business, reporting directly to me. In addition, the following responsibilities will fall under Jeff.

- The Special Markets Division, currently under the acting leadership of Jim Sarallo, and the Intelligent Mobility Solutions team, led by Clyde Kofman, will be combined into our new Enterprise organization, reporting to Jeff.
- Jeff will also continue to manage Motorola's executive sponsorship program.
- Product management and marketing will remain within the regions of our public-safety entities to better leverage our existing embedded resources.

**Integrated Solutions Division**

- Juergen Stark will continue to lead the Integrated Solutions Division, which includes CRISNET.
- In addition, Juergen will be responsible for managing the Mesh Networks product group, led by Richard Licursi, who will report directly to him.
- The Secure Asset Solutions (SAS) organization, which was established as a growth platform in September 2003, and is led by David Greer, will report to Juergen. The SAS organization develops innovations via wireless technology and web services to help address asset tracking, security and supply chain management issues globally.

## Global Relations & Resources Organization

The Global Relations & Resources Organization, led by Gene Delaney, which includes government relations and country management, continues to provide leadership for, and services to, all of Motorola's businesses and is now hosted within our business. Gene will report directly to me.

## Finance and Business Development

- The Business Development organization, led by Mark Davies, which currently reports to Juergen Stark, will now report directly to Marc Rothman, Finance and Business Development.
- Rich Galitz, Global Portfolio Management, and his team will also report directly to Marc.
- Marc will continue to operate the worldwide finance organization for the Government & Enterprise Mobility Solutions business.

## Supply Chain

- The Supply Chain organization will be responsible for all procurement activities, manufacturing operations and distribution logistics functions, and will encompass our Americas, Asia, Europe and Israel operations.
- All Supply Chain operations will report directly to Shail Godambe.
- James O'Toole and Karney Yakmalian, of the worldwide Automotive supply chain operations, will also report directly to Shail, with a dotted line into Marios Zenios.
- Shail will be responsible for directly managing the procurement authority, processes, resources and financials in all of the regions in order to leverage these activities across Motorola.
- Since our supply chain operations are so closely interdependent with customer-delivered quality, we are also announcing that Martin Swarbrick, Business Excellence and Digital Six Sigma, will now report directly to Shail.

## Engineering

- Bob Epsom will be responsible for all engineering activities for research and development. This includes all design centers (including Public Safety Software under Ted Kozlowski). The design centers within the Automotive, Biometrics and Public Service Solutions organizations will remain integrated within those businesses.

## Functional Organizations

MSP0006

Employees in each of our functional organizations will report solid line into the following leaders on my staff.

- Kathy Bryan, legal
- John DeFeo, information technology
- Marc Rothman, finance and business development
- Chris Theros, human resources (interim in conjunction with her new Corporate responsibilities)

**Government & Enterprise Mobility Solutions Senior Leadership Team**
Below is a complete list of our senior leadership team.

| | |
|---|---|
| Greg Brown | President |
| Kathy Bryan | Legal |
| John DeFeo | Information Technology |
| Gene Delaney | Worldwide Government Relations and Global Resources |
| John Doughty | Europe, Middle East and Africa |
| Bob Epsom | Engineering |
| John Gherghetta | Asia Pacific |
| Shail Godambe | Supply Chain |
| Jeff Miller | Enterprise – The Americas (interim) |
| Marc Rothman | Finance and Business Development |
| Jim Sarallo | The Americas |
| Juergen Stark | Integrated Solutions Division |
| Chris Theros | Human Resources (interim) |
| Elisha Yanay | Israel |
| Marios Zenios | Worldwide Automotive |

**Future Growth and Success**
The realignments detailed in this announcement will enable us to further delight our customers, improve customer-delivered quality and position us for superior financial results. I am extremely energized by our new opportunities and anticipate your full support of the leaders and teams affected by this announcement.



Please distribute to employees without email access.
Motorola Internal Use Only

MSP0007

# EXHIBIT B

CONFIDENTIAL

## 2004 Motorola Incentive Plan

### Overview

The 2004 Motorola Incentive Plan (the "Plan") has been established to retain employees through competitive rewards, attract premier talent, align individual efforts with business goals, and reward employees for strong business performance. The Plan is based on successive calendar-year performance periods commencing 1 January 2004 (each a "Plan Year").

### Eligibility

To be eligible to participate in this Plan, an employee must be:

- A full-time or part-time Motorola employee;
- In a Participating Organization and on the payroll of a Participating Country;
- Not a participant in any other annual group incentive or bonus plan (e.g., sales commission plans, etc.); and
- One of the following must also apply:
    - Active on a Motorola payroll as of the end of the Plan Year (countries may establish more restrictive eligibility requirements for terminating employees);
    - On a leave of absence as of the end of the Plan Year;
    - Retired from Motorola during the Plan Year while actively employed or from a leave of absence; or
    - Deceased during the Plan Year while actively employed or on a leave of absence.

### Award Calculation

Awards will be calculated and paid after the close of each Plan Year on which the awards are based. The award amount will be based on Eligible Earnings, the Target Award %, and the Business and Individual Performance Factors, as follows:

$$\text{Award} = \text{Eligible Earnings} \times \text{Target Award \%} \times \begin{array}{c}\text{Business}\\\text{Performance}\\\text{Factor}\end{array} \times \begin{array}{c}\text{Individual}\\\text{Performance}\\\text{Factor}\end{array}$$

Eligible Earnings is defined below. Target Award %'s, Business Performance Factors and Individual Performance Factors for each Plan Year shall be determined by the Compensation and Leadership Committee of the Board of Directors (the "Compensation Committee"). Business Performance Factors shall be based on Operating Earnings, Operating Cash Flow, Revenue Growth, Quality and such other factors as may be determined by the Compensation Committee.

### Administration

- The Compensation Committee has the responsibility for this Plan and may delegate to the MIP Plan Committee (the "MIP Committee") the authority to manage, administer, and interpret the terms of the Plan. Unless otherwise determined, the MIP Committee will consist of the Senior Human Resources Officer, a senior Compensation Officer, and a senior Finance Officer.
- Any claims for payments under the Plan or any other matter relating to the Plan must be presented in writing to the MIP Committee within 60 days after the event that is the subject of the claim. The MIP Committee will then provide a response within 60 days, which response shall be final and binding.

### General Provisions

- Awards are subject to all applicable taxes and other required deductions.
- The Plan will not be available to employees subject to the laws of any jurisdiction which prohibits any provisions of this Plan or in which tax or other business considerations make participation impracticable in the judgment of the MIP Committee.
- This Plan does not constitute a guarantee of employment nor does it restrict Motorola's rights to terminate employment at any time or for any reason
- The Plan and any individual award is offered as a gratuitous award at the sole discretion of Motorola. The Plan does not create vested rights of any nature nor does it constitute a contract of employment or a contract of any other kind. The Plan does not create any customary concession or privilege to which there is any entitlement from year-to-year, except to the extent required under applicable law. Nothing in the Plan entitles an employee to any remuneration or benefits not set forth in the Plan nor does it restrict Motorola's rights to increase or decrease the compensation of any employee, except as otherwise required under applicable law.

MI000090

- The awards shall not become a part of any employment condition, regular salary, remuneration package, contract or agreement, but shall remain gratuitous in all respects. Awards are not to be taken into account for determining overtime pay, severance pay, termination pay, pay in lieu of notice, or any other form of pay or compensation.
- This Plan is provided at Motorola's sole discretion and Motorola may modify or eliminate it at any time, prospectively or retroactively, without notice or obligation. In addition, there is no obligation to extend or establish a plan in subsequent years.
- The Plan shall not be pre-funded. Motorola shall not be required to establish any special or separate fund or to make any other segregation of assets to assure the payment of awards.
- Since employee retention is an important objective of this Plan and awards do not bear a precise arithmetic relationship to time worked within the calendar year or length of service with Motorola, employees who resign or are terminated for any reason prior to the end of the Plan Year other than death or retirement shall not receive a pro rata award.
- The award for an employee who has died prior to the end of the Plan Year while actively employed or on a leave of absence will be paid to the decedent's estate.
- Awards for transferred, promoted or demoted employees will be calculated using the:
  - Target Award % applicable to the employee's country and grade at the end of the Plan Year
  - Business Performance Factor prorated for the portion of the year the participant was in different Participating Organizations during the Plan Year.

Definitions
*Eligible Earnings*: The MIP Committee will determine Eligible Earnings for each country, consistent with their respective legal and practical requirements. The MIP Committee may determine inclusions and exclusions from Eligible Earnings as it deems appropriate and may vary its determinations by country.

*Employee*: a person in an employee-employer relationship with the Company whose base wage or base salary is processed for payment by the Company's Payroll Department(s) and not by any other department of the Company (or by any other company). Exclusions include:
- Any independent contractor, consultant, or individual performing services for the Company who has entered into an independent contractor or consultant agreement;
- Any individual performing services under an independent contractor or consultant agreement, a purchase order, a supplier agreement or any other agreement that the Company enters into for services;
- Any person classified by the Company as a temporary or contract labor (such as black badges, brown badges, contractors, contract employees, job shoppers) regardless of the length of service; and
- Any "leased employee" as defined in Section 414(n) of the U.S. Internal Revenue Code of 1986, as amended.

*Retired*: This Plan utilizes the definition of "retiree" that appears in the primary retirement plan covering the employee.

*Operating Earnings:* A measure of pre-tax profits, calculated according to Motorola's financial standards and measured on an ongoing basis. In a general sense, Operating Earnings is Profit Before Tax, prior to expenses for net interest expense, foreign exchange gains or losses, and gains or losses on asset sales.

*Operating Cash Flow:* A measure of cash flow calculated according to Motorola's financial standards, and measured on an as-reported basis.

*Revenue Growth:* A measure of net sales after discounts calculated according to Motorola's financial standards, and measured on an as-reported basis.

*Quality:* A combination of measures of customer satisfaction, reliability, and cost of poor quality, as defined by Motorola senior leaders.

CHI99 4336590-1.034764.0024

MI000091

# EXHIBIT C

*** MOTOROLA INTERNAL USE ONLY ***

Date:     4 February 2003

To:       All Motorola Professional Services Associates Worldwide

From:     Kevin Loosemore
          Corporate Vice President, Motorola, Inc.
          and President, Motorola Professional Services

Subject:  Business Results for 2002 Motorola Incentive Plan (MIP)

As a company, Motorola made substantial progress in 2002 as we returned
to profitability, improving both our balance sheet and our
competitiveness.  Your dedication and creativity also made MPS' 2002
accomplishments possible.  Thank you for your focused actions to drive
our results.

**BUSINESS PERFORMANCE RESULTS**
The 2002 Motorola Incentive Plan (MIP) reflects our commitment to
improved profit and cash flow -- two critical measures that power
business growth and shareholder value.  The year we collectively
achieved these results:

As you will see we met our profit target, significantly exceeded our
free cash flow target, but failed to meet our bookings goal:

| Motorola Professional Services Results | Factor | Wtg. | Score |
|---|---|---|---|
| Profit before tax at 100% of target | 1.00 | 60% | 0.60x |
| Free cash flow at 128% of target | 1.28 | 30% | 0.39x |
| Key initiative (bookings) was not achieved | 0.00 | 10% | 0.00x |
| **2002 Business Performance Factor** | | | **0.99x** |

For more information about the formula, or to view target percentages,
please visit: http://myhr.mot.com/worklife/ipp/

**PERSONAL PERFORMANCE DRIVES PAYOUT**
The Motorola Incentive Plan's individual performance factor emphasizes
Motorola's performance-differentiated rewards philosophy.  During the
February-March rewards planning period, your manager will determine
your individual performance factor based on your achievements as
measured through your Personal Commitment (PC), Relative Performance
Assessment (RPA) and other results.  You will receive information on
your 2002 individual performance factor later in March.  Motorola
Incentive Plan payouts will follow in April according to local payroll
practices (4 April for the U.S.).

Thank you for your dedication and contributions to our team's 2002
successes.

Regards,
Kevin

CONFIDENTIAL

# EXHIBIT D

# Personnel Action Form (PAF)

Motorola Confidential Proprietary

Print Date: 07/15/2005

HR Use Only:

Position Needed:    Y    N

Position #: [          ]

| | | Current | | | New | | Eff Date |
|---|---|---|---|---|---|---|---|
| Company | M000 | United States | | | | | |
| Personnel Area | N000 | CGISS-United States IL01 | | | | | |
| Pers Subarea | STD | Standard | | | | | |
| Emp Group | 5 | Separated | | | | | |
| Emp Subgrp | U6 | Exempt | | | | | |
| Payroll Actg Area | M1 | Exempt bi-weekly | | | | | |
| Work Phone | 1-508-893-6926 | | | | | | |
| Work Sched/PT/% | S-1-40 | | PT | 100.00% | | | |
| Location Code | IL01 | | | | | | |
| Mail Drop | | | | | | | |
| Cost Center | CQ798 | | | | | | |
| Badge Number | | | | | | | |

Name                      Jay Rein
Commerce ID               12026815
Imed Supv
New Imed Supv
Manager2
Manager3
Emplmnt Date              06/24/2002
Service Date              06/24/2002
Svc Club Date             06/24/2002

Current Range :                  4
Current Compa Ratio:          0.00
Next Salary Review Date:

| Prop | Eff Date | P&S Sort | ES Arch | RS Grow | Comp Ratio | Inc Pct | Inc Amt | New Salary |
|---|---|---|---|---|---|---|---|---|
| S<br>A<br>L<br>A<br>R<br>Y | 03/31/2003<br>06/24/2002 | | S2<br>S2 | E15<br>E15 | 0.00<br>0.00 | 2.00<br>0.00 | 3,800.00<br>0.00 | 193,800.00<br>190,000.00 |

| Prop | Eff Date | Rea Sort | Cost Center | Position | Position Abbr | Title |
|---|---|---|---|---|---|---|
| P<br>O<br>S<br>I<br>T<br>I<br>O<br>N | 03/20/2004<br>04/01/2003<br>01/01/2003<br>08/22/2002<br>06/24/2002 | <br>12<br>12<br>11<br> | CQ798<br>CQ798<br>FW904<br>FW901<br>FW901 | 60196443<br>60196443<br>60196443<br>60196443<br>60196443 | 60499028<br>60499028<br>60499028<br>60499028<br>60404009 | PRNCPL MOT PROF SVCS & DI<br>PRNCPL MOT PROF SVCS & DI<br>PRNCPL MOT PROF SVCS & DI<br>PRNCPL MOT PROF SVCS & DI<br>DIR ACCOUNT SALES NATL |

| Prop | Eff Date | Event Type/Rea | | Status | | | End Date |
|---|---|---|---|---|---|---|---|
| S<br>T<br>A<br>T<br>U<br>S | 03/20/2004<br>04/01/2003<br>03/31/2003<br>01/01/2003<br>08/22/2002 | 13<br>02<br>86<br>02<br>02 | 12<br>12<br>01<br>12<br>11 | 0<br>0<br>0<br>0<br>0 | 0<br>3<br>3<br>3<br>3 | 0<br>1<br>1<br>1<br>1 | 12/31/9999<br>03/19/2004<br>03/31/2003<br>03/30/2003<br>12/31/2002 |

| Prop | Eff Date | Performance |
|---|---|---|
| P<br>E<br>R<br>F | 12/31/2003<br>12/31/2002 | Meets Expectations<br>Meets all, exceeds some<br><br>MI2-000105 |

**Remarks:**

| | | | | | |
|---|---|---|---|---|---|
| Originating Name | | Signature | | Date | |
| Receiving Name | | Signature | | Date | |
| HR Name | | Signature | | Date | |
| Compensation Name | | Signature | | Date | |

# Personnel Action Form (PAF)

Motorola Confidential Proprietary

Print Date: 07/15/2005

HR Use Only:
Position Needed:    Y    N
Position #:

| | | Detail | | End Date |
|---|---|---|---|---|
| Company | M000 | United States | | |
| Personnel Area | U000 | GEMS-United States IL02 | | |
| Pers Subarea | STD | Standard | | |
| Emp Group | 1 | Active Employee | | |
| Emp Subgrp | U6 | Exempt | | |
| Payroll Actg Area | M1 | Exempt bi-weekly | | |
| Work Phone | 404-252-6652 | | | |
| Work Sched/PT/% | S-1-40 | PT  100.00% | | |
| Location Code | IL02 | | | |
| Mail Drop | | | | |
| Cost Center | CQ798 | | | |
| Badge Number | | | | |

Name                          Clay Brice
Commerce ID                   12029806
Imed Supv                     Clyde Kofman
New Imed Supv
Manager2                      Jeffrey Miller
Manager3                      Clyde Kofman
Emplmnt Date                  11/18/2002
Service Date                  11/18/2002
Svc Club Date                 11/18/2002

Current Range :                        2
Current Compa Ratio:                1.00
Next Salary Review Date:

| Prop | Eff Date | Adv Schd | PS Area | PS Group | Geog Diff% | Inc Pct | Inc Amt | New Salary |
|---|---|---|---|---|---|---|---|---|
| S A L A R Y | 03/28/2005 | | S2 | E12 | 0.00 | 4.87 | 5,500.00 | 118,400.00 |
| | 01/31/2005 | 10 | S2 | E12 | 0.00 | 8.68 | 9,020.00 | 112,900.00 |
| | 03/29/2004 | | S2 | E12 | 0.00 | 6.00 | 5,880.00 | 103,880.00 |
| | 11/18/2002 | | S2 | E12 | 0.00 | 0.00 | 0.00 | 98,000.00 |

| Prop | Eff Date | Adv Schd | Cost Center | Postn | Person Supv | Title |
|---|---|---|---|---|---|---|
| P O S I T I O N | 05/07/2005 | | CQ798 | 60200342 | 80404028 | CONSULTANT SALES |
| | 11/26/2003 | 12 | CQ798 | 60200342 | 80404028 | CONSULTANT SALES |
| | 04/01/2003 | 12 | CQ719 | 60200342 | 80404028 | CONSULTANT SALES |
| | 11/18/2002 | | FW901 | 60200342 | 80404028 | CONSULTANT SALES |

| Prop | Eff Date | Event | Type | Status | | | End Date |
|---|---|---|---|---|---|---|---|
| S T A T U S | 05/07/2005 | 55 | 00 | 0 | 3 | 1 | 12/31/9999 |
| | 03/28/2005 | 86 | 01 | 0 | 3 | 1 | 05/06/2005 |
| | 01/31/2005 | 02 | 10 | 0 | 3 | 1 | 03/27/2005 |
| | 03/29/2004 | 86 | 01 | 0 | 3 | 1 | 01/30/2005 |
| | 11/26/2003 | 02 | 12 | 0 | 3 | 1 | 03/28/2004 |

| Prop | Eff Date | Performance |
|---|---|---|
| P E R F | 12/31/2004 | Effective |
| | 12/31/2003 | Meets Expectations |
| | 12/31/2002 | Meets Expectations |
| | | MI2-000106 |

## Remarks:

| | | | | |
|---|---|---|---|---|
| Originating Name | | Signature | | Date |
| Receiving Name | | Signature | | Date |
| HR Name | | Signature | | Date |
| Compensation Name | | Signature | | Date |

# Personnel Action Form (PAF)

Motorola Confidential Proprietary

Print Date: 07/15/2005

HR Use Only:

Position Needed:  Y  N

Position #: 

| | Current | | | | | New | Eff. Date |
|---|---|---|---|---|---|---|---|
| Company | M000 | United States | | | | | |
| Personnel Area | U000 | GEMS-United States  IL06 | | | | | |
| Pers Subarea | STD | Standard | | | | | |
| Emp Group | 1 | Active Employee | | | | | |
| Emp Subgrp | U6 | Exempt | | | | | |
| Payroll Actg Area | M1 | Exempt bi-weekly | | | | | |
| Work Phone | 954-723-6396 | | | | | | |
| Work Sched/PT/% | S-1-40 | | PT | 100.00% | | | |
| Location Code | IL06 | | | | | | |
| Mail Drop | | | | | | | |
| Cost Center | CQ798 | | | | | | |
| Badge Number | | | | | | | |

| Name | Michael Humpleby |
|---|---|
| Commerce ID | 12029729 |
| Imed Supv | Clyde Kofman |
| New Imed Supv | |
| Manager2 | Jeffrey Miller |
| Manager3 | Clyde Kofman |
| Emplmnt Date | 12/09/2002 |
| Service Date | 12/09/2002 |
| Svc Club Date | 12/09/2002 |
| Current Range | 2 |
| Current Compa Ratio: | 1.02 |
| Next Salary Review Date: | |

| | Eff. Date | Sal. Area | Pay Grade | Hrs/2 | % Incr | Incr Amt | New Salary | |
|---|---|---|---|---|---|---|---|---|
| Prop | | | | | | | | |
| S A L A R Y | 03/28/2005 | | S2 | E14 | 0.00 | 0.64 | 929.00 | 145,210.00 |
| | 03/29/2004 | | S2 | E14 | 0.00 | 1.25 | 1,781.00 | 144,281.00 |
| | 12/09/2002 | | S2 | E14 | 0.00 | 0.00 | 0.00 | 142,500.00 |

| | Eff. Date | Sal. | Cost Center | Pos. On# | Person Above# | Title | |
|---|---|---|---|---|---|---|---|
| Prop | | | | | | | |
| P O S I T I O N | 05/07/2005 | | CQ798 | 60201008 | 60499028 | PRNCPL MOT PROF SVCS & DI | |
| | 02/23/2004 | 12 | CQ798 | 60201008 | 60499028 | PRNCPL MOT PROF SVCS & DI | |
| | 04/01/2003 | 12 | CQ719 | 60201008 | 60499028 | PRNCPL MOT PROF SVCS & DI | |
| | 12/09/2002 | | FW901 | 60201008 | 60499028 | PRNCPL MOT PROF SVCS & DI | |

| | Eff. Date | Type | Rea1 | Rea2 | Sta- tus | Lev | End Date |
|---|---|---|---|---|---|---|---|
| Prop | | | | | | | |
| S T A T U S | 05/07/2005 | 55 | 00 | 0 | 3 | 1 | 12/31/9999 |
| | 03/28/2005 | 86 | 01 | 0 | 3 | 1 | 05/06/2005 |
| | 03/29/2004 | 86 | 01 | 0 | 3 | 1 | 03/27/2005 |
| | 02/23/2004 | 02 | 12 | 0 | 3 | 1 | 03/28/2004 |
| | 04/01/2003 | 02 | 12 | 0 | 3 | 1 | 02/22/2004 |

| | Eff. Date | Performance |
|---|---|---|
| Prop | | |
| P E R F | 12/31/2004 | Effective |
| | 12/31/2003 | Meets Expectations |
| | | MI2-000107 |

## Remarks:

| Originating Name | | Signature | | Date | |
|---|---|---|---|---|---|
| Receiving Name | | Signature | | Date | |
| HR Name | | Signature | | Date | |
| Compensation Name | | Signature | | Date | |

# Personnel Action Form (PAF)

Motorola Confidential Proprietary

Print Date: 07/15/2005

HR Use Only:
Position Needed:   Y    N
Position #: _____

| | | | | Current | | New | Eff Date |
|---|---|---|---|---|---|---|---|
| Company | M000 | United States | | | | | |
| Personnel Area | U000 | GEMS-United States IL01 | | | | | |
| Pers Subarea | STD | Standard | | | | | |
| Emp Group | 1 | Active Employee | | | | | |
| Emp Subgrp | U6 | Exempt | | | | | |
| Payroll Actg Area | M1 | Exempt bi-weekly | | | | | |
| Work Phone | 314 961 5451 | | | | | | |
| Work Sched/PT/% | S-1-40 | PT | 100.00% | | | | |
| Location Code | IL01 | | | | | | |
| Mail Drop | | | | | | | |
| Cost Center | CQ798 | | | | | | |
| Badge Number | | | | | | | |

| | |
|---|---|
| Name | John Gillardi |
| Commerce ID | 12027552 |
| Imed Supv | Clyde Kofman |
| New Imed Supv | . |
| Manager2 | Jeffrey Miller |
| Manager3 | Clyde Kofman |
| Emplmnt Date | 07/29/2002 |
| Service Date | 07/29/2002 |
| Svc Club Date | 07/29/2002 |
| Current Range : | 3 |
| Current Compa Ratio: | 1.13 |
| Next Salary Review Date: | |

| Prop | Eff Date | Sal Pln | PS Grp | Sal Grd | Incr Pct | Comp Rate | New Salary |
|---|---|---|---|---|---|---|---|
| S | 03/29/2004 | | S2 | E15 | 0.00 | 1.00 | 1,785.00 | 180,285.00 |
| A | 03/31/2003 | | S2 | E15 | 0.00 | 2.00 | 3,500.00 | 178,500.00 |
| L | 07/29/2002 | | S2 | E15 | 0.00 | 0.00 | 0.00 | 175,000.00 |
| A | | | | | | | | |
| R | | | | | | | | |
| Y | | | | | | | | |

| Prop | Eff Date | Rsn | Cost Center | Position | Postion Abbrev | Title |
|---|---|---|---|---|---|---|
| P | 05/07/2005 | | CQ798 | 60197502 | 60499028 | PRNCPL MOT PROF SVCS & DI |
| O | 04/01/2003 | 12 | CQ798 | 60197502 | 60499028 | PRNCPL MOT PROF SVCS & DI |
| S | 01/01/2003 | 12 | FW904 | 60197502 | 60499028 | PRNCPL MOT PROF SVCS & DI |
| I | 08/22/2002 | 11 | FW901 | 60197502 | 60499028 | PRNCPL MOT PROF SVCS & DI |
| T | 07/29/2002 | | FW901 | 60197502 | 60404009 | DIR ACCOUNT SALES NATL |
| I | | | | | | |
| O | | | | | | |
| N | | | | | | |

| Prop | Eff Date | Typ Rsn | | Status | | | End Date |
|---|---|---|---|---|---|---|---|
| S | 05/07/2005 | 55 | 00 | 0 | 3 | 1 | 12/31/9999 |
| T | 03/29/2004 | 86 | 01 | 0 | 3 | 1 | 05/06/2005 |
| A | 04/01/2003 | 02 | 12 | 0 | 3 | 1 | 03/28/2004 |
| T | 03/31/2003 | 86 | 01 | 0 | 3 | 1 | 03/31/2003 |
| U | 01/01/2003 | 02 | 12 | 0 | 3 | 1 | 03/30/2003 |
| S | | | | | | | |

| Prop | Eff Date | Performance |
|---|---|---|
| P | 12/31/2004 | Effective |
| E | 12/31/2003 | Meets Expectations |
| R | 12/31/2002 | Meets all, exceeds some |
| F | | MI2-000108 |

**Remarks:**

| | | | | | |
|---|---|---|---|---|---|
| Originating Name | | Signature | | Date | |
| Receiving Name | | Signature | | Date | |
| HR Name | | Signature | | Date | |
| Compensation Name | | Signature | | Date | |

# Personnel Action Form (PAF)

Motorola Confidential Proprietary

Print Date: 07/15/2005

| | | Current | | Recalc | Eff Date |
|---|---|---|---|---|---|
| Company | M000 | United States | | | |
| Personnel Area | U000 | GEMS-United States IL23 | | | |
| Pers Subarea | STD | Standard | | | |
| Emp Group | 1 | Active Employee | | | |
| Emp Subgrp | U6 | Exempt | | | |
| Payroll Actg Area | M1 | Exempt bi-weekly | | | |
| Work Phone | 847-576-4842 | | | | |
| Work Sched/PT/% | S-1-40 | | PT | 100.00% | |
| Location Code | IL23 | | | | |
| Mail Drop | | | | | |
| Cost Center | CQ798 | | | | |
| Badge Number | | | | | |

| | |
|---|---|
| Name | Clyde Kofman |
| Commerce ID | 12027346 |
| Imed Supv | Jeffrey Miller |
| New Imed Supv | |
| Manager2 | Jeffrey Miller |
| Manager3 | |
| Emplmnt Date | 07/15/2002 |
| Service Date | 07/15/2002 |
| Svc Club Date | 07/15/2002 |
| | |
| Current Range: | 4 |
| Current Compa Ratio: | 1.92 |
| Next Salary Review Date: | |

| Prop | Eff Date | Reas Cont | Pers Area | Pers Group | Use Level | Bene Pct | Amt | New Salary |
|---|---|---|---|---|---|---|---|---|
| S A L A R Y | 03/31/2003 | | S2 | E15 | 0.00 | 1.50 | 4,500.00 | 304,500.00 |
| | 07/15/2002 | | S2 | E15 | 0.00 | 0.00 | 0.00 | 300,000.00 |

| Prop | Eff Date | Reas Cont | Cost Center | Position | Vation Action | Title |
|---|---|---|---|---|---|---|
| P O S I T I O N | 05/07/2005 | | CQ798 | 60197065 | 60499029 | MANAGING PRNCPL MOT PROF |
| | 04/01/2003 | 12 | CQ798 | 60197065 | 60499029 | MANAGING PRNCPL MOT PROF |
| | 01/01/2003 | 12 | FW904 | 60197065 | 60499029 | MANAGING PRNCPL MOT PROF |
| | 08/22/2002 | 11 | FW901 | 60197065 | 60499029 | MANAGING PRNCPL MOT PROF |
| | 07/15/2002 | | FW901 | 60197065 | 60404009 | DIR ACCOUNT SALES NATL |

| Prop | Eff Date | Days Reas | Status | | | Eff Dat |
|---|---|---|---|---|---|---|
| S T A T U S | 05/07/2005 | 55 | 00 | 0 | 3 | 1 | 12/31/9999 |
| | 04/01/2003 | 02 | 12 | 0 | 3 | 1 | 05/06/2005 |
| | 03/31/2003 | 86 | 01 | 0 | 3 | 1 | 03/31/2003 |
| | 01/01/2003 | 02 | 12 | 0 | 3 | 1 | 03/30/2003 |
| | 08/22/2002 | 02 | 11 | 0 | 3 | 1 | 12/31/2002 |

| Prop | Eff Date | Performance |
|---|---|---|
| P E R F | 12/31/2004 | Effective |
| | 12/31/2003 | Meets Expectations |
| | 12/31/2002 | Meets all, exceeds some |
| | | MI2-000109 |

**Remarks:**

| | | | | | |
|---|---|---|---|---|---|
| Originating Name | | Signature | | Date | |
| Receiving Name | | Signature | | Date | |
| HR Name | | Signature | | Date | |
| Compensation Name | | Signature | | Date | |

Personnel Action Form - Terms and Codes

## Company Code
M000 = MOTOROLA

## Personnel Area
A000 = CORP    B000 = IESS    D000 = SPS    H000 = GCSO    K000 = PCS    L000 = GRRO
N000 = CGISS    P000 = BCS    Q000 = SISG    R000 = GTSS

## Personnel Subarea
STD = Standard          COMM = Commission          COOP = Co-op/Intern
SUMR = Summer           EXP = Expatriate

## Employee Group
1 = Active                         3 = Transfer Out of Country              5 = Separated
2 = Retired                        4 = LOA

## Work Sched/PT/%
Work schedule indicates shift preium eligibility and normal schedule hours. The PT indicator simply indicates that the person works part time. The % time foraperson who normally works 20 hours of a 40-hour shift would be 50%. (Exception: PT exempt who works a variable schedule should continue to show 100%)

## Cost Center
This is the department number in which the individual's headcount resides.

## Salary/Position Change Reason
01 = Merit increase                      10 = Special adjustment              24 = Lump sum
02 = Hierarchy promotion                 11 = Job Code/Title revision         26 = Certification
03 = Opportunity promotion               12 = Department change               35 = Shift Change
04 = Re-evaluation                       13 = Substitute assignment           37 = Part Time to Full Time
05 = Invol Downgrade/Performance         14 = Return assignment               38 = Full Time to Part Time
06 = Involuntary downgrade/Other         17 = Voluntary downgrade
07 = Lateral transfer
09 = General Salary Increase

## Separation Action and Reason

### 10 Eligible for Rehire
11 = Voluntary Force Reduction
12 = Involuntary Force Reduction
40 = New Job Competitor
41 = New Job Non-Comp
44 = Personal Reasons
46 = Relocation
47 = Returned to School
70 = Military
82 = Other Reasons
87 = Contract Expiration
88 = Term from LOA

### 13 Additional Investigation Req
11 = Vol Force Reduction/non-retiree
12 = Invol Force Reduction
15 = Sales of Business
16 = Term from LTD
17 = Layoff
40 = New Job Competitor
41 = New Job Non-Competitor
49 = No Show
82 = Other Reasons

### 14 Retirement
30 = Normal
31 = Immediate Early Retirement
32 = Deferred Early Retirement
33 = Postponed
34 = Disability
35 = Vested
36 = Early Retirement Assistance Pgm
37 = Voluntary Severance Program
38 = Sales of Business

### 16 Not Eligible for Rehire
11 = Vol Force Reduct/non-retiree
12 = Invol Force Reduction
23 = Term Clause: Class I
24 = Term Clause: Class II
25 = Term Clause: Class III
45 = Quit w/o notice
49 = No Show
82 = Other Reasons
87 = Conctract Expiration

### 17 Death
80 = Death without Survivors
81 = Death with Survivors

MI2-000110

Revised 06/25/1999